**No. 25-1035**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

ALLIANCE OF HEALTH CARE SHARING MINISTRIES
*Plaintiff-Appellant*

v.

MICHAEL CONWAY,
in his official capacity as
Commissioner of the Colorado Division of Insurance
*Defendant-Appellee*

---

Appeal from the United States District Court for the District of Colorado,
No. 1:24-cv-01386-GPG-STV (Hon. Gordon Gallagher)

---

**APPENDIX VOL IV -  Pages A-224 - A-261**

Date: March 21, 2025

Michael F. Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@Paulhastings.Com
William E. Mahoney
Paul Hastings LLP
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@Paulhastings.Com

*Counsel For Plaintiff Alliance of
Health Care Sharing Ministries*

| ECF NO. | *DESCRIPTION* | Appx. Page No. |
|---|---|---|
| **Appendix Vol. I, Pages 1-140** | | |
| - | District Court Docket Sheet | A-1 |
| 8-1 | Ex. A - Declaration of Rob Waldo (May 17, 2024) | A-9 |
| 8-2 | Ex. A-1 – Samaritan Bylaws | A-19 |
| 8-3 | Ex. A-2 - Samaritan Guidelines | A-44 |
| 8-4 | Ex. A-3 - Samaritan Membership Application | A-94 |
| 8-5 | Ex. B - Declaration of Katy Talento | A-100 |
| 32 | Amended Complaint of Alliance of Health Care Sharing Ministries (July 1, 2024) | A-109 |
| **Appendix Vol. II, Pages 141-179** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1-1.6 (September 3, 2024) | A-141 |
| **Appendix Vol. III, Pages 180-223** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.7-1.22 (September 3, 2024) | A-180 |
| **Appendix Vol. IV, Pages 224-261** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.23-1.28 (September 3, 2024) | A-224 |
| **Appendix Vol. V, Pages 262-307** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.29-1.33 (September 3, 2024) | A-262 |

| | **Appendix Vol. VI, Pages 308-331** | |
|---|---|---|
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.34-1.36 (September 3, 2024) | A-308 |
| | **Appendix Vol. VII, Pages 332-350** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-332 |
| | **Appendix Vol. VIII, Pages 351-373** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.37-1.39 (September 3, 2024) | A-351 |
| | **Appendix Vol. IX, Pages 374-424** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.40 (September 3, 2024) | A-374 |
| | **Appendix Vol. X, Pages 425-478** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.41 (September 3, 2024) | A-425 |
| | **Appendix Vol. XI, Pages 479-541** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.41-1.42 (September 3, 2024) | A-479 |
| | **Appendix Vol. XII, Pages 542-573** | |

| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-542 |
|---|---|---|
| **Appendix Vol. XIII, Pages 574-612** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.54-1.59 (September 3, 2024) | A-574 |
| **Appendix Vol. XIV Pages 613-682** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.6-1.6 (September 3, 2024) | A-613 |
| **Appendix Vol. XV, Pages 683-767** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.61-1.64 (September 3, 2024) | A-683 |
| **Appendix Vol. XVI, Pages 768-816** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.0-2.3 (September 3, 2024) | A-768 |
| **Appendix Vol. XVII, Pages 817-867** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.3-2.4 (September 3, 2024) | A-817 |
| **Appendix Vol. XVIII, Pages 868-933** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.5-7 (September 3, 2024) | A-868 |

| | **Appendix Vol. XIX, Pages 934-1002** | |
|---|---|---|
| 52.1 | Appendix to Reply to Motion for Preliminary Injunction (September 17, 2024) | A-934 |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-949 |
| | **Appendix Vol. XX, Pages 1003-1041** | |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-1003 |
| 55 | Notice of Appeal as to Order on Motion for Preliminary Injunction (January 27, 2025) | A-1015 |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1017 |
| | **Appendix Vol. XXI, Pages 1042-1077** | |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1042 |
| 60 | Order Denying Motion for Injunction Pending Appeal (February 3, 2025) | A-1069 |

**BEFORE THE DIVISION OF INSURANCE, STATE OF COLORADO**

Case File No. 268068
DOI Order No. O-20-006

---

***EX PARTE*** **EMERGENCY ORDER TO CEASE AND DESIST THE UNAUTHORIZED AND UNLAWFUL TRANSACTION OF THE BUSINESS OF INSURANCE IN THE STATE OF COLORADO**

---

In the Matter of ALIERA HEALTHCARE, INC.

Respondent.

---

This matter comes before Michael Conway, Commissioner of Insurance for the state of Colorado ("Commissioner"), pursuant to the provisions of the Regulation of Unauthorized Insurance Act, §§ 10-3-901 through 10-3-910, C.R.S., whereby the Commissioner is authorized to issue an *ex parte* emergency cease and desist order to prevent the unauthorized transaction of insurance business in Colorado.

## PARTIES AND JURISDICTION

1.     Pursuant to § 10-1-108(7), C.R.S., the Commissioner has the duty and responsibility to supervise the business of insurance in the state of Colorado to assure it is conducted in accordance with Colorado law and in such a manner as to protect policyholders and the general public.

2.     The Colorado Division of Insurance ("Division") is an agency charged with the execution of laws relating to insurance and has supervising authority over the business of insurance in this state pursuant to § 10-1-103(1), C.R.S.  Pursuant to § 10-1-104(2), C.R.S., the Commissioner has delegated the duties and responsibilities of investigating, enforcing, and taking actions to enforce compliance with the insurance laws of Colorado to the Division and its staff.

3.     Respondent, Aliera Healthcare, Inc. ("Respondent") is a foreign, for-profit corporation organized under the laws of Delaware and doing business in Colorado.[1]

---

[1] Upon information and belief, Aliera Healthcare, Inc. has initiated a name change to The Aliera Companies, Inc. This name change has occurred on the entity's website and in its foreign corporation filings in at least Texas and Georgia. Both Aliera Healthcare, Inc. and The Alieria Companies, Inc. are Delaware corporations.

**EXHIBIT**
**1.23**

Ex. 1.23, p. 1 of 5

4.      Respondent first incorporated in the state of Delaware on September 29, 2011.

5.      Respondent is licensed as a non-resident insurance producer with life, and accident and health lines of authority, license number 544844.

6.      Trinity Healthshare, Inc. ("Trinity") is a foreign corporation organized under the laws of Delaware.

7.      Trinity first incorporated in the state of Delaware on June 27, 2018.

8.      Trinity represents itself as a healthcare sharing ministry ("HCSM") as defined by 26 USC §5000A.[2]

9.      Trinity does not hold a certificate of authority in the state of Colorado.

10.     Section 10-1-102(12), C.R.S., defines 'insurance' as, a contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies.

11.     Pursuant to § 10-1-108(5), C.R.S., the Commissioner has the duty to make such investigations and examinations as are authorized by Title 10 of the Colorado Revised Statutes and to investigate such information as is presented to the Commissioner by authority that the Commissioner believes to be reliable pertaining to violations of Colorado insurance laws.

12.     Section 10-1-102(6)(a), C.R.S., defines insurance company[3] to include all corporations, associations, partnerships, or individuals engaged as insurers in the business of insurance.

13.     Pursuant to § 10-2-102(13), C.R.S., an insurer is every person engaged as principal, indemnitor, surety, or contractor in the business of making contracts of insurance.

14.     Pursuant to § 10-3-105(1), C.R.S., no foreign or domestic insurance company shall transact any insurance business in this state, unless it first procures from the commissioner a certificate of authority stating that the requirements of the laws of this state have been complied with and authorizing it to do business.

---

[2] Trinity does not qualify as an HCSM under federal law as it has not been in operation and continuously sharing member health care costs since at least December 31, 1999. See 26 U.S.C. § 5000A(d)(2)(B).

[3] The section defines "company", "corporation", "insurance company", or "insurance corporation."

2

15.     Pursuant to § 10-3-903, C.R.S., the making of, or proposing to make, as an insurer, an insurance contract, by an unauthorized insurer, constitutes transacting insurance business in this state.

