No. 25-1035

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ALLIANCE OF HEALTH CARE SHARING MINISTRIES
*Plaintiff-Appellant*

v.

MICHAEL CONWAY,
in his official capacity as
Commissioner of the Colorado Division of Insurance
*Defendant-Appellee*

Appeal from the United States District Court for the District of Colorado,
No. 1:24-cv-01386-GPG-STV (Hon. Gordon Gallagher)

**APPENDIX VOL V - Pages A-262 - A-307)**

Date: March 21, 2025

Michael F. Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@Paulhastings.Com
William E. Mahoney
Paul Hastings LLP
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@Paulhastings.Com

*Counsel For Plaintiff Alliance of
Health Care Sharing Ministries*

| ECF NO. | *DESCRIPTION* | Appx. Page No. |
|---------|---------------|----------------|
| **Appendix Vol. I, Pages 1-140** | | |
| - | District Court Docket Sheet | A-1 |
| 8-1 | Ex. A - Declaration of Rob Waldo (May 17, 2024) | A-9 |
| 8-2 | Ex. A-1 – Samaritan Bylaws | A-19 |
| 8-3 | Ex. A-2 - Samaritan Guidelines | A-44 |
| 8-4 | Ex. A-3 - Samaritan Membership Application | A-94 |
| 8-5 | Ex. B - Declaration of Katy Talento | A-100 |
| 32 | Amended Complaint of Alliance of Health Care Sharing Ministries (July 1, 2024) | A-109 |
| **Appendix Vol. II, Pages 141-179** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1-1.6 (September 3, 2024) | A-141 |
| **Appendix Vol. III, Pages 180-223** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.7-1.22 (September 3, 2024) | A-180 |
| **Appendix Vol. IV, Pages 224-261** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.23-1.28 (September 3, 2024) | A-224 |
| **Appendix Vol. V, Pages 262-307** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.29-1.33 (September 3, 2024) | A-262 |

| | | |
|---|---|---|
| **Appendix Vol. VI, Pages 308-331** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.34-1.36 (September 3, 2024) | A-308 |
| **Appendix Vol. VII, Pages 332-350** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-332 |
| **Appendix Vol. VIII, Pages 351-373** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.37-1.39 (September 3, 2024) | A-351 |
| **Appendix Vol. IX, Pages 374-424** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.40 (September 3, 2024) | A-374 |
| **Appendix Vol. X, Pages 425-478** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.41 (September 3, 2024) | A-425 |
| **Appendix Vol. XI, Pages 479-541** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.41-1.42 (September 3, 2024) | A-479 |
| **Appendix Vol. XII, Pages 542-573** | | |

| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-542 |
|------|------|------|
| **Appendix Vol. XIII, Pages 574-612** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.54-1.59 (September 3, 2024) | A-574 |
| **Appendix Vol. XIV Pages 613-682** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.6-1.6 (September 3, 2024) | A-613 |
| **Appendix Vol. XV, Pages 683-767** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.61-1.64 (September 3, 2024) | A-683 |
| **Appendix Vol. XVI, Pages 768-816** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.0-2.3 (September 3, 2024) | A-768 |
| **Appendix Vol. XVII, Pages 817-867** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.3-2.4 (September 3, 2024) | A-817 |
| **Appendix Vol. XVIII, Pages 868-933** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.5-7 (September 3, 2024) | A-868 |

| | **Appendix Vol. XIX, Pages 934-1002** | |
|---|---|---|
| 52.1 | Appendix to Reply to Motion for Preliminary Injunction (September 17, 2024) | A-934 |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-949 |
| | **Appendix Vol. XX, Pages 1003-1041** | |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-1003 |
| 55 | Notice of Appeal as to Order on Motion for Preliminary Injunction (January 27, 2025) | A-1015 |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1017 |
| | **Appendix Vol. XXI, Pages 1042-1077** | |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1042 |
| 60 | Order Denying Motion for Injunction Pending Appeal (February 3, 2025) | A-1069 |

**FILED**

March 17, 2021

COMMISSION OF INSURANCE
INSURANCE DIVISION OF IOWA

BEFORE THE IOWA INSURANCE COMMISSIONER

| | |
|---|---|
| TRINITY HEALTHSHARE, INC., | Division Case No. 105205 |
| | **ORDER AND CONSENT TO ORDER** |
| Respondent. | |

**NOW THEREFORE,** upon motion of the Iowa Insurance Division ("Division") and by the consent of Trinity Healthshare Inc. ("Trinity"), the Commissioner enters the following Order and Consent to Order ("Consent Order"):

## I. PARTIES AND JURISDICTION

1.     The Commissioner of Insurance, Douglas M. Ommen, directly and through his designees, administers and enforces Iowa Code chapter 507B—Insurance Trade Practices, Iowa Code chapter 522B—Licensing of Insurance Producers, and Iowa Administrative Code chapter 15— Unfair Trade Practices pursuant to Iowa Code § 505.8.

2.     Trinity is a foreign corporation organized under the laws of Delaware.  Trinity is not a licensed business entity insurance producer in the state of Iowa.  Trinity was incorporated in Delaware on June 27, 2018.  Trinity has a last known address of 5901 Peachtree Dunwoody Road, Suite C-160, Atlanta, GA 30328.  Trinity is registered as a non-profit organization pursuant to 26 U.S.C. §501(c)(3) for the purported purpose of operating a health care sharing ministry ("HCSM").

3.     Trinity has consented to the jurisdiction of the Commissioner of Insurance by consenting to this Consent Order.

## II. BACKGROUND

4.     On July 7, 2020, the Division filed a Statement of Charges against Trinity, The Aliera Companies, Inc. ("Aliera"), Aliera Healthcare, Inc, various Aliera subsidiaries, Shelley

1

**EXHIBIT**

**1.29**

Ex. 1.29, p. 1 of 21

Steele, and Jessica Joy Buddington.  The Division alleged that from on or about January 2018 to present, Trinity engaged in acts and practices within the state of Iowa constituting cause for probation, suspension, or revocation of their business entity producer licenses; cease and desist orders; restitution; and civil penalties or other relief under Iowa Code Chapters 505, 507A, 507B, and rules adopted pursuant to these chapters.

5.      Trinity denies the allegations contained in the Statement of Charges and specifically denies each of the purported findings of facts (Section III) and each of the conclusions of law (Section IV) stated herein.  Trinity further denies any wrongdoing or alleged activities that violate Iowa law.  However, in view of the complex issues raised and the probability that long-term litigation or administrative proceedings would be required to resolve these disputes, Trinity desires to resolve this matter by knowingly and willingly consenting to each order stated in Section V of this Consent Order.

### III. FINDINGS OF FACT

6.      Beginning August 13, 2018, Trinity and Aliera were engaged in a contract to market and administer Trinity's HCSM.

7.      Aliera offered a product called "AlieraCare" that comes in "Bronze," "Silver," or "Gold" plans, the same color designations used by ACA-compliant federally facilitated marketplace plans.  The Aliera products were marketed as Trinity HCSM plans.  Each plan had a designated monthly rate dependent upon the age of the member, the number of people the plan was supposed to cover, and the level of desired coverage.  There was no indication on the written materials that the rates were negotiable or voluntary.

8.      Trinity uses insurance terms, such as "deductible," "premium," and "comprehensive coverage," when describing its products to consumers.  While Trinity's written

2

marketing materials state in the top left corner of each page that the product is not insurance, the sales materials contain brightly colored tables displaying all of the benefits that are covered under HCSM plans purchased.

9.     Trinity asserts that as a legally operating HCSM, it is exempted from insurance regulation.

10.     However, in practice, Trinity was not independently and actively operating as an HCSM.  Under the original Aliera and Trinity contract, Aliera was listed as a program manager for the HCSM plans and Aliera, not Trinity, was responsible for the development of the plan designs, pricing, and marketing materials, vendor management, and recruitment and maintenance of a national sales force to market the plans.

11.     Aliera had the exclusive rights to design, market, and sell the HCSM to its existing and prospective members.

12.     At the time of the execution of the initial agreement with Aliera, Trinity had no members.

13.     Aliera maintained ownership of the "Membership Roster" and was authorized to accept any enrollment from members in the plans "in its sole discretion."  Aliera and Trinity intended for the members who enrolled in the HCSM plans to become "customers" of Aliera, not of Trinity.

14.     Aliera also provided:

> Administrative services that include system administration for both membership processing systems and member ShareBox databases, enrollment processing, billing and collection of monthly share amounts from health care sharing members, maintenance of membership records, management of third party administrators responsible for the processing of medical claims forms and determining sharing eligibility, and issuance of payment to members and providers, as well as providing and maintaining an inbound call center for member services, website development and

3

maintenance, and usual and customary management functions such as Finance, Compliance, Human Resources, Marketing, Privacy, Data Security, and Information Technology.

15.     Trinity is responsible for providing and paying accounting staff to support the financial obligations of the HCSM. However, under the original contract Trinity delegated that responsibility to Aliera, putting them in charge of providing accounting staff, financial operations support, monthly financial and membership reports, audit support, and Form 990 tax filings.

16.     Under the original Aliera and Trinity contract, Trinity retained no managerial or administrative power over its non-profit HCSM and Trinity existed solely to shelter Aliera's for-profit sales of HCSM products from state and federal insurance regulation.

17.     At least 334 Iowans enrolled in the Aliera/Trinity HCSM.  Approximately 207 of the 334 Iowa consumers were enrolled in AlieraCare.

