**No. 25-1035**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

_____

ALLIANCE OF HEALTH CARE SHARING MINISTRIES
*Plaintiff-Appellant*

v.

MICHAEL CONWAY,
in his official capacity as
Commissioner of the Colorado Division of Insurance
*Defendant-Appellee*

_____

Appeal from the United States District Court for the District of Colorado,
No. 1:24-cv-01386-GPG-STV (Hon. Gordon Gallagher)

_____

**APPENDIX VOL IX - Pages A-374 - A-424**

Date: March 21, 2025

Michael F. Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@Paulhastings.Com
William E. Mahoney
Paul Hastings LLP
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@Paulhastings.Com

*Counsel For Plaintiff Alliance of
Health Care Sharing Ministries*

| ECF NO. | *DESCRIPTION* | Appx. Page No. |
|---------|---------------|----------------|
| **Appendix Vol. I, Pages 1-140** | | |
| - | District Court Docket Sheet | A-1 |
| 8-1 | Ex. A - Declaration of Rob Waldo (May 17, 2024) | A-9 |
| 8-2 | Ex. A-1 – Samaritan Bylaws | A-19 |
| 8-3 | Ex. A-2 - Samaritan Guidelines | A-44 |
| 8-4 | Ex. A-3 - Samaritan Membership Application | A-94 |
| 8-5 | Ex. B - Declaration of Katy Talento | A-100 |
| 32 | Amended Complaint of Alliance of Health Care Sharing Ministries (July 1, 2024) | A-109 |
| **Appendix Vol. II, Pages 141-179** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1-1.6 (September 3, 2024) | A-141 |
| **Appendix Vol. III, Pages 180-223** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.7-1.22 (September 3, 2024) | A-180 |
| **Appendix Vol. IV, Pages 224-261** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.23-1.28 (September 3, 2024) | A-224 |
| **Appendix Vol. V, Pages 262-307** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.29-1.33 (September 3, 2024) | A-262 |

| | | |
|---|---|---|
| **Appendix Vol. VI, Pages 308-331** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.34-1.36 (September 3, 2024) | A-308 |
| **Appendix Vol. VII, Pages 332-350** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-332 |
| **Appendix Vol. VIII, Pages 351-373** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.37-1.39 (September 3, 2024) | A-351 |
| **Appendix Vol. IX, Pages 374-424** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.40 (September 3, 2024) | A-374 |
| **Appendix Vol. X, Pages 425-478** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.41 (September 3, 2024) | A-425 |
| **Appendix Vol. XI, Pages 479-541** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.41-1.42 (September 3, 2024) | A-479 |
| **Appendix Vol. XII, Pages 542-573** | | |

| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-542 |
|---|---|---|
| **Appendix Vol. XIII, Pages 574-612** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.54-1.59 (September 3, 2024) | A-574 |
| **Appendix Vol. XIV Pages 613-682** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.6-1.6 (September 3, 2024) | A-613 |
| **Appendix Vol. XV, Pages 683-767** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.61-1.64 (September 3, 2024) | A-683 |
| **Appendix Vol. XVI, Pages 768-816** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.0-2.3 (September 3, 2024) | A-768 |
| **Appendix Vol. XVII, Pages 817-867** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.3-2.4 (September 3, 2024) | A-817 |
| **Appendix Vol. XVIII, Pages 868-933** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.5-7 (September 3, 2024) | A-868 |

| | **Appendix Vol. XIX, Pages 934-1002** | |
|---|---|---|
| 52.1 | Appendix to Reply to Motion for Preliminary Injunction (September 17, 2024) | A-934 |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-949 |
| | **Appendix Vol. XX, Pages 1003-1041** | |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-1003 |
| 55 | Notice of Appeal as to Order on Motion for Preliminary Injunction (January 27, 2025) | A-1015 |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1017 |
| | **Appendix Vol. XXI, Pages 1042-1077** | |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1042 |
| 60 | Order Denying Motion for Injunction Pending Appeal (February 3, 2025) | A-1069 |

# **EXHIBIT 1**

{1325.002-W0066079.}

Resp. Appx, p. 230

**EXHIBIT**

**1.40**

Ex. 1.40, p. 1 of 87

**Appx. Vol IX**
**A-374**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SHARITY MINISTRIES, INC.,[1] | Case No.: 21-11001 (JTD) |
| Debtor. |  |

## COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN
## OF LIQUIDATION OF SHARITY MINISTRIES INC.

**BAKER & HOSTETLER LLP**
Jorian L. Rose (admitted *pro hac vice*)
Jason I. Blanchard (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, New York 10111

Andrew V. Layden (admitted *pro hac vice*)
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432

- and –

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801

*Counsel for the Debtor and Debtor in Possession*

Dated: November 29, 2021
        Wilmington, Delaware

---

[1] The last four digits of the Debtor's federal tax identification number is 0344. The Debtor's mailing address is 821 Atlanta Street, Suite 124, Roswell, GA 30075.

# **TABLE OF CONTENTS**

I. EXECUTIVE SUMMARY ...................................................................................3

    A.    Introduction.............................................................................................3

    B.    Plan Overview..........................................................................................4

    C.    Questions and Answers About This Combined Plan and Disclosure Statement..................................................................................................4

II. DEFINITIONS AND CONSTRUCTION OF TERMS ......................................10

    A.    Definitions...............................................................................................10

    B.    Interpretation; Application of Definitions and Rules of Construction..................19

III. BACKGROUND ...............................................................................................20

    A.    Nature and History of the Debtor's Business. ......................................20

    B.    Legal Structure and Ownership. ...........................................................20

    C.    Events Leading to the Filing of the Bankruptcy Case. .........................21

    D.    Debtor's Assets ......................................................................................22

    E.    Debtor's Liabilities ................................................................................22

    F.    Current and Historical Financial Condition...........................................23

    G.    Significant Events During the Bankruptcy Case. ..................................23

IV. CONFIRMATION AND VOTING.....................................................................27

    A.    Plan Confirmation Hearing ....................................................................27

    B.    Requirements for Plan Confirmation .....................................................28

    C.    Best Interests of the Creditors Test ........................................................28

    D.    Plan Feasibility.......................................................................................29

    E.    Classification of Claims and Interests....................................................29

    F.    Impaired Claims or Interests .................................................................30

    G.    Eligibility to Vote on this Plan...............................................................30

    H.    Voting Procedure and Deadlines ...........................................................30

    I.    Acceptance of this Plan..........................................................................32

    J.    Elimination of Vacant Classes...............................................................32

V. TREATMENT OF UNCLASSIFIED CLAIMS ..................................................32

    A.    Administrative Expense Claims..............................................................32

    B.    Professional Fee Claims.........................................................................33

    C.    Priority Tax Claims.................................................................................33

{1325.002-W0066336.}
4833-6259-3534.1

i

Resp. Appx, p. 232

Ex. 1.40, p. 3 of 87

**Appx. Vol IX**
**A-376**

VI. CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES ........33

VII. TREATMENT OF CLAIMS AND INTERESTS.....................................................................34

    A.    Classification and Treatment of Claims and Interests ............................................34

VIII. THE LIQUIDATION OF THE DEBTOR..........................................................................37

    A.    Liquidation...........................................................................................................37

IX. PROVISIONS REGARDING THE LIQUIDATING TRUST ...............................................37

    A.    Appointment of the Liquidating Trustee...............................................................37

    B.    Creation of the Liquidating Trust ........................................................................38

    C.    Beneficiaries of Liquidating Trust .......................................................................39

    D.    Vesting and Transfer of Assets to the Liquidating Trust......................................39

    E.    Certain Powers and Duties of the Liquidating Trust, Liquidating Trustee, and Liquidating Trust Committee.........................................................................40

    F.    Post-Effective Date Notice ..................................................................................41

    G.    Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtor ..........................42

    H.    Term of Liquidating Trust ....................................................................................43

    I.    Limitation of Liability of the Liquidating Trustee and Liquidating Trust Committee............................................................................................................43

X. MEANS FOR IMPLEMENTATION .....................................................................................43

    A.    Preservation of Right to Conduct Investigations ...................................................43

    B.    Prosecution and Resolution of Causes of Action and Avoidance Actions ............44

    C.    Effectuating Documents and Further Transactions.................................................44

    D.    Funding of Liabilities and Distributions ................................................................45

    E.    Release of Liens...................................................................................................45

    F.    Exemption from Securities Laws..........................................................................45

    G.    Exemption from Certain Taxes and Fees..............................................................45

    H.    Debtor's Privileges as to Certain Causes of Action...............................................45

    I.    Insurance Policies ................................................................................................46

    J.    Filing of Monthly and Quarterly Reports and Payment of Statutory Fees ............46

    K.    Completion of Services of Professionals ..............................................................46

    L.    Operations of the Debtor Between the Confirmation Date and the Effective Date…....................................................................................................................46

XI. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN...............................47

    A.    Distribution Record Date .....................................................................................47

{1325.002-W0066336.}
4833-6259-3534.1

ii

Resp. Appx, p. 233

Appx. Vol IX
A-377

Ex. 1.40, p. 4 of 87

B.    Method of Payment .................................................................................47

C.    Claims Objection Deadline ......................................................................47

D.    No Distribution Pending Allowance ........................................................47

E.    Reserve of Cash Distributions .................................................................48

F.    Distribution After Allowance ..................................................................48

G.    Delivery of Distributions .........................................................................48

H.    Fractional Dollars; *De Minimis* Distributions.........................................48

I.    Excess Funds.............................................................................................49

J.    Unclaimed Distributions ..........................................................................49

K.    Set-Off…………………………………………………………………49

L.    Postpetition Interest .................................................................................49

M.    Allocation of Distributions Between Principal and Interest ...................49

N.    Prepayment ...............................................................................................50

XII. EXECUTORY CONTRACTS ..............................................................................50

A.    Rejection of Executory Contracts and Unexpired Leases.......................50

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases............50

XIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .............................50

XIV. EXCULPATION, INJUNCTION, AND RELATED PROVISIONS ....................51

A.    Exculpation ..............................................................................................51

B.    Injunction .................................................................................................52

C.    Termination of All Employee and Workers' Compensation Benefits....................53

D.    Exclusions and Limitations on Liability .................................................53

XV. RETENTION OF JURISDICTION .......................................................................53

XVI. MISCELLANEOUS PROVISIONS .....................................................................55

A.    Modification of Plan ................................................................................55

B.    Revocation of Plan ...................................................................................55

C.    Successors and Assigns............................................................................55

D.    Governing Law .........................................................................................56

E.    Reservation of Rights...............................................................................56

F.    Effectuating Documents; Further Transactions .......................................56

G.    Further Assurances...................................................................................56

H.    Dissolution of the Debtor and Closing of the Chapter 11 Case..............56

I.    Dissolution of the Members Committee...................................................57

{1325.002-W0066336.}
4833-6259-3534.1

iii

Resp. Appx, p. 234

Ex. 1.40, p. 5 of 87

Appx. Vol IX
A-378

J.       Service of Documents ................................................................................................57

K.       Filing of Additional Documents ..............................................................................58

XVII. RISKS AND OTHER CONSIDERATIONS .......................................................................58

A.       Bankruptcy Considerations ......................................................................................58

B.       No Duty to Update Disclosures ...............................................................................58

C.       Alternatives to Confirmation and Consummation of the Plan ............................59

D.       Certain Federal Tax Consequences .........................................................................59

XVIII. RECOMMENDATION AND CONCLUSION ..................................................................66

{1325.002-W0066336.}
4833-6259-3534.1

iv

Ex. 1.40, p. 6 of 87

Resp. Appx, p. 235

Appx. Vol IX
A-379

<u>**EXHIBITS**</u>

**Exhibit A:  MEMBER SUMMARY**

**Exhibit B:  LIQUIDATION ANALYSIS**

**Exhibit C:  EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

{1325.002-W0066336.}
4833-6259-3534.1

v

Resp. Appx, p. 236

Ex. 1.40, p. 7 of 87

**Appx. Vol IX
A-380**

# DISCLAIMER

This Combined Plan and Disclosure Statement[2] has been prepared in accordance with section 1125 of the Bankruptcy Code, Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure and Rule 3017-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, and not in accordance with federal or state securities law or other applicable non-bankruptcy law. Persons or Entities trading in or otherwise purchasing, selling, or transferring Claims against the Debtor should evaluate this Combined Plan and Disclosure Statement considering the purpose for which it was prepared.

