**No. 25-1035**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

ALLIANCE OF HEALTH CARE SHARING MINISTRIES
*Plaintiff-Appellant*

v.

MICHAEL CONWAY,
in his official capacity as
Commissioner of the Colorado Division of Insurance
*Defendant-Appellee*

---

Appeal from the United States District Court for the District of Colorado,
No. 1:24-cv-01386-GPG-STV (Hon. Gordon Gallagher)

---

**APPENDIX VOL XI - Pages A-479 - A-541**

Date: March 21, 2025

Michael F. Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@Paulhastings.Com
William E. Mahoney
Paul Hastings LLP
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@Paulhastings.Com

*Counsel For Plaintiff Alliance of
Health Care Sharing Ministries*

| ECF NO. | *DESCRIPTION* | Appx. Page No. |
|---|---|---|
| **Appendix Vol. I, Pages 1-140** | | |
| - | District Court Docket Sheet | A-1 |
| 8-1 | Ex. A - Declaration of Rob Waldo (May 17, 2024) | A-9 |
| 8-2 | Ex. A-1 – Samaritan Bylaws | A-19 |
| 8-3 | Ex. A-2 - Samaritan Guidelines | A-44 |
| 8-4 | Ex. A-3 - Samaritan Membership Application | A-94 |
| 8-5 | Ex. B - Declaration of Katy Talento | A-100 |
| 32 | Amended Complaint of Alliance of Health Care Sharing Ministries (July 1, 2024) | A-109 |
| **Appendix Vol. II, Pages 141-179** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1-1.6 (September 3, 2024) | A-141 |
| **Appendix Vol. III, Pages 180-223** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.7-1.22 (September 3, 2024) | A-180 |
| **Appendix Vol. IV, Pages 224-261** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.23-1.28 (September 3, 2024) | A-224 |
| **Appendix Vol. V, Pages 262-307** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.29-1.33 (September 3, 2024) | A-262 |

| | **Appendix Vol. VI, Pages 308-331** | |
|---|---|---|
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.34-1.36 (September 3, 2024) | A-308 |
| | **Appendix Vol. VII, Pages 332-350** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-332 |
| | **Appendix Vol. VIII, Pages 351-373** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.37-1.39 (September 3, 2024) | A-351 |
| | **Appendix Vol. IX, Pages 374-424** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.40 (September 3, 2024) | A-374 |
| | **Appendix Vol. X, Pages 425-478** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.41 (September 3, 2024) | A-425 |
| | **Appendix Vol. XI, Pages 479-541** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.41-1.42 (September 3, 2024) | A-479 |
| | **Appendix Vol. XII, Pages 542-573** | |

| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-542 |
|---|---|---|
| **Appendix Vol. XIII, Pages 574-612** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.54-1.59 (September 3, 2024) | A-574 |
| **Appendix Vol. XIV Pages 613-682** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.6-1.6 (September 3, 2024) | A-613 |
| **Appendix Vol. XV, Pages 683-767** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.61-1.64 (September 3, 2024) | A-683 |
| **Appendix Vol. XVI, Pages 768-816** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.0-2.3 (September 3, 2024) | A-768 |
| **Appendix Vol. XVII, Pages 817-867** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.3-2.4 (September 3, 2024) | A-817 |
| **Appendix Vol. XVIII, Pages 868-933** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.5-7 (September 3, 2024) | A-868 |

| | **Appendix Vol. XIX, Pages 934-1002** | |
|---|---|---|
| 52.1 | Appendix to Reply to Motion for Preliminary Injunction (September 17, 2024) | A-934 |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-949 |
| | **Appendix Vol. XX, Pages 1003-1041** | |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-1003 |
| 55 | Notice of Appeal as to Order on Motion for Preliminary Injunction (January 27, 2025) | A-1015 |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1017 |
| | **Appendix Vol. XXI, Pages 1042-1077** | |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1042 |
| 60 | Order Denying Motion for Injunction Pending Appeal (February 3, 2025) | A-1069 |

Committee have not yet commenced the Claim objection process, and reserve the right to object to any Claims filed in these Chapter 11 Cases which are not expressly Allowed under the Plan.

After considering all of these and other relevant variables, the Debtors estimate Cash available for Distributions will be no less than $8,500,000, and could be substantially higher depending on potential future recoveries with respect to the Causes of Action. Given the difficulty of predicting results from future litigation which has not been initiated, actual recoveries could vary greatly from the amounts estimated at this time.

## SECTION 5.  CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 5.1    Classification and Specification of Treatment of Claims.

All Claims, except those described in __Section 3__, are placed in the Classes of Claims described in this __Section 5__, pursuant to Bankruptcy Code Section 1123(a)(1). This __Section 5__ also specifies the treatment of such Classes of Claims and their Impaired or unimpaired status, pursuant to Bankruptcy Code Sections 1123(a)(2) and 1123(a)(3). A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including voting and distribution.

This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any Distributions on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Court shall not be Impaired by this Plan, and the rights of the Holders of such Claims as provided in such orders shall not be altered by this Plan. For the avoidance of doubt, any Holder of a Claim or Equity Interest may agree to less favorable treatment of such Claim or Equity Interest than is set forth in this Plan.

As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claims will be deemed deleted automatically from the Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on Confirmation of the Plan.

### 5.2    Classes of Claims.

#### 5.2.1   Class 1 − Other Secured Claims.  This Class consists of all Allowed Secured Claims. Each Allowed Claim in this Class shall be in a separate subclass. Each Holder of an Allowed Claim in this Class shall receive, at the election of the Liquidating Trustee: (a) the net proceeds, if any, of the sale or other disposition of the Assets in which such other

13

Secured Claim has a lien, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date such Claim becomes Allowed; or (b) if still in the Debtors' possession or control, the return of the property subject to the senior, perfected, non-avoidable, and indefeasible lien or security interest securing such Holder's Allowed Secured Claim.  Any Cash payments on account of Allowed Class 2 Claims shall be paid from the Assets.  Holders of Class 1 Claims are Unimpaired and are conclusively presumed to accept the Plan.

        **5.2.2**    **Class 2 – Unsecured Priority Claims**.  This Class consists of all Allowed Unsecured Priority Claims.  Each Holder of an Allowed Unsecured Priority Claim shall receive Cash equal to the unpaid portion of such Allowed Unsecured Priority Claim as soon as practicable after the later of:  (a) the Effective Date; or (b) the date on which such Person becomes the Holder of such an Allowed Unsecured Priority Claim.  Holders of Class 2 Claims are Unimpaired and are conclusively presumed to accept the Plan.

        **5.2.3**    **Class 3 – Unsecured Trade Claims.**  This Class consists of all Allowed  Unsecured Trade Claims.  Each Holder of an Allowed Unsecured Trade Claim shall be entitled to receive such Holder's *pro rata* share of UTC Cash available after establishment of the Trust Expense Fund and payment of or reserve for Allowed Claims described in **<u>Sections 3, 5.2.1 and 5.2.2</u>** of this Plan the later of:  (a) the date or dates determined by the Liquidating Trustee, to the extent there is Cash available for distribution in the judgment of the Liquidating Trustee, having due regard for the anticipated and actual expenses, and the likelihood and timing, of the process of liquidating or disposing of the Assets; and (b) the date on which such Claim becomes Allowed. Holders of Class 3 Claims are Impaired and are entitled to vote to accept or reject the Plan.

        **5.2.4**    **Class 4 – Unsecured Medical Claims**.  This Class consists of all Allowed General Unsecured Medical Claims.  Each Holder of an Allowed Unsecured Medical Claim shall be entitled to receive such Holder's *pro rata* share of UMC Cash available after establishment of the Trust Expense Fund and payment of or reserve for Allowed Claims described in **<u>Sections 3, 5.2.1 and 5.2.2</u>** of this Plan the later of:  (a) the date or dates determined by the Liquidating Trustee, to the extent there is Cash available for distribution in the judgment of the Liquidating Trustee, having due regard for the anticipated and actual expenses, and the likelihood and timing, of the process of liquidating or disposing of the Assets; and (b) the date on which such Claim becomes Allowed.  Holders of Class 3 Claims are Impaired and are entitled to vote to accept or reject the Plan.

        **5.2.5**    **Class 5 – Subordinated Governmental Claims**.  This Class consists of all Allowed Subordinated Governmental Claims.  Allowed Subordinated Governmental Claims shall be subordinated and will not receive any payment until Allowed Claims described in **<u>Sections 3, 5.2.1, 5.2.2, 5.2.3 and 5.3.4</u>** (collectively, the "***Senior Claims***") have been paid in full. Each Holder of an Allowed Subordinated Governmental Claim shall be entitled to receive such Holder's *pro rata* share of Cash available, if any, after establishment of the Trust Expense Fund and payment of or reserve for Allowed Senior Claims.  Holders of Class 5 Claims are Impaired and are entitled to vote to accept or reject the Plan.

        **5.2.6**    **Class 6 – Insider Claims**.  Each Holder of an Insider Claim will not receive any distribution on account of such Insider Claim, nor receive or retain any other property

14

or interests of the Debtors on account of such Insider Claim, and is therefore conclusively presumed to have rejected this Plan.

> **5.2.7    Class 7 – Equity Interests**.  Each Holder of an Equity Interest will not receive any distribution on account of such Equity Interest, nor receive or retain an Equity Interest or other property or interests of the Debtors on account of such Equity Interest, and is therefore conclusively presumed to have rejected this Plan.

## SECTION 6.  ACCEPTANCE OR REJECTION OF THE PLAN

> **6.1    Impaired Classes Vote**.

In accordance with Bankruptcy Code Section 1126(c) and except as provided in Bankruptcy Code Section 1126(e), an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

> **6.2    Presumed Acceptance of this Plan**.

Classes 1 and 2 are Unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to Bankruptcy Code Section 1126(f).

> **6.3    Presumed Rejection of this Plan**.

Classes 6 and 7 are not entitled to receive or retain any property under this Plan and are, therefore, conclusively presumed to have rejected this Plan pursuant to Bankruptcy Code Section 1126(g).

> **6.4    Voting Classes**.

Classes 3, 4 and 5 are Impaired, and the Holders of Claims in those Classes are entitled to vote on this Plan.

> **6.5    Nonconsensual Confirmation**.

The Plan Proponents request entry of a Confirmation Order under Bankruptcy Code Section 1129(a).  With respect to any Impaired Class, including any Class of Claims or Equity Interests created pursuant to amendments or modifications to this Plan, that does not accept this Plan, the Plan Proponents request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

## SECTION 7.  CONFIRMATION AND VOTING PROCEDURES

> **7.1    Confirmation Hearing**.

A hearing before the Honorable Thomas M. Horan has been scheduled for August 14, 2023 at 11:00 a.m. (Eastern Time), at the Bankruptcy Court, 824 North Market Street, 5th Floor,

15

Courtroom No. 7, Wilmington, Delaware 19081, to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

### 7.2      Procedure for Objections.

Any objection to approval of the Combined Plan and Disclosure Statement or confirmation of the Plan must be made in writing and specify in detail the name and address of the objector, all grounds for the objection, and the amount of the Claim held by the objector.  Responses and objections, if any, to the Combined Plan and Disclosure Statement must:  (i) be in writing, (ii) conform to the Bankruptcy Rules and Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and (iii) be filed with the Court and served so as to be **actually received** on or before **4:00 p.m. (Eastern Time) on August 4, 2023** by (i) counsel for the Debtors: J. Robert Williamson, Scroggins & Williamson, P.C., 4401 Northside Parkway, Suite 450, Atlanta, GA 30327 and to Rachel B. Mersky, Monzack Mersky and Browder, P.A., 1201 Orange Street, Suite 400, Wilmington, DE 19801, (ii) counsel for the Committee:  Greenberg Traurig, LLP, Attn:  John Elrod, 3333 Piedmont Road, NE, Suite 2500, Atlanta, Georgia 30305, and  (ii) the Office of the United States Trustee, Attn:  Rosa Sierra-Fox, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801. Registered users may file and serve electronically pursuant to the Court's ECF system.  Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.

### 7.3      Requirements for Confirmation.

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among the requirements for confirmation in these Chapter 11 Cases is that the Plan be:  (i) accepted by all Impaired Classes of Claims and Equity Interests or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" against and is "fair  and  equitable" with respect to such Class; and (ii) feasible.  The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Equity Interests in a permissible manner; (ii) the Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

### 7.4      Classification of Claims and Equity Interests.

Section 1122 of the Bankruptcy Code allows the Plan to place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such Class.  The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with DIP Claims, Other Secured Claims, Unsecured Priority Claims, General Unsecured Claims, Subordinated Claims, and Equity Interests.  The Plan Proponents believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Equity Interests in the same Class and thus meet the requirements of section 1122 of the Bankruptcy Code.

Resp. Appx, p. 338

### 7.5    Impaired Claims or Equity Interests.

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Plan and receiving a payment or distribution under the Plan may vote on the Plan.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Equity Interests treated in such Class.  The Holders of Claims not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan.  The Holders of Claims or Equity Interests in any Class that will not receive any payment or distribution or retain any property pursuant to Plan are deemed to reject the Plan Statement and do not have the right to vote.

### 7.6    Eligibility to Vote on the Plan.

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Classes 3, 4 and 5 may vote on the Plan.  In order to vote on the Plan, you must hold a Claim in Class 3, 4 or 5 and have (i) timely filed a proof of claim that is not subject to an objection; (ii) have a Claim that is identified on the Schedules that is not listed as disputed, unliquidated, or contingent, or (iii) be the Holder of a Claim that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

### 7.7    Solicitation Notice.

All Holders of Allowed Claims in Classes 3, 4 and 5 will receive (i) notice of the confirmation hearing on the Combined Plan and Disclosure Statement (the "***Objection Deadline and Hearing Notice***") (ii) a form of ballot, and (iii) a copy of the Combined Plan and Disclosure Statement.  All other creditors and parties in interest not entitled to vote on the Plan will only receive a copy of the Objection Deadline and Hearing Notice.

### 7.8    Procedure and Voting Deadline.

In order for your ballot to count, you must (1) complete, date, and properly execute the ballot and (2) properly deliver the ballot to the Balloting Agent by either (a) mail or overnight courier to the Balloting Agent at the following address:

| **If by First Class mail**: |
| The Aliera Companies<br>c/o Epiq - Ballot Processing Center<br>PO Box 4422<br>Beaverton, OR 97076-4422 |
| **If by overnight courier or hand delivery:** |
| The Aliera Companies<br>c/o Epiq Ballot Processing Center<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |
| **By electronic, online submission:** |
| Please visit https://dm.epiq11.com/aliera.  Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot.  If you choose to submit your Ballot via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Ballot. |

The Balloting Agent must **RECEIVE** your ballot on or before **August 4, 2023, at 4:00 p.m. (Eastern)** (the "***Voting Deadline***").  Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a ballot is submitted to the Balloting Agent.