16.     Pursuant to § 10-3-904.5, C.R.S., when the Commissioner believes that an unauthorized person is engaging in the transaction of insurance business in violation of §§ 10-3-105 or 10-3-903, C.R.S., or any rule promulgated by the Commissioner, and when it appears to the Commissioner that such conduct is fraudulent, creates an immediate danger to the public safety, or is causing or can be reasonably expected to cause significant, imminent, and irreparable public injury, the Commissioner may issue an *ex parte* emergency cease and desist order to such unauthorized person to immediately cease and desist from such unlawful conduct.

17.     The Commissioner has jurisdiction over Respondent and the subject matter of this *Ex Parte* Emergency Cease and Desist Order ("Order") pursuant to §§ 10-3-901 through 10-3-910, C.R.S.

## FINDINGS OF FACT

18.     On or around August 13, 2018, Respondent and Trinity entered into a Marketing and Administration Agreement ("Agreement").

19.     Under the Agreement, Respondent is the administrator, marketer, and program manager for Trinity.

20.     As program manager for Trinity, Respondent is responsible for the development of plan designs, pricing, and marketing materials, and vendor management, and recruitment and maintenance of a national sales force to market plans.

21.     Under the Agreement, Respondent has the exclusive right to design, market and sell the Trinity HCSM.

22.     Respondent markets Trinity's HCSM products as alternatives to traditional health insurance.

23.     Respondent markets Trinity's HCSM products to Colorado consumers and utilizes licensed resident insurance producers to sell Trinity's HCSM products within the state of Colorado.

24.     Moreover, an investigation by the Division has revealed that Respondent is the subject of administrative actions in Texas, Washington, and New Hampshire.

3

25.    The Division has also received consumer complaints regarding Respondent's business transactions and products.

## CONCLUSIONS OF LAW

26.    The Commissioner fully incorporates by reference the paragraphs set forth above as though fully set forth herein.

27.    The Commissioner has jurisdiction over Respondent and the subject matter of this Order.

28.    Trinity is an insurance company as defined by § 10-1-102(6)(a), C.R.S.

29.    Trinity does not hold a certificate of authority in the state of Colorado as required by § 10-3-105, C.R.S.

30.    The Trinity HCSM products offered by Respondent within the state of Colorado constitute insurance products as defined by § 10-1-102(12), C.R.S.

31.    Based on the conduct described herein and above, the Commissioner believes that Respondent's conduct developing, pricing, and marketing Trinity's HCSM products violates of the provisions of §§ 10-3-105 or 10-3-903, C.R.S.

32.    Based on the conduct described herein and above, the Commissioner believes that Respondent's conduct developing, pricing, and marketing Trinity's HCSM products violates of the provisions of § 10-2-801(1)(i), C.R.S.

33.    It further appears to the Commissioner that Respondent's conduct, as described above and herein, is fraudulent, creates an immediate danger to public safety, and/or is causing or can be reasonably expected to cause significant, imminent, and irreparable public injury.

## ORDER

34.    Based upon the above Findings of Facts and Conclusions of Law, the Commissioner of Insurance ORDERS that any and all of Respondent and all of its agents, affiliates, employees, contractors, successors in interest, and or authorized representatives **CEASE AND DESIST** from the solicitation, negotiation, sale, or effectuation of any and all Trinity HCSM products in the state of Colorado.

## OTHER MATTERS

35.    Pursuant to § 10-3-904.6(1), C.R.S., Respondent may contest this Order and request a hearing **within 60 days** of the date of this Order in accordance with

4

§ 24-4-105(12), C.R.S. Such request for hearing must be received by the Division on or before the expiration of 60 days from the date of this Order.

36.    Pursuant to § 10-3-904.6(5), C.R.S., upon determination of a violation of this Order, the Commissioner may impose a civil penalty of $25,000.00 for each act in violation and/or direct restitution.

37.    This Order contains a total of six (6) pages, including the Certificate of Service.

38.    The Commissioner reserves the right to amend this Order to add any individual, entity or company that is directly or indirectly affiliated or associated with the named entity in this Order or has any type of business or contractual relationship with the named entity in this Order that relate to the unauthorized transaction of insurance business based upon evidence acquired through the Division's continuing investigation.

39.    This Order is effective immediately upon execution by the Commissioner or his designee.

40.    A facsimile or other copy of this Order shall be treated as an original.

Dated this _12_ day of _August_, 2019.

KATE HARRIS
CHIEF DEPUTY COMMISSIONER
LIFE & HEALTH POLICY

5

**BEFORE THE DIVISION OF INSURANCE, STATE OF COLORADO**

Case File No. 268068
DOI Order No. 0-20-005

**FINAL AGENCY ORDER**

In the Matter of TRINITY HEALTHSHARE, INC.

Respondent.

This matter comes before Michael Conway, Commissioner of Insurance for the State of Colorado ("Commissioner"), pursuant to §§ 10-3-901 through 10-3-910, C.R.S., whereby the Commissioner is authorized to issue a Final Agency Order. After reviewing the Stipulation and grounds therein, and being fully advised in the premises, the Commissioner makes the following Findings and enters the Orders as hereinafter set forth:

## FINDINGS

1. On August 12, 2019, the Commissioner, pursuant to §§ 10-3-901 through 10-3-910, C.R.S., issued an *Ex Parte* Emergency Cease and Desist Order against Trinity ("Order").

2. Trinity denies any wrongdoing or engaging in any activities that violate any Colorado insurance laws. By entering into the Stipulation, Trinity knowingly and voluntarily waived the right to: a hearing in this matter, the right to be represented at such hearing by counsel chosen and retained by Trinity; the right to present a defense, oral and documentary evidence and cross-examine witnesses at such hearing; the right to seek judicial review of the Stipulation and this Final Agency Order.

## ORDER

Based upon the foregoing and the terms of the Stipulation between the Division and Trinity, it is hereby ORDERED as follows:

1. Trinity will no longer accept voluntary contributions from Colorado residents after January 31, 2020, and will not process sharing requests from Colorado members for any service rendered after January 31, 2020. Trinity may, however, continue to process sharing requests from Colorado members for services rendered to them prior to January 31, 2020.

2. The cease and desist order by the Commissioner in Paragraph twenty-nine (29) of the Order remains in effect. Notwithstanding the above, upon entry of the Commissioner's Final Agency Order approving this Stipulation Trinity shall be released of its obligation to maintain any and all existing contracts plans, policies or memberships with Colorado consumers effective January 31, 2020.

**EXHIBIT**

**1.24**

Ex. 1.24, p. 1 of 7

3. Trinity will withdraw its request for hearing relating to the Order.

4. Subject to Division approval, Trinity will provide a notice to all current Trinity Colorado members explaining the following:

   a. Trinity will no longer do business with Colorado residents as of January 31, 2020;
   b. ACA-compliant insurance is available through Connect for Health Colorado during the open enrollment period; and
   c. The Division has opened a special enrollment period extending the open enrollment deadline 60 days, which will extend the open enrollment deadline for Trinity members from January 16, 2020 to March 16, 2020.

5. Trinity shall exercise its best efforts to have Aliera itself or through its third-party administrator perform an audit of all sharing request denials (partial and whole) for adherence with the applicable member sharing agreement ("Audit"). The Audit shall relate to all Trinity's Colorado members from Trinity's inception until present. Trinity shall direct Aliera to prepare a spreadsheet for the Division including the following information for all audited denials:

   i. Member Name;
   ii. Date of Service;
   iii. Provider name;
   iv. Provider Network Status;
   v. Total Charge;
   vi. Allowed Amount (per network repricing);
   vii. Denied Amount;
   viii. Amount Applied to MSRA;
   ix. Total Payment made by Aliera;
   x. Total Member Responsibility;
   xi. Original Basis for Denial; and
   xii. Comments/Notes explaining the results of the audit and whether Aliera upheld its original denial or reversed following the audit.