18.     Aliera kept 65% of all of the fees paid for the AlieraCare product.  Additionally, Aliera received reimbursement out of Trinity's portion of collected fees.  Only about 15% of the total fees collected for this product were deposited into the ShareBox used to pay member claims. The ShareBox is an account that is meant to store the money to be used for the payment of members' medical needs.

19.     Approximately 67 of the 334 Iowa consumers were enrolled in a product called CarePlus.  CarePlus proceeds were kept by Trinity, but Trinity paid 60% of the proceeds to Aliera for commissions, fees, and costs.  Ultimately, only about 35% of the total fees collected for this product were deposited into the ShareBox for the members' benefit.

20.     Approximately 49 of the 334 Iowa consumers were enrolled in a product called PrimaCare.   PrimaCare proceeds were kept by Trinity, but Trinity paid Aliera 90% in

commissions, fees, and costs.  Ultimately only about 8% of all fees collected for this product were deposited into the ShareBox for the members' benefit.

21.     The remaining 7 Iowa consumers purchased vision plans wherein only 15% of their fees were deposited into the ShareBox for the coverage of member expenses.

<u>SURVEY OF IOWA CONSUMERS</u>

22.     On or about December 3, 2019, the Division sent an online survey to 300 past and present Aliera/Trinity members from Iowa.  The Division received responses.

23.     Roughly 40% of the survey responders believed they were joining a health insurance company when they purchased the Aliera/Trinity products.

24.     The survey responders did not share one particular religious denomination. Responders indicated that they were associated with denominations including Evangelical Free Church of America, Catholic, First Christian, Lutheran, Pentecostal, Baptist, and four individuals stated they were not affiliated with any religion.

25.     Roughly 60% of the survey responders reported that Aliera paid their medical providers directly and none of the survey responders reported their medical needs as being paid by other members.

26.     All of the survey responders reported paying a fixed amount each month rather than a suggested contribution.

27.     Approximately 70% of the survey responders did not understand that there was no promise to pay for their medical needs.

28.     The Division further interviewed some of the survey responders by telephone. Many of them reported difficulty in receiving payment or coverage for items previously understood to be covered and large unexpected rate increases.

5

29.      Consumer DB stated that the product was presented to him as "typical health insurance" and that he bought it from an insurance agent.

30.      Consumer AL said that he believed he had health insurance that had a $9,000.00 deductible and that it was a high tier "gold" plan.  Consumer AL submitted a claim to Aliera for a hospital visit which was denied, leaving the consumer owing $23,000 out of pocket.

31.      Consumer MG received an email from her insurance agent confirming her purchase of health insurance and assuring her that she does have health insurance.

32.      Consumer AR believed the product was insurance until she received new cards in the mail stating "This is not insurance."

33.      Consumer MM understood that the Aliera product was not insurance, however, she was subjected to a large unanticipated rate increase and when she asked if she could contribute less than her newly increased contribution amount, Aliera customer service told her "no," and that there was nothing she could do about the higher price.

34.      Consumer DR was told that his coverage could be cancelled for failing to submit monthly payments and that all payments, claims, and cancellations are performed through member services and/or at the carrier/healthcare company level.

<u>TRINITY CURRENT CONTRACTS EFFECTIVE JANUARY 1, 2020</u>

35.      On January 1, 2020, Trinity engaged in a series of new contracts with Aliera subsidiaries, including Ensurian, Advevo, USA Benefits, and Tactic Edge.  The new contracts terminated the previously existing contract between Trinity and Aliera.

36.      Trinity's contract with Ensurian is to sell Trinity HCSM products.  Ensurian is paid commissions for enrolling members in the Trinity HCSM plans.  The commissions vary greatly depending on the level and cost of the plan purchased, but can reach upwards of $400.00 monthly.

6

37.     Trinity's contract with Advevo is to market, brand, consult, and advertise the Trinity HCSM products.  Advevo receives the greater of a monthly flat fee or a sum percentage of Trinity's gross revenue.  Trinity's contract with Advevo is signed by Steele, acting as CEO of Advevo.

38.     Trinity's contract with USA Benefits is for the administration of the HCSM.  USA Benefits determines the amount available for sharing from members' contributions, determines eligible cost-sharing, funds the actual sharing of member medical expenses, and performs all related services.  USA Benefits is the administrator of the HCSM's "ShareBox" where member contributions are stored to be shared and distributed.

39.     USA Benefits is also responsible for receipt of member complaints, providing explanation of financial responsibility to members and to healthcare providers, creating sharing reports, retaining records, and other administrative duties associated with the administration of the HCSM.  Trinity pays USA Benefits on a per member per month basis depending on the level and cost of the plan serviced.  These fees can reach upwards of $300.00 per month per member plus additional reimbursements and expenses.

40.     Trinity has engaged in two separate contracts with Tactic Edge.  One contract gives Trinity the right to access an IT platform or a software system for the management and distribution of the products.  Trinity pays Tactic Edge $4.50 per active member per month or a minimum fee of $3,000.00 per month.

41.     The other Tactic Edge contract provides Trinity "professional services in the field of customer service and retention, regulatory, compliance, government affairs, and training in the State of Georgia and elsewhere."  Trinity pays Tactic Edge $6.50 per active member per month

plus an additional fee pursuant to a pricing schedule.  The pricing schedule contains some fees upwards of $160.00 per month.

42.     Tactic Edge, Advevo, USA Benefits, and Ensurian are the only subsidiaries held by Aliera.  Ensurian was incorporated in August or September 2019.  Advevo was incorporated in May 2019.  Tactic Edge was incorporated in May 2019.  USA Benefits was incorporated in December 2019.  All four of the subsidiaries were created for the purpose of taking over the duties of Aliera Healthcare upon the execution of the new contracts on January 1, 2020.  Together, the four subsidiaries cover all of the duties and responsibilities previously reserved under the single contract Trinity had with Aliera Healthcare.

43.     Trinity has little responsibility over the management or administration of its nonprofit HCSM and only a minimal amount of the total collected member contributions is reserved for the actual payment of the HCSM members' medical needs.

44.     Additionally, the new contracts work to further obscure and complicate the corporate structure and management of both Aliera and Trinity's businesses.  The scheme of having four separate entities to do the work that was previously covered by one is complicated by design in order to evade regulation and responsibility.

45.     The creation of the four subsidiaries was for the purpose of promoting the illegal sale of unauthorized health insurance and the four subsidiaries are mere sham corporations intended to shield the parent company, Aliera, from liability and regulation, justifying the piercing of Aliera's corporate veil.

## TRINITY'S STATUS AS EXEMPTED RELIGIOUS ORGANIZATION

46.     Religious healthcare sharing organizations are exempted from insurance regulation pursuant to Iowa Code § 505.22 if that organization meets certain statutory factors.

47.     The religious publication must be a nonprofit charitable organization described in section 501(c)(3) of the Internal Revenue Code.

48.     Trinity, by relinquishing all managerial and administrative duties to for-profit entities, is acting as a shell for the for-profit entities it contracts with, namely, Aliera.

49.     Participation in a legitimate HCSM must be limited to subscribers who are the members of the same denomination or religion.

50.     The survey conducted of Iowa Aliera/Trinity members indicates that multiple denominations and some non-religious individuals have been allowed to enroll in Trinity's HCSM.

51.     Aliera Healthcare's advertising materials offered "Alternative Healthcare Plans" and buried references to Trinity's "Statement of Beliefs" in the fine print legal notices.

52.     Trinity's advertising materials reference "centuries-old Christian tradition of sharing and bearing one another's health care needs" and states that members "hold a common set of ethical and religious beliefs" but also buries its Statement of Beliefs in the legal notices section of the brochure.

53.     The Statement of Beliefs published in advertisements states, "We believe that our personal rights and liberties originate from God and are bestowed upon us by God" and that "every individual has a fundamental religious right to worship God in his or her own way."  This is in stark contrast to statements made in Trinity's 501(c)(3) filings with the IRS which indicate that Trinity "coordinates contributions from within the Baptist community to help cover the health care needs of missionaries, volunteers, and employees of faith based nonprofit ministries."  The IRS filings also indicate that "Trinity Healthshare Inc. will seek contributions from *Baptist entities and individuals* to support the entity." (Emphasis added).

54.     Additionally, Trinity's own by-laws state:

9

We believe the Bible alone is the inspired Word of God: therefore it is the final and only source of absolute spiritual authority.

We believe in the triune of God of the Bible.  He is one God who is revealed in three distinct Persons – God, the Father; God, the Son; and God, the Holy Spirit.

We believe Jesus Christ was God in the flesh – fully God and fully man. He was born of a virgin, lived a sinless life, died on the cross to pay the penalty for our sins, was bodily resurrected on the third day, and now is seated in the heavens at the right hand of God, the Father.

We believe that all people are born with a sinful nature and can be saved from eternal death only by grace alone, through faith alone, trusting only Christ's atoning death and resurrection to save us from our sins and give us eternal life.

We believe in the bodily resurrection of all who have put their faith in Jesus Christ.

All we believe and do is for the glory of God alone.

55.     The religious organization must solicit funds for the payment of medical expenses through a publication that is registered with the United States postal service and that publication must act as an organizational clearinghouse for information between subscribers who have financial, physical, or medical needs, and subscribers who choose to assist with those needs.

56.     Trinity did not provide proof that they were properly registered with the United States postal service.

57.     Trinity emails monthly publications to its members and posts the publications to its member website.

58.     The monthly publications do not solicit funds for needs sharing but they do contain a link for the sharing of prayers.  The publications contain advice about health and general wellness and sometimes contain monthly aggregate amounts spent on "sharing" but no individual needs are featured and no donations or contributions are solicited.