Pursuant to Local Rule 3017-2, this Combined Plan and Disclosure Statement is being submitted for interim approval only. Contemporaneously with the filing of this Combined Plan and Disclosure Statement, the Debtor is filing a motion to, among other things, schedule a joint hearing to consider final approval of the adequacy of the Disclosure Statement and confirmation of the Plan.

To ensure compliance with IRS circular 230, Holders of Claims and Interests are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in this Combined Plan and Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (c) Holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.

There has been no independent audit of the financial information contained in this Combined Plan and Disclosure Statement except as expressly indicated herein. This Combined Plan and Disclosure Statement was compiled from information obtained from numerous sources believed to be accurate to the best of the Plan Proponent's knowledge, information, and belief. This Combined Plan and Disclosure Statement was not filed with the Securities and Exchange Commission or any state authority and neither the Securities and Exchange Commission nor any state authority has passed upon the accuracy, adequacy, or merits of this Combined Plan and Disclosure Statement. Neither this Combined Plan and Disclosure Statement nor the solicitation of votes to accept or reject the Plan constitutes an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction in which such offer or solicitation is not authorized.

This Combined Plan and Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

---

[2] Referred to herein as the "**Combined Plan and Disclosure Statement**" or the "**Plan**."

{1325.002-W0066336.}
4833-6259-3534.1

1

Resp. Appx. p. 237

Ex. 1.40, p. 8 of 87

**Appx. Vol IX
A-381**

Any projected recoveries to Creditors set forth in this Combined Plan and Disclosure Statement are based upon the analyses performed by the Debtor and its advisors. Although the Plan Proponent and its advisors have made every effort to verify the accuracy of the information presented herein, the Plan Proponent and its advisors cannot make any representations or warranties regarding the accuracy of the information.

Nothing stated herein shall be deemed or construed as an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor, the Member Committee, or any other party. The statements contained herein are made as of the date hereof, unless another time is specified. The delivery of this Combined Plan and Disclosure Statement shall not be deemed or construed to create any implication that the information contained herein is correct at any time after the date hereof.

It is the Plan Proponent's opinion that the treatment of Creditors under the Plan contemplates a greater recovery than that which is likely to be achieved under other alternatives for the Debtor. Accordingly, the Plan Proponent believes that confirmation of the Plan is in the best interests of Creditors and recommend that Creditors support and vote to accept the Plan.

{1325.002-W0066336.}
4833-6259-3534.1

2

Resp. Appx, p. 238

Ex. 1.40, p. 9 of 87

Appx. Vol IX
A-382

# I. EXECUTIVE SUMMARY[3]

## A.    Introduction

This Combined Plan and Disclosure Statement, as may be further amended from time to time, is the culmination of extensive negotiations between the Debtor and the Member Committee resulting in this consensual liquidating Chapter 11 plan for the Debtor and the assets of its estate.

This is a liquidating Plan where Distributions will be made on account of Allowed Claims against the Debtor's Estate.

Under the Plan, Members will be automatically treated as having submitted a claim for the greater of (i) their previously submitted requests to the Debtor for payment of medical expenses that have not yet been satisfied, and (ii) all monthly payments made under the Debtor's programs. Members need not take any action to have a claim for the greater of these two amounts. These amounts will be calculated based on the Debtor's records and there is no guarantee that such records are accurate. If a Member has filed a proof of claim their claim will be the amount set forth in such claim, unless objected to. The ballot provided to each Member contains information regarding the amounts the Debtor believes are owed. **If a Member disagrees with the amount or wishes to file a claim for any other amounts, the Member should file a proof of claim before the General Bar Date of January 4, 2022.** All Member timely filed proofs of claim that have not been objected to will be allowed and handled under the Claims Resolution Procedures under the Liquidating Trust Agreement. The Debtor will contribute all Liquidating Trust Assets to the Liquidating Trust, except for the Post-Petition Payments Reserved Cash which shall be automatically returned to the Members that made payments to the Debtor after July 8, 2021.

The Liquidating Trust will be operated by a Liquidating Trustee and Liquidating Trust Committee and will have standing to pursue all Claims and Causes of Action transferred to the Liquidating Trust. All proceeds of the Liquidating Trust, after payment of its expenses as provided for in the Liquidating Trust Agreement, will be used to satisfy the claims of the Debtor's creditors, including the Members, in accordance with the priorities set forth in the Bankruptcy Code. The Debtor will not continue in business and will be dissolved after occurrence of the Effective Date.

The Debtor and Member Committee support this Plan and encourage the Holders of Impaired Claims to vote in in favor of this Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section XVII.A of this Combined Plan and Disclosure Statement, the Plan Proponent expressly reserves the right to alter, amend, or modify this Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times before substantial consummation thereof.

---

[3] Capitalized terms used but not defined in this section shall have the meaning ascribed to them in Section II herein. While this Executive Summary is believed to be accurate, in the event of an inconsistency or conflict between this summary and the more complete terms set forth in other sections of this Combined Plan and Disclosure Statement, those other sections shall control over the Executive Summary.

B.      **Plan Overview**

Pursuant to the Plan, a Liquidating Trust will be established for the purposes of monetizing the Liquidating Trust Assets and distributing the proceeds of the Liquidating Trust to Creditors in accordance with the priorities set forth in this Plan and the Bankruptcy Code. The Liquidating Trust will be managed by a Liquidating Trustee in accordance with the Liquidating Trust Agreement. The Liquidating Trust will be overseen by a Liquidating Trust Committee composed of no more than five (5) current and former members of Sharity Ministries, Inc., and may include a governmental representative as an ex officio member. The primary purpose of the Liquidating Trust and its Liquidating Trustee shall be (i) administering, monetizing and liquidating the Liquidating Trust Assets, (ii) resolving all Disputed Claims and (iii) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement. The Liquidating Trust Assets will primarily consist of the Debtor's cash on hand on the Effective Date, and Causes of Action against third parties.

**Members are advised to consult the enclosed Member Summary, which is attached to this Plan as Exhibit A, for easy-to-read information about their claims in this process.**

C.      **Questions and Answers About This Combined Plan and Disclosure Statement.**

1.      **What is chapter 11?**

Chapter 11 is the principal business reorganization and liquidation chapter of the Bankruptcy Code. In addition to permitting debtor reorganization and liquidation, chapter 11 promotes equality of treatment for creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the date the chapter 11 case is commenced. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a chapter 11 plan is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holders of the debtor, and any other entity as may be ordered by the bankruptcy court. Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

2.      **Am I entitled to vote on the Plan?**

If you are or were a Member of Sharity Ministries Inc. and/or its predecessor, Trinity Healthshare, Inc., you may vote on the Plan.

Your ability to vote on the Plan depends on what type of Claim you hold. Each category of holders of Claims or Interests, as set forth in Article III of the Plan pursuant to section 1122(a)

of the Bankruptcy Code, is referred to as a "Class." Each Class's respective voting status is set forth below.

| Class | Claim or Interest | Treatment | Entitled to Vote? |
|-------|-------------------|-----------|-------------------|
| 1 | Miscellaneous Secured Claims | Unimpaired. | No. Deemed to accept. |
| 2 | Priority Non-Tax Claims | Unimpaired. | No. Deemed to accept. |
| 3 | Member Claims for Post-July 8, 2021 Monthly Payments[4] | Impaired. | Yes. |
| 4 | Member Claims and General Unsecured Claims | Impaired. | Yes. |
| 5 | Governmental Fines and Penalty Claims | Impaired. | Yes. |
| 6 | Section 510(c) Claims | Impaired. | No. Deemed to reject. |

Holders of Claims in Classes 1 and 2 are unimpaired under the Plan and are thus deemed to accept the Plan. Holders of Claims in Class 6 will receive no distribution on account of such Claims under the Plan and are thus deemed to reject the Plan. Holders of Claims in Classes 3, 4, and 5 are impaired under the Plan and are the Holders of the only Claims entitled to vote to accept or reject the Plan.  Current and former Sharity Members are Holders of Claims in Classes 3 and 4 and may vote.

### 3.    When is the deadline to vote on the Plan?

The Voting Deadline is November 22, 2021 at 5:00 p.m. (prevailing Eastern Time).

### 4.    How do I vote for or against the Plan?

Detailed instructions regarding how to vote on the Plan are contained on the ballots distributed to Holders of Claims that are entitled to vote on the Plan. For your vote to be counted, your ballot must be properly completed, executed, and delivered as directed, so that your ballot or a master ballot including your vote is **actually received** by the Debtor's solicitation agent, BMC Group (the "Solicitation Agent") **on or before the Voting Deadline, *i.e.* November 22, 2021 at 5:00 p.m. (prevailing Eastern Time)**.

---

[4] After this bankruptcy was filed on July 8, 2021 and until July 22, 2021, Sharity continued to receive monthly payments from some Sharity Members who had authorized automatic deductions from their bank accounts or credit cards for monthly payments. Under the Plan, these funds will be returned to Sharity Members in full.  If a Member holding a Class 3 Member Claim also has unpaid medical expenses during that time period, the Member may be entitled to a claim for reimbursement of those expenses, as a Class 4 Member Claim.  Any payment to a Member holding a Class 3 Member Claim will be offset from any payment provided in response to their Class 4 Member Claim.

**5.      Do the Debtor and Member Committee recommend voting in favor of the Plan?**

Yes. The Plan is supported by the Debtor and the Member Committee.

**6.      Why is the Bankruptcy Court holding a Confirmation Hearing?**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan and recognizes that any party in interest may object to Confirmation of the Plan.

**7.      When is the Confirmation Hearing set to occur?**

The Bankruptcy Court has scheduled the Confirmation Hearing for December 2, 2021, at 1:00 p.m. (prevailing Eastern Time). The Confirmation Hearing may be adjourned from time to time without further notice, but you may check https://www.bmcgroup.com/sharity for any adjourned dates. Objections to Confirmation must be filed and served on the Debtors, and certain other parties, by no later than November 22, 2021, at 4:00 p.m. (prevailing Eastern Time) in accordance with the notice of the Confirmation Hearing that accompanies this Plan.

**8.      What is the purpose of the Confirmation Hearing?**

The confirmation of a plan by a bankruptcy court binds the debtor, any issuer of securities under a plan of reorganization, any person acquiring property under a plan of reorganization, any creditor or equity interest Holder of a debtor, and any other person or entity as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code.

**9.      Is the Debtor's business still operating?**

No.  The Debtor's business is no longer operating. The goal of this Plan is to maximize the value of the Debtor's remaining assets and distribute it to creditors including Members, under the priorities set forth in the Bankruptcy Code.

**10.      What will I receive from the Debtor if the Plan is consummated?**

The following chart provides a summary of the anticipated recovery to holders of Claims or Interests under the Plan. Any estimates of Claims or Interests in this Plan may vary from the final amounts allowed by the Bankruptcy Court. Your ability to receive distributions under the Plan depends on the Debtor's ability to obtain Confirmation and meet the conditions necessary to consummate the Plan.

THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.