Any ballot that is timely received, that contains sufficient information to permit the identification of the claimant, and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

The following ballots will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a)     any ballot submitted received after the Voting Deadline, unless the Court grants an extension of the Voting Deadline with respect to such ballot;

(b)     any ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(c)     any ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

(d)     any ballot cast for a Claim designated as unliquidated, contingent or disputed or as zero or unknown in amount and for which no Bankruptcy Rule 3018(a) motion has been filed by the Bankruptcy Rule 3018(a) motion deadline;

(e)     any ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plain or that indicates both acceptance and rejection of the Plan;

(f)     any unsigned ballot; or

(g)     any ballot that is submitted by fax.

**7.9     Acceptance of the Plan**.

As a Creditor, your acceptance of the Plan is important.  In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan.  At least one Impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Plan.  The Plan Proponents urge that you vote to accept the Plan.  **You are urged to complete, date, sign, and promptly return the ballot.  Please be sure to complete the ballot properly, and legibly identify the exact amount of your claim and the name of the Creditor.**

## SECTION 8.  MEANS FOR IMPLEMENTATION OF PLAN

**8.1     Funding for this Plan**.

This Plan will be primarily funded by a combination of the Assets that are Cash on hand and proceeds from liquidation or other disposition of non-cash Assets, including Avoidance Actions Recoveries and General Litigation Claim Recoveries.  Certain funding may also be provided from other Trust Assets.

**8.2     Formation of the Trust**.

On the Effective Date, (i) the Trust, on the terms of the Trust Agreement, shall be formed, (ii) the Liquidating Trustee shall execute the Trust Agreement, (iii) the Trust Agreement shall be effective, (iv) the Liquidating Trustee shall be authorized to implement the Trust, (v) the Assets shall be transferred to the Liquidation Trust.  The Trust shall be established for the sole purpose of liquidating and distributing Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Consistent with requirements imposed by the IRS, all parties shall treat the Trust as a liquidating trust for all federal income tax purposes.  The Liquidation Trust shall not be deemed to be the same legal entity as any of the Debtors.  The Trust shall terminate after its liquidation, administration and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Trust Agreement, *provided* the Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date unless the Liquidating Trustee, for good cause, seeks an extension of the Trust.

**8.3     Appointment of Liquidating Trustee; Deemed Resignation of Directors and Officers**.

The Confirmation Order shall provide for the appointment of the Liquidating Trustee.  The Liquidating Trustee shall be deemed the Estates' representative in accordance with Bankruptcy Code Section 1123 and shall have all powers, authority and responsibilities specified in this Plan

and the Trust Agreement, including the powers of a trustee under Bankruptcy Code Sections 108, 704, and 1106, and Rule 2004 of the Bankruptcy Rules (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets, and privileges), to the extent not inconsistent with the status of the Trust as a "liquidating trust" for federal income tax purposes within the meaning of Treasury Regulation 301.7701-4(d).  As set forth more fully in this Plan, the Liquidating Trustee shall be responsible for the liquidation of the remaining Assets for the benefit of Creditors in accordance with Bankruptcy Code Section 1123(a)(5) and 1129(a)(16), administration of this Plan and the wind-down of the Debtors and their Estates post-Effective Date.  On the Effective Date, each member of the Debtors' boards of directors and their officers shall be deemed to have resigned, each board member and officer shall have no ongoing decision-making role with respect to the Debtors, and the wind-down of the Debtors shall become the general responsibility of the Liquidating Trustee.

The Liquidating Trustee's compensation shall be a Trust Expense paid from Trust Expense Fund.

### 8.4    Vesting of Assets.

As of the Effective Date, and except as otherwise provided in this Plan, pursuant to the provisions of Bankruptcy Code Section 1141(b) and (c), all Assets shall vest in the Trust free and clear of all Claims, liens, encumbrances, charges, membership interests and other interests, subject to the terms and conditions of this Plan and the Confirmation Order, including the powers granted to the Liquidating Trustee.  Pursuant to Bankruptcy Code Section 1123(a)(5) and subject to the terms of this Plan, the Liquidating Trustee shall sell or otherwise dispose of, and liquidate, or otherwise convert, to Cash, any non-Cash Assets.

### 8.5    Corporate Action.

All matters provided under this Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further action by directors or officers of the Debtors.

### 8.6    Continuing Existence.

From and after the Effective Date, the Debtors shall continue in existence for the purposes of (i) winding up their affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash, or other methods, all remaining Assets, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Estates, including, the prosecution of Causes of Action, (iv) resolving disputed Claims, (v) administering this Plan, and (vi) filing appropriate tax returns.  For the avoidance of doubt, the Liquidating Trustee, through the Trust or directly in the Debtors' names, may take these actions.  Following the Effective Date, the Debtors shall not engage in any business activities or take any actions, except those necessary to consummate this Plan and wind up the affairs of the Debtors.

**8.7    Substantive Consolidation of Debtors for Plan Purposes**.

This Plan shall constitute a motion, pursuant to Bankruptcy Code Section 105(a), to substantively consolidate the Debtors for Plan purposes.  Subject to the occurrence of the Effective Date and effective on the Effective Date, the Debtors shall be substantively consolidated for all of those purposes and actions associated with confirmation and consummation of this Plan.  On and after the Effective Date, (a) all assets and liabilities of each of the Debtors shall be treated as though they were merged into a single Consolidated Estate solely for purposes of this Plan, (b) for all purposes associated with this Plan, the Estates of each of the Debtors shall be deemed to be one Consolidated Estate, and (c) each and every Claim filed, to be filed in the Chapter 11 Cases or otherwise asserted against any of the Debtors shall be deemed filed against the Consolidated Estate.  In accordance with the foregoing, all Intercompany Claims shall be extinguished and shall not be entitled to any distributions under this Plan.  Further, (a) all guarantees by any Debtor of obligations of any other Debtor shall be deemed eliminated and extinguished, and (b) any Claims seeking recovery of the same debts asserted in the Chapter 11 Cases against multiple Debtors shall be treated as duplicative Claims, and only a single Claim against the merged Estates shall be deemed to survive for purposes of this Plan, and in each case any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint liability of any of the Debtors shall be deemed to be one obligation of the Debtors.  For the avoidance of doubt, the relief specified in this **Section 8.7** shall not prejudice or impair any claims or Causes of Action any Debtor or Estate may have against third parties, including Avoidance Actions and General Litigation Claims.

**8.8    Distributions to Classes 3 and 4 Pursuant to Unsecured Creditor Settlement**.

Confirmation of the Plan and occurrence of the Effective Date shall constitute the approval of the Unsecured Creditor Settlement between the Debtors, the Committee, the Sharity Trustee, and  the Unity Class Representatives, the terms of which are contained in this Plan, including those set forth below.

(a)    Disallowance of Aliera Claims; Allowance of Sharity Trust Claim.  (i) Confirmation of the Plan and occurrence of the Effective Date shall constitute a settlement of Adversary Proceeding No. 21-51291-JTD (the "**Sharity Adversary Proceeding**"), pending in the Sharity Case, pursuant to which all claims asserted by The Aliera Companies against the Sharity Trust in the Sharity Case shall be disallowed; the Sharity Trust shall have an Allowed Unsecured Claim in Class 4 against the substantively consolidated Debtors in the amount of $362,764,161.00, and all other Claims asserted by the Sharity Trust in the Chapter 11 Cases shall be deemed to be disallowed.  (ii) Notwithstanding anything to the contrary in the parties' stipulation (D.I. 293) permitting the filing of The Sharity Ministries' Class Proofs of Claims (Nos.10163-80), the parties shall enter into a further stipulation permitting the Sharity Liquidating Trustee to cast a ballot to accept or reject the Plan, as the same may hereafter be amended from time to time, on behalf of all Sharity Ministries members other than those who may timely object to or vote to reject the Plan.

(b)    Allowance of Unity Member Claim.  At or before the Confirmation Hearing the Debtors and the Unity Class Representatives will seek approval of a settlement which grants the Unity Class Certification Motion by entry of a Final Order (which may be by separate order of the Bankruptcy Court or by incorporation into the Confirmation Order) and: (i) certifies the Unity

21

Class POC under Bankruptcy Rule 7023 as a single Unity Member Class Claim against the substantively consolidated Debtors pursuant to Fed. R. Civ. P. 23(b)(1), and disallows all other Claims against the Debtors by any Unity Members; (ii) Allows the Unity Member Class Claim as an Unsecured Claim in Class 4 in the amount of $297,903,437.00; and (iii) appoints the identified Unity Class Representatives and Unity Class Counsel as identified in the Unity Class Representatives' Motion for Class Certification (D.I. 344); (iv) authorizes the Unity Class Representatives to cast a single ballot to accept or reject the Plan, as the same may hereafter be amended from time to time, on behalf of all Unity Class members.  On or before the Confirmation Hearing, the Unity Class shall propose and the Court shall appoint a Unity Class Settlement Administrator, and the Court shall approve any compensation arrangement proposed, which person shall be responsible for making payments to Unity Members on a *pro rata* basis, after payment of its reasonable administrative fees and expenses, of any amounts distributed by the Liquidating Trustee under Class 4 with respect to the Unity Member Class Claim.

(c)    <u>Distributions to Classes 3 and 4</u>.  After (i) payment in full (or establishing appropriate reserves for payment in full) of all Allowed Administrative Claims, Priority Tax Claims, Class 1 Other Secured Claims, and Class 2 Unsecured Priority Claims, and (ii) establishment of the Trust Expense Fund to satisfy Trust Expenses, remaining Cash following liquidation of Trust Assets ("***Available Cash***") shall be Distributed to Holders of Allowed Claims in Classes 3 and 4 as follows, until such time as they are paid in full:

(1)    First, the first $2,500,000 of Available Cash shall be Distributed by the Liquidating Trustee to Holders of Allowed Class 3 Claims on a *pro rata* basis.

(2)    Second, the next $6,000,000 of Available Cash shall be Distributed to Holders of Allowed Class 4 Claims on a *pro rata* basis.  Distributions on account of the Sharity Trust Claim shall be paid to the Sharity Trustee for further distribution in accordance with the Sharity Plan.  Distributions on account of the Unity Member Claims shall be distributed to the Unity Class Settlement Administrator for further distribution to the Unity Members.  Holders of Class 4 Claims who were members of both Unity and Sharity may be permitted to recover their *pro rata* share from both, so long as their claims in both do not overlap, and there is no double recovery.

(3)    Third, remaining Available Cash shall be distributed 60% to Class 4 and 40% to Class 3; provided, however, that once Holders of Allowed Class 3 Claims have received 75% of the amount of their Allowed Claims, then all Available Cash will be paid to Class 4 until the Holders of Allowed Claims in Class 4 have received an amount equal to 75% of their Allowed Claims.  Once Holders of Allowed Claims in Classes 3 and 4 have each received an amount equal to 75% of the Allowed Claims in each Class, then any additional Available Cash shall be distributed 60% to Class 4 and 40% to Class 3 until either Class reaches 100%, then any additional funds will be paid to the other Class until both Classes have received an amount equal to 100% of Allowed Claims.

**8.9    Causes of Action**.

Except as otherwise set forth in this Plan, all Causes of Action of the Debtors including Avoidance Actions and General Litigation Claims, shall survive confirmation of this Plan and the

commencement and prosecution of such Causes of Action by the Liquidating Trustee or otherwise shall not be barred or limited by *res judicata* or any estoppel, whether judicial, equitable or otherwise. **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors, the Committee, or the Liquidating Trustee will not pursue any and all available Causes of Action. All Causes of Action against current and former Insiders are reserved. The Debtors, the Committee, and the Liquidating Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan,** and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches shall apply to any Cause of Action upon, after, or as a consequence of the confirmation of the Plan or the occurrence of the Effective Date. A non-exclusive list Persons who may be the subject of Causes of Action is contained in the Plan Supplement.

Except as otherwise set forth in the Plan, the Liquidating Trustee shall have the sole and exclusive authority and standing to commence and prosecute Causes of Action of the Debtors and Estates for the benefit of Creditors and/or holders of Trust Beneficial Interests. The Liquidating Trustee with the Sharity Trustee shall jointly prosecute actions against the various third parties against whom both the Trust and the Sharity Trust have claims (collectively, "***Joint Claims***"), a non-inclusive list of which will be provided to the Aliera Liquidating Trustee upon its establishment. All funds obtained as a result of any Joint Claims prosecuted by the Trust and the Sharity Trust shall be deposited into the Trust and distributed in accordance with this Plan. Neither the Sharity Trustee nor the Liquidating Trustee will independently prosecute any Joint Claims without the written consent of the other. All funds from the prosecution of Joint Claims shall be deposited into the Trust for distribution in accordance with this Plan. Nothing in this Plan shall be deemed a "voluntary assignment" of any Cause of Action by the Debtors.

### 8.10    Privileges as to Certain Causes of Action.

Privileges of the Debtors relating to any existing Avoidance Actions, General Litigation Claims, or other Causes of Action pursued, investigated, or considered by or on behalf of the Debtors or the Committee prior to the Confirmation Date (not otherwise resolved) shall be transferred, assigned, and delivered to the Trust, without waiver or release, and shall vest with the Trust. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Liquidating Trustee shall reserve the right to request other materials that may be subject to Privilege for appropriate reasons, but representatives of the Debtors and the Debtors' professionals shall maintain the ability to oppose any such request on any grounds or to seek compensation in connection with such production, with any disputes to be decided by the Bankruptcy Court. The Debtors' Privileges, whether transferred to the Trust or retained by the Debtors, will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement.

23

### 8.11    Agreements, Instruments, and Documents.

All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary, useful or appropriate in order to effectuate this Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable. Such documentation shall include any charter document revisions needed to comply with Bankruptcy Code Section 1129(a)(6).