6. Trinity will follow up with the Division's Lead Analyst regarding his inquiry relating to a specific Colorado Consumer.

7. The Stipulation is incorporated by reference, and all of its conditions, terms, and agreements are specifically made part of this Order as though fully set forth herein.

DONE AND ORDERED this 13th day of January, 2020.

Michael E. Conway
Insurance Commissioner

2

CERTIFICATE OF SERVICE

This is to certify that I have duly served the within **FINAL AGENCY ORDER** upon all

parties herein by depositing copies of same in the United States mail, first class postage prepaid, at

Denver, Colorado, this 13th day of January 2020 addressed as follows:

LEWIS ROCA ROTHGERBER
CHRISTIE LLP

Kris J. Kostolansky, Esq. (Bar No. 13764)
Hilary D. Wells, Esq. (Bar No. 33952)
1200 17th Street, Suite 3000
Denver, Colorado 80202
kkosto@lrrc.com
hwells@lrrc.com

*Counsel for Trinity Healthshare. Inc.*

*(Via Electronic Mail)*

Karl D. Kaesemeyer (Bar No. 38993)
First Assistant Attorney General
Peter Frigo (Bar No. 38621)
Senior Assistant Attorney General
Evan Spencer (Bar No. 47651)
Assistant Attorney General
Business and Licensing Section
1300 Broadway, 8th Floor
Denver, Colorado 80203
Karl.Kaesemeyer@coag.gov
Peter.Frigo@coag.gov
Evan.Spencer@coag.gov

*Counsel for the Division of Insurance*

/s/

For the Division of Insurance

3

## BEFORE THE DIVISION OF INSURANCE, STATE OF COLORADO

Case File No. 268068
DOI Order No. 0-20-005

## STIPULATION FOR ENTRY OF FINAL AGENCY ORDER

In the Matter of TRINITY HEALTHSHARE, INC.

Respondent.

The Colorado Division of Insurance ("Division") and Trinity Healthshare Inc. ("Trinity") hereby enter into this Stipulation for Entry of Final Agency Order ("Stipulation") to resolve the matters at issue in Division file number 268068 and do hereby stipulate and agree as follows:

1. On August 12, 2019, Michael Conway, Commissioner of Insurance for the State of Colorado ("Commissioner"), pursuant to §§ 10-3-901 through 10-3-910, C.R.S., issued an *Ex Parte* Emergency Cease and Desist Order against Trinity, Order Number 0-20-005 ("Order").

2. Trinity denies the allegations in the August 12, 2019 Order against Trinity and any wrongdoing or violation of Colorado insurance laws. However, in order to avoid the uncertainty of litigation and resolve the matters at issue, the Division and Trinity agree to the following:

   a. Trinity will no longer accept voluntary contributions from Colorado residents after January 31, 2020, and will not process sharing requests from Colorado members for any service rendered after January 31, 2020. Trinity may, however, continue to process sharing requests from Colorado members for services rendered to them prior to January 31, 2020.

   b. Trinity agrees that the cease and desist order by the Commissioner in Paragraph twenty-nine (29) of the Order remains in effect. Notwithstanding the above, upon entry of the Commissioner's Final Agency Order approving this Stipulation, Trinity shall be released of its obligation to maintain any and all existing contracts plans, policies or memberships with Colorado consumers effective January 31, 2020.

   c. Trinity agrees to withdraw its request for hearing relating to the Order.

   d. Subject to Division approval, Trinity will provide a notice to all current Trinity Colorado members explaining the following:
      i. Trinity will no longer do business with Colorado residents as of January 31, 2020;
      ii. ACA-compliant insurance is available through Connect for Health Colorado during the open enrollment period; and

   iii.  The Division has opened a special enrollment period extending the open enrollment deadline 60 days, which will extend the open enrollment deadline for Trinity members from January 16, 2020 to March 16, 2020.

  e.  Trinity shall exercise its best efforts to have Aliera itself or through its third-party administrator perform an audit of all sharing request denials (partial and whole) for adherence with the applicable member sharing agreement ("Audit"). The Audit shall relate to all Trinity's Colorado members from Trinity's inception until present. Trinity shall direct Aliera to prepare a spreadsheet for the Division including the following information for all audited denials:

      i.  Member Name;
     ii.  Date of Service;
    iii.  Provider name;
    iv.  Provider Network Status;
     v.  Total Charge;
    vi.  Allowed Amount (per network repricing);
   vii.  Denied Amount;
  viii.  Amount Applied to MSRA;
    ix.  Total Payment made by Aliera;
     x.  Total Member Responsibility;
    xi.  Original Basis for Denial; and
   xii.  Comments/Notes explaining the results of the audit and whether Aliera upheld its original denial or reversed following the audit.

  f.  Trinity will follow-up with the Division's Lead Analyst regarding his inquiry relating to a specific Colorado Consumer.

3.  By entering into this Stipulation, Trinity knowingly and voluntarily waives its rights pursuant to §§ 10-3-904.6(1)-(4); and 24-4-104, 105, and 106, C.R.S., including, but not limited to the right to a hearing in this matter; the right to be represented at such hearing by counsel chosen and retained by it; the right to present a defense; the right to present oral and documentary evidence; to cross-examine witnesses at such hearing; and the right to seek judicial review of this Stipulation and the Final Agency Order approving this Stipulation.

4.  By execution of this Stipulation and the Final Agency Order approving the Stipulation, the Division and Trinity intend to and do resolve Trinity's request for a hearing relating to the Order.

5.  The Stipulation is subject to approval by the Commissioner or his designee, and shall become binding upon the parties hereto upon such approval.

6.  Should the Commissioner not approve this Stipulation, each party shall retain all of its rights, claims and defenses.

2

7.  In the event the Division takes action relating to alleged violations of this Stipulation or Final Agency Order approving this Stipulation, the Commissioner shall retain all authority provided to him under 10-3-904.6(5), C.R.S., including, but not limited to, the right to determine whether the Stipulation or Final Agency Order have been violated; the right to conduct a hearing to make such determination; and the right to impose civil penalties and restitution in accordance with 10-3-904.6(5)(a), (b), and (c), C.R.S.

8.  Upon the Commissioner's entry of the Final Agency Order approving this Stipulation, this Stipulation and the Final Agency Order shall be a public record in the custody of the Division under the Colorado Public Records Act, as required by §§ 24-72-200.1, et seq., C.R.S.

9.  This Stipulation and the Final Agency Order approving this Stipulation shall be reported to the National Association of Insurance Commissioners pursuant to § 10-2-803(2), C.R.S.

10. This Stipulation and Final Agency Order embody the entire agreement between the Division and Trinity, and there are no agreements, understandings, representations or warranties which are not expressly set forth herein.

11. A facsimile or other copy of this Stipulation and Final Agency Order approving this Stipulation shall be treated as an original.

12. There are four (4) pages to this Stipulation, including all signature pages.

## FOR THE COLORADO DIVISION OF INSURANCE

Kate Harris
Chief Deputy Commissioner
Life & Health Policy

1/2/20
Date

## FOR TRINITY HEALTHSHARE INC.

William H. Thead, III
Chairman and CEO of Trinity Healthshare, Inc.