10

59.     Trinity's organization does not provide for the payment for medical needs through direct payment from one member to another.  Instead, Trinity collects monthly "premiums" which are subjected to a number of fees, commissions, and other expenses before being deposited into the "ShareBox." Then, it is Trinity's contractors (not the members), who determine the payment of the members' medical needs.  Members are encouraged to attend "telemedicine" appointments first before seeking in-person medical treatment.  Then members must go only to "in-network" healthcare providers to be eligible for sharing.  Members are instructed to present their membership ID cards to providers prior to services being rendered.  Members are informed that there may be a "consultation fee" associated with their medical services that is due at the time the service is rendered.  Trinity is less clear about how the remainder of the bill should be handled.  A majority of the survey responders believed that Trinity would pay their provider directly.

60.     Finally, in order to be a qualifying HCSM, the organization must suggest a voluntary contribution amount to the subscribers with no assumption of risk or promise to pay.

61.     Trinity mandates a monthly cost for membership, which members understand is not optional if they want to continue to share their medical needs.  The responders to the Iowa survey all believed that their participation in the Trinity program would cover their health care needs.

62.     Trinity has allowed Aliera and its subsidiaries to strip the members' contributions for profitable commissions and fees, leaving little left over for the member ShareBox and coverage of medical needs.

<u>OTHER STATE ACTIONS</u>

63.     On or about May 13, 2019, Washington issued a cease and desist order against Aliera Healthcare.  Washington found that Aliera Healthcare failed to represent Trinity's actual statement of faith as defined by Trinity's own bylaws; provided misleading training to prospective

11

agents about the nature of its HCSM products; provided misleading advertisements to the public and prospective HCSM customers about the nature of its HCSM products; held itself out as a health care service contractor without being registered; and was doing business as an unlicensed discount plan organization.

64.     On or about May 13, 2019, Washington issued a cease and desist order against Trinity.  Washington found that Trinity did not qualify as a health care sharing ministry under the IRS or under Washington state law because it has only been in existence since 2018 and did not stem from a predecessor organization in which Trinity's members were sharing medical costs. Additionally, Trinity's members were "customers" of Aliera Healthcare.  Washington also found that Trinity's statement of faith was materially different than what Trinity has claimed to regulatory authorities.

65.     On or about December, 20, 2019, Trinity and Aliera Healthcare entered into consent orders in the state of Washington, agreed to cease and desist solicitation of Washington residents to enroll in the HCSM sharing programs and agreed to pay substantial fines.

66.     On or about August 12, 2019, Colorado issued cease and desist orders against Aliera Healthcare and Trinity.  Colorado found that Aliera and Trinity were insurance companies and that the HCSM products offered were insurance products.  Colorado also found that Aliera and Trinity were the subject of other investigations in other states, including Texas, Washington, and New Hampshire.

### IV. CONCLUSIONS OF LAW

### <u>COUNT ONE</u>
**Unauthorized Sale of Insurance Products**

67.     Under Iowa Code §507A.3 an "insurer" includes all "corporations, associations, partnerships, and individuals engaged in the business of insurance."

68.    Under Iowa Code §507A.5 a person is prohibited from "directly or indirectly performing any of the acts of doing an insurance business" without authorization.

69.    Under Iowa Code §507A.3 doing an insurance business is any of the following:

   a.   The making of or proposing to make, as an insurer, an insurance contract;

   b.   The taking or receiving of any application for insurance;

   c.   The receiving or collection of any premiums, membership fees, assessments, dues or other considerations for any insurance;

   d.   The issuance or delivery of contracts of insurance to residents of this state or to corporations or persons authorized to do business in this state;

   e.   The doing of any kind of insurance business specifically recognized as constituting the doing of an insurance business within the meaning of the statutes relating to insurance;

   f.   The doing or proposing to do any insurance business in substance equivalent to any of the foregoing in a manner designed to evade the provisions of the insurance laws of this state; or

   g.   Any other transactions of business relating directly to insurance in this state by an insurer.

70.    Trinity, by and through its various contracts with Aliera and by and through Aliera's subsidiaries, made, and proposed to make health insurance contracts, received applications for health insurance, collected premiums or membership fees, and conducted insurance business in a manner designed to evade the provisions of the insurance laws of the state of Iowa.

71.     Trinity's acts and practices are in violation of Iowa Code §507A.3 subjecting Trinity to the imposition of civil penalties up to $50,000.00, an order requiring Trinity to cease and desist from engaging in such acts or practices, restitution, and any other corrective action the Commissioner deems necessary and appropriate pursuant to Iowa Code §507A.10.

## COUNT TWO
**Premium Tax on Unauthorized Insurers**

72.     Iowa Code §507A.9 states that "For all premiums collected during the calendar year, except premiums on lawfully procured surplus lines insurance, every unauthorized insurer shall pay to the commissioner of insurance before March 1, next succeeding calendar year in which the insurance was so effectuated, continued, or renewed, a premium tax on gross premiums charged for such insurance on subjects resident, located, or to be performed in this state equal to the applicable percent, as provided in section 432.1."

73.     Furthermore, "If the tax prescribed by this section is not paid within the time stated, the tax shall be increased by a penalty of twenty-five percent and by the amount of an additional penalty computed at the rate of one percent per month or any part thereof from the date such payment was due to the date paid."  Iowa Code §507A.9.

74.     Trinity, by and through its contracts with Aliera, collected $961,198.63 in premiums from Iowa consumers through the end of calendar year 2019.

75.     Trinity, failed to pay the statutory premium tax to the insurance commissioner for any year.

76.     Trinity's acts and practices have been in violation of Iowa Code §507A.9 subjecting Trinity to the imposition of civil penalties, an order requiring Trinity to cease and desist from engaging in such acts or practices, and any other corrective action the Commissioner deems necessary and appropriate pursuant to Iowa Code §507A.10.

14

## COUNT THREE
**Unfair Methods of Competition and Unfair or Deceptive Acts or Practices**

77.     Under Iowa Code §507B.4(3)(b)(1), it is an unfair method of competition and unfair or deceptive act or practice in the business of insurance to publish an advertisement which is untrue, deceptive, or misleading.

78.     Trinity, by and through its contracts with Aliera and its subsidiaries, advertised health insurance plans that mislead members into thinking that Trinity and/or Aliera and its subsidiaries assumed the risk of insurance.  Members were deceived into believing that their medical bills would be paid through Trinity's services.

79.     Under Iowa Code §507B.4(3)(a)(5), it is an unfair method of competition and unfair or deceptive act or practice in the business of insurance to use any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof.

80.     Trinity, by and through its contracts with Aliera and its subsidiaries, represented to consumers that it was a nonprofit HCSM.  Trinity failed to meet the statutory criteria of an HCSM that was exempted from insurance regulation.

81.     Trinity's acts and practices have been in violation of Iowa Code §507B.4, subjecting Trinity to the imposition of a civil penalty, an order requiring Trinity to cease and desist from engaging in such acts or practices, the imposition of costs of the investigation and prosecution of the matter, restitution, and any other corrective action the Commissioner deems necessary and appropriate pursuant to Iowa Code §§ 505.8 and 507B.7.

## V. ORDER

**WHEREFORE, IT IS ORDERED**, by agreement of Trinity and the Division and pursuant to the powers granted to the Commissioner of Insurance by Iowa Code chapters 505, 507A, and 507B:

15

A. Trinity, and any and all of Trinity's agents, affiliates, employees, contractors, authorized representatives, and successors in interest, will immediately cease and desist marketing, selling, and offering Trinity HCSM programs to new members in the state of Iowa and will immediately cease and desist enrolling Iowa residents in Trinity HCSM programs;

B. Trinity will continue to service and facilitate sharing among Iowa members of Trinity's HCSM programs until June 30, 2021. Trinity will continue to process sharing requests from current members for services rendered prior to June 30, 2021;

C. Trinity will, contemporaneously with the entry of this Consent Order, pay $40,000.00 made payable to the Iowa Insurance Division. This amount will to be credited to the Iowa Settlement Fund and distributed to past and current members of the Trinity HCSM programs who elect to participate. If a member does not elect to participate, the allocated sum will be distributed amongst participating members;

D. Trinity will, contemporaneously with the entry of this Consent Order, pay the amount of $10,000.00 for costs of investigation and prosecution pursuant to Iowa Code § 505.8. Payment shall be made payable to the Iowa Insurance Division, to be credited to the Iowa Enforcement Fund to provide funds for insurance enforcement and education;

E. Subject to Division approval, Respondent shall provide written notice to all current Iowa members of Trinity's HCSM programs, within ten (10) days of this Consent Order, explaining the following:

   i. Trinity can no longer offer its HCSM programs to new members in Iowa;

   ii. Trinity will continue to facilitate sharing among current Iowa members until June 30, 2021, so that members have sufficient time to find alternative options.

Current members will need to find alternate coverage no later than June 30, 2021 because Trinity will no longer be permitted to facilitate its HCSM programs in Iowa after June 30, 2021; and

iii.   ACA-compliant insurance is available during the special open enrollment period beginning February 15, 2021 and ending May 15, 2021.

F.   Trinity will implement a procedure, within ten (10) days of this Consent Order, for the Division to escalate any complaints or concerns received by the Division regarding the HCSM program.   Trinity shall use good-faith efforts to resolve any complaints or concerns in a fair and timely manner;

G.   Trinity will require any relevant TPA, affiliate, or contracted party to provide Trinity with certain information in order for Trinity to provide a report to the Division every other month from the date of this Consent Order, with the final report due August 20, 2021.  This requested information and reports to the Division will include the following information:

i.   Contributions collected from Iowa resident members;

ii.   Amounts shared with Iowa resident members; and

iii.   Sharing request denial (partial and whole) information for Iowa resident members including member name, date of service, total charge, denied amount, total payment made by Trinity or its contracted parties; and basis for denial.