Except to the extent that a Holder of an Allowed Claim or Allowed Interest has agreed to less favorable treatment of such Allowed Claim or Allowed Interest, as applicable, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment

described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

| Class | Type | Estimated Amount of Claims | Recovery Estimate | Treatment |
|---|---|---|---|---|
| 1 | Miscellaneous Secured Claims | $0.00 | 100% | Unimpaired. Except to the extent that a Holder of an Allowed Miscellaneous Secured Claim agrees to less favorable treatment, the Holder of such claim will receive or retain: (i) the collateral securing such Allowed Miscellaneous Secured Claim ; (ii) Cash in an amount equal to the value of the collateral securing such Allowed Miscellaneous Secured Claim ; (iii) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered Unimpaired; or (iv) such other treatment as to which the holder of an Allowed Miscellaneous Secured Claim agrees. |
| 2 | Priority Non-Tax Claims | $0.00 | 100% | Unimpaired. Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, the Holder of such a claim will receive (i) payment in full in Cash (without post-petition interest or penalty) on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such other treatment as to which the holder of an Allowed Priority Non-Tax Claim agrees. |
| 3 | Member Claims for Post-July 8, 2021 Monthly Payments | $1,178,866 | 100% | Impaired. Each holder of an Allowed Class 3 Member Claim for Post-July 8, 2021 Monthly Payments shall receive a full refund, without interest, paid as soon as reasonably practicable following the Effective Date. Disputed Member Claims for Post-July 8, 2021 Monthly Payments shall be subject to resolution under the Claims Resolution Procedures. Member Claims for uncovered medical expenses between July 8-22, 2021 shall be Class 4 Claims. *See below.* |

| 4 | Member Claims and General Unsecured Claims | Unknown. The Debtor anticipates Class 4 Claims exceed $300 million. | 0-10% | Impaired. Each holder of an Allowed Class 4 General Unsecured Claim shall receive a Pro Rata Share of Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from the Debtor's Liquidating Trust Assets. For the avoidance of doubt, Class 4 General Unsecured Claims, shall include both Unpaid Member Medical Claims and Other Member Claims (including Member Claims for monthly payments), but shall not include Member Claims for Post-July 8, 2021 Monthly Payments (which are classified in Class 3). Disputed Claims asserted by Members shall be subject to resolution under the Claims Resolution Procedures. To the extent a Member receives payment from amounts recovered by a Governmental Unit, such amounts shall be credited against the *pro rata* amount the Member would otherwise recover. |
| 5 | Governmental Fines and Penalty Claims | Unknown | 0% | Impaired. Each holder of an Allowed Class 5 Governmental Fines and Penalty Claim shall receive a Pro Rata Share of Residual Interests in the Liquidating Trust entitling the Holder to a receive a Pro Rata Share of all Available Trust Cash derived from the Debtor's Liquidating Trust Assets after payment in full of all Class 4 Claims. |
| 6 | Section 510(c) Claims | Unknown | 0% | On the Effective Date, all Allowed Section 510(c) Claims shall be fully extinguished and discharged without any further action. Holders of Allowed Section 510(c) Claims shall not be entitled to receive or retain any property under the Plan. |

## 11.   Is there a preferable alternative to my treatment under the Plan?

As described herein, the Debtor has engaged in comprehensive settlement discussions with certain parties in interest, including the Member Committee. The Debtor is not aware of any actionable alternative or settlement proposal at this time that would result in greater recoveries to Holders of Claims and Interests than those described herein. Moreover, the Plan embodies a global resolution supported by the Member Committee. The Debtor continues to believe that the Plan represents the most feasible, highest and otherwise best, value-maximizing alternative. For all of these reasons, the Debtor and Member Committee recommend that you vote to accept the Plan.

**12.     Are any regulatory approval required to consummate the Plan?**

There are no known federal or state regulatory approvals that are required to consummate the Plan at this time. However, to the extent such any such regulatory approvals or other authorizations, consents, rulings, or documents are necessary to implement and effectuate the Plan, it is a condition precedent to the Effective Date that they be obtained.

**13.     What happens to my recovery if the Plan is not confirmed or does not go effective?**

In the event that the Plan is not confirmed or does not go effective, an alternative plan may be proposed to the Holders of Claims, or this case may be dismissed or converted to Chapter 7. Based upon the analyses conducted by the Debtor at this time, the Debtor and the Member Committee have concluded that this Plan provides the best opportunity for Holders of Claims, including current and past Sharity Members, to maximize the amounts they may receive.  For a more detailed description of the consequences of an extended chapter 11 case, or of a liquidation scenario, *see* Section IV entitled "Confirmation and Voting" and the Liquidation Analysis attached hereto as **Exhibit B**.

**14.     What is meant by "Confirmation," "Effective Date," and "Consummation?"**

"Confirmation" of the Plan refers to approval of the Plan by the Bankruptcy Court. Confirmation of the Plan does not guarantee that you will receive the distribution indicated under the Plan. After Confirmation of the Plan by the Bankruptcy Court, there are conditions that need to be satisfied or waived so that the Plan can go effective. Initial distributions to Holders of Allowed Claims will only be made on the date the Plan becomes effective—the "Effective Date"—or as soon as reasonably practicable thereafter, as specified in the Plan. *See* Section XIII entitled "Conditions Precedent to the Effective Date" for a discussion of the matters that must be resolved prior to the Plan becoming effective.

**15.     Is there potential litigation related to the Plan?**

Parties in interest may object to the approval of this Disclosure Statement and may object to Confirmation of the Plan as well.  Those objections potentially could give rise to litigation.  In the event that it becomes necessary to confirm the Plan over the rejection of certain Classes, the Debtors may seek confirmation of the Plan notwithstanding the dissent of such rejecting Classes. The Bankruptcy Court may confirm the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, which allow the Bankruptcy Court to confirm a plan that has been rejected by an impaired Class if it determines that the Plan satisfies section 1129(b) of the Bankruptcy Code.

**16.     How will the preservation of the Causes of Action impact my recovery under the Plan?**

The Plan provides that the Liquidating Trust will be vested with all Causes of Action held by the Debtor on the Petition Date.

The Liquidating Trust may pursue such Causes of Action, as appropriate, in accordance with Liquidating Trustee's judgment. **No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Cause of Action against it as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against it. Except as specifically released under the Plan or pursuant to a Final Order, the Debtor and the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity.** Unless any Causes of Action of the Debtor against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Liquidating Trust expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

### 17. Who do I contact if I have additional questions with respect to the Plan?

If you have any questions regarding this Plan, please contact the Debtor's Solicitation Agent, BMC Group, via one of the following methods:

BMC Group Inc.
Telephone: 1-888-909-0100
Website: www.bmcgroup.com/sharity
Email: sharity@bmcgroup.com

If you are a Sharity Member, you may also contact counsel for the Member Committee:

Sirianni Youtz Spoonemore Hamburger
Website: www.syshlaw.com
Email: Sharitymemberscommittee@sylaw.com

## II. DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Definitions

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1. "**Administrative Expense Claim**" means Claims that have been timely filed, pursuant to the deadline and procedures set forth in any bar date order or Confirmation Order, as applicable, or late filed Claims otherwise allowed by Final Order for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) administrative expense claims Allowed under section 503(b)(9) of the Bankruptcy Code (if any); and (c) Professional Fee Claims. For the avoidance of doubt, pursuant to Local Rule 3002-1, the

government shall not be required to file any proof of claim or application for allowance for any claims covered by section 503(b)(1)(B), (C), or (D).

2.      "**Administrative Expense Claim Bar Date**" shall be thirty days after service of the Notice of Effective Date.

3.      "**Aliera Companies**" means The Aliera Companies, Inc., formerly known as Aliera Healthcare, Inc., and any affiliated or related entities, including but not limited to (i) Advevo, LLC; (ii) Ensurian Agency, LLC; (iii) Tactic Edge Solutions, LLC; and (iv) USA Benefits & Administrators, LLC.

4.      "**Aliera Contracts**" means, collectively, any contract between the Debtor and any of the Aliera Companies.

5.      "**Allowed**" means, with respect to Claims:  (a) any Claim for which a proof of Claim was Filed (or a Claim that does not require the filing of a proof of Claim as provided for under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court,); (b) any Claim which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no superseding proof of Claim has been Filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; <u>provided</u> that with respect to any Claim described in clauses (a) and (b), such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance was timely filed (including but not limited to, an objection relating to the timeliness of the filing of the proof of claim), or if such timely objection was filed, the Claim is subsequently Allowed by a Final Order or through an agreement between the claimant and the Liquidating Trustee.

6.      "**Allowed Priority Tax Claims**" means a Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

7.      "**Allowed Secured Claim**" means a claim secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as a secured claim under § 506 of the Code.

8.      "**Allowed Unsecured Claim**" means an Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

9.      "**Assets**" means all tangible and intangible assets of every kind and nature of the Debtor and its Estate within the meaning of section 541 of the Bankruptcy Code.

10.     "**Available Trust Cash**" means proceeds of the Liquidating Trust's assets that are available for distribution to holders of Beneficial Interests in the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

11.     "**Avoidance Actions**" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estates under chapter 5 of the

Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, voidable transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions..

12.     "**Ballot**" means the ballot on which each Holder of a Claim entitled to vote to accept or reject this Plan casts such vote.

13.     "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time.

14.     "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Case.

15.     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

16.     "**Beneficiary**" means, with respect to a Liquidating Trust, any Holder of an Allowed Claim that may, or that is entitled to, receive a Distribution from the Liquidating Trust under the terms of this Plan.

17.     "**Beneficial Interests**" means the uncertificated beneficial interests in the Liquidating Trust evidencing the right of each Holder of an Allowed Claim that may, or that is entitled to, receive a Distribution from the Liquidating Trust under the terms of this Plan.

18.     "**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

19.     "**Cash**" means legal tender of the United States of America and equivalents thereof.

20.     "**Causes of Action**" means all claims, actions (including the Avoidance Actions), causes of action (including commercial tort claims), choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or the Estate against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted.

21.     "**Chapter 11 Case**" means this case under chapter 11 subchapter V of the Bankruptcy Code in which Sharity Ministries Inc. is the Debtor and which case is currently pending in the Bankruptcy Court.

22.     "**Claim**" means any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future

Ex. 1.40, p. 19 of 87

Resp. Appx. p. 248                            **Appx. Vol IX
A-392**

performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5). Under the Plan, all Members have Allowed Claims for (i) uncovered medical expenses and/or for a return of monthly payments, whichever is greater, based upon the records maintained by Sharity, or (ii) if they have filed a proof of claim, the amount set forth in the proof of claim unless objected to. Members have the right to submit additional claims they believe exist by filing a proof of claim by the General Bar Date.

23.    "**Claims Agent**" means BMC Group, having the address of BMC Group, Attn: Sharity Ministries Claims Processing, PO Box 90100, Los Angeles, CA 90009 and the following website: https://www.bmcgroup.com/sharity.

24.    "**Claims Objection Deadline**" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion.

25.    "**Claims Resolution Procedures**" means the process by which a Holder of Claims may Dispute the decision of the claims processor as to the Allowed amount of a Claim or whether a Claim is Allowed, which shall be set forth in the Liquidating Trust Agreement. Any such dispute shall be submitted for final and binding arbitration before (ret.) Judge George Finkle of Judicial Dispute Resolution in Seattle, Washington, and Members may have the right to seek review of such decision as may be set forth in the Liquidating Trust Agreement. The type and manner of the arbitration (in-person, by phone or video conference, or on the papers), shall be determined by the arbitrator in his sole discretion. Expenses of the arbitrator shall be paid from the Liquidating Trust. The arbitration provisions shall not apply to the States' Class 5 Claims which shall be subject to review by the Bankruptcy Court.

26.    "**Class**" means any group of substantially similar Claims or Interests classified by this Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

27.    "**Collateral**" means any property or interest in property of the estate of the Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

28.    "**Clerk**" means the clerk of the Bankruptcy Court.

29.    "**Combined Plan and Disclosure Statement**" or "**Plan**" means this *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Sharity Ministries Inc.*, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time through substantial consummation thereof, including the Plan Supplement.

30.    "**Creditor**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(10).

31.    "**Debtor**" or "**Debtor-in-Possession**" means Sharity Ministries, Inc.

{1325.002-W0066336.}                                      13

Resp. Appx, p. 249                                                                      Ex. 1.40, p. 20 of 87

**Appx. Vol IX
A-393**

32.     "**Disputed**" means any Claim that is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, or which is objected to in whole or in part prior to the Claims Objection Deadline and has not been Allowed in whole or in part by settlement or Final Order.

33.     "**Disputed Claims Reserve**" means the reserve established by the Liquidating Trustee for the benefit of Holders of Disputed Claims.

34.     "**Distribution**" means any distribution to Holders of Allowed Claims, or their designated agents, or Beneficiaries, as applicable, under or pursuant to this Plan and/or the Liquidating Trust Agreement.

35.     "**Distribution Record Date**" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Effective Date.

36.     "**Docket**" means the docket in the Chapter 11 Case maintained by the Clerk.

37.     "**Effective Date**" means the date on which the conditions specified in Section XIV of this Plan have been satisfied or waived and the transactions contemplated hereunder have been consummated. The Debtor shall file a Notice of Effective Date (as defined below) on the Docket indicating the calendar date which corresponds to the Effective Date.