### 8.12    Closing of the Debtors' Chapter 11 Cases.

At any time after the Effective Date of the Plan, the Liquidating Trustee may request that the Court enter a final decree and otherwise close the Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and Local Rule 3022-1. When all disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed, and all Assets have been liquidated and converted into Cash (or abandoned), and such Cash has been distributed in accordance with this Plan, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee shall request that the Court enter a final decree and otherwise close the Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and Local Rule 3022-1. If, after all Causes of Action have been resolved and Liquidating Trust Assets liquidated or otherwise administered and the proceeds thereof distributed in accordance with the Plan, including by Distributions, the Liquidating Trustee determines that the expense of administering the Plan is likely to exceed the remaining amount of Trust Assets Proceeds, the Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Cases; (ii) donate any balance to a charitable organization selected by the Liquidating Trustee and which is unrelated to the Liquidating Trustee, the Debtors, or any of their insiders, and is exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code for such activities as are consistent with the doctrine of *cy pres*; and (iii) close the Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. These provisions shall apply without regard to any applicable non-bankruptcy laws with respect to unclaimed property. Any Creditor, the Liquidating Trustee, the Debtors, the U.S. Trustee, and any other party in interest may petition to reopen the Cases at any time for the purpose of having the Bankruptcy Court interpret any provision of the Plan or enforce the rights of any party under the Plan or under the Bankruptcy Code.

### 8.13    Corporate Dissolution.

Upon the distribution of all Assets pursuant to this Plan and the filing by the Liquidating Trustee of a certification to that effect with the Court (which may be included in the application for the entry of the final decree), the Debtors shall be deemed dissolved for all purposes, without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith, ***provided***, ***however***, that the Liquidating Trustee may take appropriate action to dissolve the Debtors under applicable law. From and after the Effective Date, the Debtors shall not be required to file any document, or take any action, to withdraw their business operations from any states where the Debtors previously conducted business.

**8.14    Effective Date Events**.

On the Effective Date, the following actions shall take place:  (a) all payments to be made on the Effective Date and all other actions to be taken on or before the Effective Date pursuant to this Plan by the Debtors shall be made or taken or duly provided for; (b) any documents, including orders or agreements, necessary to implement this Plan as of the Effective Date must be executed; and (c) all other events and actions specified in this Plan to occur on the Effective Date shall be deemed to have accrued.   Within seven (7) days of the occurrence of the Effective Date, the Liquidating Trustee shall file a notice of occurrence of the Effective Date with the Bankruptcy Court.

**SECTION 9.  PROVISIONS REGARDING LIQUIDATING TRUSTEE**

**9.1    General Powers and Duties of the Liquidating Trustee**.

The Liquidating Trustee will act for the Creditors in a fiduciary capacity as applicable to a board of directors and shall be responsible for the liquidation of the remaining Assets, administration of this Plan and wind-down of the Debtors and their Estates post-Effective Date, subject to the provisions of this Plan.  Except to the extent conditioned by the Trust Agreement and elsewhere in this Plan, the powers and duties of the Liquidating Trustee shall include:

(a)    to invest Cash in accordance with Bankruptcy Code Section 345, and withdraw and make distributions of Cash to Holders of Allowed Claims;

(b)    to receive, manage, invest, supervise, protect, liquidate, or otherwise dispose of the Assets;

(c)    to propose a wind-down budget, and update the same from time to time;

(d)    to engage attorneys, consultants, agents, employees and all professional persons to assist the Liquidating Trustee with respect to the Liquidating Trustee's responsibilities without the need for Court approval;

(e)    to establish the Trust Expense Fund, and pay all Trust Expenses therefrom, including all expenses in connection with administering this Plan and winding down the affairs of the Debtors, subject to the terms of this Plan without further notice, hearing or approval of the Court.

(f)    to execute and deliver all documents, and take all actions, necessary to consummate this Plan and wind-down the Debtors' business, including, to effectuate the dissolution of the Debtors;

(g)    to coordinate the storage and maintenance of the Debtors' books and records;

(h)    to oversee compliance with the Debtors' accounting, finance, and reporting obligations;

25

(i)    to oversee the filing of final tax returns, audits and other corporate dissolution documents if required;

(j)    to object to Claims, compromise and settle Claims without Court approval;

(k)    to initiate, continue and prosecute all Causes of Action, and to act on behalf of the Debtors and the Estates in all litigation, adversary proceedings and contested matters (including any Causes of Action), then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute or adjust any actions involving the Assets or Trust Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise waived or relinquished in this Plan;

(l)    to implement and enforce all provisions of this Plan; and

(m)    to use such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan or Court order or as may be necessary and proper to carry out the provisions of this Plan.

**9.2    Compensation of Liquidating Trustee and its Professionals**.

The Liquidating Trustee and Persons employed by the Liquidating Trustee shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses on a regular basis from the Trust Expense Fund without the need for filing retention applications or fee applications.

**9.3    No Agency Relationship**.

The Liquidating Trustee shall not be deemed to be the agent of any of the Holders of Claims in connection with the funds held or distributed pursuant to this Plan.  The Liquidating Trustee shall not be liable for any mistake of fact or law or error in judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty on the part of the Liquidating Trustee.  The Liquidating Trustee shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estates and the Trust against any and all claims arising out of his duties under this Plan, except to the extent his actions constituted gross negligence, willful misconduct, or breach of fiduciary duty. The Liquidating Trustee may conclusively rely, and shall be fully protected personally in acting upon, any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he believes to be genuine and to have been signed or presented by the proper party or parties.  The Liquidating Trustee may rely upon information previously generated by the Debtors and provided to him by former employees of the Debtors.

**9.4    Reporting**.

Until a final decree closing the Chapter 11 Cases is entered, the Liquidating Trustee shall comply with any reporting requirements established pursuant to the guidelines of the U.S. Trustee or applicable law.

**9.5     Resignation, Death or Removal of Liquidating Trustee**.

The Liquidating Trustee may resign at any time upon not less than thirty (30) days' written notice filed with the Bankruptcy Court.  In the event of the resignation, removal, death or incapacity of the Liquidating Trustee or any other vacancy in the position of Liquidating Trustee, the Trust Committee shall select a successor.  No successor Liquidating Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of his or her predecessors.

**SECTION 10.         EXECUTORY CONTRACTS**

**10.1     Rejection of Contracts and Unexpired Leases**.

Except as otherwise set forth in this Plan, each executory contract and unexpired lease of the Debtors that has not previously been assumed or rejected shall be rejected as of the Effective Date.  Except as otherwise set forth in this Plan, any Claim for damages arising from rejection of any executory contract or unexpired lease under this Plan must be filed with the Court within the earlier of thirty (30) days after service of notice of the Effective Date, which notice shall include such deadline, or such other deadline established by the Court.  Any holder of a Claim arising from the rejection of an executory contract or unexpired lease that has not filed such a Claim within such time, or such other time as may be required by the Court, will be forever barred from receiving any distribution under this Plan on account of such Claim or asserting any such Claims against the Debtors, the Estates, the Trust, or the Liquidating Trustee, absent order of the Court to the contrary.

**10.2     Insurance Contracts**.

To the extent any insurance policies issued to any Debtor, or insurance agreements to which any Debtor is a party entered into prior to the Petition Date, constitute executory contracts, then notwithstanding anything contained in this Plan, this Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption, pursuant to § 365(a) of the Bankruptcy Code.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Effective Date with respect to each such insurance policy or agreement.

**10.3     Compensation and Benefit Programs**.

To the extent not previously terminated, all employment and severance agreements and policies and all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to its employees and officers in effect on the Effective Date shall be deemed rejected and terminated as of the Effective Date.

**10.4     Reservation of Rights as to Executory Contracts**.

Nothing contained in this Plan shall constitute an admission by the Debtors that any contract or lease is in fact an executory contract or unexpired lease or that the Debtors have liability thereunder. If there is a dispute whether a contract or lease is or was executory or unexpired at the

time of assumption or rejection, the Liquidating Trustee shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

**SECTION 11.          DISTRIBUTION PROVISIONS**

      **11.1    No Distributions on Account of Claims That Have Not Become Allowed Claims**.

      Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim that has not become an Allowed Claim.

      **11.2    Reserves for Claims That Have Not Been Allowed**.

      Distributions on account of Claims that have not become Allowed Claims shall be governed by the following provisions:

      (a)    The Liquidating Trustee shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been waived, withdrawn, or disallowed by a Final Order of the Court.

      (b)    With respect to Claims that have not become Allowed Claims and that are not governed by **subparagraph (a)** above or **Section 10.1** of this Plan, the Liquidating Trustee shall reserve sufficient funds to allow for a Distribution in accordance with the terms of this Plan, on account of the Distribution attributable to such Holders' Claims or as otherwise provided pursuant to any order of the Court with respect to the amount, if any, to be reserved.  At the request of the Liquidating Trustee or any Holder of a Claim, the Court may, after notice and a hearing, fix the amount of any Claim for purposes of establishing reserves.  In the absence of an Order establishing a specific reserve amount, the Liquidating Trustee, may in his sole discretion comply with this **Section 11.2** by reserving $100 for each Claim not stating an amount.  Further, with respect to Claims covered by insurance, the Liquidating Trustee may establish reserves based solely on any deductible, self-insured retention amount, or that part of a Claim not otherwise covered by insurance.  Cash withheld pursuant to this subparagraph will be held in a segregated, interest-bearing fund or funds.  Such Cash will be released when and if Claims are Allowed and Disallowed and shall be applied in accordance with this Plan.

      **11.3    Distribution of Plan Consideration**.

      The Trust shall make distributions to Holders of Trust Beneficial Interests in accordance with this Plan.  Holders of Trust Beneficial Interests acting in a representative capacity, such as the Sharity Liquidating Trustee and the Unity Class Settlement Administrator, shall be responsible for making distributions to the persons they represent and the Trust shall have no responsibility with respect thereto.

      **11.4    Unclaimed Cash**.

      If any Person entitled to Cash under this Plan cannot be located on the date a distribution is to be made, such Cash will be set aside and held in a segregated fund to be maintained by the Liquidating Trustee.  If such Person is located within ninety (90) days of the date of distribution,

such Cash will be paid to such Person.  If such Person cannot be located within ninety (90) days of the date of distribution, any such Cash and accrued interest thereon shall be released to the Liquidating Trustee and distributed in accordance with this Plan, and such Person shall not be entitled to any amounts in connection with such distribution or any subsequent distribution, and the Claims of such person to which such Cash relates shall be discharged and forever barred from assertion against the Debtors, the Estates, the Assets, the Trust, or the Liquidating Trustee. Nothing contained in this Plan shall require the Liquidating Trustee to attempt to locate such Person.  It is the obligation of each Person claiming rights under this Plan to keep the Liquidating Trustee advised of their current address by sending written notice of any changes to counsel for the Debtors and the Liquidating Trustee. Creditors' duties of (i) notifying counsel for the Debtors and the Liquidating Trustee of any change of address, and (ii) negotiating any check received by the deadline set forth above, shall be conditions of participating in any distributions under the Plan.

### 11.5    Unnegotiated Distribution Checks.

Checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter.  Any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtors, the Estates, the Assets, the Trust, or the Liquidating Trustee.  Any distribution which is deemed nonnegotiable shall re-vest with the Trust and be available for distribution consistent with this Plan.

### 11.6    Fractional Dollars.

Any other provision of this Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any Holder of an Allowed Claim would otherwise be called for, the Liquidating Trustee may, in his discretion, round such fraction up or down and make payments accordingly.

### 11.7    Distribution Dates.

In addition to any distribution times established under this Plan, the Liquidating Trustee shall make a good faith determination at six month intervals after the Effective Date as to the advisability of making interim distributions and may make interim distributions in his discretion. Whenever any distribution to be made under this Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day.

### 11.8    Bankruptcy Code Sections 509 and 510.

Distributions under this Plan will be governed by the provisions of Bankruptcy Code Sections 509 or 510 where applicable.

### 11.9    Distributions to be Applied First to Administrative and Priority Claims.

To the extent any Holder of an Allowed Claim receives any distribution(s) under this Plan on account of Claims, said distribution(s) shall be applied by the recipient first to satisfy any Allowed Administrative Claims, Allowed Priority Tax Claims, or Allowed Unsecured Priority

Claims and, only after all such Claims are fully satisfied, to any Allowed Claims not entitled to such priority.

### 11.10   Estimation of Claims.

The Liquidating Trustee may, at any time, request that the Bankruptcy Court (or District Court, as applicable) estimate any Claim not expressly Allowed by the terms of this Plan and otherwise subject to estimation under Bankruptcy Code Section 502(c) and for which the Debtors may be liable under this Plan, including any Claim for taxes, to the extent permitted by Bankruptcy Code Section 502(c).   In the event that the Bankruptcy Court (or District Court, as applicable) estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or District Court, as applicable).   If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim.   All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated by the Bankruptcy Court (or District Court, as applicable) and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court (or District Court, as applicable).

### 11.11   Chapter 5 Provisions.

No distribution or payment shall be made to any Holder of an Allowed Claim who is also a potential defendant in an Avoidance Action until a decision is made by the Liquidating Trustee not to commence the potential Avoidance Action, or, in the event the potential Avoidance Action is commenced by the Liquidating Trustee, until resolution of such Avoidance Action. Notwithstanding this **Section 11.11**, the making of a distribution to such potential defendant or the lack of any objection filed to such Allowed Claim on the basis of such potential Avoidance Action, shall not constitute a waiver of any rights of the Debtors or the Liquidating Trustee, as the case may be.   For purposes of this Plan, such distribution or payment on account of such Allowed Claim shall be held in reserve as if it were a disputed Claim.

### 11.12   Third-Party Agreements.

Except as set forth herein, all subordination and intercreditor agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law.

### 11.13   Objections to Claims.

Objections to Claims shall be filed by the Liquidating Trustee with the Bankruptcy Court within one hundred eighty (180) days after the Effective Date of this Plan, ***provided, however***, the Liquidating Trustee may not object to any Claim once it becomes an Allowed Claim.   The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or disallowed or (ii) the date fixed by the Court upon motion of the Liquidating Trustee or a Holder of a Claim.   Nothing contained herein shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Effective Date.

30

**11.14   Settlement of Causes of Action and Disputed Claims**.

Subject to the terms of the Trust Agreement, pursuant to Bankruptcy Rule 9019(b), the Liquidating Trustee may settle any Cause of Action or disputed Claim without notice or Court approval.   For the avoidance of doubt, the Liquidating Trustee shall have the authority to compromise or settle any objections to Claims without approval of the Court.   Notwithstanding the foregoing, the Liquidating Trustee may in his sole discretion seek entry of an order of the Bankruptcy Court approving any proposed settlement.

**11.15   Setoffs**.

The Liquidating Trustee may, pursuant to and in accordance with Bankruptcy Code Section 553 or applicable nonbankruptcy law, except as otherwise set forth in this Plan, set off or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim, the claims, rights and Causes of Action of any nature that the Debtors may hold against the Holder of such Allowed Claim, *provided* the Liquidating Trustee gives the Holder of such Allowed Claim notice of the proposed setoff or recoupment and the Holder of such Allowed Claim does not object to the proposed setoff or recoupment within thirty (30) days; *provided further*, if the Holder of such Allowed Claim timely objects to the proposed setoff or recoupment, the setoff or recoupment may not be effectuated without prior approval of the Court; *provided further*, neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Liquidating Trustee of any such claims, rights and Causes of Action that the Debtors may possess against such Holder.