12-23-19
Date

3

**APPROVED AS TO FORM**

PHILIP J. WEISER
Attorney General

*Karl D. Kaesemeyer (signature)* #47651

Karl D. Kaesemeyer (Bar No. 38993)
First Assistant Attorney General
Peter Frigo (Bar No. 38621)
Senior Assistant Attorney General
Evan Spencer (Bar No. 47651)
Assistant Attorney General
Business and Licensing Section
1300 Broadway, 8th Floor
Denver, Colorado 80203
Karl.Kaesemeyer@coag.gov
Peter.Frigo@coag.gov
Evan.Spencer@coag.gov

*Counsel for the Division of Insurance*

LEWIS ROCA ROTHGERBER
CHRISTIE LLP

*/s/ Hilary D. Wells*

Kris J. Kostolansky, Esq. (Bar No. 13764)
Hilary D. Wells, Esq. (Bar No. 33952)
1200 17th Street, Suite 3000
Denver, Colorado 80202
kkosto@lrrc.com
hwells@lrrc.com

**BAKER AND HOSTETLER LLP**

*/s/ Laurin Quiat*

Baker & Hostetler LLP
1801 California Street, S 400
Denver, Colorado 80202
lquiat@bakerlaw.com

*Counsel for Trinity Healthshare. Inc.*

4

**STATE OF COLORADO**
**DEPARTMENT OF REGULATORY AGENCIES**
**DIVISION OF INSURANCE**
1560 Broadway, Suite 850, Denver, CO 80202

**Before the Division of Insurance,**

**IN THE MATTER OF ALIERA HEALTHCARE, INC. (n/k/a THE ALIERA COMPANIES, INC.)**

▲ AGENCY USE ONLY▲

**Final Agency Order Number:**

Division File No.: 268068

DOI Order No. O-20-035

## FINAL AGENCY ORDER

THIS MATTER comes before Michael E. Conway, Commissioner of Insurance for the State of Colorado ("Commissioner"), upon the Stipulation for Entry of Final Agency Order ("Stipulation") between the Colorado Division of Insurance ("Division") and Aliera Healthcare, Inc. ("Respondent"). After reviewing the Stipulation, the Commissioner makes the following findings and enters the following order:

### FINDINGS

1.      The Commissioner has jurisdiction over Respondent and the subject matter herein pursuant to the provisions of the Colorado Producer Licensing Model Act, §§ 10-2-101 through 10-2-1101, C.R.S. (the "PLMA").

2.      By entering into the Stipulation, Respondent has waived its right to a hearing in this matter pursuant to §§ 10-2-801, 10-3-904.6, and 24-4-104, 105, and 106, C.R.S.; the right to be represented at such hearing by counsel chosen and retained by it; the right to present a defense, to present oral and documentary evidence, to cross-examine witnesses at such hearing, and the right to seek judicial review of this Final Agency Order.

3.      The Commissioner accepts the terms of the Stipulation.

4.      Respondent admits the facts recited in Section II of the Stipulation.

### ORDER

Based upon the foregoing and the terms of the Stipulation between the Division and Respondent, it is hereby ORDERED as follows:

**EXHIBIT**
**1.25**

Ex. 1.25, p. 1 of 10

1.      Aliera and its subsidiaries, affiliates, and assigns will not provide any services or contract with any unauthorized insurers or unauthorized insurance products, including but not limited to, Health Care Sharing Ministries ("HCSM") or programs representing themselves as HCSMs, unless and until HCSMs are permitted to be marketed in Colorado either by statute, or through an administrative or judicial determination that HCSMs are not an insurance product subject to regulation by the Commissioner.

2.      Notwithstanding the above, Aliera shall continue to administer and act as program manager for any and all Colorado consumers currently enrolled in Trinity Healthshare, Inc. ("Trinity") programs until the Commissioner releases such obligation.

3.      Aliera agrees to comply with all Colorado insurance laws and regulations.

4.      The Division agrees to withdraw the Cease and Desist Order upon the execution of the Final Agency Order approving this Stipulation.

5.      In the event the Division takes action relating to alleged violations of this Stipulation or Final Agency Order approving this Stipulation, the Commissioner shall retain all authority provided to him under 10-3-904.6(5), C.R.S., including, but not limited to, the right to determine whether the Stipulation or Final Agency order have been violated; the right to conduct a hearing to make such determination; and the right to impose civil penalties and restitution in accordance with 10-3-904.6(5)(a), (b), and (c), C.R.S.

6.      In the event the Division commences an action against Respondent for an alleged violation of this Final Agency Order, the Final Agency Order, Stipulation, and the factual basis of this proceeding shall be admissible in any such action.

7.      The Stipulation is incorporated by reference, and all of its conditions, terms, and agreements are specifically made a part of this Order as though fully set forth herein.

DONE AND ORDERED this 13th day of January, 2020.

MICHAEL E. CONWAY
COMMISSIONER OF INSURANCE

2

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within **FINAL AGENCY ORDER** upon all parties herein by depositing copies of same in the United States mail, first class postage prepaid, at Denver, Colorado, this 13ᵗʰ day of January , 2020, addressed as follows:

Alissa H. Gardenswartz, #36126
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO 80202
*Attorney for Aliera Healthcare, Inc.*

*(Via e-mail)*

Evan Spencer
Assistant Attorney General
Peter W. Frigo
Senior Assistant Attorney General
Colorado Department of Law
Evan.spencer@coag.gov
Peter.frigo@coag.gov
*Attorneys for the Division of Insurance*

For the Division of Insurance

3

**STATE OF COLORADO**
**DEPARTMENT OF REGULATORY AGENCIES**
**DIVISION OF INSURANCE**
1560 Broadway, Suite 850, Denver, CO 80202

**Before the Division of Insurance,**


**IN THE MATTER OF ALIERA HEALTHCARE,**
**INC. (n/k/a THE ALIERA COMPANIES, INC.)**

▲ AGENCY USE ONLY▲
**Final Agency Order**
**Number:**
_____

Division File No.: 268068

DOI Order No. 0-20-006

**STIPULATION FOR ENTRY OF FINAL AGENCY ORDER**

The Colorado Division of Insurance ("Division"), and Aliera Healthcare, Inc., hereby enter into this Stipulation for Entry of Final Agency Order ("Stipulation") to resolve the matters at issue in *Ex Parte* Emergency Cease and Desist Order number 0-20-006 ("Cease and Desist Order"), and hereby stipulate and agree as follows:

### I.   JURISDICTION AND PARTIES

1.      Pursuant to § 10-1-108(7), C.R.S., the Commissioner of Insurance ("Commissioner") has the duty and responsibility to supervise the business of insurance in the state of Colorado to assure it is conducted in accordance with Colorado law and in such a manner as to protect policyholders and the general public.

2.      Pursuant to § 10-1-108(5), C.R.S., the Commissioner has the duty to make such investigations and examinations as are authorized by Title 10 of the Colorado Revised Statutes and to investigate such information as is presented to the Commissioner by authority that the Commissioner believes to be reliable pertaining to violations of Colorado insurance laws.

3.      Section 10-1-102(12), C.R.S., defines "insurance" as, a contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies.

4.      Section 10-1-102(6)(a), C.R.S., defines insurance company[1] to include all corporations, associations, partnerships, or individuals engaged as insurers in the business of insurance.

5.      Pursuant to § 10-2-102(13), C.R.S., an insurer is every person engaged as principal, indemnitor, surety, or contractor in the business of making contracts of insurance.

6.      Pursuant to § 10-3-105(1), C.R.S., no foreign or domestic insurance company shall transact any insurance business in this state, unless it first procures from the commissioner a certificate of authority stating that the requirements of the laws of this state have been complied with and authorizing it to do business.

7.      Pursuant to § 10-3-903, C.R.S., the making of, or proposing to make, as an insurer, an insurance contract, by an unauthorized insurer, constitutes transacting insurance business in this state.

8.      Pursuant to § 10-3-904.5, C.R.S., when the Commissioner believes that an unauthorized person is engaging in the transaction of insurance business in violation of §§ 10-3-105 or 10-3-903, C.R.S., or any rule promulgated by the Commissioner, and when it appears to the Commissioner that such conduct is fraudulent, creates an immediate danger to the public safety, or is causing or can be reasonably expected to cause significant, imminent, and irreparable public injury, the Commissioner may issue an *ex parte* emergency cease and desist order to such unauthorized person to immediately cease and desist from such unlawful conduct.

9.      The Colorado Division of Insurance ("Division") is an agency charged with the execution of laws relating to insurance and has supervising authority over the business of insurance in this state pursuant to § 10-1-103(1), C.R.S.  Pursuant to § 10-1-104(2), C.R.S., the Commissioner has delegated the duties and responsibilities of investigating, enforcing, and taking actions to enforce compliance with the insurance laws of Colorado to the Division and its staff.