H.   After two (2) years from the date of this Consent Order, Trinity may request that the Commissioner reconsider the order to cease and desist conducting business in the state of Iowa.  Such reconsideration is solely in the discretion of the Commissioner.  If such

17

request is denied, Trinity retains the rights to contest any decision by any method permitted by law.

I.   These orders may be enforced under Iowa Code chapters 507A and 507B including but not limited to Iowa Code §507B.8, and additionally, by any collection remedies available to the State of Iowa Department of Revenue for unpaid ordered monetary amounts.

J.   This Consent Order is based solely on the application of Iowa's insurance code to the specific facts of the Division's investigation in this matter.  Trinity and the Division are the only parties to this Consent Order.  Therefore, this Consent Order, and any provision, findings, or conclusions contained herein, do not, and is not intended to, determine any factual or legal issue in any other jurisdiction, or have any preclusive or collateral estoppel effects in any lawsuit or action by any person or party other than the Division.

SO ORDERED this _____17th_____ of _____March_____, 2021.

_____
DOUGLAS M. OMMEN
Iowa Insurance Commissioner

Respectfully submitted,

_/s/ Johanna Nagel_____
JOHANNA NAGEL
Iowa Insurance Division
1963 Bell Avenue, Suite 100
Des Moines, IA 50315
Phone: 515.654.6563
johanna.nagel@iid.iowa.gov

18

LANNY ZIEMAN
Phone: 515.654.6564
lanny.zieman@iid.iowa.gov

ADAM KENWORTHY
Phone: 515.654.6562
adam.kenworthy@iid.iowa.gov

**Attorneys for the Iowa Insurance Division**


**Copies by email to:**
Patrick B. White
pwhite@WhiteLawIowa.com

Jacqueline Menk
jmenk@bakerlaw.com

**Attorneys for Trinity Healthshare, Inc.**


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause, or their attorney, at their respective addresses disclosed on the pleadings on _____March 17_____, 2021.

By: ( ) First Class Mail                              ( ) Personal Service
    ( ) Restricted certified mail, return receipt    (X) Email, by consent
    ( ) Certified mail, return receipt               ( ) _____

Signature: ___/s/ Hilary Foster_____
                Hilary Foster

19

## NOTICE OF PENALTIES FOR WILLFUL VIOLATION OF THIS ORDER

**YOU ARE NOTIFIED** that acting as an insurance producer, as defined in Iowa Code chapter 522B, or as an insurer, as defined in Iowa Code chapter 507A, in violation of this Order, is a felony under Iowa Code § 507A.10, subjecting you to punishment of imprisonment, jail, fines, or any combination of custody and fines.

**YOU ARE NOTIFIED** that if you violate this Order, you may be subject to administrative and civil penalties pursuant to Iowa Code § 507B.  The Commissioner may petition the district court to hold a hearing to enforce the order as certified by the Commissioner.  The district court may assess a civil penalty against you in an amount not less than three thousand dollars but not greater than ten thousand dollars for each violation, and may issue further orders as it deems appropriate.

## NOTICE OF FINAL ORDER IMPACT

A final order of license probation, suspension, or revocation or a cease and desist order may adversely affect other existing business or professional licenses and may result in license revocation or disciplinary action.

A final order in an administrative action does not resolve any potential criminal or civil violations or causes of action that might arise from the same or similar conduct that is the subject of this order.  It may result in criminal law enforcement authorities, including the fraud bureau of the Iowa Insurance Division, pursuing a criminal investigation or prosecution of potential criminal law violations.

20

## CONSENT TO ORDER AND AGREEMENT

I, _William H. Thomas III_, as authorized agent for Respondent Trinity Healthshare Inc. (currently known as Sharity Ministries, Inc.) in this matter, have read, understood, and do knowingly consent to this Consent Order in its entirety. By executing this Consent, Trinity understands that it is waiving its right to a hearing, to confront and cross-examine witnesses, to produce evidence, and to judicial review.

Trinity further understands this Consent Order is considered a final administrative action that will be reported by the Division to the National Association of Insurance Commissioners and to other regulatory agencies. Trinity also understands this Consent Order is a public record under Iowa Code chapter 22 and information may be shared with other regulatory authorities or governmental agencies, pursuant to Iowa Code § 505.8(8)(d). Trinity also understands this Consent Order will be posted to the Division's website and a notation will be made to the publicly available website record that administrative action has been taken against it.

Dated: _3-11-2021_

_[signature]_

Sharity Ministries, Inc. f/k/a
Trinity Healthshare Inc., Respondent
By: _William H. Thomas III_

Title: _CEO_

Address of Signatory: _5901 Peachtree Dunwoody Rd.; Ste. C-160 Atlanta GA 30328_

Subscribed and sworn before me by _Fred Lavender Jr._ on this _11th_ day of _March_, 2021

_[signature]_

Notary Public for the State of _Georgia_

FRED LAVENDER JR
Notary Public, Georgia
Clayton County
My Commission Expires
July 20, 2024

21

**STATE OF WASHINGTON**
**OFFICE OF THE INSURANCE COMMISSIONER**

| | |
|---|---|
| *In the Matter of* | |
| **ALIERA HEALTHCARE INC.,** | Order No.     19-0251 |
| Unauthorized Entity. | |
| Respondent. | ORDER TO CEASE AND DESIST |

Pursuant to RCW 48.02.080 RCW 48.15.023, RCW 48.17.063, RCW 48.30.010, RCW 48.44.016, and RCW 48.155.130(1) the Insurance Commissioner of the state of Washington ("Insurance Commissioner") orders the above-named Respondent, and its officers, directors, trustees, employees, agents, and affiliates to immediately cease and desist from:

    A.  Engaging in or transacting the unauthorized business of insurance or acting as an unregistered health care service contractor or as an unlicensed discount plan organization in the state of Washington;

    B.  Seeking, pursuing and obtaining any insurance or discount plan business in the state of Washington;

    C.  Soliciting Washington residents to purchase any insurance or discount plan to be issued by an unauthorized insurer or unlicensed discount plan organization;

    D.  Soliciting Washington residents to induce them to purchase any insurance contract or discount plan.

**BASIS:**

    1.    Aliera Healthcare Inc. ("Aliera") is a nonresident corporation domiciled in Delaware and incorporated on December 18, 2015. Aliera does not hold a certificate of authority and is not licensed to sell, solicit, or negotiate insurance in the state of Washington. Aliera is also

ORDER TO CEASE AND DESIST
ORDER NO. 19-0251

1

LA - 1589861 - 1

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

**EXHIBIT**
**1.30**

**Appx. Vol V**
**A-283**

not registered as a health care service contractor or licensed as a discount plan organization in the state of Washington.

2.       Trinity HealthShare, Inc. ("Trinity") is a nonresident corporation domiciled in Delaware. Trinity represents itself as a health care sharing ministry ("HCSM") as defined by 26 USC §5000A and incorporated by reference under RCW 48.43.009. Trinity does not hold a certificate of authority in Washington. Trinity HealthShare, Inc. is the subject of a separate but related Cease and Desist Order. See Order No. 19-0152.

3.       To qualify as a health care sharing ministry under the Internal Revenue Service (IRS) and Washington law, a HCSM must be a 501(c)(3) organization whose members share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs. A HCSM must also have been in operation and continuously sharing member health care costs since at least December 31, 1999.

4.       Aliera is the administrator, marketer, and program manager for Trinity and is solely responsible for the development of HCSM plan designs, pricing, marketing materials, vendor management, and recruitment and maintenance of a national sales force on behalf of Trinity.

5.       By the terms of their Management and Administration Agreement ("the Agreement"), Aliera has the right, at its sole discretion, to develop and market "the schedule of medical services eligible for sharing under the HCSM" with other purportedly "non-insurance" health care products developed and managed by Aliera. Such products include telemedicine, discount prescription drugs, and concierge services to locate in-network providers. In order to purchase any of Aliera's HCSM-inclusive plans, individuals must acknowledge Trinity's statement of faith and lifestyle requirements, as deemed necessary by Trinity and agreed upon by Aliera.

6.       Following receipt of a complaint, the Insurance Commissioner investigated to determine whether Aliera is accurately representing its products to Washington consumers as a HCSM in compliance with state and federal law. The complaint alleged that Aliera is soliciting and recruiting agents to sell misleading products to Washington consumers by using marketing materials that may lead the average consumer to believe they are purchasing healthcare insurance rather than a HCSM membership.

7.       The investigation determined that Aliera 1) failed to represent Trinity's actual statement of faith, as defined by Trinity's own bylaws, 2) provided misleading training to

ORDER TO CEASE AND DESIST
ORDER NO. 19-0251

LA - 1589861 - 1

2

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

Resp. Appx. p. 140

Ex. 1.30, p. 2 of 7

Appx. Vol V
A-284

prospective agents about the nature of its HCSM products, 3) provided misleading advertisements to the public and prospective HCSM customers about the nature of its HCSM products, 4) held itself out as health care service contractor without being registered,  and 5) is doing business as an unlicensed discount plan organization.

8.      Trinity has communicated to state and federal regulatory authorities that it holds to a Protestant expression of the Christian faith. Trinity's own bylaws obligate its members to affirm this expression of faith. However, as marketed by Aliera, Trinity offers an alternative solution to health insurance and offers membership to individuals of "all faiths." In training materials to prospective agents, Aliera describes Trinity's statement of faith as simply a belief in a higher power, whether a Christian, Buddhist, or Jewish God. This statement of faith, as presented to the public, is materially different from and inconsistent with the statement of faith that Trinity has represented to regulatory authorities. Aliera also has the contractual right to "agree upon" Trinity's required statement of beliefs.