38.     "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

39.     "**Estate**" means the estate of the Debtor created upon the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

40.     "**Exculpated Parties**" means, collectively, (i) the Subchapter V Trustee and any professionals retained by the Subchapter V Trustee to the extent such retention(s) were approved by the Bankruptcy Court, (ii) the Member Committee in their official capacity and any professionals retained by the Member Committee to the extent such retention(s) were approved by the Bankruptcy Court, and only to the extent such professionals acted on behalf of the Member Committee,  (iii) the professionals retained by the Debtor under sections 327, 328, 363 of the Bankruptcy Code that were approved by the Bankruptcy Court: (a) Baker & Hostetler LLP as its legal counsel [D.I. 138]; (b) Landis Rath & Cobb LLP as co-counsel [D.I. 135]; (c) SOLIC Capital Advisors, LLC [D.I. 140]; (d) the following interim officers: Neil Luria as Chief Restructuring Officer, Raoul Nowitz as Assistant Chief Restructuring Officer, and Kevin Tavakoli as Director of Finance; (e) BMC Group, Inc. as administrative advisor [D.I. 136], and (iv) the three independent directors of the Debtor specifically, 1. Mr. Chris Sizemore, 2. Mr. Joe Handy, and 3. Mr. Stephen Vault.

41.     "**Exculpation Timeframe**" means the time period from the Petition Date through and including the Effective Date.

42.     "**Executory Contract**" means any executory contract or unexpired lease, within the meaning of section 365 of the Bankruptcy Code, as of the Petition Date between the Debtor and any Entity.

43.    "**File**," "**Filed**" or "**Filing**" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case.

44.    "**Final Order**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which (a) any appeal that has been taken has been finally determined and dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

45.    "**General Bar Date**" means January 4, 2022, the deadline for each Person or Entity, including without limitation, individuals, partnerships, corporations, joint ventures and trusts, other than Governmental Units, to file a proof of Claim against the Debtor for a Claim that arose prior to the Petition Date.

46.    "**General Unsecured Claim**" means Claims against any Debtor that is (i) not a Secured Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Member Claim for Post-July 8, 2021 Monthly Payments, Governmental Fines and Penalty Claim, or Section 510(c) Claim, or (ii) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.  Member Claims other than those for post-July 8, 2021 monthly payments are General Unsecured Claims.

47.    "**Governmental Fines and Penalty Claim**" means Claims against the Debtor by any Governmental Unit for fines or penalties.

48.    "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

49.    "**Governmental Unit Bar Date**" means January 4, 2022, the deadline for Governmental Units to file a proof of Claim against the Debtor for a Claim that arose prior to the Petition Date.

50.    "**Holder**" means the legal or beneficial holder of any Claim.

51.    "**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

52.    "**Insurance Policies**" means all insurance policies of the Debtor, including any D&O Policies.

53.    "**Interim Compensation Order**" means the Bankruptcy Court's August 10, 2021 Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [D.I. 134].

54.    "**IRC**" means the Internal Revenue Code of 1986, as amended.

55.    "**IRS**" means the Internal Revenue Service.

56.      "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

57.      "**Liquidating Trust Committee**" means the Committee, composed of no more than five (5) current and former members of Sharity Ministries, Inc. and any designated governmental representative. The Members Committee shall serve as the initial Liquidating Trust Committee, in accordance with the Liquidating Trust Agreement.  The Liquidating Trust Committee will oversee the activities of the Liquidating Trustee and Liquidating Trust Advisors to act in the best interest of the current and former Sharity Members.

58.      "**Liquidating Trust**" means the trust that will come into existence upon the Effective Date and into which all of the Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidating Trust Agreement.

59.      "**Liquidating Trust Advisors**" means any firm(s) or individual(s) retained by a Liquidating Trustee to serve as a Liquidating Trustee's legal counsel or provide other professional services in connection with the performance of a Liquidating Trustee's duties and responsibilities under this Plan and a Liquidating Trust Agreement. For the avoidance of doubt, the Liquidating Trust Advisors can include any firm(s) or individual(s) retained by the Debtor and/or Members Committee during the Chapter 11 Case.

60.      "**Liquidating Trust Agreement**" means the agreement governing the Liquidating Trust, dated on or about the Effective Date, substantially in the form included in the Plan Supplement.

61.      "**Liquidating Trust Assets**" means all Assets of the Debtor and its Estate as of the Effective Date, excluding the Professional Fee Claim Reserve and Assets previously distributed and not otherwise subject to recovery.

62.      "**Liquidating Trust Operating Expenses**" means the overhead and other operational expenses of the Liquidating Trust including, but not limited to, (i) reasonable compensation for the Liquidating Trustee in accordance with the Liquidating Trust Agreement, (ii) costs and expenses incurred by the Liquidating Trustee in administering the Liquidating Trust, (iii) Statutory Fees that may become payable by the Liquidating Trust after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidating Trust Advisors.

63.      "**Liquidating Trustee**" means the person or Entity identified in the Liquidating Trust Agreement and appointed by the Members Committee, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust, and any successor subsequently appointed pursuant to the Liquidating Trust Agreement.

64.      "**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

65.      "**Medical Claim(s)**" means the mechanism by which Members submit for payment their expenses for medical services, also known as "share requests."  This includes health care claims submitted for payment by medical providers to Sharity on behalf of Members.

66.     "**Member**" means any individual who, at any time, was enrolled in Sharity, or its predecessor, Trinity Healthcare, Inc.'s health plans.

67.     "**Member Claim Allocation**" means the greater of either a Member's Refund Claims, or a Member's total Unpaid Medical Claims, each as set forth in the Debtor's books and records.

68.     "**Member Claim for Post-July 8, 2021 Monthly Payments**" means a claim held by a Member on account of money paid to Sharity after July 8, 2021.

69.     "**Member Committee**" means the Official Committee of Members appointed by the U.S. Trustee in the Chapter 11 Case on August 20, 2021 [D.I. 163].

70.     "**Member Refund Claim**" means a claim held by a Member in the amount of all monthly payments made to Sharity by such Member.

71.     "**Miscellaneous Secured Claims**" means Claims (or portions thereof), except Priority Tax Claims, that are secured by a lien on property in which the Debtor's Estate has an interest, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

72.     "**Notice of Effective Date**" means a notice to be Filed with the Bankruptcy Court by the Debtor upon the occurrence of all the conditions precedent to the Effective Date set forth in Section XII of this Combined Plan and Disclosure Statement.

73.     "**Order**" means an order, opinion, or judgment of the Bankruptcy Court as entered on the Docket.

74.     "**Other Member Claim**" means any Claim filed by a Member other than an Unpaid Medical Claim, Member Refund Claim or Member Claim for Post-July 8, 2021 Payments.

75.     "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

76.     "**Petition Date**" means July 8, 2021, the date the Chapter 11 Case was commenced.

77.     "**Plan Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order on the Docket.

78.     "**Plan Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court to consider approval and confirmation of this Combined Plan and Disclosure Statement, as such hearing may be adjourned or continued from time to time.

79.     "**Plan Confirmation Order**" means an order entered by the Bankruptcy Court approving and confirming this Combined Plan and Disclosure Statement under section 1125 of the Bankruptcy Code.

{1325.002-W0066336.}                    17

Resp. Appx, p. 253                    **Appx. Vol IX**
                                      **A-397**

Ex. 1.40, p. 24 of 87

80.     "**Plan Documents**" means this Combined Plan and Disclosure Statement, the Plan Supplement, and all exhibits and schedules attached to any of the foregoing.

81.     "**Plan Proponent**" means the Debtor.

82.     "**Plan Supplement**" means the appendix of any schedules or exhibits that may be filed at least fourteen (14) days prior to the deadline for submission of Ballots to vote to accept or reject a plan. The Plan Supplement will be filed with the Bankruptcy Court and served on the required notice parties and shall be made available on the Debtor's claims agent's website (https://www.bmcgroup.com/sharity).

83.     "**Post-Petition Payments Reserve**" means all amounts paid to the Debtor by Members on or after July 8, 2021, in the approximate amount of $1,178,866.

84.     "**Priority Non-Tax Claim**" means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a).

85.     "**Priority Tax Claim**" means an unsecured Claim, or a portion thereof, that is entitled to priority under section 507(a)(8) of the Bankruptcy Code, except for Texas Taxing Authority Secured Claims.

86.     "**Privilege**" means the attorney client privilege, work product protections or other immunities (including without limitation those related to a common interest or a joint defense with other parties to the extent set forth in such documents), or protections from disclosure of any kind held by the Debtor or Estate as permitted under the Federal Rule of Evidence 501 and all other applicable law.

87.     "**Professional**" means any professional person employed by the Debtor, the Subchapter V Trustee, or the Members Committee in the Chapter 11 Case pursuant to sections 327, 363, or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

88.     "**Professional Fee Claim**" means a Claim under Bankruptcy Code Sections 328, 330(a), 331, or 503 for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Case.

89.     "**Professional Fee Claim Reserve**" means the reserve established by the Debtor and maintained pursuant to the terms of the Plan and the Confirmation Order to be distributed to holders of Allowed Professional Fee Claims.

90.     "**Pro Rata Share**" means, with respect to any Distribution on account of any Allowed Claim, the ratio that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in the same Class.

91.     "**Rejection Damages Claim**" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by the Debtor, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

{1325.002-W0066336.}                                  18

Resp. Appx, p. 254                                 Ex. 1.40, p. 25 of 87

Appx. Vol IX
A-398

92.      "**Rejection Notice**" means a notice Filed and served by the Debtor to counterparties to Executory Contracts upon the Debtor's determination that one or more of the Executory Contracts should be rejected.

93.      "**Residual Interests**" means the uncertificated residual beneficial interests in the Liquidating Trust evidencing the right of each Holder of an Allowed Governmental Fines and Penalty Claim that may, or that is entitled to, receive a Distribution from the Liquidating Trust under the terms of this Plan.

94.      "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

95.      "**Section 510(c) Claim**" means a Claim against the Debtor that, under principles of equitable subordination, is subordinate for purposes of distribution of all or part of an allowed claim.

96.      "**Sharity**" means the Debtor in this bankruptcy case, Sharity Ministries Inc. and its predecessor, Trinity Healthshare, Inc.

97.      "**Statutory Fees**" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

98.      "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

99.      "**Unclaimed Distribution Deadline**" means three (3) months from the date the Liquidating Trustee makes a Distribution.

100.     "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

101.     "**Unpaid Medical Claim**" means a Claim for a Member's gross, unpaid Medical Claims (share requests).

102.     "**Voting Deadline**" means November 22, 2021, at 5:00 p.m. (prevailing Eastern Time).

103.     "**Voting Procedures**" means the plan voting procedures approved by the Bankruptcy Court in its *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 263], which provide, with some exceptions, that each claim in Class 3 and 4 are temporarily allowed for voting purposes at $1, unless such claim is objected to before confirmation.

B.      **Interpretation; Application of Definitions and Rules of Construction**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine,

feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in this Combined Plan and Disclosure Statement are to the respective section in, Article of, Schedule to, or Exhibit to this Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in this Combined Plan and Disclosure Statement. The rules of construction contained in Bankruptcy Code Section 102 shall apply to the construction of this Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Combined Plan and Disclosure Statement. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Combined Plan and Disclosure Statement unless otherwise set forth herein or provided by the Bankruptcy Court.

## III.  BACKGROUND

On the Petition Date, the Debtor Filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V. As explained further below, by reason of the consensual stipulation and order entered at D.I. 229, the case is now a standard chapter 11 case.

**A.    Nature and History of the Debtor's Business.**

Sharity is a Section 501(c)(3) nonprofit corporation that operated as a Health Care Sharing Ministry ("HCSM") until about July 19, 2021. Sharity no longer operates as a going concern. It exists only to wind up its affairs and liquidate its assets for the benefit of its creditors, including its Members.

Sharity was incorporated in Delaware in 2018 under the name Trinity Healthshare, Inc. and later amended its certificate of incorporation to change its name to Sharity Ministries, Inc. From the time of its formation until it ceased operations, Sharity operated as a HCSM, a health plan intended to share health care expenses among persons of similar and sincerely held religious beliefs. Members participated in Sharity's HCSM by submitting monthly payments to Sharity to assist other Members with their medical expenses. Whether Sharity operated as a genuine HCSM is disputed by certain state regulators and members in litigation.

**B.    Legal Structure and Ownership.**

Sharity is a Section 501(c)(3) nonprofit corporation. As a result, it has no stock and no person or entity owns it. Sharity is operated by its Board of Directors, which as of the Petition Date consisted of the following people: Christopher Sizemore (Chairman), Stephen Vault, Joseph Handy, A. Joseph Guarino III, and William "Rip" Thead III. Messrs. Sizemore, Vault, and Handy are the three independent directors of Sharity. Mr. Sizemore joined the Board in 2019 and Messrs.