**11.16   Distribution Cap**.

Except to the extent consistent with the treatment set forth in this Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any distribution in excess of the Allowed amount of that Claim.

**11.17   De Minimis Distributions**.

Notwithstanding anything to the contrary contained in this Plan, if the amount of Cash to be distributed to the Holder of an Allowed Claim is less than $20, the Liquidating Trustee may hold the Cash distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $20.   Notwithstanding the preceding sentence, if the amount of Cash distribution to such Holder never aggregates to more than $20, then on the final distribution date, the Liquidating Trustee shall distribute such Cash to the Holder entitled thereto.

**11.18   Withholding Taxes**.

In connection with this Plan, to the extent applicable, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed on it by federal, state, and local taxing authorities, and all distributions shall be subject to such requirements.   All Claims held by any Holder of a Claim that fails to provide information reasonably requested by the Liquidating Trustee in connection with such matters shall be discharged and forever barred from assertion against the Debtors, the Assets, the Trust, or the Liquidating Trustee.

### 11.19   Distribution Record Date.

Except as otherwise provided in a Final Order of the Court or as otherwise stipulated by the Debtors or Liquidating Trustee, as applicable, the transferees of Claims transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Debtors and Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes, only the Person listed on the proof of claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Liquidating Trustee, as of the Distribution Record Date.

## SECTION 12.          CONDITIONS PRECEDENT

### 12.1   Conditions to Confirmation.

Confirmation of this Plan shall not occur and the Court shall not enter the Confirmation Order unless (i) all of the requirements of the Bankruptcy Code for confirmation of this Plan shall have been satisfied; and (ii) the Plan Documents shall be in form and substance satisfactory to the Debtors.  Without limitation, the Confirmation Order shall empower and authorize the Debtors to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable them to implement the provisions of this Plan and to satisfy all other conditions precedent to the effectiveness of this Plan.

### 12.2   Conditions to Effective Date.

The Effective Date shall not occur unless:  (a) the Court shall have entered the Confirmation Order as a Final Order, in form and substance reasonably satisfactory to the Plan Proponents; (b) the Plan Documents shall be in form and substance satisfactory to the Plan Proponents; and (c) no appeal or request for revocation of the Confirmation Order under Bankruptcy Code Section 1144 shall have been made and still be pending.

### 12.3   Nonfulfillment of Conditions.

In the event that the Debtors determine that the conditions to Confirmation or to the Effective Date set forth in the immediately foregoing paragraphs of this Plan cannot be satisfied and should not, in their sole discretion, be waived, or if the Effective Date does not occur on or before March 30, 2023 (unless this date is extended by the Plan Proponents), this Plan shall be null and void and shall have no force nor effect, and this Plan shall be deemed withdrawn.

### 12.4   Waiver of Conditions to Confirmation and Effective Date.

Each of the conditions to the Effective Date may be waived, in whole or in part, by the Plan Proponents, without notice or an order of the Bankruptcy Court, provided however that the Plan Proponents shall provide notice of any such waiver to the United States Trustee.

32

## SECTION 13.            EFFECTS OF PLAN CONFIRMATION

### 13.1      Interest on Claims, Fees, Costs, Charges.

Except as specifically provided for in this Plan or Bankruptcy Code Section 506(b), interest and postpetition fees, costs and charges shall not accrue on Claims and no Holder of a Claim shall be entitled to interest, fees, costs, or charges accruing on or after the Petition Date on any Claim.

### 13.2      Exculpation.

**Except as specifically provided in this Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any Exculpated Claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence, willful misconduct, or fraud, but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan..**

### 13.3      Injunction.

**Except as otherwise provided in this Plan or Confirmation Order, as of the Effective Date all Persons that hold a Claim are permanently enjoined from taking any of the following actions:  (1) commencing or continuing in any manner any action or other proceeding against an Exculpated Party with respect to an Exculpated  Claim, or as against any of the Assets to be distributed under this Plan or any other Trust Assets; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against an Exculpated Party with respect to an Exculpated Claim, or as against any of the any of the Assets to be distributed under this Plan or any other Trust Assets; or (3) creating, perfecting or enforcing any lien or encumbrance against an Exculpated Party with respect to an Exculpated Claim, or as against any of the Assets to be distributed under this Plan or any other Trust Assets. Nothing in this injunction shall preclude the Holder of a Claim from enforcing its rights to the treatment provided in this Plan, from pursing any available insurance or third parties not expressly described above, or from seeking discovery in actions against third parties. Nothing in the Plan or this Confirmation Order shall preclude any Governmental Entity from using its own judicial or regulatory processes to initiate, pursue, or resolve any police or regulatory matters involving the Debtor and to settle such matters or enter judgment thereon, but with the understanding that collection of any amounts found to be owing from the Debtor shall be made in accordance with the payment terms of the Plan to holders of Class 5 Claims.**

### 13.4      Post-Effective Date Effect of Evidences of Claims.

Notes, certificates, and other evidences of liens or Claims against the Debtors shall, effective upon the Effective Date, represent only the right to participate in the distributions or rights, if any, contemplated by this Plan.

13.5    **Surrender of Instruments and Release of Liens**.

Except as otherwise provided in this Plan, each Holder of an instrument evidencing a Claim against the Debtors or any of the property of the Debtors shall, if requested by the Liquidating Trustee, surrender such instrument to the Liquidating Trustee.  The Liquidating Trustee may withhold Distributions under this Plan to or on behalf of any Holder of such Claim unless and until such instrument is received or the non-availability of such instrument is established to the satisfaction of the Liquidating Trustee.  Each Person who is to receive distributions under this Plan in complete satisfaction of a Secured Claim shall if requested by the Liquidating Trustee, execute and deliver a release of its liens and security interests to the Liquidating Trustee.  The Court may enter an order requiring the execution and delivery of a release at the cost of such Person by the Liquidating Trustee and providing that such act when so done shall have like effect as if done by such Person or any other appropriate order.

13.6    **Term of Stays**.

**Except as otherwise provided in this Plan the stay provided for in the Debtors' Chapter 11 Cases pursuant to Bankruptcy Code Section 362, shall remain in full force and effect until the Chapter 11 Cases are closed.**

13.7    **No Discharge**.

Pursuant to Bankruptcy Code Section 1141(d)(3), the Confirmation Order will not discharge the Debtors of any debts.

13.8    **Retention of Jurisdiction**.

Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Court will retain jurisdiction to the fullest extent permitted by law, including jurisdiction to enter any orders or to take any action specified in this Plan, and including:

(a)    To determine any motion, adversary proceeding, application, contested matter, and other litigated matter concerning the Debtors, the Estates, the Trust, the Assets, or the Trust Assets pending on or commenced after the Confirmation Date;

(b)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases;

(c)    To enter orders with respect to distributions under this Plan;

(d)    To consider Claims, including Administrative Claims, Priority Tax Claims, Other Secured Claims, Priority Unsecured Claims, General Unsecured Claims, and Subordinated Claims or the allowance, classification, priority, compromise, estimation, or payment thereof;

(e)    To enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

34

(f)     To issue injunctions, enter other Orders, and take such other actions necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order or any other Order of this Court;

(g)     To hear and determine any application to modify this Plan, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner necessary to carry out the purposes and effects thereof;

(h)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(i)     To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein or in this Plan, or to maintain the integrity of this Plan following consummation;

(j)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(k)     To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code Sections 346, 505, and 1146;

(l)     To construe and enforce prior orders of the Court in the Chapter 11 Cases;

(m)     To recover all Assets and property of the Estates, wherever located; and

(n)     To enter a final decree closing the Chapter 11 Cases.

**13.9     Failure of the Court to Exercise Jurisdiction**.

If the Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Cases, this Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

**SECTION 14.          MISCELLANEOUS PROVISIONS**

**14.1     Exemption from Transfer Taxes**.

Pursuant to Bankruptcy Code Section 1146(a), the creation or amendment of any mortgage, deed of trust or other security interest, the making or assignment of any lease or the making or delivery of any deed or other instrument of transfer, under, in furtherance of or in connection with this Plan, and any sale of the Assets, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

### 14.2    Modification of Plan.

The Plan Proponents may modify this Plan prior to the entry of the Confirmation Order; *provided, however* that this Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements of Bankruptcy Code Sections 1125 and 1127(a), as well as Bankruptcy Rule 3019(a).   After the entry of the Confirmation Order, the Plan Proponents  or the Liquidating Trustee may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, *provided* it meets the requirements of Bankruptcy Code section 1127(b) and Bankruptcy Rule 3019(b) and (i) the Plan Proponents or Liquidating Trustee, as applicable, obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment, or distributions of any Class under this Plan.

### 14.3    Revocation of this Plan.

The Plan Proponents reserve the right to revoke or withdraw this Plan, prior to the Confirmation Date, for any reason they may deem appropriate.   If this Plan is revoked or withdrawn, then this Plan shall be null and void in all respects and nothing contained in this Plan shall constitute a waiver or release of any claims by or against, the Plan Proponents, or prejudice in any manner the rights of the Plan Proponents.

### 14.4    Preservation and Application of Insurance.

The terms of this Plan shall not diminish or impair in any manner the enforceability and coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims or any claims against directors, trustees or officers of the Debtors, or any other Person, other than as expressly as set forth herein.   All of the Debtors' insurance policies, or third party policies naming the Debtors as an additional insured, and the proceeds thereof shall be available to satisfy Claims to the extent such insurance policies cover such Claims provided, however, that the Liquidating Trustee shall be the sole person entitled to recover from any insurance policies or proceeds thereof.   In addition, such insurance policies and proceeds thereof shall be available to satisfy Claims estimated pursuant to Bankruptcy Code Section 502(c) or in accordance with this Plan.   For the avoidance of doubt, Confirmation of the Plan and the occurrence of the Effective Date shall not affect, reduce, discharge or diminish coverage, or provide a defense to any insurer, or trigger any exclusion under any policy, including, without limitation, any insured vs. insured exclusion.   Any insurance policies and proceeds thereof shall be, and remain, subject to the automatic stay contained in 11 U.S.C. § 362 following the Confirmation Date and the Effective Date.

### 14.5    Successors and Assigns, Binding Effect.

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person, including with respect to the Debtors, any chapter 7 or chapter 11 trustee.   The

provisions of this Plan shall bind all Holders of Claims, whether or not they have accepted this Plan.

### 14.6    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 14.7    Notices.

All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail addressed to counsel to the Plan Proponents as set forth on the front page of this Plan and to the Liquidating Trustee as set forth in the Plan Supplement. All notices and requests to Holders of Claims shall be sent to them at their last known address or to the last known address of their attorney of record in these Chapter 11 Cases, if any. Any Person may designate in writing any other address for purposes of this **Section 14.8**, which designation will be effective upon receipt by the Plan Proponents and the Liquidating Trustee.

### 14.8    Severability.

If, prior to confirmation, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

### 14.9    Designated Notice.

Notwithstanding any other provision of this Plan, when notice and a hearing is required with regard to any action to be taken by the Debtors or the Liquidating Trustee, Designated Notice shall be sufficient. With respect to any proposed action to be taken as authorized under this Plan which may only be taken following Designated Notice, the following procedures shall apply. After Designated Notice of the proposed action has been provided as required under the Plan, if any party in interest files with the Court within ten (10) days of the service of such Designated Notice a written objection to the proposed action, and serves a copy of said objection upon the Debtors and the Liquidating Trustee and their counsel, then the Court shall schedule a hearing with respect to such objection and, unless the objection is withdrawn by agreement of the parties, the proposed action may only be taken if approved by Final Order of the Court. If no objection is timely filed and served, the proposed action may be taken without further authorization or approval by the Court.

### 14.10    Validity and Enforceability.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. Should any provision in this Plan be

37

determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

### 14.11   Plan Supplement.

Any exhibits, schedules or other Plan Documents not filed with this Plan may be contained in the Plan Supplement as necessary to implement the terms of this Plan.

### 14.12   Controlling Documents.

In the event and to the extent that any provision of this Combined Plan and Disclosure Statement is inconsistent with the Confirmation Order, the Confirmation Order shall control.

### 14.13   Reservation of Rights.

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the occurrence of the Effective Date.

### 14.14   Substantial Consummation.

Upon the Effective Date, this Plan will be deemed substantially consummated for purposes of Bankruptcy Code Sections 1101 and 1127(b).

### 14.15   Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated in this Plan, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and transactions consummated or to be consummated in connection therewith.

*[Signature page follows]*

38

This 14th day of August, 2023.

THE ALIERA COMPANIES, INC.

ADVEVO LLC

ENSURIAN AGENCY LLC

TACTIC EDGE SOLUTIONS LLC

USA BENEFITS & ADMINISTRATORS LLC

By:  */s/ Katie S. Goodman*
Its:  Authorized Officer

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ALIERA COMPANIES, INC., ET AL.

By:  */s/ Craig Wilson*
Its:  Chairperson

39

## Exhibit 1
## Definitions

The following terms used herein shall have the respective meanings defined below:

1.1     ***Administrative Claim*** means a Claim for payment of an expense or cost of a kind specified in Bankruptcy Code Section 503(b) and referenced in Bankruptcy Code Sections 507(a)(2), 507(b) or 1114(e)(2)(if any) including, the actual, necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors, including wages, taxes incurred by the Estates and Allowed as administrative expenses, and salaries, or commissions for services rendered after the commencement of these Chapter 11 Cases; ***provided, however***, the term does not include U.S. Trustee Fees, which are treated separately in this Plan.  For the avoidance of doubt, Administrative Claims include DIP Claims, which have been satisfied in full as of the date of this Plan and are Allowed Claims for purposes of this Plan.  Allowed Administrative Claims include (1) payment of legal fees and costs of Petitioning Creditors regarding the filing of the petition for involuntary bankruptcy, pursuant to Section 503(b)(4) of the Bankruptcy Code to Stevens & Lee of $42,221.00 in attorney fees and $1,913 for costs; and (2) $100,000 in payment for legal assistance to members of the Medical Class to negotiate medical debt related to the Aliera members.

1.2     ***Aliera*** means The Aliera Companies, Inc., and its predecessor, Aliera Healthcare, Inc.