10.      Aliera Healthcare, Inc. (n/k/a The Aliera Companies, Inc.) ("Aliera") is a foreign, for-profit corporation, organized under the laws of Delaware and doing business in Colorado.[2]

11.      Aliera first incorporated in the State of Delaware on September 29, 2011.

---

[1] The section defines "company", "corporation", "insurance company", or "insurance corporation."
[2] Aliera Healthcare, Inc. has secured a name change to The Aliera Companies, Inc in both Delaware and Colorado Secretary of State records. The statement of change of entity name was filed with the Colorado Secretary of State on September 20, 2019. Aliera has not updated its licensing record with the Division to incorporate this name change.

12.     Aliera is licensed as a non-resident insurance producer with life, and accident and health lines of authority, license number 544844.

13.     The Commissioner has jurisdiction over Aliera and the subject matter of the Cease and Desist Order pursuant to §§ 10-3-901 through 10-3-910, C.R.S.

## II.   PROCEDURAL HISTORY AND FACTUAL FINDINGS

14.     The Cease and Desist Order relates to Aliera's relationship with Trinity Healthshare, Inc. ("Trinity"), a foreign corporation organized under the laws of Delaware.

15.     Trinity represents itself as a healthcare sharing ministry ("HCSM") as defined by 26 USC §5000A.

16.     Trinity does not hold a certificate of authority in the State of Colorado.

17.     On or around August 13, 2018, Aliera and Trinity entered into a Marketing and Administration Agreement ("Agreement").

18.     Under the Agreement, Aliera is the administrator, marketer, and program manager for Trinity.

19.     As program manager for Trinity, Aliera is responsible for the development of plan designs, pricing, and marketing materials, and vendor management, and recruitment and maintenance of a national sales force to market plans.

20.     Under the Agreement, Aliera has the exclusive right to design, market, and sell the Trinity HCSM.

21.     Aliera markets Trinity's HCSM products as alternatives to traditional health insurance.

22.     Aliera markets Trinity's HCSM products to Colorado consumers and utilizes licensed resident insurance producers to sell Trinity's HCSM products within the State of Colorado.

23.     On August 12, 2019, the Commissioner issued the Cease and Desist Order against Aliera based on his finding that Trinity was operating as an unlicensed insurance company. The Cease and Desist Order ordered Aliera and all of its agents, affiliates, employees, contractors, successors in interest, and or authorized representatives cease and desist from the solicitation, negotiation, sale, or effectuation of any and all Trinity HCSM products in the State of Colorado.

### III.   RESOLUTION

24.    In order to avoid the time, cost, and uncertainty of litigation, and for the consideration recited below, the sufficiency of which is acknowledged by the parties, Aliera and the Division agree to settle this matter pursuant to the following terms:

    a.  Aliera admits the facts recited in Section II above;

    b.  Aliera agrees not to challenge the Cease and Desist Order;

    c.  Aliera and its subsidiaries, affiliates, and assigns agree not to provide any services or contract with any unauthorized insurers or unauthorized insurance products, including but not limited to, HCSMs or programs representing themselves as HCSMs, unless and until HCSMs are permitted to be marketed in Colorado either by statute, or through an administrative or judicial determination that HCSMs are not an insurance product subject to regulation by the Commissioner. Notwithstanding the above, Aliera shall continue to administer and act at program manager for any and all Colorado consumers currently enrolled Trinity programs until the Commissioner of Insurance releases such obligation.; and

    d.  Aliera agrees to comply with all Colorado insurance laws and regulations;

    e.  The Division agrees to withdraw the Cease and Desist Order upon the execution of the Final Agency Order approving this Stipulation.

25.    By entering into this Stipulation, Aliera knowingly and voluntarily waives its rights pursuant to §§ 10-3-904.6(1)-(4); and 24-4-104, 105, and 106, C.R.S., including, but not limited to the right to a hearing in this matter; the right to be represented at such hearing by counsel chosen and retained by it; the right to present a defense; to present oral and documentary evidence; to cross-examine witnesses at such hearing; and the right to seek judicial review of this Stipulation and the Final Agency Order approving this Stipulation.

26.    The Division and Aliera agree that this Stipulation is a full and final settlement of the matters at issue in *Ex Parte* Emergency Cease and Desist Order number 0-20-006.

27.     Neither this Stipulation nor the Final Agency Order approving this Stipulation shall be deemed in any manner to prevent the Division from commencing any other agency action relating to any other conduct of Aliera not settled herein, and without regard to whether such conduct occurred prior to the date of this Stipulation or the Final Agency Order approving this Stipulation.

28.     Aliera understands and acknowledges that the Division may take such lawful steps as may be required or appropriate to investigate and determine whether Aliera is in compliance with this Stipulation and the Final Agency Order approving this Stipulation, and may take any action it deems appropriate to enforce compliance with the terms of the Stipulation and Final Agency Order.

29.     In the event the Division takes action relating to alleged violations of this Stipulation or Final Agency Order approving this Stipulation, the Commissioner shall retain all authority provided to him under 10-3-904.6(5), C.R.S., including, but not limited to, the right to determine whether the Stipulation or Final Agency order have been violated; the right to conduct a hearing to make such determination; and the right to impose civil penalties and restitution in accordance with 10-3-904.6(5)(a), (b), and (c), C.R.S.

30.     In the event the Division takes action relating to alleged violations of this Stipulation or Final Agency Order approving this Stipulation, the Stipulation and Final Agency Order shall be admissible in full in that proceeding for any purpose.

31.     This Stipulation is entered into by Aliera freely and voluntarily, after having had the opportunity to consult with counsel of its choice, and with full understanding and acceptance of the legal consequences of this Stipulation and the Final Agency Order approving this Stipulation. Aliera affirms that it has read this Stipulation and fully understand its nature, meaning, content, and consequences.

32.     Aliera understands that this Stipulation and the Final Agency Order approving this Stipulation shall be reported to the National Association of Insurance Commissioners pursuant to § 10-2-803(2), C.R.S.

33.     Aliera agrees that upon execution of this Stipulation, no subsequent action or assertion shall be maintained or pursued in any manner asserting the invalidity of this Stipulation or the Final Agency Order approving this Stipulation and its provisions.

34.     Invalidation of any provision of this Stipulation or the Final Agency Order approving this Stipulation by a court of competent jurisdiction will in no way affect any other provisions, which shall remain in full force and effect.

35.    Upon the Commissioner's entry of the Final Agency Order approving this Stipulation, this Stipulation and the Final Agency Order shall be a public record in the custody of the Division under the Colorado Public Records Act, as required by §§ 24-72-200.1, *et seq.*, C.R.S.

36.    This Stipulation is subject to approval by the Commissioner or his designee, and shall become binding upon the parties hereto upon such approval.

37.    Should the Commissioner not approve this Stipulation, each party shall retain all of its rights, claims and defenses.

38.    This Stipulation embodies the entire agreement between the Division and Aliera, and there are no agreements, understandings, representations or warranties, which are not expressly set forth herein.

39.    A facsimile or other copy of this Stipulation and Final Agency Order approving this Stipulation shall be treated as an original.

40.    There are seven (7) pages to this Stipulation, including all signature pages.


_____          12/05/19
CHASE MOSES                                          DATE
ON BEHALF OF ALIERA HEALTHCARE, INC


Subscribed and sworn to before me in the County of Fulton , State of Georgia , this 5th day of December 2019, by Chase Moses on behalf of Aliera Healthcare, Inc.