9.      Aliera's web-based advertisement to recruit prospective agents to sell its HCSM products touts the opportunity to sell "the next generation Healthcare products" and suggests Aliera can offer employers "a healthcare plan that saves money." The advertisement does not include any reference to a required affirmation of a common set of ethical or religious beliefs. Likewise, Aliera's prospective agent training portal provides required training videos that explain Aliera's HCSM plan offerings with no reference to consumers' required affirmation of a common set of ethical or religious beliefs.

10.     A video seminar for prospective agents refers to Aliera's "individual alternative market" as the company's "bread and butter." The narrator/trainer states that Aliera's comprehensive HCSM plans not only "mirrors traditional insurance, but truly provide comprehensive healthcare for an individual." The narrator/trainer also describes one of Aliera's HCSM plans (InterimCare) as "our short-term medical plan." Aliera's repeated use of insurance terminology in its agent training and marketing materials has the capacity to deceive both prospective agents and prospective consumers into believing they are purchasing a non-traditional *insurance* plan.

11.     In another video seminar for prospective Aliera agents, a trainer represents Trinity's statement of faith in the following manner:

ORDER TO CEASE AND DESIST
ORDER NO. 19-0251

3

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia. WA  98504-0255

LA - 1589861 - 1

*Just to give you a general overall synopsis of what it's saying ... It basically is saying that you believe in a higher power. It doesn't necessarily have to be a Christian God, or a Buddhist God, or a Jewish God. It doesn't ... it doesn't matter as long as we all believe that there is a higher power and we're all living our life that the best way that we possibly can. We're maintaining a healthy lifestyle. We're trying to avoid those types of foods, behaviors, habits - things that, you know, cause us illness that are in our control. As long as we're doing those types of things, we're all like-minded individuals. So if you feel that way, and you are a like-minded individual, that's all we're trying to find out. And, if you are, you're gonna say, "Yes," you believe in the five same statement of beliefs that we all do.*

12.     Aliera solicits and sells plans to Washington consumers that are built on an extensive network of preferred providers and include other healthcare "essentials" that may mislead consumers into thinking they are purchasing healthcare insurance. Aliera's HCSM plans include telemedicine, prescription drug discounts, and access to in-network labs and diagnostics.

13.     RCW 48.30.040 states no person shall knowingly make, publish, or disseminate any false, deceptive or misleading representation or advertising in the conduct of the business of insurance, or relative to the business of insurance or relative to any person engaged therein.

14.     RCW 48.15.020(2)(a) provides that a person may not, in this state, represent an unauthorized insurer except as provided in this chapter.

15.     RCW 48.17.060(1) provides that a person shall not sell, solicit, or negotiate insurance in this state for any line or lines of insurance unless the person is licensed for that line of authority in accordance with this chapter.

16.     RCW 48.02.080(3) states if the Insurance Commissioner has cause to believe that any person is violating or is about to violate any provision of this code or any regulation or order of the Insurance Commissioner, he or she may: (a) issue a cease and desist order.

17.     WAC 284-50-050(1) states the format and content of an advertisement to which these rules apply shall be sufficiently complete and clear to avoid deception or the capacity or tendency to mislead or deceive. Whether an advertisement has a capacity or tendency to mislead or deceive shall be determined by the insurance commissioner from the overall impression that the advertisement may be reasonably expected to create upon a person of average education or intelligence, within the segment of the public to which it is directed.

ORDER TO CEASE AND DESIST
ORDER NO. 19-0251

LA - 1589861 - 1

4

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

Ex. 1.30, p. 4 of 7

Resp. Appx, p. 142

Appx. Vol V
A-286

18.     WAC 284-50-050(2) states advertisements shall be truthful and not misleading in fact or in implication. Words or phrases, the meaning of which is clear only by implication or by familiarity with insurance terminology, shall not be used.

19.     WAC 284-50-060(1) states no advertisement shall omit information or use words, phrases, statements, references, or illustrations if the omission of such information or use of such words, phrases, statements, references, or illustrations has the capacity, tendency, or effect of misleading or deceiving purchasers or prospective purchasers as to the nature or extent of any policy benefit payable, loss covered, or premium payable. The fact that the policy offered is made available to a prospective insured for inspection prior to consummation of the sale or an offer is made to refund the premium if the purchaser is not satisfied, does not remedy misleading statements.

20.     RCW 48.44.015(1) provides that a person may not in this state, by mail or otherwise, act as or hold himself or herself out to be a health care service contractor, as defined in RCW 48.44.010 without first being registered with the commissioner.

21.     RCW 48.155.020(1) provides that, before conducting discount plan business to which this chapter applies, a person must obtain a license from the commissioner to operate as a discount plan organization.

22.     The Respondent's actions described herein violate Insurance Code provisions that include RCW 48.15.020 (representation of an unauthorized insurer prohibited), RCW 48.17.060 (license required), RCW 48.30.040 (false information and advertising), RCW 48.44.015(1) (registration by health care service contractors required), and RCW 48.155.020(1) (discount plan organization license required).

**IT IS FURTHER ORDERED** that nothing herein shall prevent the Respondent from fulfilling the terms of contracts formed prior to the effective date of this Order pursuant to RCW 48.15.020(2)(b).

Any violation of the terms of this Order by the Respondent and its officers, directors, trustees, employees, agents, and affiliates or the Respondent's failure to fulfill or perform its contracts subject to this Order will render the violator(s) subject to the full penalties authorized by RCW 48.02.080, 48.15.023, and other applicable sections of the Insurance Code of the state of Washington.

ORDER TO CEASE AND DESIST          5          State of Washington
ORDER NO. 19-0251                                   Office of Insurance Commissioner
                                                                   PO Box 40255
LA - 1589861 - 1                                         Olympia, WA  98504-0255

Resp. Appx, p. 143          **Appx. Vol V**          Ex. 1.30, p. 5 of 7
                                      **A-287**

The Respondent has the right to demand a hearing in accordance with RCW 48.04.010, WAC 284-02-070, and WAC 10-08-110.

This Order shall remain in effect subject to the further order of the Insurance Commissioner.

**THIS ORDER IS EFFECTIVE IMMEDIATELY AND IS ENTERED** at Tumwater, Washington, this _____13TH_____ day of _____MAY_____, 2019.

MIKE KREIDLER
Insurance Commissioner

By and through his designee

KIMBERLY TOCCO
Insurance Enforcement Specialist
Legal Affairs Division

ORDER TO CEASE AND DESIST            6            State of Washington
ORDER NO. 19-0251                                 Office of Insurance Commissioner
                                                  PO Box 40255
LA - 1589861 - 1                                  Olympia, WA  98504-0255

## CERTIFICATE OF MAILING

The undersigned certifies under the penalty of perjury under the laws of the state of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the state of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served the foregoing Order to Cease and Desist on the following individual(s) in the manner listed below:

*By depositing in the U.S. mail via state Consolidated Mail Service with proper postage affixed to:*

Aliera Healthcare Inc.
The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

*By email and by depositing in the U.S. mail via state Consolidated Mail Service with proper postage affixed to:*

Dwight Francis
Sheppard, Mullin, Richter & Hampton LLP
2200 Ross Ave, Ste. 2400
Dallas, TX 75201
dfrancis@sheppardmullin.com

Aliera Healthcare Inc.
5901 Peachtree Dunwoody Rd Ste B-200
Atlanta, GA 30328
tmoses@aliera.com

Reba Leonard
Vice President, Compliance and Regulatory Affairs
15301 Dallas Parkway, Suite 920
Addison, TX 75001
rleonard@alierahealthcare.com

Dated this ___13th___ day of ___May___, 2019, in Tumwater, Washington.

*Christine Tribe*
CHRISTINE TRIBE
Paralegal
Legal Affairs Division

ORDER TO CEASE AND DESIST          7          State of Washington
ORDER NO. 19-0251                                Office of Insurance Commissioner
                                                 PO Box 40255
LA - 1589861 - 1                                 Olympia, WA  98504-0255

**STATE OF WASHINGTON**
**OFFICE OF THE INSURANCE COMMISSIONER**

*In the Matter of*

**TRINITY HEALTHSHARE, INC.**                    Order No.        19-0252

Unauthorized Entity.                             ORDER TO CEASE AND DESIST

Respondent.

      Pursuant to RCW 48.02.080, RCW 48.15.020, and RCW 48.15.023, the Insurance Commissioner of the state of Washington ("Insurance Commissioner") orders the above-named Respondent, and its officers, directors, trustees, employees, agents, and affiliates to immediately cease and desist from:

    A.  Engaging in or transacting the unauthorized business of insurance in the state of Washington;

    B.  Seeking, pursuing and obtaining any insurance business in the state of Washington;

    C.  Soliciting Washington residents to sell any insurance issued or to be issued by an unauthorized insurer;

    D.  Soliciting Washington residents to purchase any insurance contract.

**BASIS:**

    1.    Trinity HealthShare, Inc. ("Trinity") is a nonresident corporation domiciled in Delaware. Trinity represents itself as a health care sharing ministry ("HCSM") as defined by 26 USC §5000A and incorporated by reference under RCW 48.43.009. Trinity does not hold a certificate of authority in the state of Washington.

    2.    To qualify as a health care sharing ministry under the Internal Revenue Service (IRS) and Washington law, a HCSM must be a 501(c)(3) organization whose members share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs. A HCSM must also have been in operation and continuously sharing member health care costs since at least December 31, 1999.