Vault and Handy joined in 2020. Since the Petition Date, Mr. Thead and Mr. Guarino resigned from the Board of Directors on July 23, 2021, and August 9, 2021, respectively.

## C.   Events Leading to the Filing of the Bankruptcy Case.

From its inception, Sharity historically contracted with Aliera and its wholly owned subsidiaries to provide various management and administrative services to support Sharity's program operations. Sharity was previously party to a single contract with Aliera Healthcare Inc. n/k/a The Aliera Companies, Inc. to provide those services. Effective January 1, 2020, Sharity was a party to a series of vendor agreements with the Aliera Companies, the Aliera Contracts, each with an initial 5-year term.

Under the Aliera Contracts, Sharity retained certain of the Aliera Companies to, among other things, provide (i) administrative services, (ii) information technology related services, (iii) marketing, brand development, and sale services, and (iv) regulatory and compliance services.

Before the bankruptcy, various governmental units and private parties brought investigations, claims, or lawsuits against the Aliera Companies and Sharity itself, alleging, among other things, that Sharity's health plans were unauthorized health insurance and not HCSM plans. Those cases alleged, among other matters, that the payments to the Aliera Companies were in excess of amounts appropriately allowed for such services and, as such, left very little available to be used to pay Members' requests for sharing of medical expenses.  A number of courts and/or agencies issued orders against the Aliera Companies and/or Sharity requiring them to cease and desist from offering health care sharing programs and withdrawal from the health care markets in a number of states. A list of state regulatory actions against the Aliera Companies and Sharity can be found at http://www.symslaw.com/aliera-and-trinity-litigation/stateregulation.

Sharity's involvement in these matters and the findings of the courts and agencies negatively impacted Sharity's reputation, financial position, and membership levels. At the time it filed for bankruptcy, Sharity had been investigating whether a backlog of its Members' share requests had not been paid while it was operating under the Aliera Contracts. Also, Sharity had been investigating whether the Aliera Companies owed amounts that should have been paid to Members during such prior contract terms, and/or owed money or damages directly to Sharity.

Prior to bankruptcy and the decision to cease operations, Sharity commenced a strategic process by which it (a) solicited third party interest to enter into agreements to provide administrative, technological, and other services to Sharity, and (b) analyzed its operational footprint to determine the locations in which it could most effectively operate (the "Strategic Process"). According to the Debtor, the goal of the Strategic Process was to benefit the Debtor's membership by maximizing the efficiency of Sharity's operations, such that a greater percentage of each dollar shared by a member would ultimately be used to assist other members with their medical expenses. One advantage of a bankruptcy filing was that Sharity could terminate its contracts with Aliera more quickly.

As a result of the Strategic Process, Sharity identified certain third-party service providers (the "TPA and Related Vendors") that Sharity's management believed could provide a high-

quality level of service at more competitive prices than the Aliera Companies and decided to reduce the number of states in which it previously operated.

At the time Sharity filed for bankruptcy, its original goal was to facilitate the transition to the TPA and Related Vendors and to reorganize its operations while (i) continuing to operate as a going concern, (ii) protecting its valuable member relationships, and (iii) facilitating the payment of eligible member Medical Claims (share requests). According to the terms of the Aliera Contracts, Sharity does not have the ability to terminate those contracts without significant termination periods. Absent a bankruptcy filing, Sharity did not have the ability to terminate the Aliera Companies without multi-year termination periods.

As explained below, the Debtor determined during the Chapter 11 Case that reorganization was not feasible and in the best interest of Members. As such, the Debtor ceased accepting contributions from Members and has segregated all funds received from Members after the Petition Date.

**D.     Debtor's Assets**

On the Petition Date, Sharity had approximately $4.8 million in cash on hand. Sharity also owns assets that have minimal or unknown value, such as (i) prepaid expenses and security deposits of approximately $971,744 (inclusive of professional retainers), (ii) miscellaneous office furniture and supplies with an unknown value, (iii) the trademark "Sharity Ministries" and various website domain names with unknown values, and (iv) its membership list with an unknown value. The Debtor's assets also include potential claims or causes of action against the Aliera Companies and others with an unknown value. All claims and causes of action shall vest in the Liquidating Trust on the Effective Date so that the Liquidating Trustee may prosecute such claims and causes of action for the benefit of the Members and Creditors.

**E.     Debtor's Liabilities**

Sharity does not believe that any person holds a secured claim against it or that it has any Priority Unsecured Claims. Currently, Sharity's liability to its primary stakeholders, the Members, is unknown. Based on data produced to the Debtor by the Aliera Companies during the Chapter 11 Case, the Debtor learned it may have liability for Unpaid Member Medical Claims that had been approved for sharing of more than $50 million. The Debtor's investigation of such amounts is ongoing. As to other unsecured liabilities, Sharity's records reflects that it has liquidated Unsecured Claims of a de minimis amount (not including disputed Unsecured Claims) and is facing substantial Governmental Fines and Penalty Claims. The General Bar Date is January 4, 2022, and Unsecured Claims of approximately $10.3 million have been filed against the Debtor as of September 28, 2021. This amount excludes Claims filed by the Aliera Companies, all of which are disputed by the Debtor, and an unliquidated class action claim seeking one trillion dollars in damages. Inasmuch as the Debtor intends to bring an adversary proceeding for the subordination of all claims of the Aliera Companies, it intends to object to any request by the Aliera Companies for payment of any claims as Administrative Expenses and/or General Unsecured Claims.

**F.**      <u>**Current and Historical Financial Condition.**</u>

Copies of Sharity's most recent financial statements were filed with the Court on the Petition Date. Over the past three years, Sharity's approximate gross revenues were as follows: $68.8 million (2019), $127 million (2020), and $33.8 million (2021 year to Petition Date - or approximately $64.1 million annualized).

Since the Petition Date, the Debtor has ceased all operations. The Debtor has determined that the only feasible path forward is for the Debtor to liquidate and wind down its affairs.

**G.**      <u>**Significant Events During the Bankruptcy Case.**</u>

     **1.**      **First Days Orders.**

On the Petition Date, Sharity filed several "first day" motions with the Bankruptcy Court seeking various forms of relief designed to facilitate a smooth transition for the Sharity into Chapter 11. Following a hearing, the Bankruptcy Court entered the following orders:

- o *Final Order (I) Authorizing the Debtor to (A) Pay Pre-Petition Employee Wages, Salaries, Benefits, and Reimbursable Expenses, and Other Associated Obligations, and (B) Continue the Post-Petition Maintenance of Employee Benefit Programs, Policies, and Procedures; and (II) Granting Related Relief.* [D.I. 133].

- o *Final Order (I) Authorizing the Debtor to (A) Continue to Operate its Cash Management System, (B) Maintain its Bank Accounts and Pay Bank and Processor Charges, and (C) Maintain Existing Business Forms; (II) Granting a Limited Waiver of the Requirements of Section 345(b) of the Bankruptcy Code, to the Extent Applicable; and (III) Granting Certain Other Related Relief.* [D.I. 137].

- o *Interim Order Authorizing the Debtor to Continue Paying Share Requests of its Members in Furtherance of its Charitable Mission.* [D.I. 50].

- o *Order (i) Approving Scope of Notice with Respect to Debtor's Members, (ii) Approving Opt-In Procedure for Additional Notice, and (iii) Granting Related Relief* [D.I. 160].

     **2.**      **Employment of Professionals and Advisors.**

Sharity has also sought and obtained Bankruptcy Court approval of Sharity's employment of various professionals and advisors to assist with this Chapter 11 Case. Specifically, the Bankruptcy Court has approved Sharity's retention of the following professionals and advisors: (i) Baker & Hostetler LLP as its legal counsel [D.I. 138]; (ii) Landis Rath & Cobb LLP as co-counsel [D.I. 135]; (iii) SOLIC Capital Advisors, LLC to provide services and certain interim officers, including Neil Luria as Chief Restructuring Officer, Raoul Nowitz as Assistant Chief Restructuring Officer, and Kevin Tavakoli as Director of Finance [D.I. 140]; and (iv) BMC Group, Inc. as its claims and noticing agent and administrative advisor [D.I. 40, 136].

{1325.002-W0066336.}      23      Ex. 1.40, p. 30 of 87

Resp. Appx, p. 259      **Appx. Vol IX**
**A-403**

### 3.    Assumption or Rejection of Certain Contracts.

In order to transition from partnering with the Aliera Companies to the TPA and Related Vendors, on July 8, 2021, Sharity filed a motion to authorize the rejection of all or substantially all of the Aliera Contracts as of the Petition Date.   Following a hearing on the motion and discussions with The Aliera Companies, the United States Trustee and others, the parties submitted an agreed proposed order on or about August 18, 2021.  The Bankruptcy Court entered the agreed-upon *Order (i) Authorizing the Debtor to Reject Certain Executory Contracts Nunc Pro Tunc to the Petition Date or Later Specified Rejection Date, and (ii) Granting Certain Related Relief* [D.I. 161] on August 19, 2021.

On August 18, 2021, after the Debtor decided to cease operating and wind up its operations, the Debtor filed a *Second Omnibus Motion for Entry and Order (I) Authorizing the Debtor to Reject, as of a Specified Rejection Date, (A) Certain Executory Contracts, and (B) that Certain Unexpired Lease; and (II) Granting Related Relief* [D.I. 156], seeking to reject contracts that were not necessary for the wind down of the Debtor's affairs.  The Bankruptcy Court entered an order granting this motion on September 7, 2021 [D.I. 182].

On September 22, 2021, the Debtor filed a *Third Omnibus Motion for Entry and Order (I) Authorizing the Debtor to Reject Certain Executory Contracts; and (II) Granting Related Relief* [D.I. 204], seeking to reject additional contracts that were not necessary for the wind down of the Debtor's affairs.  The Bankruptcy Court entered an order granting this motion on October 4, 2021, [D.I. 227].

### 4.    Stay of Pending Litigation.

As set forth in the Schedules and First Day Affidavit, as of the Petition Date, Sharity was a party to a number of investigations, claims, or lawsuits.  The automatic stay under section 362(a) of the Bankruptcy Code had the immediate effect of halting a significant number such actions against Sharity, allowing Sharity to save money that would otherwise have been used on legal expenses.  It does not stay the pursuit of governmental police and regulatory actions based on an exception in Section 362(b)(4) of the Bankruptcy Code, but the governmental entities with pending litigation have been voluntarily deferring actions therein in order to facilitate the prompt resolution of this case and the beginning of payments to Members.

### 5.    Claims Process and Bar Date.

1.    **Schedules and Statements.** On July 8, 2021, Sharity filed its Schedules with the Bankruptcy Court. The U.S. Trustee held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code on August 4, 2021 and on September 28, 2021.

2.    **Bar Dates.**  The General Bar Date is January 4, 2022; and the Governmental Unit Bar Date is January 4, 2022.

### 6.    The Debtor's Decision to Cease Operations and Wind Down its Affairs

Sharity filed the Chapter 11 Case with the original goal of using its authority under the Bankruptcy Code to reject the Aliera Contracts and transition to the TPA and Related Vendors to

lower its costs and break away from the Aliera Companies, particularly in light of the significant litigation brought by a number of Governmental Units challenging the relationship between the Debtor and the Aliera Companies. The Debtor understood this would be a difficult task for several reasons, including that Aliera Healthcare Inc. n/k/a The Aliera Companies, Inc. had originally been responsible for establishing the Debtor and had previously contracted with the Debtor under a single vendor agreement.

Following the Petition Date, the Debtor encountered several practical and technical issues disentangling its operations from the Aliera Companies. Among other issues, the Aliera Companies took the position that they owned certain data and information that was critical to the Debtor's continued operations. It became clear that the Debtor would be unable to process or facilitate the payment of Share Requests for approximately four to six weeks post-petition, and potentially significantly longer and only after ongoing disputes with the Aliera Companies were resolved. Prior to the Petition Date, the Debtor stopped paying the Aliera Companies and did not notify the Aliera Companies of the separation until after the filing of the Chapter 11 Case because it was concerned that the Aliera Companies would undermine the transition process. Moreover, before the bankruptcy, the Aliera Companies had not been forthcoming in providing financial information for the Debtor to be able to understand what had happened with unpaid Medical Claims.