1.3     ***Allowed*** means, with reference to any Claim and except as otherwise expressly set forth in this Plan, (i) a Claim (a) listed in the Schedules and not described on the Schedules as zero, disputed, unliquidated or contingent or (b) described in a Filed proof of claim and, in each case, as to which no objection or request for estimation has been Filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; or (ii) a Claim that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Liquidating Trustee or (c) pursuant to the terms of this Plan.  An Allowed Claim (i) includes a disputed Claim to the extent such disputed Claim becomes Allowed after the Effective Date and (ii) shall be net of any valid setoff or recoupment exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law.  Unless otherwise specified in this Plan, in Bankruptcy Code Section 506(b) or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of distribution under this Plan, include costs of collection or interest on such Claim accruing from and after the Petition Date.

1.4     ***Allowed,*** with respect to an Administrative Claim, and except as otherwise expressly set forth in this Plan, (i) an Administrative Claim described in a Filed proof of claim and, in each case, as to which no objection or request for estimation has been Filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; or (ii) an Administrative Claim that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Administrative Claim and the Liquidating Trustee or (c) pursuant to the terms of this Plan.

40

1.5    *Assets* means all assets and property of the Debtors of any nature whatsoever, including, all property of their respective Estates pursuant to Bankruptcy Code Section 541, Avoidance Action Recoveries, Cash, Causes of Action, equipment, General Litigation Recoveries, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing, including without limitation, proceeds of the sale of any Assets pending disbursement. For purposes of distributions under this Plan "Assets" shall not include any Assets subject to restrictions that are inconsistent with the use of those Assets to satisfy Claims; the Liquidating Trustee shall dispose of such Assets, if any, in accordance with applicable non-bankruptcy law.

1.6    *Avoidance Action Recoveries* means any funds received from the prosecution, settlement or other disposition of any Avoidance Actions.

1.7    *Avoidance Actions* means any claims or causes of action held by the Debtors or their Estates pursuant to 11 U.S. Sections 542, 544, 545, 547, 548, 550 or 553, provided, for the avoidance of doubt, Avoidance Actions shall not include any causes of action that constitute General Litigation Claims.

1.8    *Ballots* shall mean those ballots cast by the Holders of Claims who are entitled to vote in favor or against the Plan.

1.9    *Bankruptcy Code* means chapter 11 of title 11 of the United States Code, as now in effect or hereafter applicable to these Chapter 11 Cases.

1.10    *Bankruptcy Court* **or** *Court* means the United States Bankruptcy Court for the District of Delaware or any successor thereto that may be established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Cases or this Plan.

1.11    *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Court, as applicable to these Chapter 11 Cases.

1.12    *Budget* has the meaning specified in the Final DIP Order.

1.13    *Business Day* means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in Wilmington, Delaware.

1.14    *Cash* means cash and cash equivalents including, checks and wire transfers.

1.15    *Cause of Action* means any cause of action or claim held by the Debtors, the Estates, the Trust or any of them of any nature or type whatsoever, at law or in equity, against any person or entity, including any Avoidance Action and General Litigation Claim.

1.16    *Chapter 11 Cases* means the above-captioned cases, jointly administered under Case No. 21-11548-JTD.

1.17    *Claim* means a claim, as defined by Bankruptcy Code Section 101(5), against the Debtors or their Assets, whether or not asserted.

1.18     ***Class*** means a class or category of Claims as classified and described in **Section 3** of this Plan.

1.19     ***Confirmation Date*** means the date on which the clerk of the Court enters the Confirmation Order on the Court's docket.

1.20     ***Confirmation Hearing*** means the hearing on confirmation of this Plan pursuant to Bankruptcy Code Section 1129.

1.21     ***Confirmation Order*** means the order entered by the Court confirming this Plan in accordance with the Bankruptcy Code.

1.22     ***Cramdown*** means the confirmation of this Plan pursuant to Bankruptcy Code Section 1129(b) notwithstanding any rejection by an impaired Class or Classes of Holders of Claims or Interests of this Plan.

1.23     ***Creditor*** means a Holder of a Claim.

1.24     ***Debtors*** means (i) The Aliera Companies Inc., (ii) Advevo LLC,  (iii) Ensurian Agency LLC, (iv) Tactic Edge Solutions LLC, and (v) USA Benefits & Administrators LLC, debtors and debtors in possession, and includes the Estates, where appropriate.

1.25     ***Designated Notice*** means notice and an opportunity for a hearing as defined in Section 102(a) of the Bankruptcy Code, with notice limited to the Liquidating Trustee, the Debtors, and their respective counsel, the Office of the United States Trustee, and other parties in interest who, after entry of the Confirmation Order, file a request for notice with the Clerk and serve a copy of such request on counsel to the Liquidating Trustee and the Debtors.

1.26     ***Disallowed Claim*** means:  (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Court or otherwise in accordance with the Plan; (b) a Claim that has been listed in the Schedules in the amount of zero dollars or an unknown amount or as contingent, disputed or unliquidated, and as to which no Proof of Claim has been filed or deemed filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been filed or deemed filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law.

1.27     ***Disclosure Statement*** means the Disclosure Statement with respect to this Plan, as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.28     ***Distribution*** means Cash, Property, interests in Property or other value distributed under the Plan to the Holders of Allowed Claims and/or Trust Beneficial Interests.

1.29     ***Distribution Record Date*** means the Confirmation Date, unless a different date is designated by the Confirmation Order or other order of the Bankruptcy Court.

1.30    **District Court** means the United States District Court for the District of Delaware and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom, or any successor thereto.

1.31    **Effective Date** means two (2) days after the date on which each of the conditions to this Plan's Effective Date set forth herein has either been satisfied or waived in accordance with this Plan.

1.32    **Estates** means the estates of the Debtors created by the Debtors' Chapter 11 Cases pursuant to Bankruptcy Code Section 541.

1.33    **Exculpated Claim** means any claim related to any act or omission taking place between the Petition Date and the Effective Date of the Plan in connection with, relating to or arising out of the Debtors' in or out of court restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 Cases, the disposition of the Assets, the pursuit of confirmation of this Plan, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement; **provided**, **however**, that Exculpated Claims shall not include (i) any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud. For the avoidance of doubt, no Cause of Action, obligation or liability specifically identified in or preserved by this Plan, the Disclosure Statement, or the Plan Supplement constitutes an Exculpated Claim.

1.34    **Exculpated Party** means each of:  (i) the Debtors and their professionals retained in the Chapter 11 Cases, (ii) Mike Roye, the independent director of the Debtors, (iii) GGG Partners, LLC, the Debtors' Chief Liquidation Officer, and its principals, employees and representatives, and (iv) the Committee, and its members, in their capacity as such, and professionals retained by the Committee during the Chapter 11 Cases. For the avoidance of doubt, other than Mike Roye and the Debtors' Chief Liquidation Officer, no current or former principal, director, officer, employee, or agent of the Debtors, including, without limitation, Shelley Steele, shall be an Exculpated Party.

1.35    **Existing Debtor-Held Funds** means any funds held by the Debtors as of the Effective Date.

1.36    **File** or **Filed** means properly filed with the clerk of the Bankruptcy Court in the Chapter 11 Cases, as reflected on the official docket of the Bankruptcy Court for the Chapter 11 Cases.

1.37    **Final Order** means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for stay, new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument, or rehearing has been sought, (i) such order or judgment shall have been affirmed

by the highest court to which such order was appealed, certiorari shall have been denied, or a stay, new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Bankruptcy Code Section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

1.38   *General Litigation Claims* means any pre- or post-petition claims or causes of action held by the Debtors or their Estates that are not expressly released by this Plan *provided*, for the avoidance of doubt, General Litigation Claims shall not include any causes of action that constitute Avoidance Actions.

1.39   *General Litigation Recoveries* means any funds received from the prosecution, settlement or other disposition of any General Litigation Claims.

1.40   *Governmental Unit* shall have the meaning ascribed thereto in Bankruptcy Code Section 101(27).

1.41   Holder means

(a)   as to any Claim:

(1)   the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

(2)   if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court; or

(3)   a transferee, if the owner or Holder of such Claim has transferred the Claim to a third party, advised the Debtors in writing of such transfer and the transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

(b)   as to any Equity Interest, all owners of Equity Interests as of the Confirmation Date.

1.42   *Impaired* means, with respect to any Class, that such Class is "impaired" under this Plan within the meaning of Bankruptcy Code Section 1124.

1.43   *Insider* shall have the same meaning ascribed thereto in Bankruptcy Code Section 101(31).

1.44   *Insider Claim* means a Claim held by an Insider.

44

1.45    ***Intercompany Claim*** means any Claim against a Debtor by any other Debtor, whether arising prior to or after the Petition Date.

1.46    ***Interest*** means the interest of any Holder of an equity security of any Debtor, within the meaning of Bankruptcy Code Section 101(16), represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, or any membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in a Debtor.

1.47    ***Person*** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, the Debtors.

1.48    ***Petition Date*** means December 3, 2021, with respect to Aliera, and December 21, 2021, with respect to all Debtors other than Aliera.

1.49    ***Plan*** means this Plan of Liquidation, dated June 26, 2023, as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.50    ***Plan Documents*** means this Plan, the Plan Supplement, the Disclosure Statement, the Trust Agreement, and all exhibits and schedules attached thereto, either in their present form or as each may be amended, supplemented, or otherwise modified from time to time.

1.51    ***Plan Supplement*** means the compilation of documents and forms of documents, schedules, and exhibits to this Plan to be filed not less than fifteen days prior to the date on which the Confirmation Hearing is commenced, including:  the disclosure of the Liquidating Trustee, a notice address for the Liquidating Trustee, the proposed compensation for the Liquidating Trustee, amendments to the proposed Liquidation Trust Agreement, if any, a form of proposed Confirmation Order, a non-exclusive list of Causes of Action against Persons, and related documents as necessary or desirable to implement the terms of this Plan.  The Plan Supplement may also include technical changes to this Plan as agreed by the Plan Proponents.

1.52    ***Priority Tax Claim*** means a Claim of a governmental unit of a kind entitled to priority under Bankruptcy Code Section 507(a)(8).

1.53    ***Privilege*** means all privileges available under applicable law, including without limitation the attorney-client privilege, accountant-client privilege, work product doctrine, joint defense privilege, and common interest privilege.

1.54    ***Professionals*** means all professionals employed in these Chapter 11 Cases pursuant to Bankruptcy Code Sections 327 or 1103.

1.55    ***Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by Bankruptcy Code Section 521 and Bankruptcy Rule 1007, as amended or supplemented through the Effective Date.

1.56     ***Secured Claim*** means a Claim of a Creditor that is secured by property of the Estates, to the extent such Claim has a non-avoidable security interest in the underlying collateral, and in each case solely to the extent of the value of the Creditor's interest in the Estates' interest in such property, as provided in Bankruptcy Code Section 506(a).  Subject to the same conditions, Secured Claim also means a Claim of a creditor that is subject to setoff under Bankruptcy Code Section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code Section 506(a).  Secured Claims include, but are not limited to, obligations to capital equipment lessors to the extent they possess the attributes set forth in this **Section 1.55**.

1.57     ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code Section 507(a)(8) (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

1.58     ***Sharity*** means Sharity Ministries, Inc., and its predecessor, Trinity Ministries, Inc.

1.59     ***Sharity Case*** means the Chapter 11 bankruptcy case filed by Sharity on July 8, 2021, in the Bankruptcy Court, Case No. 21-11001-JTD.

1.60     ***Sharity Plan*** means the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Sharity Ministries Inc. filed in the Sharity Case, on October 1, 2021 [Dkt. No. 223 in Sharity Case] (as further modified, supplemented and amended including all attachments and exhibits thereto), which was confirmed by order of the Bankruptcy Court entered in the Sharity Case on December 2, 2021 [Dkt. No. 343 in Sharity Case].

1.61     ***Sharity Trust*** means the Liquidating Trust established under the Sharity Plan.

1.62     ***Sharity Trust Claim*** means an Allowed Unsecured Claim in favor of the Sharity Trust in the amount of $362,764,161.00, as set forth in **Section 8.8** of the Plan.

1.63     ***Sharity Trustee*** means the Liquidating Trustee appointed under the Sharity Plan to administer the Sharity Trust.

1.64     ***Subordinated Claim*** means a Claim subordinated to Unsecured Claims under Bankruptcy Code Section 510 or by the terms of an agreement enforceable under applicable law.

1.65     ***Subordinated Governmental Claim*** means any Claim held or asserted by any Governmental Unit (including any department, agency or subunit of any Governmental Unit) which is not a Priority Tax Claim.

1.66     ***Trust*** means the trust established on the Effective Date pursuant to this Plan to hold the Assets.

1.67     ***Trust Agreement*** means the form of trust agreement set forth in the Plan Supplement to be executed on the Effective Date to establish the Liquidation Trust.

1.68     ***Trust Assets*** means the Assets.

1.69     ***Trust Beneficial Interest*** means a beneficial interest in the Liquidation Trust.

1.70    **Trustee or Liquidating Trustee** means the Person so designated by the Liquidating Trust Agreement and approved by the Court in the Confirmation Order for purposes of administering and consummating this Plan under the Trust Agreement, including service as trustee for the Trust, and any successor appointed pursuant to this Plan.  The proposed initial Trustee shall be Aliera LT, LLC.

1.71    **Trust Committee** means a committee composed of no more than two designees of the Committee and two designees of the Sharity Liquidating Trust.  The Trust Committee shall provide oversight over the Liquidating Trustee as specified in the Trust Agreement.

1.72    **Trust Counsel** means the counsel retained by the Trustee to conduct the business of the Trust and pursue its litigation claims.  The Liquidating Trustee shall retain knowledgeable and experienced counsel including Greenberg Traurig, LLP as its General Counsel and to pursue the Trust's claims against insiders and other third parties, except for third-party professionals, and Sirianni Youtz Spoonemore Hamburger and Mehri & Skalet to pursue the Trusts' claims against third-party professionals.  Should the Trustee not elect to retain these law firms for these purposes, the Trustee must seek Court approval of any alternative selections.

1.73    **Trust Expense Fund** means a reserve to be established by the Trustee, in his sole discretion, to pay the Trust Expenses in accordance with the Trust Agreement, including, without limitation, costs and expenses of (i) counsel or other advisors retained by the Trustee, (ii) any liquidation or administration of the Trust Assets, and (iii) the litigation of objections to Claims and prosecution of Causes of Action.  The amount of the Trust Expense Fund may be increased with the proceeds of the Trust Assets at any time in the sole discretion of the Trustee.

1.74    **UMC Cash** means all amounts to be Distributed to Holders of Unsecured Medical Claims from the Trust pursuant to the Unsecured Creditor Settlement and the Plan.