_____
NOTARY PUBLIC


My Commission expires: February 7th, 2021


Fulton County, State ...
I certify this to be a complete, ...
copy of the original document. Certi... 
6th day of December ...
                                    Notary P...
DEBORAH DIANA MCCAGG
My commission expires February 8, 2 21

**FOR THE COLORADO DIVISION OF INSURANCE**

Kate Harris
Chief Deputy Commissioner
Life & Health Policy

12|10|19
Date

**APPROVED AS TO FORM**

BROWNSTEIN HYATT FARBER
SCHRECK, LLP

PHILIP J. WEISER
Attorney General

Alissa H. Gardenswartz, #36126
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO 80202
*Attorney for Aliera Healthcare, Inc*

Peter W. Frigo, #38621
Senior Assistant Attorney General
Evan Spencer, #47651
Assistant Attorney General
Business and Licensing
1300 Broadway, 8th Floor
Denver, CO 80203
*Attorneys for the Division of Insurance*

 **Subscribe to Our Newsletter**    Enter your emai    Subscribe

 **ROB BONTA**
*Attorney General*

# Attorney General Bonta Issues Consumer Alert Warning Californians About Misleading Claims Made by Healthcare Sharing Ministry Plans

Press Release  /  *Attorney General Bonta Issues Consumer Alert Warning Califor…*

Friday, April 30, 2021

Contact: (916) 210-6000, agpressoffice@doj.ca.gov

**SACRAMENTO –** California Attorney General Rob Bonta today issued a consumer alert warning Californians about sham health insurance plans offered by some healthcare sharing ministries (HSMs). These HSMs use misinformation to mislead consumers into enrolling under the guise of offering an affordable alternative to health insurance from the Covered California marketplace. However, unlike Covered California plans, healthcare sharing ministries are not obligated to cover preexisting conditions or guarantee coverage for medical costs or services. As a result, consumers have filed complaints with the Attorney General's Office alleging that their healthcare sharing ministry plans have refused to cover treatments and pay their medical bills.

**EXHIBIT**
**1.26**

https://oag.ca.gov/news/press-releases/attorney-general-bonta-issues-consumer-alert-warning-californians-about          1/4

Ex. 1.26, p. 1 of 4

Resp. Appx, p. 102          **Appx. Vol IV**
**A-246**

"Our office has received multiple complaints from devastated Californians who have been left in financial jeopardy with mounting medical bills after their healthcare sharing ministry plan failed to provide the reliable coverage they expected," **said Attorney General Bonta**. "Before signing up for one of these plans, please do your research and consider applying instead for affordable, reliable coverage through Covered California."

Prior to the passage of the Affordable Care Act (ACA), HSMs allowed people to pool their money with others who shared their religious beliefs in order to assist each other during times of medical crisis. After the ACA was passed, the Covered California health insurance marketplace was established, giving uninsured Californians access to quality, affordable, and ACA-compliant health insurance. Many companies also began to capitalize on the exemption of HSMs from many of the coverage mandates in the ACA by marketing them as a less-expensive alternative to ACA-compliant health insurance. However, unlike plans through the Covered California marketplace, HSMs do not guarantee payment for covered services and fail to cover essential health benefits, like birth control, prescriptions, preexisting conditions, and mental health care.

Many HSMs may be operating in California illegally because they do not meet the requirements of the healthcare ministry exception. Last year, the California Department of Insurance issued a cease and desist order to Aliera Healthcare, Inc. and Trinity Healthshare, Inc. (currently doing business as Sharity Ministries) for misleading California consumers into purchasing their products.

There are several important factors to consider before choosing a healthcare sharing ministry plan as opposed to a traditional health insurance plan:

- **Healthcare sharing ministries use language that closely mimics traditional health insurance**: Healthcare sharing ministry plans can be difficult to distinguish from traditional health insurance. Sometimes they even adopt tiered gold, silver,

https://oag.ca.gov/news/press-releases/attorney-general-bonta-issues-consumer-alert-warning-californians-about          2/4

Ex. 1.26, p. 2 of 4

Resp. Appx. p. 103          Appx. Vol IV
A-247

and bronze "plans" in their marketing materials. Many consumers often do not realize they have enrolled into a healthcare sharing ministry instead of traditional health insurance until the medical bill comes due. Carefully check the plan documents to ensure that you will actually receive coverage for your medical expenses.

- **Healthcare sharing ministries are not required to cover or pay for your care**: Federal law does not mandate that healthcare sharing ministries provide the ten essential health benefits required of ACA-compliant health plans, including coverage for preventive care, services for mental health and substance use disorders, and reproductive care. For example, unlike traditional health insurance, healthcare sharing ministries do not guarantee payment for birth control or abortions.

- **Healthcare sharing ministries can choose not to cover your care based on preexisting conditions** In contrast, Covered California plans cover all of your health conditions regardless of whether they existed at the time you signed up for insurance.

- **Beware of using healthcare sharing ministries as a means of saving money** Premiums to enroll with healthcare sharing ministries are generally cheaper than traditional health insurance, but those savings can come at a price. They are lower because they are not required to pay for your medical costs even though you have made all your monthly payments. Be wary of any personal finance blogs or healthcare navigation tools that steer you towards healthcare sharing ministries as a cost-saving measure.

A health insurance plan through Covered California not only provides the protections of the ACA, but monthly premiums are now lower than ever thanks to new and expanded financial help through the American Rescue Plan. Many Californians will be able to find a high-quality plan for $1 a month, or richer benefits for less than $100 per month.

Consumers can enroll now and do not need to wait for open enrollment in the fall. Visit www.coveredca.com to see how much you may be able to save on your premiums and find the plan that works best for you and your family.

If you believe you have been the victim or target of suspicious marketing by a healthcare sharing ministry, please immediately file a complaint at www.oag.ca.gov/report

# # #

Office of the Attorney General    Accessibility    Privacy Policy    Conditions of Use    Disclaimer

© 2024 DOJ



LARRY HOGAN
Governor

BOYD K. RUTHERFORD
Lt. Governor

AL REDMER, JR.
Commissioner

JAY COON
Deputy Commissioner

# INSURANCE
# ADMINISTRATION

200 St. Paul Place, Suite 2700, Baltimore, Maryland 21202
Direct Dial: 410-468-2009    Fax: 410-468-2020
Email: melanie.gross@maryland.gov
1-800-492-6116   TTY: 1-800-735-2258
www.insurance.maryland.gov

February 27, 2020

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
REGULAR MAIL

Aliera Healthcare, Inc.
990 Hammond Drive, Suite 700
Atlanta, GA 30328

Alexander J. Gonzales, P.C.
Duane Morris, LLP, Las Cimas IV
900 S. Capital of Texas Highway, Suite 300
Austin, TX 78746-5435

Re:    *Maryland Insurance Administration v.* Aliera Healthcare, Inc.
Case No.: MIA-2020-02-025

Dear Parties:

The Maryland Insurance Commissioner has entered an Order taking disciplinary action against your company. A copy of the Order is attached and is self-explanatory. This Order is subject to your right to request a hearing as set forth on the last page of the Order.

Please include the above case number on all future correspondence to the administration. **Payment of administrative penalties must also reference the above case number or include a copy of this letter when making payment.**

If you have any questions regarding this Order, you may contact the Associate Commissioner of Compliance & Enforcement at 410-468-2113.

Sincerely,

Melanie Gross
Executive Assistant to the Deputy Commissioner

Enclosure
cc:    Al Redmer, Jr., Commissioner
Jay Coon, Deputy Commissioner
Erica J. Bailey, Associate Commissioner
Philip Pierson, Assistant Attorney General
Craig Ey, Director of Communications
Denise Owens, Management Associate

**EXHIBIT**
# 1.27

Ex. 1.27, p. 1 of 10

**Appx. Vol IV
A-250**

## BEFORE THE MARYLAND INSURANCE COMMISSIONER

|  |  |
|---|---|
| **MARYLAND INSURANCE** <br> **ADMINISTRATION** <br> **200 ST. PAUL PLACE, SUITE 2700** <br> **BALTIMORE, MARYLAND 21202** | * <br> * <br> * |
| **V.** | *    **CASE NO.: MIA-2020-** 0 2 - 0 2 5 |
| **ALIERA HEALTHCARE, INC.** <br> License No. 3000134860 <br> 990 Hammond Drive, Ste. 700 <br> Atlanta, GA 30328 | * <br> *    **INVESTIGATION NO. MCLH-25-2019-I** <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### ORDER

This Order is entered by the Maryland Insurance Administration ("the Administration") against Aliera Healthcare, Inc. ("Aliera" or "Respondent"). The purpose of the Order is to enforce Md. Code Ann., Insurance §§ 4-101, 4-203, 4-205 and 10-126. As the basis for this action, the Maryland Insurance Administration ("Administration") states:

### I. Facts

1.    Respondent is a corporation with a principal place of business in Georgia. Respondent's mailing address is alternately listed as:

       (a) 5901 Peachtree Dunwoody Road, Building B, Suite 200, Atlanta, GA 30328;

       (b) P.O. Box 28220, Atlanta, GA 30358; and

       (c) 990 Hammond Drive, Ste. 700, Atlanta, GA 30328.