ORDER TO CEASE AND DESIST                    1                    State of Washington
ORDER NO. 19-0252                                                 Office of Insurance Commissioner
                                                                 PO Box 40255
LA - 1601489 - 1                                                 Olympia, WA  98504-0255

EXHIBIT
**1.31**

3.      Washington adopts the IRS definition of HCSM under RCW 48.43.009. HCSMs that comply with the required federal provisions are not considered Washington health carriers or insurers and are exempt from regulation under Washington's insurance code.

4.      Following receipt of a complaint, the Insurance Commissioner investigated to determine whether Trinity is accurately representing itself to Washington consumers as a HCSM in compliance with state and federal law. The complaint alleged that Trinity's corporate partner, Aliera Healthcare, Inc. ("Aliera"), is soliciting and recruiting agents to sell misleading products to Washington consumers because the co-branded marketing materials use language that may lead the average consumer to believe they are purchasing healthcare insurance rather than a HCSM membership.

5.      The investigation determined that Trinity does not meet the legal definition of a HCSM and is therefore acting as an unauthorized insurer in the state of Washington.

6.      Trinity first incorporated in the state of Delaware on June 27, 2018. Approximately six weeks later, Trinity entered into a Management and Administration Agreement ("the Agreement") with Aliera. The Agreement was effective August 13, 2018, and stated Trinity's intent to partner with Aliera to include Trinity's HCSM program as a component of Aliera's new and existing healthcare products. Trinity also grants its corporate affiliate Aliera the exclusive right to develop, market, and sell its HCSM plans to individuals who agree to Trinity's statement of faith and lifestyle requirements.

7.      Trinity has been in existence less than one (1) year. Further, at the time of the Agreement with Aliera, Trinity had zero members in its HCSM and there was no predecessor organization in which Trinity's members were sharing medical costs. Trinity, with zero members, further provided that any future enrolled members would become "customers" of Aliera, who would maintain ownership over the "membership roster." Trinity has not "been in operation and continuously sharing member health care costs since at least December 31, 1999" as required to qualify for exemption from state insurance regulation.

8.      Trinity espouses contradictory versions of the required "common set of ethical or religious beliefs" that vary based on the intended audience. If Trinity's members do not share common beliefs – regardless of the content of such beliefs – and share medical burdens in accordance with those common beliefs, Trinity cannot represent itself as a HCSM.

ORDER TO CEASE AND DESIST          2          State of Washington
ORDER NO. 19-0252                                Office of Insurance Commissioner
                                                 PO Box 40255
LA - 1601489 - 1                                 Olympia, WA  98504-0255

Resp. Appx. p. 147                    Ex. 1.31, p. 2 of 5

**Appx. Vol V
A-291**

9. Trinity has communicated to state and federal regulatory authorities that it holds to a Protestant expression of the Christian faith. Trinity's own bylaws obligate its members to affirm this expression of faith. However, according to its website, Trinity offers an alternative solution to health insurance and offers membership to individuals of "all faiths." In training materials to prospective agents, Trinity's statement of faith becomes simply a belief in a higher power, whether a Christian, Buddhist, or Jewish God. This statement of faith, as presented to the public, is materially different from and inconsistent with the statement of faith that Trinity has claimed to regulatory authorities, demonstrating that Trinity and its ministers do not share "a common set of ethical or religious beliefs" as required to qualify for exemption from state insurance regulation.

10. Finally, Trinity also grants Aliera the contractual right to "agree upon" the required statement of beliefs. Conditioning its common set of ethical or religious beliefs on the consent of its for-profit corporate partner is contradictory to Trinity's own statements about its religious traditions.

11. RCW 48.05.030(1) states no person shall act as an insurer and no insurer shall transact insurance in this state other than as authorized by a certificate of authority issued to it by the Insurance Commissioner and then in force; except, as to such transactions as are expressly otherwise provided for in this code.

12. RCW 48.30.040 states no person shall knowingly make, publish, or disseminate any false, deceptive or misleading representation or advertising in the conduct of the business of insurance, or relative to the business of insurance or relative to any person engaged therein.

13. RCW 48.02.080(3) states if the Insurance Commissioner has cause to believe that any person is violating or is about to violate any provision of this code or any regulation or order of the Insurance Commissioner, he or she may: (a) issue a cease and desist order.

14. RCW 48.15.023(5)(a) states if the Insurance Commissioner has cause to believe that any person has violated the provisions of RCW 48.15.020(1), the Insurance Commissioner may: (i) issue and enforce a cease and desist order in accordance with the provisions of RCW 48.02.080.

15. RCW 48.44.015(1) provides that a person may not in this state, by mail or otherwise, act as or hold himself or herself out to be a health care service contractor, as defined in RCW 48.44.010 without first being registered with the Insurance Commissioner.

ORDER TO CEASE AND DESIST
ORDER NO. 19-0252

LA - 1601489 - 1

3

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA 98504-0255

Ex. 1.31, p. 3 of 5

Resp. Appx. p. 148

Appx. Vol V
A-292

16.     The Respondent's actions described herein violate Insurance Code provisions that include RCW 48.05.030 (certificate of authority required), RCW 48.14.020 (failure to timely pay premium tax), RCW 48.15.020 (solicitation by unauthorized insurer prohibited), and RCW 48.30.040 (unfair practices and frauds).

**IT IS FURTHER ORDERED** that nothing herein shall prevent the Respondent from fulfilling the terms of contracts formed prior to the effective date of this Order pursuant to RCW 48.15.020(2)(b).

Any violation of the terms of this Order by the Respondent and its officers, directors, trustees, employees, agents, and affiliates or the Respondent's failure to fulfill or perform its contracts subject to this Order will render the violator(s) subject to the full penalties authorized by RCW 48.02.080, 48.15.023, and other applicable sections of the Insurance Code of the state of Washington.

The Respondent has the right to demand a hearing in accordance with RCW 48.04.010, WAC 284-02-070, and WAC 10-08-110.

This Order shall remain in effect subject to the further order of the Insurance Commissioner.

**THIS ORDER IS EFFECTIVE IMMEDIATELY AND IS ENTERED** at Tumwater, Washington, this _____13ᵀᴴ_____ day of _____MAY_____, 2019.

_Mike Kreidler_

MIKE KREIDLER
Insurance Commissioner

By and through his designee

_Kimberly Tocco_

KIMBERLY TOCCO
Insurance Enforcement Specialist
Legal Affairs Division

ORDER TO CEASE AND DESIST                    4             State of Washington
ORDER NO. 19-0252                                           Office of Insurance Commissioner
                                                            PO Box 40255
LA - 1601489 - 1                                            Olympia, WA 98504-0255

## CERTIFICATE OF MAILING

The undersigned certifies under the penalty of perjury under the laws of the state of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the state of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served the foregoing Order to Cease and Desist on the following individual(s) in the manner listed below:

*By depositing in the U.S. mail via state Consolidated Mail Service with proper postage affixed to:*

Trinity Healthshare
5901 Peachtree Dunwoody Rd., Ste 160
Atlanta, GA 30328

*By email and by depositing in the U.S. mail via state Consolidated Mail Service with proper postage affixed to:*

J. Joseph Guilkey
BakerHostetler
200 Civic Center Drive, Ste. 1200
Colombus, OH 43215
jguilkey@bakerlaw.com

Dated this _13th_ day of _May_, 2019, in Tumwater, Washington.

CHRISTINE TRIBE
Paralegal
Legal Affairs Division

ORDER TO CEASE AND DESIST           5           State of Washington
ORDER NO. 19-0252                                Office of Insurance Commissioner
                                                 PO Box 40255
LA - 1601489 - 1                                 Olympia, WA 98504-0255

# STATE OF NEW HAMPSHIRE
## INSURANCE DEPARTMENT

### In re: Aliera Healthcare, Inc. (dba The Aliera Companies, Inc.) & Trinity Healthshare Inc.

### Docket No.: INS No. 19-027-EP

### CEASE AND DESIST ORDER

The Commissioner of the New Hampshire Insurance Department ("NHID"), pursuant to his authority under RSA 400-A:3, orders the Respondents Aliera Healthcare, Inc. and Trinity Healthshare Inc. to immediately Cease and Desist from engaging in the unlicensed business of insurance; administering health insurance plans without being certified as a third party administrator; falsely holding out products as exempt from insurance regulation in New Hampshire; and misleading New Hampshire consumers by offering, marketing and administering health coverage that does not meet state and federal requirements.

In support this Order to Cease & Desist, the NHID states as follows:

**Factual Allegations**

1. Respondent Aliera Healthcare, Inc. ("Aliera") is a foreign, for-profit corporation organized under the laws of Delaware with a business address of 5901-B Atlanta, Peachtree Dunwoody Rd. #200, Atlanta, GA 30328.

2. Aliera is a non-resident business entity insurance producer (NPN # 18501490) that is licensed to sell Life, Accident and Health insurance products. Aliera holds no appointments in New Hampshire.

3. Aliera is not licensed as an insurance company and, other than its insurance producer license, holds no licenses, certificates, or other approvals to engage in the business of insurance in New Hampshire.

4. Aliera does not hold a certificate of authority to act as a Third Party Administrator ("TPA") in New Hampshire.

5. Aliera markets and administers health plans in New Hampshire on behalf of Respondent Trinity Healthshare ("Trinity"). Prior to August 10, 2018 Aliera marketed and administered health plans on behalf of Unity Health Share ("Unity.") This relationship ended when Unity terminated its agreement with Aliera on August 10, 2018.