Faced with an uncertain timeline on its ability to facilitate member payments, the need for potential litigation against Aliera, and the upcoming extended August 15, 2021 deadline for individuals to obtain insurance under the Affordable Care Act, on July 19, 2021, the Debtor's independent board determined that it was in the best interest of the Estate and Members to cease operations and conduct an orderly wind-down. This decision was based on the Debtor's sound and conservative business judgment that continuing to accept Monthly Payments from Members would come with further risk to Members being able to obtain payment of their medical expenses. Notice of the Debtor's decision was immediately given to the United States Trustee and the Subchapter V Trustee, sent to all Members known to the Debtor, and posted on the Debtor's public website. The Debtor also announced this decision at a status conference held on July 22, 2021.

Since making its decision, the Debtor has continued to take sensible steps in managing its affairs and implementing the shutdown process. The Debtor shut off its ACH and credit card payments to ensure it did not receive additional payments from Members and has segregated funds it received post-petition from Members. The Debtor has been working diligently to reconcile significant amounts of data produced by the Aliera Companies so that the Debtor can continue its investigation of the Members' unpaid Medical Claims and amounts the Debtor believes are owed to the Debtor from the Aliera Companies and other third parties.

Furthermore, on July 29, 2021, the Debtor's Board voted to expand the powers of Mr. Luria, the Chief Restructuring Officer, to bind the Debtor with respect to any matter or investigate any matter that would otherwise require Board approval and all of the Board of Director's powers and authority under Delaware law in connection with the Chapter 11 Case. The Board further resolved that Mr. Luria could only be removed as Chief Restructuring Officer upon approval of the Bankruptcy Court.

7.       **The U.S. Trustee's Motion to Remove the Debtor, or Alternatively to Authorize the Subchapter V Trustee to Investigate the Debtor's Financial Affairs.**

After the Debtor announced its decision to cease operations and pivot to a liquidation, the U.S. Trustee filed the *United States Trustee's Motion to Remove the Debtor in Possession Pursuant to 11 U.S.C. § 1185, or Alternatively, Motion to Authorize the Subchapter V Trustee to Investigate the Debtor's Financial Affairs Pursuant to 11 U.S.C. § 1183* [D.I. 68]. In the Motion, the U.S. Trustee asserted that cause existed to remove the Debtor based on allegations of incompetence and gross mismanagement of the Debtor's pre-petition and post-petition affairs. Several parties filed joinders to the motion, including the *AlieraCare Plaintiffs' Joinder In United States Trustee's Motion To Remove The Debtor In Possession Or Alternatively To Authorize The Subchapter V Trustee To Investigate The Debtor's Affairs* [D.I. 85], and the *Joinder To The United States Trustee's Motion To Remove The Debtor In Possession Pursuant To 11 U.S.C. § 1185, Or Alternatively, Motion To Authorize The Subchapter V Trustee To Investigate The Debtor's Financial Affairs Pursuant To 11 U.S.C. § 1183* [D.I. 93].

In opposition to the U.S. Trustee's motion, the Debtor filed the *Debtor's Response In Opposition To The United States Trustee's Motion To Remove The Debtor In Possession Pursuant To 11 U.S.C. § 1185, Or Alternatively, Motion To Authorize The Subchapter V Trustee To Investigate The Debtor's Financial Affairs Pursuant To 11 U.S.C. § 1183* [D.I. 84]. The U.S. Trustee then filed the *United States Trustee's Reply In Support Of Motion To Remove The Debtor In Possession Pursuant To 11 U.S.C. § 1185, Or Alternatively, Motion To Authorize The Subchapter V Trustee To Investigate The Debtor's Financial Affairs Pursuant To 11 U.S.C. § 1183* [D.I. 101].

After conducting an evidentiary hearing on August 5 and 9, 2021, the Bankruptcy Court entered an order on August 12, 2021, holding the U.S. Trustee's motion and the joinders in abeyance regarding the removal of the Debtor as debtor in possession and granting the portions of the motion and joinders regarding the expansion of the Subchapter V Trustee's duties to include an investigation of the Debtor's financial affairs [D.I. 144]. In addition, the Bankruptcy Court directed that the Subchapter V Trustee shall: (i) be kept fully informed by the Debtor, the Chief Restructuring Officer, and SOLIC on all data migration and data management issues; (ii) investigate whether the Debtor is eligible to be a Subchapter V debtor; (iii) investigate whether the Debtor's employees, as of the Petition Date, are necessary for the purposes of this bankruptcy case; and (iv) investigate and provide guidance to this Court as to SOLIC's continued services in this bankruptcy case and an approximate schedule for SOLIC's termination and discharge. The Bankruptcy Court further directed the U.S. Trustee to appoint an official committee of Members.

Since the Bankruptcy Court's ruling, the Debtor's Chief Restructuring Officer has conducted almost daily meetings with the Subchapter V Trustee to apprise her of the Debtor's efforts to (among other things) identify all Members, identify all unpaid share requests and allocate the same by Member, and retrieve historical share request information.

8.      **Development of the Plan.**

On August 20, 2021, the Member Committee was appointed. Since its appointment, the Debtor has worked closely with the Member Committee and has also consulted with the States regarding all outstanding matters in this case, including the negotiation and formulation of this Plan.  The Member Committee supports the Plan and urges all Members to vote in favor of the Plan.[5]

Based on discussions with all those parties, the Debtor, the Member Committee, Subchapter V Trustee, and certain holders of Governmental Fines and Penalties Claims agreed to a stipulation with the following terms: (i) the Debtor's election to have Subchapter V of Chapter 11 apply to the Chapter 11 Case would be deemed to no longer apply; (ii) the Member Committee shall remain intact and be deemed the Official Committee of Unsecured Creditors in the Chapter 11 Case, (iii) the Subchapter V Trustee's service would be terminated effective immediately, subject to the Subchapter V Trustee's completion of the duties required under the Court's August 12, 2021 Order. This Plan is being presented under the authority of a standard Chapter 11 case.

The Bankruptcy Court entered an order approving this stipulation on October 4, 2021, [D.I. 229].

## IV.  CONFIRMATION AND VOTING

### A.    Plan Confirmation Hearing

The Bankruptcy Code, Bankruptcy Rules, and Local Rules require the Bankruptcy Court, after appropriate notice, to hold a hearing on approval and confirmation of this Combined Plan and Disclosure Statement. On October 14, 2021, the Bankruptcy Court entered an order scheduling the Plan Confirmation Hearing for **December 2, 2021 at 1:00 p.m. (prevailing Eastern Time)**, to consider, among other things, final approval and confirmation of this Combined Plan and Disclosure Statement under section 1125 of the Bankruptcy Code [D.I. 263]. Notice of the Plan Confirmation Hearing will be provided to all known Creditors, Interest Holders, and other parties in interest.  The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

Any objection to confirmation of this Plan and approval of the Disclosure Statement on a final basis must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtor, the basis for the objection and the specific grounds of the objection, and must be Filed with the Bankruptcy Court, with a copy to chambers, together with proof of service thereof, and served upon the following parties by no later than **November 22, 2021 at 4:00 p.m. (prevailing Eastern Time)** through the CM/ECF system, with courtesy copies by email: (i) Counsel to the

---

[5]  The Member Committee does not agree with all of the Background information presented above, and the Committee's support of the Plan is not an agreement with or waiver of Members' rights to dispute the factual representations made by the Debtor in this Plan or elsewhere.

Debtor at the contact information on the first page of this Plan; (ii) Counsel to the Members Committee: Sirianni Youtz Spoonemore Hamburger PLLC, 3101 Western Avenue, Suite 350 Seattle, Washington 98121 (Attn: Eleanor Hamburger, Esq., ele@sylaw.com); Mehri & Skalet, PLLC, 1250 Connecticut Avenue, NW, Suite 300, Washington, D.C. 20036 (Attn: Cyrus Mehri, Esq., CMehri@findjustice.com); Stevens & Lee, P.C., 919 North Market Street, Suite 1300, Wilmington, Delaware 19801 (Attn: Joseph H. Huston, Jr., Esq., joseph.huston@stevenslee.com and David W. Giattino, Esq., david.giattino@stevenslee.com); (iii) the Office of the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 N. King Street, Room 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Rosa Sierra, Esq (rosa.sierra@usdoj.gov); and (iv) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to approval and confirmation of this Combined Plan and Disclosure Statement. **UNLESS AN OBJECTION TO APPROVAL AND CONFIRMATION OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO APPROVE AND CONFIRM THIS COMBINED PLAN AND DISCLOSURE STATEMENT.**

### B.   Requirements for Plan Confirmation

The Bankruptcy Court will confirm this Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in this Chapter 11 Case is that this Plan be (i) accepted by all impaired Classes of Claims and Interests or, if rejected by an impaired Class, that this Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; and (ii) feasible.  The Bankruptcy Court must also find, among other things, that:

a.   this Plan has classified Claims and Interests in a permissible manner;

b.   this Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

c.   this Plan has been proposed in good faith.

### C.   Best Interests of the Creditors Test

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code on the effective date.

The costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code.  Other costs of liquidating the Debtor's Estate would include the expenses incurred during the Chapter 11 Case

and allowed by the Bankruptcy Court in the chapter 7 cases. The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards chapter 11 administrative, priority, and unsecured claims. Like a chapter 7 trustee, the Liquidating Trustee will have the power to retain professionals, but unlike a chapter 7 trustee's professionals, the Bankruptcy Court does not need to approve the retention of such professionals, or their fees. The "learning curve" that the chapter 7 trustee and new professionals would be faced with comes with potential additional costs to the Estate and with a delay compared to the timing of Distributions under the Plan. Furthermore, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions. Accordingly, a portion of the Cash that will be available for Distribution to Holders of Allowed Claims would instead be paid to the chapter 7 trustee. Notwithstanding, like the chapter 7 trustee, the Liquidating Trustee also will be paid fees for his or her services.

Accordingly, as demonstrated in the liquidation analysis **attached hereto as Exhibit B**, the Debtor believes that in a chapter 7 liquidation, Holders of Claims would receive less than such Holders would receive under this Plan. There can be no assurance, however, as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Debtor's conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

**D.     Plan Feasibility**

Pursuant to section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor under the plan, unless such liquidation or reorganization is proposed under the plan. Pursuant to the Plan, the Debtor's Assets are being transferred to the Liquidating Trust. These Assets will be liquidated and distributed to Holders of Allowed Claims pursuant to the terms of this Plan. Therefore, as this is a liquidating plan, the Bankruptcy Court's confirmation of this Plan will not be followed by liquidation or the need for any further reorganization.

**E.     Classification of Claims and Interests**

Section 1122 of the Bankruptcy Code requires the Plan to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such Class. This Plan creates separate Classes to treat the Miscellaneous Secured Claims, Priority Non-Tax Claims, Member Claims for Post-July 8, 2021 Payments, General Unsecured Claims, Governmental Fines and Penalty Claims, and Section 510(c) Claims of the Debtor. The Plan Proponent believes that the Plan's classification scheme places substantially similar Claims or Interests in the same Class and thus meets the requirements of section 1122 of the Bankruptcy Code.

**EXCEPT AS SET FORTH IN THE PLAN OR UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019(A), UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL**

{1325.002-W0066336.}                          29

Ex. 1.40, p. 36 of 87

Resp. Appx. p. 265                          **Appx. Vol IX
A-409**

**BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The classification of Claims and Interests and the nature of Distributions to members of each Class are summarized herein. The Plan Proponent believes that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Interests. The Bankruptcy Court, however, must find that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

F.      **Impaired Claims or Interests**

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Plan and receiving a Distribution under this Plan may vote on this Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable, or contractual rights of the Holders of such Claims or Interests treated in such Class. The Holders of Claims or Interests not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. The Holders of Claims or Interests in any Class that will not receive any Distribution or retain any property pursuant to this Plan are deemed to reject this Plan and do not have the right to vote.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 3, 4, AND 5 INCLUDING CURRENT AND FORMER SHARITY MEMBERS.**

G.      **Eligibility to Vote on this Plan**

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Classes 3, 4, and 5 may vote on this Plan. To vote on this Plan, you must hold an Allowed Claim in Class 3, 4, or 5 or be the Holder of a Claim that has been temporarily Allowed for voting purposes under Bankruptcy Rule 3018(a).