1.75    **Unimpaired** means, with respect to any Class, that such Class is not Impaired.

1.76    **Unity** means Unity Healthshare, Inc.

1.77    **Unity Class Certification Motion** means the Motion of Unity Class Representatives to Apply Bankruptcy Rule 7023 to This Matter and for an Order Certifying a Class of Unity Members with a Claim In This Bankruptcy Proceeding [Dkt. No. 344] filed in the Chapter 11 Cases on August 30, 2022.

1.78    **Unity Class POC** means, collectively, one or more class proofs of claim, filed by the Unity Class Representatives against the Debtors in the Chapter 11 Cases.

1.79    **Unity Class Representatives** means Corlyn Duncan, Bruce Duncan, Hanna Albina, and Ellen Larson, who filed the allowed unsecured class proofs of claim in the Chapter 11 Cases on behalf of the Unity Members and who also filed the Unity Class Certification Motion asking the Bankruptcy Court to certify the Unity Class POC as a class action claim under Bankruptcy Rule 7023.

1.80    **Unity Class Settlement Administrator** means the individual identified in the Plan Supplement chosen by the Ad Hoc Committee of Members with the consent of the Committee.

47

1.81    ***Unity Members*** means a class of persons consisting of all individuals who made one or more monthly payments to the Debtors, any time between November 1, 2016 and June 30, 2019, for a healthcare plan that included a Unity Healthshare component.

1.82    ***Unity Member Class Claim*** means the surviving proof of claim to be certified as a class action claim under the Unity Class Certification Motion and the Plan and Allowed as an Unsecured Claim in favor of the Unity Class against the substantively consolidated Debtors in the total, aggregate amount of $297,903,437.00, as described in **Section 8.8(b)** of the Plan.

1.83    ***Unsecured Claim*** means a Claim that is (a) not secured by property of the Estates or otherwise entitled to treatment as a Secured Claim under Bankruptcy Code Section 506, (b) is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507, and (c) is not otherwise an Administrative Claim, Priority Tax Claim, claim for U.S. Trustee Fees, Secured Tax Claim, Secured Claim, Unsecured Priority Claim, Insider Claim, Subordinated Claim or Intercompany Claim.  Unsecured Claims include, without limitation, Claims arising from the rejection of executory contracts and unexpired leases that are not otherwise Secured Claims, and any Claim arising prior to the Petition Date asserted or which can be asserted against any of the Debtors on account of or related to such Debtor's purported liability resulting either from the provision of medical services, including personal injury or wrongful death claims, or any other personal injury or worker's compensation claim.

1.84    ***Unsecured Creditor Settlement*** means a settlement by and among the Debtors, the Committee, the Sharity Trustee, and Unity Class Representatives, on behalf of the Unity Members, described more particularly in **Section 8.8** of the Plan, which shall be approved in connection with the Confirmation of the Plan, and, *inter alia*, provides for distributions from the Trust to Holders of Class 3 Unsecured Trade Claims and Class 4 Unsecured Medical Claims under the Plan.

1.85    ***Unsecured Medical Claim*** means, collectively, the Sharity Trust Claim and the Unity Member Class Claim.

1.86    ***Unsecured Priority Claim*** means a Claim that is not secured by property of the Estates or otherwise entitled to treatment as a Secured Claim under Bankruptcy Code Section 506, but is entitled to priority under Bankruptcy Code Sections 507(a)(4) or 507(a)(5).

1.87    ***UTC Cash*** means all amounts to be Distributed to Holders of Unsecured Trade Claims from the Liquidating Trust pursuant to the Unsecured Creditor Settlement and the Plan.

1.88    ***Unsecured Trade Claim*** means an Unsecured Claim which is not an Unsecured Medical Claim or a Subordinated Governmental Claim.

1.89    ***U.S. Trustee Fees*** means all fees and charges due and payable under 28 U.S.C. § 1930 of the United States Code, together with the statutory rate of interest set forth in section 3717 of the U.S. Code, to the extent applicable.

**EXHIBIT 2**
**LIQUIDATION ANALYSIS**

The Plan Proponents have analyzed whether a liquidation of the Debtors' remaining Assets by a Chapter 7 Trustee, who is unfamiliar with the Debtors and their Assets, would result in a higher return to the Creditors of the Estates than under the proposed Plan. As discussed below, the Plan Proponents believe that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code and that each Holder of an Impaired Claim or Interest will receive value under the Plan on the Effective Date that is not less than the value such Holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code.

The Plan proposes a liquidation of the Debtors' remaining Assets by persons, including Professionals, which are already familiar with such Assets. More importantly, the Plan incorporates the Unsecured Creditor Settlement negotiated by and among the Debtors, the Committee, the Sharity Trustee, and Unity Class Representatives, on behalf of the Unity Members, as described more particularly in **Section 8.8** of the Plan.

Among other things, the Unsecured Creditor Settlement provides for distributions from the Trust to Holders of Class 3 Unsecured Trade Claims and Class 4 Unsecured Medical Claims under the Plan pursuant to a distribution waterfall negotiated by the parties. The Unsecured Creditor Settlement fixes and allows the Class 4 Unsecured Medical Claims, comprised of the Sharity Trust Claim and the Unity Member Class Claim, in a total amount of $660,667,598. The total amount of Allowed Unsecured Trade Claims in Class 3 under the Plan is not fixed, but the Plan Proponents estimate these will range from $10,000,000 to $15,000,000. The proposed waterfall distribution provides that the first $2,500,000 in Available Cash will be distributed to Class 3, and the next $6,000,000 in Available Cash will be distributed to Class 4. Available Cash after that will be distributed pursuant to negotiated percentages as described in Section 8.8. Assuming the Unsecured Creditor Settlement is approved by the Court, it is anticipated that Holders of Governmental Claims will vote in favor of the Plan and subordinate their claims such that no distribution to that Class is expected.

The Unsecured Creditor Settlement is conditioned upon approval of this Plan and entry of a Confirmation Order which approves the settlement. If the Plan is not confirmed and the cases are converted to chapter 7, the Unity Class POC and the Claims asserted by the Sharity Trustee may be contested by a chapter 7 trustee both as to liability and amount. Any such Claims litigation would undoubtedly be expensive and protracted. And in the event either or both of the Unity Class Representatives and/or the Sharity Trustee prevailed in such litigation, the holders of the Unsecured Medical Claims would likely not agree to a distribution arrangement with holders of Unsecured Trade Claims as set forth in the Unsecured Creditors Settlement. Similarly, the creditors asserting Governmental Claims may not agree to subordinate such claims to both the Unsecured Trade Claims and Unsecured Medical Claims and may instead assert that they should receive the same treatment as other unsecured claimants, in which case a chapter 7 trustee would need to determine whether there were bases to object to such Claims either as to liability or amount, and whether such Claims were duplicative of Claims asserted by individual claimants. Absent the settlement, it is likely that a significant portion of the Trust Assets would be consumed with litigating issues related to determining liability and damages in connection with the pending

49

Sharity Adversary Proceeding, reviewing and objecting to Government Claims, objecting to the Unity Class POC, and opposing the Unity Class Certification Motion.

Additionally, conversion of the Chapter 11 Cases to chapter 7 cases would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals. The "learning curve" that the trustee and new professionals would be faced with comes at a significant cost to the Estates and with a significant delay compared to the time of distributions under the Plan (and prosecution of Causes of Action). Worse still, a chapter 7 trustee would be entitled to significant fees relating to the distributions of the already monetized assets made to creditors. Accordingly, a portion of the cash currently available for Distribution to Holders of Claims would instead be paid to the chapter 7 trustee.

Shown below, for illustrative purposes only, is a liquidation analysis showing the projected return under the proposed Plan versus a projected return under a hypothetical distribution under Chapter 7 (assuming that the Unsecured Trade Claims, the Unsecured Medical Claims and the Unsecured Governmental Claims are allowed in the face amounts asserted and are each afforded the same treatment for purposes of distribution). The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Cases. The actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court. While the amount available for distribution is unknown and will depend in part on recoveries from Causes of Action, for purposes of the chart below, the Plan Proponents have assumed a total amount of $10,000,000 will be available for distribution.

**Projected Distribution under the Plan**:

| Claims/Interests | Estimated Allowed Claims | Projected Recovery |
|---|---|---|
| Administrative and Priority Tax Claims | $800,000 | 100% |
| Class 1 – Other Secured Claims | $0.00 | 100% |
| Class 2 – Unsecured Priority Claims | $0.00 | 100% |
| Class 3 – Unsecured Trade Claims | $10,000,000 to $15,000,000 | 18.5 – 27.8% |
| Class 4 – Unsecured Medical Claims | $660,667,598 | 1 - 5% |
| Class 5 – Subordinated Governmental Claims | Exceeds $225,000,000 | 0% |
| Class 6 – Insider Claims | $2,298,479 | 0% |
| Class 7 – Equity Interests | | 0% |

**Projected Distribution in Chapter 7**

| Claims/Interests | Estimated Allowed Claims | Projected Recovery |
|---|---|---|
| Chapter 7 Administrative Claims | $250,000 | 100% |
| Chapter 7 Trustee Commission[3] | $270,000 | 100% |
| Chapter 11 Administrative and Priority Tax Claims | $800,000 | 100% |
| Secured Claims | $0.00 | 100% |
| Unsecured Priority Claims | $0.00 | 100% |
| Unsecured Claims (Trade Claims, Medical Claims and Governmental Claims) | $900,667,596 | 0.96% |
| Insider Claims | $2,298,479 | 0% |
| Equity Interests | | 0% |

---

[3] Calculated on distribution of $10,000,000.

## AGREEMENT TO SETTLE CLAIMS

*Duncan v. The Aliera Companies, Inc., et. al,*
*No. 2:20-cv-00876-TLN-KJN U.S. District Court, Eastern District of California*

*Albina v. The Aliera Companies, Inc., et. al,*
*No. 5:20-cv-00496-DCR, U.S. District Court, Eastern District of Kentucky*

*Smith v. The Aliera Companies, Inc., et. al,*
*1:20-cv02130-RBJ, U.S. District Court, District of Colorado*

This Agreement to Settle Claims ("Agreement") is between plaintiffs Corlyn Duncan, Bruce Duncan, Hanna Albina, Austin Willard, Rebecca Smith, Ellen Larson, Jaime Beard, Jared Beard ("Named Plaintiffs"), the "Settlement Class" (as defined in Section 1.17), and defendants OneShare Health, LLC formerly known as Unity HealthShare, LLC and Kingdom HealthShare Ministries, LLC (collectively, "Defendants"). Named Plaintiffs and Defendants are referred to collectively as the "Parties." This Agreement is a full expression of the agreements between the Parties.

## RECITALS

This Agreement is made with reference to the following facts:

1. In December of 2015 Aliera Companies, Inc. ("Aliera") was incorporated to sell direct primary care medical plans. In 2016, Aliera approached the parent ministry of Unity Healthshare, LLC ("Unity"), proposing that it expand its sharing plan offerings by allowing Aliera to market its own products alongside the Unity program and act as the administrator of both the Aliera products and the Unity programs.

2. Aliera and Unity's parent ministry entered into a Memorandum of Understanding on October 31, 2016 that was reduced to a contract on February 1, 2017. Pursuant to the agreement, Aliera received an exclusive license to sell and administer Unity sharing programs. It permitted Aliera, as administrator, to receive all payments directly from the Unity members. As administrator, Aliera was responsible for making sharing determinations under the Unity program consistent with the member sharing guidelines. Shortly after the Memorandum of Understanding was signed, Aliera began offering and administering the Unity program.

3. In 2018, after developing concerns regarding the accounting for and segregation of Unity funds held by Aliera, Unity discovered that an Aliera insider had written himself about $150,000 in checks from Unity funds without approval. Unity voiced its concerns about how Aliera was maintaining Unity's bank accounts used to administer Unity and pay sharing requests of members. In July 2018, Unity demanded that Aliera turn over to it the control of Unity's funds. Unity terminated the relationship with Aliera on August 10, 2018. Prior to Unity's termination of the agreement, Aliera had formed a new entity, Trinity HealthShare, Inc. ("Trinity").

1

**EXHIBIT**
**1.42**

Ex. 1.42, p. 1 of 24

After Unity's termination of the agreement, Aliera represented Trinity as an HCSM and continued to do business. Aliera sought to move Unity members over to Trinity, and during this effort, denied Unity access to its website and member database.

4.   Aliera sued Unity and Unity's parent ministry in Georgia in late 2018, and Unity counterclaimed. *See Aliera Healthcare v. Unity Healthshare, LLC, et al.*, No. 2018CV308981 (Fulton Cnty. Super. Ct.). The Georgia litigation was resolved and the parties entered into a settlement under which Aliera promised to pay OneShare a confidential sum over time.

5.   Following the termination of its relationship with Aliera, Unity began administering its own programs, but because Aliera continued to withhold the website and other Unity intellectual property, a name change was necessitated. Initially, Unity became Kingdom HealthShare Ministries, LLC ("Kingdom"), but because of name confusion with another entity with a similar name, Kingdom was almost immediately changed to OneShare Health, LLC ("OneShare"). On July 1, 2019, the healthshare program became known as OneShare.

6.   Subsequently, three putative class action lawsuits were filed against Aliera, Trinity, and OneShare. The actions, brought in the United States District Courts for the Eastern District of California, Eastern District of Kentucky, and District of Colorado, alleged, *inter alia*, that Aliera, Trinity, and Unity marketed and sold illegal health insurance plans and failed to provide consumers with the coverage promised under the plans.  The claims against OneShare were limited to programs that were sold to Unity members while Unity was associated with Aliera, from November 1, 2016, to August 10, 2018.  Litigation commenced in all three actions. OneShare does not agree with the allegations in these lawsuits and maintains that it has never operated as an illegal health insurance plan or failed to provide the services promised to its members. Plaintiffs take the opposite view.

7.   Trinity filed for bankruptcy on July 7, 2021. An involuntary bankruptcy petition was filed against Aliera on December 3, 2021. Both cases are pending in the United States Bankruptcy Court for the District of Delaware. As a result of the bankruptcies, the class actions were stayed.

8.   When Aliera entered bankruptcy, it had not completed the payments pursuant to its settlement agreement to OneShare. OneShare has filed a claim against the Aliera estate in bankruptcy court for $3.75 million representing amounts unpaid under the Aliera settlement agreement.

9.   In April 2022, the Named Plaintiffs and Defendants agreed to mediate their dispute before the Honorable Thomas B. Griffith who had recently retired from the United States Court of Appeals for the District of Columbia. Negotiations proceeded over the next eight months until, on December 16, 2022, the Parties executed a binding Term Sheet.