2.    Throughout the period of the investigation described below, Respondent has been licensed by the Commissioner to operate in Maryland as a business entity insurance producer.

3.    On November 29, 2016, the Commissioner began an investigation into the activities of the Respondent. This investigation continued into 2017.

4.    On October 2, 2017, the Commissioner issued an Order ("the Initial Order") detailing the findings of the investigation and holding the Respondent in violation of §§ 4-101, 4-203 and 4-205 of the Insurance Article.

5.    The Respondent requested a hearing to contest the Initial Order.

6.    On April 30, 2018, the parties executed a Consent Order ("the Consent Order"), which found that the "health sharing ministry" operated and sold by Respondent was not a "voluntary noncontractual religious publication arrangement" and was not exempt from the application of the Insurance Article.

7.    The Consent Order further stated that "Respondent is directed to provide a written affirmation of its compliance with the terms of this Consent Order no later than February 1, 2019."

8.    The Consent Order further stated that "[e]ffective January 1, 2019, Respondent is to permanently cease the sale, solicitation or operation in Maryland of the Unity Healthshare Ministry plan and any other plan that is not excluded from the application of the Insurance Article by § 1-202, and thereby constitutes health insurance under the terms of § 1-101 (p), and that is operated without a valid certificate of authority."

9.    Respondent failed to provide the written affirmation required by the Consent Order by February 1, 2019.

10.    On June 7, 2019, counsel for the Administration contacted counsel for Respondent to inquire as to Respondent's failure to submit this required written affirmation.

11.    On June 13, 2019, Respondent admitted that it had failed to file the written affirmation as it had agreed to do in the Consent Order.

12.    Also on June 13, 2019, Respondent belatedly filed the required written affirmation.

2

13.     This belatedly-filed written affirmation stated that "Aliera has not sold, solicited or been in operation in the State of Maryland under the Unity Healthshare Ministry plan or any other plan that is not excluded from the application of the Insurance Article by § 1-202 since January 1, 2019."

14.     On or about March 28, 2019, in conjunction with follow-up investigations into Aliera's conduct, an Administration investigator entered her name, email address, and ZIP code into the online portal of Aliera's website.

15.     Shortly after entering this information, this investigator was contacted, via email, by a sales representative from Aliera.  The email and its attachments solicited the purchase of a membership in a program designated as "Aliera's PrimaCare program in conjuction [sic] with Trinity HealthShare, Inc."

16.     The sales documents attached to the email touted the benefits offered by the PrimaCare program, included a schedule of premium rates charged, provided a list of medical services covered, and urged the recipient to sign up for a membership in the Program.

17.     The sales documents further described Trinity HealthShare, Inc. as "a religious organization" and a "health care sharing ministry."  The documents further stated that "Our role is to enable self-pay patients to help fellow Americans through voluntary financial gifts."

18.     The documents further contained a reference to "Maryland Article 48, Section 1-202(4)."

19.     The sales documents contained the logos of Aliera healthcare and Trinity Healthshare.  The email to the Administration's investigator was sent from the email address "ssummers@alierahealthcare.com" and contained the Aliera Healthcare logo.

## II. Violations

20.     The Administration considers the following provisions of the Insurance Article relevant to this matter:

3

**Section 1-101(s)** provides, in relevant part, as follows:

(j) "Certificate of authority" means a certificate issued by the Commissioner to engage in the insurance business.
…
(s) Except as expressly provided otherwise in this article, "insurance" means a contract to indemnify or to pay or provide a specified or determinable amount or benefit on the occurrence of a determinable contingency.
…
(p)(1) "Health insurance" means insurance of human beings against:

    (i) bodily injury, disablement, or death by accident or accidental means, or the expenses of bodily injury, disablement, or death by accident or accidental means;
    (ii) disablement or expenses resulting from sickness or childbirth; and
    (iii) expenses incurred in prevention of sickness or dental care.
…
(t)(1) "Insurance business" includes the transaction of:

    (i) all matters pertaining to an insurance contract, either before or after it takes effect; and
    (ii) all matters arising from an insurance contract or a claim under it.
…
(u)(1) "Insurance producer" means a person that, for compensation, sells, solicits, or negotiates insurance contracts, including contracts for nonprofit health service plans, dental plan organizations, and health maintenance organizations, or the renewal or continuance of these insurance contracts for:

    (i) persons issuing the insurance contracts; or
    (ii) insureds or prospective insureds other than the insurance producer.
…
(ll) "Solicit" means to attempt to sell insurance or to ask or urge a person to apply for a particular kind of insurance from a particular insurer.

**Section 1-201** provides, in relevant part, as follows:

A person that engages in or transacts insurance business in the State, or performs an act relative to a subject of insurance resident, located, or to be performed in the State, shall comply with each applicable provision of this article.

**Section 1-202(a)(4)** provides, in relevant part, as follows:

(a) This article does not apply to:
…
(4) a voluntary noncontractual religious publication arrangement that:
…
    (ii) publishes a newsletter whose subscribers are limited to members of the same denomination or religion;
    (iii) acts as an organizational clearinghouse for information between subscribers who have medical costs and subscribers who choose to assist with those costs;

4

(iv) matches subscribers with a willingness to pay and subscribers with present medical costs;

(v) coordinates payments directly from one subscriber to another;

(vi) suggests amounts to give that are voluntary among the subscribers, with no assumption of risk or promise to pay either among the subscribers or between the subscribers and the organization;

(vii) does not use a compensated insurance producer, representative, or other person to solicit or enroll subscribers;

. . .

(x) does not use funds paid by subscribers for medical costs to cover administrative costs[.]

**Section 4-101(a)** provides, in relevant part, as follows:

(a)(1) Except as otherwise provided in this article, a person may not act as an insurer and an insurer may not engage in the insurance business in the State unless the person has a certificate of authority issued by the Commissioner.

**Section 4-203(b)** provides, in relevant part, as follows:

(b) With respect to a subject of insurance resident, located, or to be performed in the State, a person may not in the State directly or indirectly act as an insurance producer for, or otherwise represent or help on behalf of another, an unauthorized insurer to:

(1) solicit, negotiate, or effect insurance or an annuity contract;

(2) inspect risks;

(3) fix rates;

(4) investigate or adjust losses;

(5) collect premiums; or

(6) transact insurance business in any other manner.

**Section 4-205(b) and (c)** provide, in relevant part, as follows:

(b) An insurer or other person may not, directly or indirectly, do any of the acts of an insurance business set forth in subsection (c) of this section, except as provided by and in accordance with the specific authorization of statute.

(c) Any of the following acts in the State, effected by mail or otherwise, is considered to be doing an insurance business in the State:

(1) making or proposing to make, as an insurer, an insurance contract;

. . .

(6) except as provided in subsection (d) of this section, with respect to a subject of insurance resident, located, or to be performed in the State, directly or indirectly acting as an insurance producer for, or otherwise representing or helping on behalf of another, an insurer or other person to:

(i) solicit, negotiate, procure, or effect insurance or the renewal of insurance;

(ii) disseminate information about coverage or rates;

(iii) forward an application;

5

    ...