1

**EXHIBIT**

**1.32**

Ex. 1.32, p. 1 of 6

6. Trinity was created in Delaware on June 27, 2018 by Aliera and its principals.

7. Trinity holds no licenses, certificates, or other approvals to engage in the business of insurance in New Hampshire.

8. Trinity claims to be Health Care Sharing Ministry ("HCSM") that is exempt from insurance regulation in New Hampshire under RSA 126-V. Like a health insurance company, Trinity collects fixed monthly payments from its members, payments that vary according to the level of coverage and conducts medical underwriting to screen for pre-existing conditions. There is also a schedule of covered and excluded services, a schedule of copayments and deductibles, a claim adjudication process, use of provider networks and annual or lifetime limits.

9. August 13, 2018 Aliera and Trinity entered into a Marketing and Administration Agreement. Under this agreement Aliera is the program manager for Trinity's health care sharing ministry plans, responsible for the development of plan designs, pricing, marketing, vendor management, recruitment and maintenance of the a national sales force and accounting and management of sales commissions on behalf of the ministry.

10. Aliera has the exclusive right to design market and sell HCSM plans to its existing members and prospective members.

11. Per the agreement, Aliera also maintains ownership of the "Membership Roster" of all Trinity enrollees.

12. Aliera markets Trinity HCSM products as alternatives to traditional health insurance to New Hampshire consumers and utilizes licensed resident insurance producers to sell Trinity's products within the state.

13. Aliera has made false and misleading claims to New Hampshire consumers concerning the Aliera and Trinity products it markets and administers.

14. Aliera and Trinity are currently the subject of administrative actions in Texas, Washington and Colorado.

**Applicable New Hampshire Laws**

15. Per NH RSA 405:1, no foreign insurance company shall engage in the insurance business in New Hampshire unless it has first obtained a license to do so.

16. The following acts, when done on behalf of an unlicensed insurer, are deemed to constitute the transaction or doing of insurance business in this state:

2

    a. The making of or proposing to make an insurance contract;

    b. The taking or receiving of any application for insurance;

    c. The receiving or collection of any premium, commission, membership fees, assessments, dues or other consideration for any insurance;

    d. The issuance or delivery of contracts or certificates of insurance to residents of this state;

    e. Directly or indirectly acting as an agent for or otherwise representing or aiding another person or insurer in the solicitation, negotiation, procurement, or effectuation of insurance or renewals thereof, or in the dissemination of information as to coverage or rates, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, a fixing of rates or investigation or adjustment of claims or losses or in the transaction of matters subsequent to effectuation of the contract and arising out of it, or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this state; or

    f. Doing any kind of insurance business specifically recognized as constituting the doing of an insurance business within the meaning of the insurance statutes. RSA 406-B:2.

17. New Hampshire law exempts health care sharing organizations from insurance regulation if they meet the requirements of RSA 126-V:1.

18. To qualify for the exemption from insurance regulation under RSA 126-V:1, II, a health care sharing organization must meet all of the following criteria:

    a. Be a nonprofit organization that is tax-exempt pursuant to section 501(c)(3) of the Internal Revenue Code;

    b. Have been in existence continuously and have facilitated the sharing of medical expenses of participants without interruption since December 31, 1999, including predecessor organizations;

    c. Be faith-based and limit its participants to individuals who share a common set of ethical or religious beliefs; and

    d. Share medical expenses among its participants in accordance with those beliefs.

19. Qualifying organizations are subject to other requirements, including providing a notice to consumers warning that the organizations do not offer insurance and are not regulated by the NHID. RSA 126-V:1, III(g). Providing the notice to consumers is not sufficient to qualify an organization for the exemption if the requirements of RSA 126-V:1, II are not also met.

20. Under Title XXXVII, as well as applicable federal requirements, health insurance coverage in New Hampshire is subject to numerous requirements including prior form and rate approval, coverage requirements for specified services, and limitations on medical underwriting and preexisting condition exclusions.

3

21. Under New Hampshire's Managed Care Law, RSA Chapter 420-J, network-based health insurance is subject to numerous requirements designed to protect members, including grievances and appeals procedures, network adequacy requirements, and the obligation to protect members from balance billing by providers.

22. Under New Hampshire law, "administrator" or "third party administrator" or "TPA" is defined as "a person who directly or indirectly underwrites, collects charges or premiums from, or adjusts or settles claims on residents of this state, in connection with life, annuity, or health coverage or workers' compensation insurance . . ." RSA 402-H:1, I. "Underwrites or Underwriting" is further defined, though not limited to, accepting employer or individual applications in accordance with the written rules of the insurer or self-funded plan for the overall planning and coordinating of a benefits program. RSA 402-H:1, XIII.

23. New Hampshire law provides that "[n]o person shall act as, or offer to act as, or hold himself or herself out to be an administrator in this state without a valid certificate of authority as an administrator issued by the commissioner." RSA 402-H:11.

## Legal Allegations/Violations

24. Trinity cannot meet the exemption requirements of RSA 126-V:1, II, specifically in that it has not been in existence continuously and have facilitated the sharing of medical expenses of participants without interruption since December 31, 1999. Trinity had no members as of August 13, 2018 when it signed the Management and Administrative Agreement with Aliera.

25. Trinity also fails to establish that it is faith based and limits its membership to individuals who share a common set of ethical or religious beliefs. Trinity's bylaws indicate that the organization adheres to a Christian expression of faith; however, its applications and policy documents only ask participants to believe in nonsectarian religious views. This statement of faith is inconsistent with the religious views purportedly held by Trinity.

26. Further, Aliera also offers Trinity HCSM plans, not only to individuals, but also to employer groups. This is inconsistent with RSA 126-V:1 II, which limits participation in HCSM to individuals.

27. As Trinity does not meet the required elements to designate it as a HCSM under RSA 126-V, it is operating as an unlicensed insurance company in violation of RSA 406-B:3 and RSA 405:1.

28. Based on the conduct described herein, Aliera, through its arrangement with Trinity, is engaging in the "insurance business," as defined by RSA 406-B:2, by acting as an

4

unlicensed insurance company in New Hampshire without the proper license or authorization in violation of RSA 406-B:3 and RSA 405:1.

29. Alternatively, Aliera, by directly or indirectly underwriting, collecting charges or premiums from, and adjusting and settling claims on behalf New Hampshire residents in connection with Trinity, is operating as a unlicensed Third Party Administrator for a health insurance company within the meaning of RSA 402-H.

30. Aliera does not qualify for any exemption from the requirement to be certified as a TPA in New Hampshire under RSA 402-H.  Aliera marketing and administration activities with respect to Trinity health plans go beyond the sale of these plans as a producer, and Aliera is not authorized to transact insurance in New Hampshire, nor is Aliera a subsidiary or affiliated corporation of a licensed insurer.

31. Aliera is operating as an unlicensed TPA in violation of RSA 402-H.

32. Based upon the information and allegations recited above, the New Hampshire Commissioner of Insurance hereby ORDERS that Trinity and Aliera immediately CEASE AND DESIST from writing any new coverage or renewing any coverage for New Hampshire insurance consumers.

33. Pursuant to RSA 400-A:17, the Respondents may request a hearing regarding this Order by filing a written application for hearing with the Commissioner within 30 (thirty) days of the date the Respondents either knew or should have known of the issuance of this Order.

SO ORDERED

                                        NEW HAMPSHIRE
                                        INSURANCE DEPARTMENT

Date: 1 6 | 30 | 19

                                        John Elias, Commissioner

5

## CERTIFICATION OF SERVICE

I certify that the a copy of the foregoing Cease and Desist Order has been served upon the above-captioned Respondents by United States first class mail, postage prepaid. Said Order was mailed to the Aliera Healthcare Inc. 5901 Peachtree Dunwoody Rd. Ste B-200, Atlanta GA, 30328 and Trinity Healthshare Inc. 5901 Peachtree Dunwoody Rd. Ste C-160, Atlanta, GA 30328

Date:  10/30/2019

_____
Mary C. Bleier, Esq.

6

## Case Summary

Case #        **20-00020-COMP-CL**

**Case Name**
**IN THE MATTER OF TRINITY HEALTHSHARE INC.**

Case Type      **COMPLIANCE**      Case Sub-Type      **LIFE AND HEALTH**

Document Type      **SOI Order (Cease & Desist)**      Folder      **Orders**

Submission Date/Time      **03/24/2020 14:00**      Filing Date      **3/24/2020**

Case Status      **Pending**

Company Name      **NM Office of Superintendent of Insurance**

Address        **1120 Paseo de Peralta, Santa Fe, NM 87501**

Email

Phone            Fax

Author Type      **Internal**      Author Name      **RUSSELL TOAL**

Case Notes

## Document summary

Document #      **100001672**      Document Timestamp      **03/26/2020 11:22**

Document Title      **ORDER TO CEASE AND DESIST AND IMPOSING PENALTY**

Document Type      **SOI Order (Cease & Desist)**      Folder      **Orders**

Author Type      **Internal**      Author Name      **RUSSELL TOAL**

Is Confidential ?      **No**      Is Approved ?      **Yes**

Document Notes

**EXHIBIT
1.33**

**BEFORE THE NEW MEXICO OFFICE OF SUPERINTENDENT OF INSURANCE**

IN THE MATTER OF                     )
TRINITY HEALTHSHARE INC.,            )          Docket No. 20-00020-COMP-CL
                                     )
                                     )
RESPONDENT.                          )

**ORDER TO CEASE AND DESIST AND IMPOSING PENALTY**

The New Mexico Superintendent of Insurance ("Superintendent"), on his own motion, and based on the evidence appended to the Declaration of Paige Duhamel filed herewith, finds, concludes and orders as follows:

**FINDINGS:**

1.      Respondent ("Trinity") is an Internal Revenue Code Section 501(c)(3) not-for-profit organization that provides health care sharing options to its members.