H.      **Voting Procedure and Deadlines**

For your Ballot to count, you must (1) properly complete, date, and execute the Ballot and (2) deliver the Ballot to the Balloting Agent at one of the following addresses: (i) if by First Class mail, Sharity Ministries Ballot Processing, c/o BMC Group, Attn: Sharity Ministries Ballot Processing, 3732 West 120th Street, Hawthorne, CA 90250; (ii) if by hand delivery or overnight delivery, Sharity Ministry Ballot Processing, c/o BMC Group, Attn: Sharity Ministries Ballot Processing, PO Box 90100, Los Angeles, CA 90009; or (iii) if by electronic ballot, by using the electronic balloting service available at https://bmcgroup.com/sharity.

The Balloting Agent must **RECEIVE** original ballots on or before **November 22, 2021 at 5:00 p.m. (prevailing Eastern Time)**. Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a Ballot is submitted to the Balloting Agent.

Any Ballot that is timely received, executed, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of this Plan will be counted and cast as an acceptance or rejection, as the case may be, of this Plan.

Except as otherwise stated in this Plan, the following Tabulation Rules will be utilized for tabulating the Ballots in determining whether this Plan has been accepted or rejected by the Class in which such Holder holds a Claim or Interest:

a.  any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan.  Except as otherwise ordered by the Bankruptcy Court or with the consent of the Member Committee, a claimant may not change its vote once a Ballot is submitted to the Balloting Agent;

b.  any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted;

c.  any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan will not be counted;

d.  any Ballot cast for a Claim designated or determined as unliquidated, contingent, or disputed or as zero or unknown in amount and for which no 3018(a) Motion has been Filed by the 3018(a) Motion Deadline will not be counted;

e.  any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan will not be counted;

f.  any Ballot received by the Balloting Agent after the Voting Deadline will not be counted, unless the Member Committee agrees in writing to an extension of such deadline;

g.  any Ballot not bearing an original signature will not be counted (for the avoidance of doubt, the electronic signature on a Ballot submitted and signed electronically by using the electronic balloting service established by the Balloting Agent shall constitute an original signature); and

h.  any Ballot received by the Balloting Agent by facsimile, e-mail or other electronic communication will not be counted, provided however that a Ballot may be submitted electronically by using the electronic balloting service established by the Balloting Agent.

## I.  Acceptance of this Plan

As a Creditor/Member, your acceptance of this Plan is important.  For this Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept this Plan.  At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept this Plan.  The Plan Proponent strongly urges that you vote to accept this Plan but you are not required to accept it and failure to accept will not preclude you from receiving a distribution under this Plan to which you are entitled.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THE BALLOT OR SUBMIT A BALLOT VIA THE BMC ELECTRONIC BALLOTING SERVICE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR AND, IF SUBMITTING A PHYSICAL BALLOT, INCLUDE AN ORIGINAL SIGNATURE ON THE BALLOT.**

## J.  Elimination of Vacant Classes

Any Class of Claims or Interests that does not contain, as of the date of commencement of the Plan Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from this Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of this Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## V.  TREATMENT OF UNCLASSIFIED CLAIMS

## A.  Administrative Expense Claims

Unless otherwise agreed by the holder of an Administrative Expense Claim and the applicable Debtor or the Liquidating Trustee, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash by the Debtor or Liquidating Trust, as applicable: (a) if Allowed, on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as practicable thereafter); (b) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter, but in no event later than 30 days after such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such holder and the Debtor or Liquidating Trust, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Holders of Administrative Expense Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall File with the Bankruptcy Court and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, no later than the Administrative Expense Claim Bar Date. Any such Claim not Filed by such deadline shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.

## B.      Professional Fee Claims

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than twenty-one (21) days from service of notice of the Effective Date (with an objection period of at least twenty-one days for objections, if any, to such applications). Objections to any Professional Fee Claim must be timely Filed and served on the requesting party. On the Effective Date, the Professional Fee Claim Reserve shall be transferred by the Debtor to Landis Rath & Cobb LLP's IOLTA account to be held for the distribution of Allowed Professional Fee Claims. Upon entry of a Final Order approving any such application for Professional Fee Claims, Landis Rath & Cobb LLP shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim. To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Landis Rath & Cobb LLP shall promptly transfer any such Cash to the Liquidating Trust and such Cash shall become Liquidating Trust Assets and be treated in accordance with the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

## C.      Priority Tax Claims

On the later of the Effective Date or the date on which a Priority Tax Claim (secured or unsecured) becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date will receive Cash from the Debtor or Liquidating Trust, as applicable, on account of such Claim in an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code.

## VI.   CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES

Claims – other than Administrative Expense Claims, Priority Tax Claims, and Statutory Fees – are classified for all purposes, including voting, confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Type | Status Under Plan | Voting Status | Recovery Estimate |
|-------|------|-------------------|---------------|-------------------|
| 1 | Miscellaneous Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | Member Claims for Post-July 8, 2021 Payments | Impaired | Entitled to Vote | 100% |

| Class | Type | Status Under Plan | Voting Status | Recovery Estimate |
|---|---|---|---|---|
| 4 | Member Claims and General Unsecured Claims | Impaired | Entitled to Vote | 0-10% |
| 5 | Governmental Fines and Penalty Claims | Impaired | Entitled to Vote | 0% |
| 6 | Section 510(c) Claims | Impaired | Deemed to Reject | 0% |

## VII.  TREATMENT OF CLAIMS AND INTERESTS

**A.    Classification and Treatment of Claims and Interests**

    **1.    Class 1—Miscellaneous Secured Claims**

        a.    *Classification*: Sharity does not believe that there are any secured prepetition Claims, but includes this class in an abundance of caution to provide a treatment in accordance with the requirements of the Bankruptcy Code to the extent such claims exist.

        b.    *Treatment:* Each holder of an Allowed Miscellaneous Secured Claim will be placed in a separate subclass, and each subclass will be treated as a separate class for distribution purposes. On or as soon as practicable after the Effective Date, but in no event later than 30 days after the Effective Date, each holder of an Allowed Miscellaneous Secured Claim shall receive, in full and final satisfaction and settlement of such Claim, in the sole discretion of the Sharity, except to the extent any holder of an Allowed Miscellaneous Secured Claim agrees to different treatment, either: (i) the collateral securing such Allowed Miscellaneous Secured Claim; (ii) Cash in an amount equal to the value of the collateral securing such Allowed Miscellaneous Secured Claim; or (iii) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered Unimpaired.

        c.    *Voting*: Class 1 is Unimpaired, and holders of Allowed Miscellaneous Secured Claims are conclusively deemed to have accepted this Plan.

    **2.    Class 2 —Priority Non-Tax Claims**

        a.    *Classification*: Sharity does not believe that there are any Allowed Priority Non-Tax Unsecured Claims but includes this class in an abundance of

caution to provide a treatment in accordance with the requirements of the Bankruptcy Code to the extent such claims exist.

b. *Treatment*: On or as soon as practicable after the Effective Date, but in no event later than 30 days after the Effective Date, unless otherwise agreed to by the holder of an Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, one of the following treatments, in the sole discretion of Sharity: (a) full payment in Cash of its Allowed Priority Non-Tax Claim; or (b) treatment of its Allowed Priority Non-Tax Claim in some other manner that leaves such Claim Unimpaired with the agreement of the holder of such Claim.

c. *Voting*: Class 2 is Unimpaired, and the holders of Allowed Priority Non-Tax Claims are conclusively deemed to have accepted this Plan.

3. **Class 3—Member Claims for Post July 8, 2021 Payments.**

a. *Classification*: Class 3 consists of the Allowed Member Claims for Post July 8, 2021 Monthly Payments.

b. *Treatment*: In full satisfaction of each Allowed Member Claim for Post July 8, 2021 Monthly Payments, the holder of such claim shall receive a full refund, without interest, of all monthly payments made to the Debtor after July 8, 2021. The Debtor or Liquidating Trust, as applicable, shall make such payment within 30 days after the Effective Date. Disputed Member Claims for Post July 8, 2021 Payments shall be subject to resolution under the Claims Resolution Procedures. Members with Claims for uncovered medical expenses from July 8-22, 2021 have claims under Class 4.

c. *Voting*: Class 3 is Impaired. Under the Voting Procedures, all holders of Class 3 Claims shall have a Claim temporarily allowed for voting purposes in the amount of their respective payments to the Debtor on or after July 8, 2021 (as shown in the Debtor's books and records). All holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

4. **Class 4—Member Claims and General Unsecured Claims.**

a. *Classification*: Class 4 consists of Allowed General Unsecured Claims against the Debtor.

b. *Allowance*: The allowance of Unpaid Member Claims, Member Refund Claims and Other Member Claims shall be according to the Claims Resolution Procedures. The allowance of all other Class 4 General Unsecured Claims shall be according to Section 502 of the Bankruptcy Code.

c. *Treatment*: In full satisfaction of each Allowed General Unsecured Claim, the holder of such claim shall receive a Pro Rata Share of Beneficial

Interests in the Liquidating Trust entitling such holder to a Pro Rata Share of all Available Trust Cash derived from the Liquidating Trust Assets. For the avoidance of doubt, Class 4 General Unsecured Claims shall include all Allowed Unpaid Member Medical Claims, Allowed Member Refund Claims and Allowed Other Member Claims (including Claims for a refund of monthly payments up to and including July 8, 2021), but shall not include Member Claims for Post July 8, 2021 Monthly Payments (which are included in Class 3). Unless a Member Files a proof of Claim, all Members shall receive Allowed Claims for the greater of (i) the amount of any uncovered medical expenses regardless of whether those medical expenses were approved or denied by Sharity or (ii) a return of all payments made to the Debtor, based upon the records maintained by Sharity and without any assurance or guarantee that such records are accurate. Members have the right to submit additional claims for uncovered medical expenses or Other Member Claims by submitting additional claims information to the Claims Agent through timely Filed Proofs of Claim.  If a Member files a proof of Claim, such Member's Claim shall be allowed in the amount filed, unless objected to by the Liquidating Trustee.  Disputed Claims asserted by Members shall be subject to resolution under the Claims Resolution Procedures.

d.  *Payment Priority:*  Class 4 claims shall be paid after all Class 3 Claims are satisfied.

e.  *Voting*: Class 4 is Impaired. Under the Voting Procedures, all holders of Class 4 Claims shall have a Claim temporarily allowed for voting purposes at the (a) greater of each Member's monthly contributions to the Debtor's programs or unpaid requests to the Debtor for payment of medical expenses that have not yet been satisfied (as shown in the Debtor's books and records), or (b) the amount of any Filed proof of Claim, and not for purposes of allowance or distribution.  All holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.  **Class 5—Governmental Fines and Penalty Claims.**

a.  *Classification*: Class 5 consists of all Allowed Governmental Fines and Penalty Claims.

b.  *Treatment*: It is understood and expected that, following confirmation of the Plan, the Governmental Units may determine the amount of any fines and/or penalties to be imposed on the Debtor under their normal state law procedures (as well as to impose any other injunctive relief available under such laws).  The Liquidating Trustee may, at its option, litigate or settle such actions by the Governmental Units prior to or after the completion of such proceedings and any Final Orders entered in such proceedings or settlements shall be Allowed Claims herein.  In full satisfaction and settlement of each such Allowed Governmental Fines and Penalty Claim,

the holder of such claim shall receive a Pro Rata Share of Residual Interests in the Liquidating Trust entitling such holder to a Pro Rata Share of all Available Trust Cash derived from the Liquidating Trust Assets after payment in full of all Class 4 Claims.

c.    *Voting*: Class 5 is Impaired. Under the Voting Procedures, all holders of Class 5 Claims shall have a Claim temporarily allowed for voting purposes only at $1 for each Member that resided in the respective state.  All holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

**6.    Class 6—Section 510(c) Claims.**

a.    *Classification*: Class 6 consists of all Allowed Section 510(c) Claims.

b.    *Treatment*: In full satisfaction of each Allowed Section 510(c) Claims, on the Effective Date all Allowed Section 510(c) Claims shall be fully extinguished and discharged without any further action. Holders of Allowed Section 510(c) Claims shall not be entitled to receive or retain any property under the Plan.

c.    *Voting*: Class 6 is Impaired and shall not receive any property or distributions on account of such claims, and accordingly, the holders of Allowed Section 510(c) are conclusively deemed to have rejected this Plan.