2

10.     Pursuant to the Term Sheet, the Parties now enter into this Agreement to resolve all Settlement Class Released Claims by and between Defendants, Named Plaintiffs, and the proposed Settlement Class Members.

## AGREEMENT

### 1.     *Definitions.*

1.1     "Actions" shall mean *Duncan v. OneShare Health, LLC, et. al*, No. 2:20-cv-00876-TLN-KJN, U.S. District Court, Eastern District of California; *Albina et al., v. OneShare Health, LLC, et. al*, No. 5:20-cv-00496-DCR, U.S. District Court, Eastern District of Kentucky; and *Smith et al., v. OneShare Health, LLC, et. al*, 1:20-cv-02130-RBJ, U.S. District Court, District of Colorado, which is currently pending in the Tenth Circuit as Case Nos. 21-1185, 21-1186, and 21-1187.

1.2     "*Agreement Execution Date*" shall mean: the date on which the last signatory has signed this Agreement.

1.3     "*Aliera Bankruptcy*" shall mean *In re The Aliera Companies Inc*., Case No. 21-11548-JTD, in the United States Bankruptcy Court for the District of Delaware.

1.4     "*Case Contribution Award*" shall mean: any monetary amount awarded by the Court in recognition of the Named Plaintiffs' assistance in the prosecution of this Action and payable pursuant to Section 13.2.

1.5     "*Claims Processor*" shall mean: an independent claims processing entity selected by Plaintiffs' counsel and approved by the Court.

1.6     "*Class Counsel*" shall mean: Feinberg, Jackson, Worthman & Wasow, LLP, Sirianni Youtz Spoonemore Hamburger PLLC, Garner & Prather, PLLC, Handley, Farah & Anderson PLLC, Mehri & Skalet PLLC, Myers & Company, PLLC, and Varellas & Varellas.

1.7     "*Court*" shall mean the court in the action captioned *Duncan v. OneShare Health, LLC, et. al*, No. 2:20-cv-00876-TLN-KJN U.S. District Court, Eastern District of California.

1.8     "*Defendants*" shall mean: OneShare Health, LLC, formerly known as Unity HealthShare, LLC, and Kingdom HealthShare Ministries, LLC.

1.9     "*Distribution Plan*" shall mean: the process, formulas, and/or methods employed to calculate and distribute each Settlement Class Member's share of the Settlement Fund.

1.10    "*Effective Date*" shall mean:  the date on which all of the conditions to settlement set forth in Section 2 have been fully satisfied or waived.

1.11    "*Final*" shall mean:  The Settlement contemplated under this Agreement shall become "Final" thirty (30) days after any and all appeals periods applicable to the Action have expired and no other proceeding for review of the Action has been initiated.

3

1.12   "*Named Plaintiffs*" shall mean: Corlyn Duncan, Bruce Duncan, Hanna Albina, Austin Willard, Rebecca Smith, Ellen Larson, Jaime Beard, and Jared Beard.

1.13   "*Parties*" shall mean: Named Plaintiffs and Defendants.

1.14   "*Releasees*" shall mean: Defendants and each of their affiliates, subsidiaries, parents, fiduciaries, trustees, recordkeepers, partners, attorneys, administrators, representatives, agents, directors, officers, employees, insurers, reinsurers, predecessors, actuaries, vendors, service providers, agents, assigns, and the successors-in-interest of each. No other defendant, person or entity not specifically included in this definition is a Releasee.

1.15   "*Settlement*" shall mean: the settlement to be consummated under this Agreement.

1.16   "*Settlement Amount*" or "*Settlement Fund*" shall mean: the sum of all payments set forth in Section 3.

1.17   "*Settlement Class Members*" or "*Settlement Class*" shall mean: All individuals who purchased a program from both Aliera Healthcare, Inc. and Unity Healthshare LLC at any time on or before August 10, 2018. The parties may modify this class definition by mutual agreement at any time prior to preliminary court approval. After preliminary approval, the parties may only modify the class definition upon mutual agreement and approval of the court.

1.18   "*Settlement Class Period*" shall mean October 31, 2016 to August 11, 2018.

1.19   "*Settlement Class Released Claims*" shall mean: any and all claims of any nature whatsoever that were brought, or that could have been brought, against the Releasees by the Named Plaintiffs on behalf of the Settlement Class Members relating in any way to their purchase, enrollment, or participation in any Unity or OneShare programs, including but not limited to claims for any and all refunds, benefits, sharing, losses, opportunity losses, damages, attorneys' fees, costs, expenses, costs of other coverage, contribution, indemnification, or any other type of legal or equitable relief; provided, however, that the release will not extend to claims arising out of medical sharing or reimbursement disputes for health care costs incurred in non-Unity OneShare plans after August 10, 2018.

1.20   "*Settlement Trust Account*" shall refer to a trust account established by Class counsel at Washington Trust Bank under Account Number 2301462228.

1.21   "*Taxes*" shall mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax, and additional amounts imposed with respect thereto) imposed by any governmental authority.

4

2.      ***Conditions to Effectiveness of the Settlement.***

2.1     *General*.  The Settlement provided for in this Agreement shall become effective when each and every one of the following conditions in Sections 2.2 and 2.3 have been satisfied or waived.

2.2     *Court Approval*.  The Settlement contemplated under this Agreement shall be presented for approval by the Court as provided herein. The Parties agree jointly to recommend to the Court that it approve the terms of the Agreement and the Settlement contemplated hereunder. The Parties shall work together in good faith to secure approval of the proposed Settlement Class and approval of the Settlement. The Parties agree to seek a stay of the *Albina* and *Smith* actions referenced in Section 1.1 pending approval of the class settlement in *Duncan*, and upon final approval of the class settlement, to stipulate to a voluntary dismissal with prejudice of all of the Actions. Time is of the essence in this agreement, and the parties will work together so as to confer the benefits of this Settlement on the members of the Settlement Class as quickly as possible.  Specifically, the Parties agree to promptly take all steps and efforts contemplated by the Agreement, including facilitating or completing the following:

2.2.1   *Certification of Settlement Class*.  The Court shall have certified the Settlement Class for settlement purposes only.  Class Counsel shall make a motion for certification of the Settlement Class under Federal Rule of Civil Procedure 23(b)(3), and if deemed necessary by Class Counsel, a motion to file a second amended complaint as part of the motions to approve this Agreement.  The second amended complaint will not include new factual allegations or claims unless agreed upon by the Parties, but may assert a nationwide class to make the pleadings consistent with the Settlement Class. In agreeing to the certification of this Settlement Class for settlement purposes and/or amendment of the complaint, Defendants do not admit that the Named Plaintiffs could have met the requirements for class certification for this particular class under Rule 23 in the normal course of the litigation.

2.2.2   *Motion for Preliminary Approval and Notices*.  The Court shall have preliminarily approved the Agreement ("Preliminary Approval Order") and authorized the issuance of notice ("Settlement Class Notice"). The Class Notice shall be in a form agreed upon by the Parties. In the event that the Parties do not agree upon the form of a Class Notice, they will meet and confer to attempt to resolve the dispute. If they are unable to resolve the dispute after the conference, then the Court will decide the content of the Notice.  Class Counsel shall make a motion for preliminary approval, authorization to send the Settlement Class Notice, and for approval of and continuing jurisdiction over the proposed settlement claims process

5

("Preliminary Motion"). Defendants will not oppose these motions, but are not required to join the motions for preliminary or final approval including as they relate to the Rule 23 factors or take any action that may prejudice their position on class certification or the merits of Plaintiffs' claims should the Court deny preliminary or final approval of the Class Settlement. The order for preliminary approval shall be in a form agreed upon by the Parties. In the event that the Parties do not agree upon the form of the order for preliminary approval, they will meet and confer to attempt to resolve the dispute. If they are unable to resolve the dispute after the conference, the Parties may submit competing forms of the order to the Court. The Court must approve the form of the Settlement Class Notice and conclude that the notice to be sent fairly and adequately describes the terms of the Agreement, including the proposed Distribution Plan and the estimated attorneys' fees and litigation costs to be sought by Class Counsel. The Settlement Class Notice must also establish a deadline for Class Counsel to move for payment of attorney fees and litigation costs, give notice of the time and place of the hearing for final approval of the Settlement, and describe how a Settlement Class Member may opt out, comment on, object to, or support the Settlement.

2.2.3   *Issuance of Settlement Class Notice.*  By the date and in the manner set by the Court in its Preliminary Approval Order, the Court-approved notice must be delivered to the Settlement Class Members. Costs of notice may be paid from the Settlement Fund if so ordered and approved by the Court, or advanced by Class Counsel to be reimbursed, after notice and approval by the Court, from the Settlement Fund. All costs associated with providing Settlement Class Notice shall be paid from the Settlement Fund.

2.2.3.1 The Settlement Class Notice is to be issued to Settlement Class Notice Recipients in the form and manner required by the Court.

2.2.3.2 Class Counsel or the Claims Processor shall create a webpage that contains at least the following material:

a.  A description of the Action, including a summary of the litigation as agreed upon by the Parties.

b.  The Settlement Class definition and proposed distribution plan;

c.  A timeline and schedule of events, including deadlines for submitting claims, and objecting.

6

    d.  How to contact Class Counsel for additional information;

    e.  Settlement documents, or links to documents, including:

        i.  Settlement Class Notice;

        ii.  motions for preliminary approval; and

        iii.  all court orders on preliminary approval.

    f.  Litigation documents, or links to documents, including:

        i.  Plaintiffs' complaints; and

        ii.  Defendants' answers.

    g.  Updates. The webpage shall be updated as the following become available:

        i.  Class Counsel's application(s) for attorney fees, costs and Case Contribution Award (with all supporting materials); and

        ii.  Motion(s) for Final Approval of the settlement (including any objections and Class Counsel's response to those objections).

    h.  The form and contents of the webpage shall be agreed upon by the Parties. In the event that the Parties do not agree upon the form and contents of the webpage, they will meet and confer to attempt to resolve the dispute. If they are unable to resolve the dispute after the conference, then the Court will decide the form and content of the webpage.

2.2.4  *Fairness Hearing.* On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in a hearing ("Fairness Hearing") during or after which the Court will determine by order (the "Final Order") whether: (i) the proposed Settlement between the Parties is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment should be entered ("Judgment"); (iii) the requirements of Rule 23 and due process have been satisfied in connection with the distribution of the Settlement Class Notice; (iv) to approve the payment of attorney fees and costs to Class Counsel and a Case Contribution Award as set forth herein, pursuant to Sections 13.1 and 13.2; and (v) that notice to the appropriate state and federal officials has been provided as required by CAFA through the mailing of the CAFA Notice and that Defendants have

satisfied their obligations pursuant to 28 U.S.C. § 1715. The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Order at the Fairness Hearing which contains the terms described herein and will not do anything inconsistent with obtaining such a Final Order.

2.2.5    *Motions for Final Approval*.  On or before the date set by the Court in its Preliminary Approval Order, Named Plaintiffs shall have filed a motion ("Final Approval Motion") for a Final Order which contains the terms described herein. The Parties shall confer on the terms of the Final Order that Named Plaintiffs will propose to the Court.

2.3    *No Termination*. The Settlement shall not have terminated pursuant to Section 11.

3.    ***Payments.***  OneShare shall make the following payments:

3.1    *Initial $3 Million Payment (split into two payments of $1.5 million)*. In December 2022, OneShare paid $1.5 million into the Settlement Trust Account. OneShare shall make another $1.5 million payment into the Settlement Trust Account by March 31, 2023.

3.2    *Assignment of $3.75 Million Aliera Obligation*. OneShare shall assign all amounts due it from Aliera, and all of its rights to its claim in the Aliera Bankruptcy, to the Settlement Class. The assignment shall include the principal sum of $3.75 million, all penalties and interest thereon, plus all rights associated with the obligation, including all rights in the pending Aliera Bankruptcy. Any payments or distributions associated with the claim shall be placed in the Settlement Trust Account.

3.3    *Time Payments*.

3.3.1    *Amount*.  OneShare shall, in addition to the payments in 3.1 and 3.2 above, pay into the Settlement Trust Account the following:

3.3.1.1    $3.0 million, if paid in full by December 31, 2024; or

3.3.1.2    $3.3 million, if paid in full by December 31, 2025; or

3.3.1.3    $4.0 million if paid in full by December 31, 2026; or

3.3.1.4    $4.2 million if paid in full by December 31, 2027; or

3.3.1.5    $4.4 million, if paid in full by December 31, 2028; or

3.3.1.6    $4.6 million, if paid in full by December 31, 2029; or

3.3.1.7    $4.8 million, if paid in full by December 31, 2030; or

3.3.1.8    $5.0 million, if paid in full by December 31, 2031; or

3.3.1.9    $7.00 million.

8

    3.3.2   *Timing of Time Payments*. Commencing January 1, 2023, the payments in 3.3.1 shall be made by OneShare into the Settlement Trust Account as follows:

        3.3.2.1  Monthly payments of no less than $25,000; plus

        3.3.2.2  Any amount exceeding 3.3.2.1 that OneShare elects to make; provided that OneShare must pay a minimum of $400,000 in each calendar year no later than December 31 of that year, until the entire obligation in Section 3 is fulfilled.

3.4    All payments shall be made into the Settlement Trust Account pending any orders pertaining to distribution of such sums. Upon request, OneShare's counsel will be provided with proof that the funds have been placed in the Settlement Trust Account.

3.5    The payments set forth in this Section are all of the payments OneShare is required to make under this Agreement. Any costs, expenses, or attorneys' fees incurred by Class Counsel or the Settlement Class will be paid from the payments made in this Section.

**4.**    **Default.**  In the event OneShare defaults on any payment required under Section 3, it may cure the default upon bringing its payments current within 60 days of the missed payment.  If payments are not brought current within 60 days, Class Counsel may elect to accelerate the entire balance. In the event of a default before the full payment required under Section 3.1 is made, the amount due shall be $10 million minus any sums paid to the date of default. In the event of default after the payment in Section 3.1 is made, the amount due shall be $7 Million, minus payments made to the date of default.

**5.**    **Cooperation.** OneShare shall reasonably cooperate with Class Counsel, the former members of Aliera, and the Aliera class(es) in obtaining compensation against Aliera, third parties that assisted Aliera, and Aliera's insiders. OneShare shall use reasonable efforts to disclose all information about class members and Aliera held or controlled by OneShare. OneShare shall provide such other documents and information to Class Counsel as reasonably requested to pursue Aliera and third parties for remedies. OneShare will cooperate and assist in all reasonable respects, but this agreement does not require OneShare to expend an inordinate or unreasonable amount of time or money in doing so. OneShare will provide all non-privileged documents that remain in its possession that were produced or collected in its litigation against Aliera and provide informal interviews and truthful testimony if requested by Class Counsel. The Parties understand that some of the information may require a Court order to release because of OneShare's Settlement Agreement with Aliera, and for any such information, the Parties will jointly seek any needed order.