    (ix) in any other manner represent or help an insurer or other person to transact insurance business;

(7) doing any kind of insurance business specifically recognized as doing an insurance business under statutes relating to insurance;

(8) doing or proposing to do any insurance business that is substantially equivalent to any act listed in this subsection in a manner designed to evade the statutes relating to insurance.

**Section 4-212** provides as follows:

An unauthorized insurer or person that violates this subtitle is subject to a civil penalty of not less than $100 but not exceeding $50,000 for each violation.

**Section 10-126(a)** provides, in relevant part as follows:

(a) The Commissioner may deny a license to an applicant under §§ 2-210 through 2-214 of this article, or suspend, revoke, or refuse to renew or reinstate a license after notice and opportunity for hearing under §§ 2-210 through 2-214 of this article if the applicant or holder of the license:

    (1) has willfully violated this article or another law of the State that relates to insurance;

    ...

    (13) has otherwise shown a lack of trustworthiness or competence to act as an insurance producer.

21.    By failing to comply with the Consent Order to which it agreed in 2018, which required the submission of a written affirmation of compliance no later than February 1, 2019, Respondent violated § 10-126(a)(13).

22.    By soliciting the sale of memberships in the PrimaCare program in the state of Maryland, despite that program's lack of eligibility for § 1-202(a)(4) or any other exemption from the Insurance Article, Respondent violated §§ 4-203, 4-205(b), and 10-126(a)(1) and (13).

23.    By submitting a written affirmation in June, 2019, which stated "Aliera has not sold, solicited or been in operation in the State of Maryland under the Unity Healthshare Ministry plan or any other plan that is not excluded from the application of the Insurance Article by § 1-202 since

6

January 1, 2019," despite having solicited the sale of PrimaCare memberships in the state of Maryland in 2019, Respondent violated § 10-126(a)(13).

### III. Sanctions

24.     By the facts and violations stated above, Respondent's license to act as an insurance producer in the State of Maryland is subject to suspension or revocation, and/or the imposition of an administrative penalty, and/or a requirement to pay restitution.

25.     In view of the gravity of the violations and considering that insurance producers are in a position of trust and responsibility, revocation and an administrative penalty are the appropriate disciplinary actions in this case. The Respondent's failure to comply with the terms of the 2018 Consent Order and its continued solicitation of memberships in an unauthorized insurance plan demonstrates that it does not meet the standard of trustworthiness and competence required of an insurance producer.

26.     Administrative penalties shall be made payable to the Maryland Insurance Administration and shall identify the case by number or name. Unpaid penalties will be referred to the Central Collection Unit for collections. Payment of the administrative penalty shall be sent to the attention of: Erica J. Bailey, Associate Commissioner, Compliance and Enforcement, Maryland Insurance Administration, 200 St. Paul Place, Suite 2700, Baltimore, MD 21202.

27.     This Order does not preclude any potential or pending action by the Insurance Fraud Division of the Administration or prosecution by any other person, entity or governmental authority, regarding any conduct by Respondent including the conduct that is the subject of this Order.

28.     This is a reportable administrative proceeding. As such, it is a public record. The Administration construes this as an adverse administrative action. As a result, the Respondent may

7

be required to disclose this Order on any license application, and may be required to report this action to any state in which Respondent currently holds an insurance license.

**WHEREFORE**, for the reasons set forth above, and subject to Respondent's right to request a hearing, it is this 27ᵗʰ day of _February_____, 2020, ORDERED that:

A.   The insurance producer license of Respondent Aliera HealthCare, Inc. is REVOKED.

B.   Respondent shall pay an administrative penalty of $11,000 (Eleven Thousand Dollars).

C.   If any Maryland residents were sold a membership in any Healthshare program sold or operated by Respondent after January 1, 2019, Respondent shall provide to the Administration, within 30 days of the date of this Order, a list of all such Maryland residents. The list shall include the names of the Maryland residents and the date enrolled.

D.   If any Maryland residents were sold a membership any Healthshare plan or program sold or operated by Respondent after January 1, 2019, Respondent shall provide written notice to all such Maryland-resident members indicating that Healthshare plan will no longer be operational. This notice shall include the return of all monies received from such Maryland-resident members that paid a contribution to any of the Healthshare plans on or after January 1, 2019.

ALFRED W. REDMER, JR.
INSURANCE COMMISSIONER

By:   Erica J. Bailey
Associate Commissioner
Compliance & Enforcement

Date:   2/27/2020

8

## RIGHT TO REQUEST A HEARING

Pursuant to § 2-210 of the Insurance Article and Code of Maryland Regulations ("COMAR") 31.02.01.03, an aggrieved person may request a hearing on this Order. This request must be in writing and received by the Commissioner within thirty (30) days of the date of the letter accompanying this Order. However, pursuant to § 2-212 of the Article, the Order shall be stayed pending a hearing only if a demand for hearing is received by the Commissioner within ten (10) days after the Order is served. The request shall include the following information:

> (1) the action or non-action of the Commissioner causing the person requesting the hearing to be aggrieved;
> (2) the facts related to the incident or incidents about which the person requests the Commissioner to act or not act; and
> (3) the ultimate relief requested.

The failure to request a hearing timely or to appear at a scheduled hearing will result in a waiver of your rights to contest this Order and the Order shall be final on its effective date. Please note that if a hearing is requested on this initial Order, the Commissioner may affirm, modify, or nullify an action taken or impose any penalty or remedy authorized by the Insurance Article against Respondent in a Final Order after hearing.

The written request for hearing must be addressed to the Maryland Insurance Administration, 200 St. Paul Place, Suite 2700, Baltimore, Maryland 21202, Attn: Melanie Gross, Executive Assistant to the Deputy Commissioner.

9

7/18/2019 5:08 PM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-19-003388**
**Irene Silva**

### CAUSE NO. D-1-GN-19-003388

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALIERA HEALTHCARE, INC., | § | |
| | § | |
| *Defendant.* | § | 53RD JUDICIAL DISTRICT |

### RULE 11 AGREEMENT

Pursuant to Rule 11 of the Texas Rules of Civil Procedure, the parties in this case agree to be bound by the following terms during the pendency of this litigation to the same extent as if these terms were entered by the Court. The parties agree and acknowledge that this Rule 11 Agreement will be filed and made a part of the record in this case.

1. Aliera Healthcare, Inc., named as the defendant in this case, and now doing business as the Aliera Companies, on behalf of itself and its successors, affiliates, agents, and assigns, agrees that it will not accept or write any new business in the State of Texas until such time as this case is resolved.

2. Aliera Healthcare, Inc., now doing business as the Aliera Companies, on behalf of itself and its successors, affiliates, agents, and assigns, further agrees that it will refrain from transferring, expending, or disbursing any funds outside the ordinary course of business without approval from the Court until such time that this case is resolved.

3. The parties agree that all currently scheduled or noticed depositions are suspended until further agreement by the parties. No other depositions will be noticed or scheduled until the expiration of the Temporary Restraining Order in this case.

4. The parties agree to negotiate in good faith to address the issues raised in this matter. A settlement conference is tentatively scheduled for July 26, 2019.

**EXHIBIT**
**1.28**

Ex. 1.28, p. 1 of 2

5.      Aliera Healthcare, Inc. agrees that, prior to July 26, 2019, it will send an accounting of

money collected from Texas residents and paid on behalf of Texas residents to counsel

for the State of Texas.


SIGNED AND AGREED:


Alexander J. Gonzales
State Bar No. 08118563
Duane Morris LLP
Counsel for Aliera Healthcare, Inc.



*Melissa Mather*

H. Melissa Mather        *with permission*
State Bar No. 24010216
Assistant Attorney General
Office of the Texas Attorney General
Counsel for the State of Texas


**Cause No. D-1-GN-19-003388**
*Order on Plaintiff's Motion for TRO*                                      Page 2 of 2

Resp. Appx. p. 117                                                        Ex. 1.28, p. 2 of 2
**Appx. Vol IV
A-261**