2.      Trinity's members agree to voluntarily contribute to the payment of other members' medical needs.  By so contributing to a common fund, each member is entitled to submit requests for reimbursement of medical expenses that are reimbursement under the terms of a membership plan.  Reimbursement is provided if the expense is reimbursable pursuant to the terms of the member's plan, and there are funds available for reimbursement in the common pool.

3.      Trinity contracts with Aliera Healthcare, Inc., ("Aliera"), who markets and administers the health care products that Trinity offers to its members.  Aliera collects member contributions, accepts member requests for reimbursement, determines entitlement to reimbursement pursuant to the member's plan, and issues reimbursements pursuant to the member's plan agreement.

4.      Trinity members have access to a network of healthcare providers, laboratory services, primary care, hospitalizations, specialty care, preventative care, telemedicine and prescription benefits.

5.      To access these services and benefits, Trinity members must make a pre-determined "monthly contribution".  A Trinity member has access to different levels of services and benefits depending on his or her pre-determined contribution amount and cumulative monthly contributions.

*Cease and Desist Order*
Docket No. 20-00020-COMP-CL
Page 1

**6.**     Eligible healthcare services received by Trinity members are subject to a Member Shared Responsibility Amount ("MSRA"), which is a form of cost-sharing.  A member must satisfy the MSRA before being reimbursed for a service.

**7.**     Trinity does not guarantee that a member will be reimbursed for the cost of an eligible service.  However, Trinity represents that if a member's eligible bills exceed the available shares to meet medical expenses, payments will be made on a pro-rata basis.

**8.**     Trinity offers several membership plans, each of which is subject to different terms and conditions with respect to available benefits, monthly contributions and MSRA. Trinity promotes one of its plans -- Complete Health Care -- as "An Alternative to Major Medical".

**9.**     Trinity promotes the "Complete Health Care" plan as "a complete health care solution with 60% in-network cost sharing.  From the doctor's office to the operating table, get the medical services when you need them."

**10.**    Trinity's member guides and promotional materials assert that the plans are not insurance.

**11.**    In January 2020, Trinity reported to OSI that as of November 2019 it had 2443 New Mexico members under 1620 plans.  Trinity has not provided an updated membership count since that report.

**12.**    NMSA (1978), § 59A-1-5 defines "Insurance" as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils, or to pay or grant a specified amount or determinable benefit in connection with ascertainable risk contingencies * * *."  The New Mexico Supreme Court has determined that a product qualifies as "insurance" under this statute if "the principal object of the contract is indemnity * * *."  When that is the principal object of the contract, the transaction involves "insurance" and "is therefore within the scope of state regulation." *Guest v. Allstate Ins. Co.,* 2010-NMSC-047, ¶ 67, 149 N.M. 74.  A transaction can involve "insurance" under this test even if "it lacks an insurance contract's formal characteristic of adhesion and its components of paid premiums, a formal policy, and issued claims." *Id.,* at ¶ 68.

**13.**    NMSA (1978), § 59A-16-21.2(C)(2) defines a "health insurance carrier" as "an entity subject to the insurance laws and regulations of this state, including a health insurance company, a health maintenance organization, a hospital and health services corporation, a provider service network, a nonprofit health care plan or any other entity that contracts or offers to contract, or enters into agreements to provide, deliver, arrange for, pay for or reimburse any costs of health

*Cease and Desist Order*
Docket No. 20-00020-COMP-CL
Page 2

care services, or that provides, offers or administers health benefits plans or managed health care plans in this state."

**14.** NMSA (1978), § 59A-16-21.2(C)(1) defines a "health benefits plan" as "a policy or agreement entered into, offered or issued by a health insurance carrier to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services."

**15.** NMSA (1978), § 59A-15-16 provides:

> Notwithstanding any other provision of law and except as provided in the Health Care Benefits Jurisdiction Act, any person who provides coverage in this state for health benefits, including coverage for medical, surgical, hospital, osteopathic, acupuncture and oriental medicine, chiropractic, physical therapy, speech pathology, audiology, professional mental health, dental or optometric expenses, whether such coverage is by direct payment, reimbursement or otherwise, shall be presumed to be subject to the provisions of the Insurance Code and the jurisdiction of the superintendent unless the person provides evidence satisfactory to the superintendent that he is subject exclusively to the jurisdiction of another agency of this state or the federal government.

**16.** Trinity has not provided the Superintendent with any evidence that it is subject to the exclusive jurisdiction of another agency of this state or of the federal government.

**17.** NMSA (1978), § 59A-5-10(A) provides that "[n]o person shall act as an insurer, and no insurer shall transact insurance in this state by direct solicitation or solicitation through the mails or otherwise, unless so authorized by a subsisting certificate of authority issued by the superintendent, except as to such transactions as are expressly otherwise provided for in the Insurance Code.

**18.** Trinity does not hold a certificate of authority to transact insurance in the state of New Mexico, and has made no application for a certificate of authority.

**19.** NMSA (1978), § 59A-15-10 provides that "[a]ny unauthorized insurer which transacts in this state any insurance business in violation of the Insurance Code shall be subject to a fine of not to exceed twenty thousand dollars ($20,000) for each such violation."

**CONCLUSIONS:**

**20.** The principal object and purpose of a Trinity membership plan is to indemnify the member against qualifying health care expenses and, thus, each such plan constitutes "insurance" under New Mexico law as defined in the Insurance Code and in case law.

*Cease and Desist Order*
Docket No. 20-00020-COMP-CL
Page 3

Ex. 1.33, p. 4 of 7

Resp. Appx. p. 160
**Appx. Vol V**
**A-304**

**21.**     By selling health care sharing membership plans in New Mexico, Trinity transacted the business of insurance in this state.

**22.**     By entering into agreements to provide, deliver, arrange for, pay for or reimburse the costs of certain health care services, funding permitting, Trinity qualifies as a "health insurance carrier" as that term is defined in NMSA (1978), § 59A-16-21.2(C)(2).

**23.**     Because they include an agreement to reimburse costs of health care services, funding permitting, the Trinity memberships constitute "health benefit plans" as that term is defined in NMSA (1978), § 59A-16-21.2(C)(1).

**24**.     Trinity is a health insurance carrier, who sold 1620 health benefit plans in New Mexico without a valid certificate of authority to transact insurance.

**25.**     Because Trinity has not provided any evidence that it is subject exclusively to the jurisdiction of another agency of this state or the federal government, the Superintendent has jurisdiction over Trinity pursuant to NMSA (1978), § 59A-15-16.

**26**.     Pursuant to NMSA (1978), § 59A-15-10, the Superintendent may fine Trinity up to $20,000 for each unauthorized insurance transaction in this state.

**27**.     Pursuant to NMSA (1978), § 59A-16-27(A), the Superintendent may order Trinity to cease and desist from transacting insurance business in New Mexico.

Based on these Findings and Conclusions, the Superintendent hereby **ORDERS**:

**A.**     Effective immediately, Trinity shall cease and desist from offering to sell, or selling, health care sharing plans in New Mexico, unless and until Trinity obtains a certificate of authority to operate as a health insurer in this state, and its plans are approved by the Superintendent for sale in this state.

**B.**     Trinity shall pay a fine of $32,400,000 (1,620 X $20,000) for the unauthorized insurance transactions it effected in this state.  In lieu of this fine, Trinity may cancel all 1,620 of the membership plans it sold in New Mexico, refund all contributions received by the members of those plans, and inform each plan member of all possible options for obtaining major medical coverage.

*Cease and Desist Order*
Docket No. 20-00020-COMP-CL
Page 4

Ex. 1.33, p. 5 of 7

Resp. Appx. p. 161          Appx. Vol V
A-305

**C.**     Pursuant to NMSA (1978), § 59-16-27, Respondent may request a hearing regarding this Order by filing a written request within twenty days of the issuance of this Order by mail, or electronic mail to:

> OSI Records and Docketing
> 1120 Paseo de Peralta, Room 331
> P. O. Box 1689
> Santa Fe, NM 87504-1689
> OSI-docketfiling@state.nm.us          **ATTN:  Docket No. 20-00020-COMP-CL**

**D.**     If a written request for hearing is not made within twenty days, this Order shall be deemed final and the docket closed.

**DONE AND ORDERED** this 26th day of March, 2020.

RUSSELL TOAL
SUPERINTENDENT OF INSURANCE

*Cease and Desist Order*
Docket No. 20-00020-COMP-CL
Page 5

## CERTIFICATE OF SERVICE

**I HEREBY** certify that a true and correct copy of the foregoing *Cease and Desist Order* was sent via electronic mail or mailed by first class U. S. Certified Mail to the following individuals, as indicated below, this 26th day of March, 2020.

Bryan Brock, General Counsel
Office of Superintendent of Insurance
P.O. Box 1689, Santa Fe, NM 87504-1689
bryan.brock@state.nm.us

Joe Guarino, President
Trinity Healthshare, Inc.,
5901 Peachtree Dunwoody Road, Suite C-160
Atlanta, GA 30328

Rebecca Branch, Staff Counsel
Office of Superintendent of Insurance
P.O. Box 1689, Santa Fe, NM 87504-1689
rebecca.branch@state.nm.us

**MELISSA Y. GUTIERREZ, Law Clerk**
**Office of General Counsel**
**Office of Superintendent of Insurance**

*Cease and Desist Order*
Docket No. 20-00020-COMP-CL
Page 6