## VIII.  THE LIQUIDATION OF THE DEBTOR

### A.    Liquidation

On and after the Effective Date, the Liquidating Trust and the Liquidating Trustee will (i) investigate and, if appropriate, pursue Causes of Action and Avoidance Actions, (ii) administer, monetize and liquidate the Liquidating Trust Assets, (iii) resolve all Disputed Claims and (iv) make all Distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement. The Liquidating Trust and Liquidating Trustee shall be authorized to take such actions without further order of the Bankruptcy Court; *provided, however,* the Liquidating Trustee may seek such Bankruptcy Court authority as the Liquidating Trustee, in its absolute discretion, deems necessary or appropriate.  The transfer of the Liquidating Trust Assets attributable to the Beneficiaries of the Liquidating Trust shall be treated as a transfer of such assets directly to such Beneficiaries followed by a contribution of the Liquidating Trust Assets to the Liquidating Trust.

## IX.  PROVISIONS REGARDING THE LIQUIDATING TRUST

### A.    Appointment of the Liquidating Trustee

The Liquidating Trustee shall be identified in the Plan Supplement and shall be selected by the Member Committee with input from Governmental Units holding Allowed Governmental Fines and Penalty Claims. At the Plan Confirmation Hearing, the Bankruptcy Court shall consider and, if appropriate, ratify the selection of the Liquidating Trustee. All compensation for the Liquidating Trustee, and professionals retained by the Liquidating Trustee, shall be paid from the

Liquidating Trust Assets, in accordance with the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his/her duties unless otherwise ordered by the Bankruptcy Court.  On the Effective Date, all Beneficiaries of the Liquidating Trust shall be deemed to have ratified and become bound by the terms and conditions of the Liquidating Trust Agreement. In the event that the Liquidating Trustee resigns or is removed, terminated, or otherwise unable to serve as the Liquidating Trustee, then a successor shall be appointed as set forth in the Liquidating Trust Agreement.  Any successor Liquidating Trustee appointed shall be bound by and comply with the terms of the Plan, the Plan Confirmation Order, and the Liquidating Trust Agreement.

## B.   Creation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) investigating and, if appropriate, pursuing the Liquidating Trust Causes of Action, (ii) administering, monetizing and liquidating the Liquidating Trust Assets, (iii) resolving all Disputed Claims and (iv) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement.  The Liquidating Trust Agreement shall be filed with the Plan Supplement. The Liquidating Trust Agreement is incorporated herein in full and is made a part of this Combined Plan and Disclosure Statement.

Upon execution of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust; provided, that, prior to the Effective Date, the Debtor or the Members Committee, as applicable, may act as organizers of the Liquidating Trust and take such steps in furtherance thereof as may be necessary, useful or appropriate under applicable law to ensure that the Liquidating Trust shall be formed and in existence as of the Effective Date. The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement and be subject to the oversight of the Liquidating Trust Committee.

Except for those Liquidating Trust Assets attributable to the Disputed Claims Reserve, it is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code.  In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust and have no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  All Liquidating Trust Assets held by the Liquidating Trust on the Effective Date (except for those assets attributable to the Disputed Claims Reserve) shall be deemed for federal income tax purposes to have been distributed by the Debtor on a Pro Rata share basis to those Holders of Allowed Claims that are entitled to receive Distributions from the Liquidating Trust, and then contributed by such Holders to the Liquidating Trust in exchange for the Liquidating Trust Interests.  All Holders of Claims have agreed or shall be deemed to have agreed to use the valuation of the Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes. The Beneficiaries under the Liquidating Trust will be treated as the grantors and deemed owners

of the Liquidating Trust.  The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

**C.      Beneficiaries of Liquidating Trust**

On the Effective Date, each Holder of an Allowed General Unsecured Claim shall, by operation of the Plan and Plan Confirmation Order, receive a Pro Rata Share of the Beneficial Interests and each Holder of an Allowed Governmental Fines and Penalty Claim shall receive a Pro Rata Share of the Residual Interests.  Holders of Disputed or temporarily Allowed General Unsecured Claims and Holders of Disputed or temporarily Allowed Governmental Fines and Penalty Claims shall be contingent Beneficiaries and funds for their Distribution shall be held by the Liquidating Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Claims.

The Beneficial Interests and Residual Interests shall be uncertificated and shall be non-transferable except upon death of the Holder or by operation of law. Beneficiaries shall have no voting rights with respect to such Liquidating Trust Interests. The Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

**D.      Vesting and Transfer of Assets to the Liquidating Trust**

Except as otherwise set forth in the Plan, pursuant to section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens charges or other encumbrances. The Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, has no value or will be unduly burdensome to the Liquidating Trust. Any Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be Liquidating Trust Assets. The Liquidating Trust Assets shall vest in the Liquidating Trust for the benefit of the Beneficiaries and the Debtor and the Estate will have no further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

On the Effective Date, the Liquidating Trustee shall be deemed the representative of the of the Debtor's estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the Liquidating Trust Agreement and the Plan) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and Liquidating Trust Agreement, and (iii) carry out the provisions of the Plan related to the Liquidating Trust, including but not limited to prosecuting or settling all Liquidating Trust Causes of Action in his or her capacity as trustee for the benefit of the Beneficiaries.  As the representative of the Debtor's estate, in its capacity as trustee for the benefit of the Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of the Debtor and its estate with respect to all Liquidating Trust Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted and will replace the Debtor, its estate, and any official committee appointed in these cases, in all such Liquidating Trust Causes of Action, whether or not such claims are pending in filed litigation.

E.     **Certain Powers and Duties of the Liquidating Trust, Liquidating Trustee, and Liquidating Trust Committee**

    1.     **General Powers of the Liquidating Trustee**

The rights and powers of the Liquidating Trustee are specified in the Liquidating Trust Agreement, which shall be filed with the Plan Supplement. This Section IX provides a summary of the terms of the Liquidating Trust Agreement. In the event of any conflict between this Section IX and the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement control, unless otherwise ordered in the Plan Confirmation Order. The omission of any terms or provisions of the Liquidating Trust Agreement from this summary shall not constitute a conflict between this section and the Liquidating Trust Agreement.

Except as expressly set forth in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, or the Liquidating Trust Agreement, and subject to his/her duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion in the administration of the Liquidating Trust and Liquidating Trust Assets, subject to the advice and consent of the Liquidating Trust Committee.

The Liquidating Trust Agreement generally will provide for, among other things: (i) the payment of the Liquidating Trust Operating Expenses; (ii) the payment of other reasonable expenses of the Liquidating Trust; (iii) the retention and compensation of counsel, accountants, financial advisors, or other professionals for the Liquidating Trust; (iv) the investment of Cash by the Liquidating Trustee within certain limitations, including those specified in the Plan; (v) the orderly liquidation of the Liquidating Trust Assets; (vi) litigation of the Liquidating Trust Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Liquidating Trust Causes of Action; and (vii) the prosecution and resolution of objections to such Claims as the Liquidating Trustee deems reasonable and appropriate.

The Liquidating Trustee, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Member Committee) to assist in carrying out the Liquidating Trustee's duties under the Plan, Plan Confirmation Order, and Liquidating Trust Agreement and may compensate and reimburse the reasonable expenses of these professionals from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement without further Order of the Bankruptcy Court.

The Liquidating Trust Agreement provides that the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Liquidating Trustee incurs or sustains, in good faith and without willful misconduct, gross negligence, or fraud, acting as Liquidating Trustee under or in connection with the Liquidating Trust Agreement.

On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Plan and Liquidating Trust Agreement to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof,

as contemplated by the Plan and in accordance with the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

### 2.    Books and Records

On or before the Effective Date, the Debtor shall provide the Liquidating Trustee an electronic copy of or access to any and all of its documents, books, records, files, and emails available to the Debtor and the Estate. The Liquidating Trustee shall make such records available to the Governmental Units as necessary for them to complete processing of their regulatory actions against the Debtor to the extent necessary and subject to appropriate patient confidentiality protections.

### 3.    Investments of Cash

To the extent provided in the Liquidating Trust Agreement, the Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments, provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

### 4.    Costs and Expenses of Administration of the Liquidating Trust

All Liquidating Trust Operating Expenses, including the costs associated with retaining professionals, shall be the responsibility of, and paid by, the Liquidating Trust in accordance with the Liquidating Trust Agreement from the Liquidating Trust Assets.

### 5.    Reporting

No later than forty-five (45) days after the last day of each calendar quarter in which the Liquidating Trust shall remain in existence, the Liquidating Trustee shall File a report of all Liquidating Trust Assets held and received by the Liquidating Trust, all Available Trust Cash (as defined in the Liquidating Trust Agreement) disbursed to Beneficiaries, and all fees, income, and expenses related to the Liquidating Trust during the preceding calendar quarter.

### F.    Post-Effective Date Notice

After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all Creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rules 2002 to the Office of the United States Trustee, the States, and those parties in interest who have filed such renewed requests; provided, however, that the Liquidating Trustee also shall serve any known parties directly affected by or having a direct interest in, the particular filing in accordance with Local Rule 2002-1(b). Notice given in accordance with the foregoing procedures shall be deemed

adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. This information shall be provided in the Notice of Effective Date.

**G.**      **Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtor**

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estates of an undivided interest in each of the Liquidating Trust Assets ((i) to the extent of the value of their respective share in the applicable assets and (ii) except for those assets attributable to the Disputed Claims Reserve) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

The Debtor shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for the Debtor (including final tax returns).

The Liquidating Trust shall be responsible for filing all required federal, state and local tax returns and/or informational returns for the Liquidating Trust and shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Combined Plan and Disclosure Statement, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidating Trust shall, pending the implementation of such arrangements, be treated as an Unclaimed Distribution to be held by the Liquidating Trustee, as the case may be, until such time as the Liquidating Trustee is satisfied with the Holder's arrangements for any withholding tax obligations. If the Liquidating Trustee makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidation Trust and any Claim or Interest in respect of such Distribution shall be disallowed and forever barred from receiving a Distribution under the Plan or Liquidating Trust Agreement.

The Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidating Trustee and the holders of Trust Interests) shall report for U.S. federal, state and

local income tax purposes consistently with the foregoing.  The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

## H.    Term of Liquidating Trust

The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed or temporarily Allowed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement, the Plan and the Confirmation Order have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan, the Liquidating Trust Agreement and the Confirmation Order have been made, and (v) the Chapter 11 Case has been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion Filed prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  Upon the Filing of such a motion, the term of the Liquidating Trust shall be automatically extended through entry of a Final Order thereon, unless the extension would adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes.

## I.    Limitation of Liability of the Liquidating Trustee and Liquidating Trust Committee

As shall be provided in the Liquidating Trust Agreement, the Liquidating Trust shall indemnify the Liquidating Trustee and the Liquidating Trust Committee  and any retained professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee and its professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals thereof for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidating Trustee, the members of the Liquidating Trust Committee or any retained  professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney or other professional and, as required any applicable rules of professional conduct, malpractice.

## X.  MEANS FOR IMPLEMENTATION

## A.    Preservation of Right to Conduct Investigations

The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order, held by the Debtor prior to the Effective

Date with respect to the Liquidating Trust Assets shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

**B.**      **Prosecution and Resolution of Causes of Action and Avoidance Actions**

From and after the Effective Date, prosecution and settlement of all Causes of Action and Avoidance Actions conveyed to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to the Plan and the Plan Confirmation Order.  The Liquidating Trustee may pursue such Causes of Action and Avoidance Actions, as appropriate, in accordance with the best interests of the Liquidating Trust Beneficiaries. From and after the Effective Date, with respect to the Liquidating Trust Assets, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Causes of Action and Avoidance Actions as the sole representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Notwithstanding the occurrence of the Effective Date, all Causes of Action and Avoidance Actions that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan.

No Person or Entity may rely on the absence of a specific reference in this Combined Plan and Disclosure Statement, the Plan Supplement or any other supplemental documents to any Cause of Action and Avoidance Actions against it as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action and Avoidance Actions against such Person or Entity.  No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action and Avoidance Actions as a consequence of confirmation or consummation of the Plan.  Unless any Causes of Action or Avoidance Actions against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan (see Article XIV) or a Bankruptcy Court Order, the Debtor and Liquidating Trustee, as applicable, expressly reserves all Causes of Action or Avoidance Actions, for later adjudication.

**C.**      **Effectuating Documents and Further Transactions**

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Combined Plan and Disclosure Statement, Plan Supplement, the Confirmation Order and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice or Order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).  The Liquidating Trustee may, and all Holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Liquidating Trustee shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.