**6.    Releases.**

6.1    *Releases of the Releasees.* Upon the Effective Date of Settlement, Named Plaintiffs, on their own behalf and, to the full extent permitted by law, on behalf of the Settlement Class Members, absolutely and unconditionally release and forever discharge Releasees from any and all Settlement Class Released Claims that Named Plaintiffs or the Settlement Class have directly, indirectly, derivatively, or in any other capacity ever had or now have whether known or unknown, supported or unsupported.

6.2    Settlement Class Members shall be conclusively deemed to have covenanted not to sue Releasees for any and all Settlement Class Released Claims and shall forever be enjoined and barred from asserting any Settlement Class Released Claims. This in no way applies to any action taken by the Named Plaintiffs or Settlement Class Members to enforce the terms of the Agreement.

6.3    *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.* Upon the Effective Date of Settlement, Defendants, to the full extent permitted by law, absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class Members, and Class Counsel from any and all claims based on the institution or prosecution of the Actions.

6.4    Defendants shall be conclusively deemed to have covenanted not to sue Named Plaintiffs, the Settlement Class Members, and Class Counsel for any and all such released claims relating to institution or prosecution of the Action. This in no way applies to any action taken by Defendants to enforce the terms of the Agreement.

**7.    Representations and Warranties.**

7.1    *The Named Plaintiffs.* Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Settlement Class Released Claims against any Releasees, and further covenant that they will not assign or otherwise transfer any interest in such claims.

7.2    *The Parties.*    The Parties, and each of them, represent and warrant that they are voluntarily entering into this Agreement as a result of arm's-length negotiations; in executing this Agreement they are relying upon their own judgment, belief and knowledge, and the advice and recommendations of their own counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof. The Parties, and each of them, represent and warrant that they have carefully read the contents of this Agreement; they have made such investigation of the facts pertaining to the Settlement, this Agreement, and all of the matters pertaining thereto as they deem necessary

10

or appropriate; and this Agreement is signed freely by each person executing this Agreement on behalf of each party. Each individual executing this Agreement on behalf of any other person does hereby represent and warrant to the other parties that he or she has the authority to do so.

**8.    *No Admission of Liability.*** The Parties understand and agree that this Agreement embodies a compromise and settlement of disputed claims, and that nothing herein shall be deemed to constitute an admission of any liability or wrongdoing by any of the Releasees.

**9.    *Distribution Plan, Claim Processing, and Report*.**

9.1    *Plan Submitted to Court for Approval.* Class Counsel, as part of the motion for preliminary approval, shall propose a Distribution Plan to the Court for its review and approval which shall address the process of distributing the Settlement Fund to Settlement Class Members. OneShare shall not oppose the Distribution Plan unless it is inconsistent with law or manifestly unfair and inequitable to members of the Settlement Class. A distribution plan that is functionally similar to a distribution plan approved in the Sharity Bankruptcy is *per se* reasonable. Class Counsel may modify, amend or change any proposed Distribution Plan to address any concerns or issues expressed by the Court. The Distribution Plan and any changes to such plan shall be posted on the webpage discussed in Section 2.2.3.2 and maintained by Class Counsel or the Claims Administrator, and shall be summarized in the proposed Class Notice.

9.2    *Claims Processor Payment.* The fees and costs incurred by the Claims Processor in fulfilling its duties under this Agreement or the Distribution Plan shall be paid from the Settlement Amount.

9.3    *Timing.* Distribution of funds to the Settlement Class shall not commence until final approval.

**10.    *Effective Date of Settlement*.**

10.1    *Effective Date.* This Agreement shall be fully effective and binding on the date on which all of the conditions to settlement set forth in Section 2 have been fully satisfied or expressly waived in writing.

10.2    *Disputes Concerning the Effective Date of Settlement.* If the Parties disagree as to whether each and every condition set forth in Section 2 has been satisfied or waived, they shall promptly confer in good faith and, if unable to resolve their differences within ten (10) business days thereafter, shall present their dispute for mediation and/or arbitration under Section 15.1.

11

**11.     Termination of Agreement to Settle Claims Due to Lack of Approval.**

11.1     *Court Rejection*. If the Court declines to preliminarily or finally approve the Settlement as written, with the exception of approval of the form of the Settlement Class Notice or Distribution Plan, in whole or in part, then this Agreement shall automatically terminate, and thereupon become null and void. In the event the Court approves a settlement that differs from the terms herein (whether material or immaterial), in whole or in part, or does not afford Defendants a complete release, then either the Defendants or Class Counsel may, in their sole and absolute discretion, terminate this Agreement by delivering a notice of termination to counsel for the opposing party within 15 court days of the Court's final order.

11.2     *Court of Appeals Reversal*. If the Court of Appeals reverses the Court's order approving the Settlement, then, provided that no appeal is then pending from such a ruling, this Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the mandate of the Court of Appeals.

11.3     *Supreme Court Reversal*. If the Supreme Court of the United States reverses the Court's order approving the Settlement, then this Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the Supreme Court's mandate.

11.4     *Pending Appeal*. If an appeal is pending of an order declining to approve the Settlement, this Agreement shall not be terminated until final resolution of dismissal of any such appeal, except by written agreement of the Parties.

**12.     Consequences of Termination.** If the Agreement is terminated and rendered null and void for any reason, then the following shall occur:

12.1     *Reversion of Actions*. The Actions shall revert to their status as of December 15, 2022, and the fact and terms of this Agreement shall not be used in the Actions for any purpose.

12.2     *Releases and Terms Void*. All Releases given or executed pursuant to this Agreement shall be null and void and none of the terms of the Agreement shall be effective or enforceable.

12.3     *Return of Funds*. All funds held in the Settlement Trust Account shall be returned to OneShare, less any amounts paid or advanced as costs of notice pursuant to Section 2.2.3.

**13.     Attorney Fees, Litigation Expenses, and Case Contribution Awards.**

13.1     *Attorney Fees and Litigation Costs*. Subject to review and approval by the Court, Class Counsel shall apply for an award of attorney's fees in an amount not to exceed 28% of the Settlement Amount which shall be paid

from the Settlement Fund. Subject to review and approval by the Court, Class Counsel shall apply for reimbursement of actual costs which shall also be paid from the Settlement Fund.

13.2   *Case Contribution Award*.  Subject to review and approval by the Court, each Named Plaintiff shall be paid a Case Contribution Award from the Settlement Fund of $10,000 for a total of $80,000.

**14.   *Joint Communication About Settlement and Non-Disparagement.*** Attached as *Appendix A* to the Parties' Term Sheet is an agreed joint communication about the settlement. The Parties and counsel will not make public statements about the settlement that are inconsistent with this joint communication and any notice material approved by the Court. The Parties and their representatives including their Counsel will not publicly disparage each other in any way as it relates to this dispute, including in any unsolicited communication with any state or federal government official. Provided, however, that nothing in this Agreement will prevent any party from making any argument in any legal proceeding, including in any brief, oral argument, trial, or appeal, or prevent any attorney from complying with the attorney's duties under any applicable law or rules of professional conduct.

**15.   *Miscellaneous***

15.1   *Dispute Resolution*. In the event of any dispute under this Agreement, the Parties will agree to the appointment of a special settlement arbitrator who shall have the power to resolve any disputes under the Agreement except those relating to motions and filings with the Court in connection with obtaining approval of the Settlement, as any disputes directly relating to the court proceedings will be resolved by the Court. If the Parties cannot agree on an arbitrator, then the Court shall appoint one. The arbitrator shall, whenever possible, adjudicate issues on written submissions from the Parties or, if more efficient, by Zoom session(s).  The arbitrator shall have the discretion to require the non-prevailing party to pay the costs of the arbitration, taking into account the reasonableness of the party's positions.

15.2   *Governing Law*. This Agreement shall be governed by the laws of State of California without regard to conflict of law principles, unless preempted by federal law.

15.3   *Tolling*. In addition to any tolling provided by law, the statutes of limitation for any claims related to the Unity programs are tolled for the putative class members from the date of the execution of this Agreement until the Court enters its order on Plaintiffs' motion for final approval or any opt-out date, whichever is earliest.

15.4   *Amendment*. Before entry of the Preliminary Approval Order, this Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of the Preliminary Approval

13

Order, this Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.

15.5  *Waiver*. The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

15.6  *Construction*. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision thereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause the provision to be construed against the drafter thereof.

15.7  *Principles of Interpretation*. The following principles of interpretation apply to this Agreement:

15.7.1  *Headings*. The headings herein are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement.

15.7.2  *Singular and Plural*. Definitions apply to the singular and plural forms of each term defined.

15.7.3  *References to a Person*. References to a person include references to an entity, and include successors and assigns.

15.8  *Survival*. All representations, warranties, and covenants set forth herein shall be deemed continuing and shall survive the Effective Date of Settlement to the extent necessary to effectuate the terms of this Agreement.

15.9  *Entire Agreement*. This Agreement along with Appendix A of the Term Sheet contain the entire agreement among the Parties relating to this Settlement and supersedes any and all prior verbal and written communications regarding the Settlement provided, however, that the Term Sheet may be referenced to assist in the interpretation of any ambiguities that may exist in this Agreement.

15.10  *Counterparts*. This Agreement may be executed by exchange of executed faxed or PDF signature pages, and any signature transmitted in such a manner shall be deemed an original signature. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute one and the same instrument.

15.11  *Binding Effect*. This Agreement binds and inures to the benefit of the Parties hereto, their assigns, heirs, administrators, executors, and successors-in-

14

interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees.

15.12   *Further Assurances.* Each of the Parties agree, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith promptly execute and deliver such other documents and take such other actions as may be necessary to consummate the subject matter and purpose of this Agreement.

15.13   *Tax Advice Not Provided.* No opinion or advice concerning the Tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Action to the Settlement Class, nor is any representation or warranty in this regard made by virtue of this Agreement. The Tax obligations of the Settlement Class and the determination thereof are the sole responsibility of each Settlement Class Member, and it is understood that the Tax consequences may vary depending on the particular circumstances of each Settlement Class Member.

DATED this 28th day of April, 2023.

_____
for OneShare Health, LLC
Name: Buddy Combs
Title: Chief Legal Officer & General Counsel

_____
Counsel for Plaintiffs in Duncan, Smith,
and Albina Putative Class Actions
Name: Richard E. Spoonemore
SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC

15

interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees.

15.12 *Further Assurances.* Each of the Parties agree, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith promptly execute and deliver such other documents and take such other actions as may be necessary to consummate the subject matter and purpose of this Agreement.

15.13 *Tax Advice Not Provided.* No opinion or advice concerning the Tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Action to the Settlement Class, nor is any representation or warranty in this regard made by virtue of this Agreement. The Tax obligations of the Settlement Class and the determination thereof are the sole responsibility of each Settlement Class Member, and it is understood that the Tax consequences may vary depending on the particular circumstances of each Settlement Class Member.

DATED this 27 ᵗʰ day of April, 2023.

for OneShare Health, LLC
Name: Buddy Combs
Title: Chief Legal Officer & General Counsel

Counsel for Plaintiffs in Duncan, Smith, and Albina Putative Class Actions
Name: Richard E. Spoonemore
Sirianni Youtz Spoonemore Hamburger pllc

15

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

16

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

16

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

16

**Plaintiffs:**

_____

Bruce Duncan

_____

Corlyn Duncan

_____

Ellen Larson

_____

Rebecca White, f/k/a/ Rebecca Smith

_____

Jared Beard

_____

Jamie Beard

_____

Hanna Albina

_____

Austin Willard

16

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

16

# EXHIBIT 1

## AGREEMENT TO SETTLE CLAIMS – DISTRIBUTION PLAN

**Duncan v. OneShare Health, LLC, et. al,**
**No. 2:20-cv-00876-TLN-KJN U.S. District Court, Eastern District of California**

**Albina v. OneShare Health, LLC, et. al,**
**No. 5:20-cv-00496-DCR, U.S. District Court, Eastern District of Kentucky**

**Smith v. OneShare Health, LLC, et. al,**
**1:20-cv02130-RBJ, U.S. District Court, District of Colorado**

Pursuant to the Agreement to Settle Claims, ¶¶1.9, 9, the following is the proposed Distribution Plan for the OneShare Settlement Agreement:

Class members will have the opportunity to submit claims that are either (a) the total recorded amount of the monthly payments made to Aliera/Unity during the class period as identified by the Claims Processor; or (b) the total unpaid medical expenses for hospitals or medical providers during the time in which the class member was enrolled with Unity/Aliera during the class period.

Class members who submit claims for unpaid medical expenses must authorize Plaintiffs' counsel or their agent to (1) investigate the claims and, if deemed necessary and appropriate by Plaintiffs' counsel or their agent, to represent the class member to negotiate with the providers/hospitals to reduce the amount of the debt owed and/or to resolve collections efforts against the class member with regard to the unpaid medical expenses; (2) cooperate fully with Plaintiffs' counsel or their agent in their efforts to reduce the amount of the unpaid medical expenses or collections fees and fines, including but not limited to, signing HIPAA-compliant authorizations for release of information; and (3) authorize the Claims Administrator to pay any funds from the case directly to the medical providers/hospitals to whom the unpaid medical expenses are owed, unless the Class member has fully resolved all unpaid medical expenses owed to providers/hospitals during the class period, while the Class member was enrolled in Unity/Aliera.  If the Class member has fully resolved the debts to the providers/hospitals, Class members' claim shall be based upon the amount the Class member actually paid to resolve the debts to the providers/hospitals, and Class members may receive compensation based upon that claimed amount directly, rather than to their providers.  Class members who do not agree to this process for claims for unpaid medical expenses, or who do not cooperate with this process, may only submit a claim for the total recorded amount of monthly payments made to Aliera/Unity.  The amount of each claim for unpaid medical expenses shall be finalized by no later than December 31, 2024.

1

It is anticipated that the funds obtained as a result of this settlement agreement will not be sufficient to pay all claims in full.  If all claims submitted cannot be paid in full, they will be paid on a *pro rata* basis, after all unpaid medical claims are final (December 31, 2024).  Class counsel will report to the Court on the claims for unpaid medical expenses by no later than January 31, 2025, and will propose a timeline for disbursement of the settlement fund at that time.