**No. 25-1035**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

ALLIANCE OF HEALTH CARE SHARING MINISTRIES
*Plaintiff-Appellant*

v.

MICHAEL CONWAY,
in his official capacity as
Commissioner of the Colorado Division of Insurance
*Defendant-Appellee*

---

Appeal from the United States District Court for the District of Colorado,
No. 1:24-cv-01386-GPG-STV (Hon. Gordon Gallagher)

---

**APPENDIX VOL XII - Pages A-542 - A-573**

Date: March 21, 2025

Michael F. Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@Paulhastings.Com
William E. Mahoney
Paul Hastings LLP
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@Paulhastings.Com

*Counsel For Plaintiff Alliance of
Health Care Sharing Ministries*

| ECF NO. | *DESCRIPTION* | Appx. Page No. |
|---|---|---|
|  | **Appendix Vol. I, Pages 1-140** | |
| - | District Court Docket Sheet | A-1 |
| 8-1 | Ex. A - Declaration of Rob Waldo (May 17, 2024) | A-9 |
| 8-2 | Ex. A-1 – Samaritan Bylaws | A-19 |
| 8-3 | Ex. A-2 - Samaritan Guidelines | A-44 |
| 8-4 | Ex. A-3 - Samaritan Membership Application | A-94 |
| 8-5 | Ex. B - Declaration of Katy Talento | A-100 |
| 32 | Amended Complaint of Alliance of Health Care Sharing Ministries (July 1, 2024) | A-109 |
|  | **Appendix Vol. II, Pages 141-179** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1-1.6 (September 3, 2024) | A-141 |
|  | **Appendix Vol. III, Pages 180-223** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.7-1.22 (September 3, 2024) | A-180 |
|  | **Appendix Vol. IV, Pages 224-261** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.23-1.28 (September 3, 2024) | A-224 |
|  | **Appendix Vol. V, Pages 262-307** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.29-1.33 (September 3, 2024) | A-262 |

| | **Appendix Vol. VI, Pages 308-331** | |
|---|---|---|
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.34-1.36 (September 3, 2024) | A-308 |
| | **Appendix Vol. VII, Pages 332-350** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-332 |
| | **Appendix Vol. VIII, Pages 351-373** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.37-1.39 (September 3, 2024) | A-351 |
| | **Appendix Vol. IX, Pages 374-424** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.40 (September 3, 2024) | A-374 |
| | **Appendix Vol. X, Pages 425-478** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.41 (September 3, 2024) | A-425 |
| | **Appendix Vol. XI, Pages 479-541** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.41-1.42 (September 3, 2024) | A-479 |
| | **Appendix Vol. XII, Pages 542-573** | |

| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-542 |
|---|---|---|
| **Appendix Vol. XIII, Pages 574-612** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.54-1.59 (September 3, 2024) | A-574 |
| **Appendix Vol. XIV Pages 613-682** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.6-1.6 (September 3, 2024) | A-613 |
| **Appendix Vol. XV, Pages 683-767** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.61-1.64 (September 3, 2024) | A-683 |
| **Appendix Vol. XVI, Pages 768-816** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.0-2.3 (September 3, 2024) | A-768 |
| **Appendix Vol. XVII, Pages 817-867** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.3-2.4 (September 3, 2024) | A-817 |
| **Appendix Vol. XVIII, Pages 868-933** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.5-7 (September 3, 2024) | A-868 |

| | **Appendix Vol. XIX, Pages 934-1002** | |
|---|---|---|
| 52.1 | Appendix to Reply to Motion for Preliminary Injunction (September 17, 2024) | A-934 |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-949 |
| | **Appendix Vol. XX, Pages 1003-1041** | |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-1003 |
| 55 | Notice of Appeal as to Order on Motion for Preliminary Injunction (January 27, 2025) | A-1015 |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1017 |
| | **Appendix Vol. XXI, Pages 1042-1077** | |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1042 |
| 60 | Order Denying Motion for Injunction Pending Appeal (February 3, 2025) | A-1069 |

7/3/24, 10:37 AM                                                    ALDOI - Current News Item

# ALABAMA DEPARTMENT OF INSURANCE

ABOUT US          CONTACT US          

**Search ALDOI.gov**

## NOT ALL HEATH PLANS ARE THE SAME; KNOW WHAT YOU'RE SIGNING UP FOR

Contact: Jennifer Bowen
(334) 269-3550

7/29/2019

As the cost of healthcare continues to climb, many people are looking for new coverage options. While consumer protection laws govern many types of health coverage, like plans purchased through an employer or through the Health Insurance Marketplace, other types of plans aren't required to protect consumers in the same way. Consumers who use healthcare sharing ministries (HCSMs), discount plans or risk-sharing plans can best protect themselves by understanding the coverage they participate in,

**Healthcare Sharing Ministries**

When talking to neighbors or searching online, you may hear about healthcare sharing ministries. HCSMs are organizations in which the members share the costs of health care. Usually these members have common ethical or religious beliefs. However, before you sign up for an HCSM, there are some things you should know:

- HCSMs do not have to comply with the consumer protections of the federal Affordable Care Act (ACA), like covering treatments for pre-existing conditions or capping your out-of-pocket costs.

- HCSMs are not insurance, and they can't guarantee payment of claims. That means that while they may share funds with members who have health needs, they are not legally required to do so,

- State insurance regulators don't supervise HCSMs.

- HCSMs usually don't have provider networks, so members may be charged full price by doctors and hospitals, rather than the lower negotiated rates charged to consumers who have insurance coverage.

- HCSMs may provide value to some, but they pose a risk to others because they often provide limited benefits.

**How HCSMs Work**

A member will typically contribute a monthly payment to cover the qualifying medical expenses of other members. The HCSM will match paying members who need the healthcare funds or pool all the monthly shares and administer payments to members directly. Some people look to HCSMs because of their typically lower up-front costs compared to ACA plans.

According to one online source, enrollment in HCSMs has increased to nearly one million members as of 2019.

So far, there are 30 states where state law explicitly exempts HCSMs from insurance regulation. The remaining 20 states and Washington, DC don't contain an explicit exemption for HCSMs under state law,

**Discount Plans**

https://www.aldoi.gov/currentnewsitem.aspx?ID=1058

**MORE RESOURCE**

Online Services

Laws, Bulletins & Regulations

FAQs

Surplus Line Brokers

Employment Opportunities

Health Care Reform

Fraud Unit

State Fire Marshal Office

Strengthen Alabama Homes

**EXHIBIT**
**1.43**

Ex. 1.43, p. 1 of 2

You might receive advertisements from plans offering discounts on healthcare for a monthly fee. These are not health insurance plans, and participants do not have the same protections as under licensed health insurance plans. Insurance commissioners strongly recommend that you thoroughly investigate any plan promising deep discounts for a "low" monthly fee and weigh the benefits against the cost carefully.

**Non-Licensed Risk-Sharing Plans**

You may receive offers to join a group or association that will take your monthly payments, put them in a savings account (or trust) with other participants' money, and then help pay some of your healthcare costs, as needed. Such arrangements are not insurance and the participants do not have the protections available to purchasers of licensed insurance plans. State insurance regulators strongly recommend that you thoroughly investigate such plans before joining.

HCSMs, discount plans, and risk-sharing plans are not insurance plans. Before signing, be sure to understand how the program works and what benefits you or your family can count on.



**CONSUMERS**

File a Complaint, Search for Life Insurance Policy, View Long-Term Care Info, etc.

MORE



**PRODUCERS/AGENTS**

Apply, Renew, or Print a License, View CE Transcript, Check Status, Exam Sites, etc.

MORE



**COMPANIES**

Company Search, Filing Requirements, Rate Bu Captives, Clarity Act, etc.

MORE

---

© 2024 Alabama Department of Insurance. | DesignTEMPLATED | Home | E-mail the Webmaster | Public Records | Disclaimer |

Select Language    ⌄

Powered by Google Translate



**FOR IMMEDIATE RELEASE**

**December 17, 2019**

# Donelon Reminds Consumers that Faith-Based Health Sharing Ministries Are Not Insurance Products

The Louisiana Department of Insurance (LDI) is clarifying that faith-based health sharing ministries are not recognized insurance products and therefore are not subject to the same regulations as traditional health insurance or oversight by the LDI.

Health care sharing ministries collect monthly payments from members under the agreement that the money will be used when a member has medical bills. However, these programs do not have to follow the same rules as insurers and there is no requirement that they pay claims.

"While some families may feel that the lower-cost membership and the alignment with members religious values works for their lifestyle, I would like to caution that these products are not regulated like insurance and may leave Louisiana families on the hook for expensive medical care and emergencies," said Commissioner Donelon. "Like any financial decision, your personal circumstances will dictate the best choice."

Commissioner Donelon encourages consumers who have problems with traditional coverage to contact the LDI for assistance. Unfortunately, since health care sharing ministries are not an insurance product there is nothing the LDI can do for consumers who feel as if they have not received appropriate benefits.

Under Louisiana law and the Affordable Care Act (Obamacare), health sharing ministries are not required to register or be regulated. There are no exact figures, but some industry groups say close to 1 million Americans get health care coverage through a health care sharing ministry and presently there are health care sharing ministries advertising in Louisiana.

**EXHIBIT**

**1.44**

Ex. 1.44, p. 1 of 2

***About the Louisiana Department of Insurance:*** *The Louisiana Department of Insurance works to improve competition in the state's insurance market while assisting individuals and businesses with the information and resources they need to be informed consumers of insurance. As a regulator, the LDI enforces the laws that provide a fair and stable marketplace and makes certain that insurers comply with the laws in place to protect policyholders. You can contact the LDI by calling 1-800-259-5300 or visiting* www.ldi.la.gov.



**BRIAN E. FROSH**
*Attorney General*

**ELIZABETH F. HARRIS**
*Chief  Deputy Attorney General*

**CAROLYN QUATTROCKI**
*Deputy Attorney General*

Writer's Direct Fax No.
(410) 576-6571

Writer's Direct Email:
poconnor@oag.state.md.us

**WILLIAM D. GRUHN**
*Chief*
Consumer Protection Division

Writer's Direct Dial No.
(410) 576-6515

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**CONSUMER PROTECTION DIVISION**

February 17, 2021

To:   The Honorable Delores G. Kelley
      Chair, Finance Committee

From: Patricia F. O'Connor, Health Education and Advocacy Unit

Re:   Senate Bill 543 (Insurance - Health Care Sharing Ministries - Exemption):
      Oppose

The Office of the Attorney General's Health Education and Advocacy Unit (HEAU) opposes Senate Bill 543. This bill would provide a broader exemption from insurance regulation than current law to entities that contend they are not health insurers, but for marketing purposes purport to provide broad coverage and pay claims similar to health insurers. The HEAU submits that more, not less, regulation of such entities is required because consumers have predictably been harmed in Maryland and other states when these entities fail to pay claims.

To qualify as health care sharing ministries in Maryland the entities must meet the requirements for a religious exemption under Md. Code Ann., Ins. 1−202(a)(4), or be subject to regulatory enforcement.  Aliera Healthcare Inc. is currently engaged in litigation with the Maryland Insurance Administration (MIA) which issued an order revoking the company's insurance producer license on February 27, 2020.

According to the MIA's press release:

"[T]he order states that the company was actively trying to sell an unauthorized health insurance plan in Maryland, in violation of state law and an earlier consent order between MIA and the company.

The current license revocation order was the culmination of an MIA investigation that

200 Saint Paul Place ♦ Baltimore, Maryland, 21202-2021
Main Office (410) 576-6300 ♦ Main Office Toll Free (888) 743-0023
Consumer Complaints and Inquiries (410) 528-8662 ♦ Health Advocacy Unit/Billing Complaints (410) 528-1840
Health Advocacy Unit Toll Free (877) 261-8807 ♦ Home Builders Division Toll Free (877) 259-4525 ♦ Telephone for Deaf (410) 576-6372
www.marylandattorneygeneral.gov

**EXHIBIT**
**1.45**

Ex. 1.45, p. 1 of 4

**Appx. Vol XII**
**A-546**

began in 2016. In October 2017, MIA issued an initial order finding that Aliera Healthcare was in violation of several sections of the Maryland Insurance Code. The MIA and Aleira Healthcare entered into a voluntary April 2018 consent order, which found that the health care sharing ministry operated by the company did not meet the requirements for a religious exemption.

**In the 2018 consent order, the company agreed to "permanently cease the sale, solicitation or operation in Maryland of the Unity Healthshare Ministry plan and any other plan" that did not meet the qualification for a religious exemption.**

**In a June 2019 written affirmation, Aliera Healthcare told the MIA that it had not sold products that would violate Maryland law or the consent order. But in March, an MIA investigator was contacted by an Aliera Healthcare representative, who attempted to sell her a membership in another health ministry product.**

Aliera Healthcare's "failure to comply with the terms of a consent order and its continued solicitation of memberships in an unauthorized insurance plan demonstrates that it does not meet the standard of trustworthiness and competence required of an insurance producer," the order states.

In addition to the license revocation, the MIA has also ordered Aliera Healthcare to pay an administrative penalty of $11,000."

(emphasis added).

https://insurance.maryland.gov/Pages/newscenter/NewsDetails.aspx?NR=2020249

On March 10, 2020 the California Department of Insurance issued a Cease and Desist order against Aliera Healthcare and Trinity Healthshares, Inc. "for violating California law by misleading California consumers regarding their products and transacting insurance business without a certificate of authority from the Insurance Commissioner." The Department warned consumers that "these misleading lookalike health plans marketed as "health care sharing ministries" do not comply with California laws to protect consumers [and that these] plans were marketed as cheaper alternatives to traditional coverage when, in reality, they do not provide comprehensive coverage for pre-existing conditions and other coverage as required by state and federal laws."

http://www.insurance.ca.gov/0400-news/0100-press-releases/2020/release026-2020.cfm#:~:text=The%20Cease%20and%20Desist%20Order,connection%20with%20any%20insurance%20transactions.

On November 19, 2020 the Washington Insurance Commissioner's action against Aliera Healthcare ordering the company to stop selling health insurance illegally was upheld after the company appealed. According to the press release:

"[The Commissioner] took action against Aliera and its partner, Trinity Healthshare, Inc. (Trinity) in May 2019 after an investigation revealed that since August 2018, the companies sold 3,058 policies to Washington consumers and collected $3.8 million in premium. Trinity agreed to [the] order.

"Aliera and Trinity promised to provide people with coverage when they needed it only to leave consumers with huge medical bills," said [the Commissioner]. "I'm taking action today to send a message to all scam artists – if you harm our consumers, you will pay heavily.

"Shopping for health insurance can be very stressful – especially if you have to worry about being ripped off. True insurance companies have to meet rigorous standards before they can sell coverage to consumers. These companies are hiding behind a federal and state exemption that exists for legitimate health care sharing ministries and using it to rake in profit across the country on the backs of vulnerable consumers."

Aliera, an unlicensed insurance producer in Washington, administered and marketed health coverage on behalf of Trinity HealthShare. Trinity represents itself as a health care sharing ministry. Such ministries are exempt from state insurance regulation only if they meet statutory requirements.  If so, they do not have to meet the same consumer protections guaranteed under the Affordable Care Act. This includes providing coverage for anyone with a pre-existing medical condition.

A legal health care sharing ministry is a nonprofit organization whose members share a common set of ethical or religious beliefs and share medical expenses consistent with those beliefs.

[The Commissioner's office] received more than 20 complaints from consumers. Some believed they were buying health insurance without knowing they had joined a health care sharing ministry. Many discovered this when the company denied their claims because their medical conditions were considered pre-existing under the plan.

"Real health care sharing ministries can offer a valuable service to their members," [the Commissioner] said. "Unfortunately, we're seeing players out there trying to use the exemptions for legitimate ministries to skirt insurance regulation and mislead trusting consumers. I want these outfits to know we're on to them and we will hold them accountable."

[The Commissioner's] investigation into Aliera found:

3

- It sold insurance without a Washington insurance producer license
- It represented an unauthorized insurer, Trinity
- It operated an unlicensed discount plan organization

[The Commissioner's] investigation into Trinity found that it failed to meet key federal and state requirements:

- Trinity was formed on June 27, 2018, without any members. Federal and state laws require that health care sharing ministries be formed before Dec. 31, 1999, and their members to have been actively sharing medical costs."

https://www.insurance.wa.gov/news/aliera-ordered-pay-1-million-selling-illegal-health-insurance

This bill would add a new exemption to current law that proponents presumably believe would more effectively foreclose regulatory efforts to protect consumers from acts and omissions like those sanctioned by regulators in Maryland, California and Washington in actions against Aliera Healthcare and Trinity. The HEAU opposes any expansion of the current legal exemption based on the pattern of repeated legal violations as documented in regulatory orders and evidenced by a recent complaint to the HEAU from a consumer who believed he was purchasing an ACA complaint plan from a broker only to later learn that he purchased a "health sharing ministries" plan that did not cover his needed care. Should the bill's proponents contend they offer consumers an affordable alternative to traditional insurance, we urge the committee to see that for the false promise it is, given the trail of unpaid claims, adverse credit reports, and debt collection actions consumers have suffered due to health care sharing ministries.

We urge an unfavorable report from the committee.

cc:    Sponsor

4

7/3/24, 10:56 AM                    Division of Insurance Warns Against Unlicensed Health Insurance Plans | Mass.gov

An official website of the Commonwealth of Massachusetts   Here's how you know

## Menu

 Mass.gov

| Search Mass.gov | SEARCH |

(/) › Executive Office of Economic Development (/orgs/executive-office-of-economic-development) › Office of Consumer Affairs and Business Regulation (/orgs/of

NEWS

# Division of Insurance Warns Against Unlicensed Health Insurance Plans

6/12/2019                          Division of Insurance

                                   Office of Consumer Affairs and Business Regulation

**BOSTON —** The Baker-Polito Administration's Division of Insurance (Division) is advising consumers that Aliera, a company that markets itself as a health care sharing ministry, may be operating illegally in Massachusetts.

Previously, Aliera acted as a plan administrator to Unity Healthshare, which is a qualified health care sharing ministry. Health care sharing ministry plans allow groups of people with a religious affiliation to share in the costs of members' health care. These plans are exempt from the Division's oversight.

A recent **Georgia court order** (http://ci.criticalimpact.com/user/31553/files/Aliera_Healthcare_v__Anabaptist_Healtshare_Court_Order_April_2019.pdf) found that Aliera, a for-profit company, misrepresented itself to its members and state regulators as a health care sharing ministry and consumers who purchased an Aliera product may have coverage from an unlicensed insurance company.

Unity Healthshare, now known as OneShare Health, was authorized by the court to reach out to Unity members about their options, and consumers who have purchased a Unity/Aliera product should be aware that they may be receiving this communication.

"Massachusetts residents should be clear about what their health insurance does and does not cover," said **Insurance Commissioner Gary Anderson**. "Unlicensed health insurance plans may leave consumers with



Ex. 1.46, p. 1 of 4

significant bills for medical services that are not covered."

Health insurance plans purchased from an unlicensed insurance company do not comply with the Affordable Care Act, do not meet Minimum Creditable Coverage requirements and typically do not pay for medical treatment and services. Consumers should also use caution when considering alternatives to traditional health insurance plans, such as discounted health insurance plans or health care sharing ministries, as these plans, while legal, do not offer the same consumer protections as a traditional insurance plan and may not guarantee payments for or discounts on medical services and expenses.

*Before purchasing a health insurance plan, consumers are advised to*:

- Always confirm the company or agent offering the coverage is licensed in Massachusetts.

- Review plan documents carefully and ask questions of your insurance agent to ensure the coverage is right for you or your family. There are many different types of health plans offered in Massachusetts, such as Preferred Provider Plans (PPP), Health Maintenance Organizations (HMO), and Indemnity plans. Before making a choice, be sure to check if a plan has a provider network and whether your current physicians and area hospitals are in it.

- Calculate your healthcare costs from recent years and try to estimate what your costs might be for the coming year. Don't forget to include the cost of doctor visits, daily medication, and any planned procedures. Then make a list of the premiums, out-of-pocket expenses and benefits under each plan. Co-payments, coinsurance, deductibles, and additional charges for wellness care or certain services, such as alternative medicine and cosmetic surgery, are examples of out-of-pocket expenses that you may pay.

- Understand any restrictions or exclusions on pre-existing conditions. In Massachusetts, all health insurance plans must have minimum essential benefits requirements, including preventive care and mental health care.

- Report unlicensed companies to the Division of Insurance.

The Division of Insurance is an agency within the Office of Consumer and Business Regulation. Consumers with questions or concerns about a health insurance plan or company are urged to visit the Division's website at **www.mass.gov/doi** (/orgs/division-of-insurance) or to contact the Division's Consumer Services Section at (617) 521-7794 or (877) 563-4467 (Toll Free).

The Office of Consumer Affairs and Business Regulation (OCABR) oversees five regulatory agencies: Division of Banks, Division of Insurance, Division of Professional Licensure, Division of Standards, and the Department of Telecommunications and Cable. OCABR also oversees the state's Lemon Laws and Lemon Law Arbitration, Data Breach reporting, Home Improvement Contractor Programs, and the state's Do Not Call Registry. Learn more about OCABR at **mass.gov/consumer** (/orgs/office-of-consumer-affairs-and-business-regulation).

Resp. Appx. p. 407                                                                                   Ex. 1.46, p. 2 of 4

**Appx. Vol XII**
**A-551**



## Division of Insurance

The primary mission of the Division of Insurance is to monitor the solvency of its licensees in order to promote a healthy, responsive and willing marketplace for consumers who purchase insurance products. Protection of consumer interests is of prime importance to the Division and is safeguarded by providing accurate and unbiased information so consumers may make informed decisions and by intervening on behalf of consumers who believe they have been victimized by unfair business practices.



## Office of Consumer Affairs and Business Regulation

The Office of Consumer Affairs and Business Regulation protects and empowers consumers through advocacy and education, and ensures a fair playing field for the Massachusetts businesses its agencies regulate.



_(/)_

**All Topics** (/topics/massachusetts-topics)

**Site Policies** (/massgov-site-policies)

**Public Records Requests** (/topics/public-records-requests)

© 2024 Commonwealth of Massachusetts.

Mass.gov® is a registered service mark of the Commonwealth of Massachusetts. **Mass.gov Privacy Policy** (/privacypolicy)



Department of Insurance

**Consumer Alert**

NEBRASKA
Good Life. Great Opportunity.

# Health Care Sharing Ministries
## Information You Should Know

The Nebraska Department of Insurance reminds the public that Health Care Sharing Ministries are **not** considered health insurance pursuant to Nebraska law.  Under Nebraska law, specifically <u>Neb. Rev. Stat.</u> § 44-311, the ministry is required to provide a disclaimer to the consumer that states the following:

> **IMPORTANT NOTICE.** **This organization is not an insurance company, and its product should never be considered insurance.** **If you join this organization instead of purchasing health insurance, you will be considered uninsured. By the terms of this agreement, whether anyone chooses to assist you with your medical bills as a participant of this organization will be totally voluntary, and neither the organization nor any participant can be compelled by law to contribute toward your medical bills. Regardless of whether you receive payment for medical expenses or whether this organization continues to operate, you are always personally responsible for the payment of your own medical bills. This organization is not regulated by the Nebraska Department of Insurance. You should review this organization's guidelines carefully to be sure you understand any limitations that may affect your personal medical and financial needs.**

The Department has become aware of several health care providers being presented a card from consumers purporting to provide a discount for services they provide that comes from a healthcare sharing ministry.  Often, the provider does not have a contract with the healthcare sharing ministry and the consumer is subject to payment of the bill at a rate provided to them by the medical provider.  In some instances, the cost of the services provided have been significant.

As a reminder, when a consumer utilizes a health care sharing ministry, they should be aware that:

- It is not insurance.
- If this is the only product you have for coverage of your medical expenses, you are considered uninsured.
- You may be subject to pre-existing condition restrictions and to the religious tenets of the ministry which may potentially disqualify you for claim repayment.
- The Insurance Department cannot assist you with any complaints about the ministry.
- Your medical provider is not obligated to accept any discount from the ministry if there is no contract between the ministry and the provider.

The disclosure required under the law has important consequences.  By the terms of the contract itself, any payment from the organization and its members is completely voluntary.

**More Information**
Any questions may be directed to Martin Swanson, Administrator for Health Policy at 402-471-4648 or **martin.swanson@nebraska.gov** or Laura Arp, Administrator for the Life and Health Division at 402-471-4635 or **laura.arp@nebraska.gov**.  Additional insurance-related information can also be found on the Department's website at **www.doi.nebraska.gov**.

**EXHIBIT**
**1.47**

OUT18331—11/18

Ex. 1.47, p. 1 of 1




FOR IMMEDIATE RELEASE
Media Contact: Cory King
(401) 462-9658
cory.king@ohic.ri.gov

### OHIC and DBR Warn of the Risks of Health Care Sharing Ministries

**CRANSTON, R.I. (August 13, 2019) –** The Office of the Health Insurance Commissioner (OHIC) and the Department of Business Regulation (DBR) are advising consumers that Aliera Healthcare, Inc. (Aliera), a company that markets itself as a health care sharing ministry (HCSM), may be operating illegally in Rhode Island.

Previously, Aliera acted as a plan administrator to Unity Healthshare, which is a qualified health care sharing ministry. A recent Georgia court order found that Aliera "has taken actions to misappropriate [Unity's] assets; namely by unilaterally attempting to transition the Unity HCSM plans to Trinity." The court also found that the company misrepresented itself to state insurance regulators, and that a certain individual "who exercises substantial control over Aliera, was convicted of felony securities fraud and perjury in federal court."

The court further found that Aliera is an Atlanta-based for-profit company that sells health care products and therefore cannot qualify as a health care sharing ministry under state or federal law. Unity Healthshare, now known as OneShare Health, was authorized by the court to reach out to Unity members about their options. And consumers who have purchased a Unity/Aliera product should be aware that they may receive this communication.

OHIC and DBR are concerned about potential misleading or fraudulent activity on the part of Aliera or its agents in Rhode Island. These two Rhode Island governmental entities are also advising consumers to be aware of the risks associated with purchasing products from HCSMs, like Aliera.

HCSMs allow groups of people with common ethical or religious beliefs to share in the costs of members' health care, sometimes in accordance with those beliefs. HCSMs that offer health care plans generally take the position that they are not offering insurance products and therefore are exempt from regulatory oversight. HCSM products often are designed to resemble insurance, but they do not guarantee payments for medical claims and they do not comply with consumer protections from the Affordable Care Act or state insurance consumer protections. The marketing campaigns for these companies can often mislead or confuse consumers into thinking they are purchasing an insurance plan or a plan that will provide them the same or similar protections as an insurance plan. However, consumers should be aware that these plans have no obligation to pay for any medical services – the members "share" health costs on a voluntary basis; and the plans typically have extensive limitations on what they may potentially cover. Lower up-front costs can seem attractive to

Protecting Consumers • Ensuring Solvency • Engaging Providers • Improving the System

www.ohic.ri.gov
1511 Pontiac Avenue • Building #69, First Floor • Cranston, RI 02920
401.462.9517 • 401.462.9645 fax • TTY: 711

**EXHIBIT**
**1.48**

Ex. 1.48, p. 1 of 2

Resp. Appx. p. 411

**Appx. Vol XII
A-555**

consumers, and the shared religious or ethical beliefs of the members may appear reassuring, but the potential risks associated with these products are high.

OHIC encourages consumers to exercise caution when considering any health coverage options that are not insurance. Though these products may appear to provide value for some individuals, there is a great deal of risk associated with these plans. Since these are not regulated insurance companies, there is no guarantee that medical claims will be paid. With these plans, consumers are at great risk for being responsible for most, or sometimes all, of their medical bills.

DBR strongly encourages anyone purchasing insurance to assure that the person selling it is licensed to do so. You may access Licensee Lookup on DBR's website to determine the licensing status of any individual. Also make sure to obtain and read the plan documents carefully before agreeing to purchase any policy of insurance.

We are committed to protecting Rhode Island consumers and ensuring that commercial health insurance is both affordable and of high quality. "If a health coverage option seems too good to be true, it most likely is," said Dr. Marie Ganim, Rhode Island's Health Insurance Commissioner. "Make sure you research any plan before buying to ensure they are licensed and regulated in Rhode Island, and to make sure you understand the plan's network, your cost-sharing obligations and what services are and are not covered by the plan."

If you have any questions or concerns about your current health insurance coverage, contact OHIC's consumer partners at Rhode Island Parent Information Network (RIPIN) at 401-270-0101. RIPIN offers assistance to any Rhode Islander with any type of health insurance.

Protecting Consumers • Ensuring Solvency • Engaging Providers • Improving the System

 

**VERMONT**
DEPARTMENT OF FINANCIAL REGULATION

# Department of Financial Regulation and Attorney General Donovan Caution Public about Healthcare Sharing Arrangements

**Press Release**
**For Immediate Release:** October 24, 2019
**Contact:**       Stephanie Brackin, Information Management Officer 802-828-4872, stephanie.brackin@vermont.gov

*Montpelier, VT* – Several weeks ago the Department of Financial Regulation (DFR) issued a cease and desist order against four entities and one individual alleged to be deceptively marketing and soliciting unlicensed health insurance to Vermonters under the guise of a "healthcare sharing arrangement." With open enrollment starting on November 1 and running through December 15, Vermont State officials want to encourage the public to be wary of unlicensed health insurance products that promise considerably lower costs.

"I want to thank Commissioner Pieciak and his team at the Department for their quick response, which has no doubt protected Vermonters from these predatory and illegal practices," said Governor Phil Scott. "While the cost of health care is a huge concern, there is no value to the consumer in these illegal arrangements and could only make the challenge of health care coverage worse if the entity or individual is not required to cover any potential costs," Governor Scott said.

Vermont Attorney General T.J. Donovan applauded the department's action. "We work every day to protect Vermonters from unfair or deceptive practices," he said. "We're proud to partner with the Department of Financial Regulation to make sure all Vermonters are treated fairly, especially when it comes to ensuring access to quality, affordable healthcare."

The Governor, the Commissioner and the Attorney General want to take this opportunity to caution the public about widespread deceptive practices and unlicensed activity in this area. DFR, on behalf of the Governor, and the Attorney General's Office will continue to monitor these practices and alert Vermonters to unfair or deceptive practices in the healthcare insurance marketplace.

Healthcare sharing arrangements are typically marketed to closely resemble comprehensive health insurance plans, like those found on Vermont Health Connect and through licensed insurers, replete with provider networks and "gold," "silver," and "bronze" plan tiers. They frequently describe themselves as an alternative to health insurance but use different terms for insurance concepts (for example, "share" instead of "premium," "need" instead of "claim") and often structure their

**EXHIBIT**
**1.49**

Ex. 1.49, p. 1 of 2

advertising to lead consumers to believe that consumer "needs" (i.e. healthcare claims) will be paid and that their products are a viable alternative for "traditional health insurance" that will reduce consumers' financial risk.

These arrangements, however, *do not guarantee payment of claims*—meaning that while they *may* share funds with members who have health needs, they are not legally obligated to do so. Their advertising materials may obscure the fact that there is no guarantee that consumers will actually be paid for any healthcare costs.

"Vermonters should be wary of so-called 'plans' that seem too good to be true with low costs, but no guarantees," said Attorney General T.J. Donovan. "All Vermonters should get great care at an affordable price when they can – but there is nothing 'affordable' about finding out that the plan you bought just stuck you with the bill."

"These products claim to save Vermonters money and reduce their risks related to healthcare expenses, but they actually present serious risks," said Commissioner Pieciak. "The department and the Attorney General will continue to take a very serious look at these products, their marketing, and the entities that sell them. I encourage Vermonters to reach out to us, the Department of Vermont Health Access, or the Vermont Attorney General if approached by anyone selling similar products."

Under Vermont law, licensed insurance agents and brokers are prohibited from soliciting or enrolling Vermonters into healthcare sharing arrangements. If you are aware of any healthcare sharing arrangements using deceptive advertising materials or engaging in the business of insurance in Vermont, or have purchased any products from such an entity or from an insurance agent, please report it immediately to the Department of Financial Regulation Consumer Services Section at 802-828-3302 or dfr.insuranceinfo@vermont.gov, or contact the Consumer Assistance Program at 800-649-2424 or ago.cap@vermont.gov.

If you are buying health insurance, the Commissioner and the Attorney General recommend that you do so through Vermont Health Connect or a licensed health insurer such as Blue Cross Blue Shield of Vermont, MVP Health Care, or Cigna. You may be eligible for federal and state subsidies that will cover a portion of your premium expenses.

If you are struggling to find or afford health care coverage, you can use the Department of Vermont Health Access's plan comparison tool.

Connect with the Vermont Department of Financial Regulation on Twitter, Facebook, and our website and the Attorney General's Office on Twitter, Facebook, Instagram, and its website.

###

 ***West Virginia Offices of the Insurance Commissioner***

## Consumer Alert

### <u>Not All Health Plans are the Same, Know What You're Signing up For</u>

As the cost of health care continues to climb, many people are looking for new coverage options. While consumer protection laws govern many types of health coverage, like plans purchased through an employer or through the Health Insurance Marketplace, other types of plans aren't required to protect consumers in the same way. Consumers who use health care sharing ministries (HCSMs), discount plans, or risk-sharing plans can best protect themselves by understanding the coverage they participate in.

**Health Care Sharing Ministries**

When talking to neighbors or searching online, you may hear about HCSMs. HCSMs are organizations in which the members share the costs of health care. Usually these members have common ethical or religious beliefs. However, before you sign up for an HCSM, there are some things you should know:

- HCSMs do not have to comply with the consumer protections of the federal Affordable Care Act (ACA), like covering treatments for pre-existing conditions or capping your out-of-pocket costs.
- HCSMs are not insurance, and they can't guarantee payment of claims. That means that while they may share funds with members who have health needs, they are not legally required to do so.
- State insurance regulators don't supervise HCSMs.
- HCSMs usually don't have provider networks, so members may be charged full price by doctors and hospitals, rather than the lower negotiated rates charged to consumers who have insurance coverage.
- HCSMs may provide value to some, but they pose a risk to others because they often provide limited benefits.

**EXHIBIT**
**1.50**

How HCSMs Work

A member will typically contribute a monthly payment to cover the qualifying medical expenses of other members. The HCSM will match paying members who need the health care funds or pool all the monthly shares and administer payments to members directly. Some people look to HCSMs because of their typically lower up-front costs compared to ACA plans.

According to one online source, enrollment in HCSMs has increased to nearly one million members as of 2019.

So far, there are 30 states where state law explicitly exempts HCSMs from insurance regulation. The remaining 20 states and Washington, DC don't contain an explicit exemption for HCSMs under state law.

**Discount Plans**

You might receive advertisements from plans offering discounts on health care for a monthly fee. These are not health insurance plans, and participants do not have the same protections as under licensed health insurance plans. Insurance commissioners strongly recommend that you thoroughly investigate any plan promising deep discounts for a "low" monthly fee and weigh the benefits against the cost carefully.

**Non-Licensed Risk-Sharing Plans**

You may receive offers to join a group or association that will take your monthly payments, put them in a savings account (or trust) with other participants' money, and then help pay some of your health care costs, as needed. Such arrangements are not insurance and the participants do not have the protections available to purchasers of licensed insurance plans. State insurance regulators strongly recommend that you thoroughly investigate such plans before joining.

HCSMs, discount plans, and risk-sharing plans are not insurance plans! Before signing, be sure to understand how the program works and what benefits you or your family can count on.

**More Information**

For more information about any type of insurance, or are concerns about a call you have received, please call the West Virginia Offices of the Insurance Commissioner Consumer Services Division at 1-888-879-9842, or visit our webpage at www.wvinsurance.gov .

Select Language



C O L O R A D O

**Department of
Regulatory Agencies**

(/)

Division of Insurance

# Consumer Advisory: Division of Insurance Cautions Coloradans on the Limitations of Health Care Sharing Programs

Friday, December 11, 2020

## These programs can leave you stuck with huge medical bills.

As open enrollment for individual plans (meaning not from an employer) continues, the Colorado Division of Insurance (DOI), part of the Department of Regulatory Agencies (DORA), is again alerting consumers about the risks of Health Care Sharing Programs or Ministries.

On the surface, such programs may look like complete, Affordable Care Act (ACA) insurance. Low monthly payments, which the programs may refer to as "premiums," may entice people to join, thinking they're getting full health insurance coverage at a bargain. Such programs may even mimic the look and feel of ACA-compliant health insurance, using terms like "bronze, silver and gold tiers." But these sharing programs or ministries often do not offer the same comprehensive benefits as ACA plans, and do not meet the ACA consumer protection standards.

Problems occur when members get medical care and then these programs don't pay, leaving the member with the doctor and hospital bills. The member is surprised as they thought they had full insurance coverage, but come to find out all that these programs don't cover.

If you are enrolled in one of these programs and are now having problems - like not getting your claims paid - please contact the DOI's Consumer Services Team to see if we can provide assistance: 303-894-7490 / 800-930-3745 / DORA_insurance@state.co.us (mailto:DORA_insurance@state.co.us) / doi.colorado.gov.

The DOI urges Colorado consumers to be aware of the following before signing up for a health care sharing program or ministry.

- These programs typically have restrictions or exclusions on pre-existing conditions, leaving the member responsible for the health care costs for those conditions.
- Members may also be subject to religious or moral restrictions from the sharing ministry, which may leave members responsible for the full costs of health care that results from an activity the ministry does not agree with.

**EXHIBIT
1.51**

Ex. 1.51, p. 1 of 2

- Often such programs do not provide mental health coverage or substance use disorder treatment.
- All of which means that health care sharing programs or ministries DO NOT comply with the Affordable Care Act (ACA) coverage requirements, even if their materials imply they do. If you come across any advertising or statements by a sharing program or ministry stating that it is ACA-compliant (or similar language), **please report this to the DOI's Consumer Services team at** 303-894-7490 (tel:13038947490) / 800-930-3745 (tel:18009303745) **(outside of the Denver metro area)** / DORA_insurance@state.co.us (mailto:DORA_insurance@state.co.us).

"I'm worried that many people will only find out about what these programs don't cover when it's too late - when they're already at the hospital or when they get a large bill in the mail," said Colorado Insurance Commissioner Michael Conway. "Up front, these programs look like they can save you money, but the costs to a consumer on the back end will not only be surprising, but also a serious financial blow. People need to understand the limitations of these products, especially in the midst of pandemic."

**Open enrollment for full, ACA-compliant individual plans continues here in Colorado until Jan. 15, 2021, although to have coverage in place by Jan. 1, you need to be enrolled by Dec. 15.** While health care sharing programs or ministries may look attractive, they very often are a case of "too good to be true," as they can ultimately leave you with health care bills that will negate any savings you expect. The DOI encourages Coloradans to shop for individual plans through Connect for Health Colorado     . There, people can find help through insurance brokers, assisters or Connect's online resources in selecting a plan that can best meet their needs.

If someone is trying to sell you a health care sharing program or ministry by telling you that "it is just as good as an ACA plan" or "it complies with the ACA," contact the DOI Consumer Services Team to let us know about these misleading marketing practices. Please also contact us if you are currently enrolled in one of these programs and are struggling to have your claims paid. If you're unsure of what kind of coverage you currently have, whether it is a traditional health insurance, a health care sharing ministry, or something else, you can contact us to find out what questions to ask.

Contact the DOI's dedicated Consumer Services Team:

- 303-894-7490 (tel:13038947490)
- 800-930-3745 (tel:18009303745) (outside of the Denver metro area)
- DORA_insurance@state.co.us (mailto:DORA_insurance@state.co.us)
- Or visit our website - doi.colorado.gov (/home) - and look for our "For Consumers" information.

###

**About the Division of Insurance:**

The Colorado Division of Insurance (DOI) (/home), part of the Department of Regulatory Agencies (DORA), regulates the insurance industry and assists consumers and other stakeholders with insurance issues. Visit doi.colorado.gov (/home) for more information or call 303-894-7499 (tel:13038947499) / toll free 800-930-3745 (tel:18009303745).

**About DORA:**

DORA is dedicated to preserving the integrity of the marketplace and is committed to promoting a fair and competitive business environment in Colorado. Consumer protection is our mission. Visit dora.colorado.gov (https://dora.colorado.gov/) for more information or call 303-894-7855 (tel:13038947855) / toll free 800-886-7675 (tel:18008867675).

**Related Tags:**

- health care sharing ministries (/category/health-care-sharing-ministries) • health care sharing programs (/category/health-care-sharing-programs) • ACA (/category/aca) • Affordable Care Act (/category/affordable-care-act) • Connect for Health Colorado (/category/connect-for-health-colorado) • open enrollment (/category/open-enrollment) • consumer advisory (/category/consumer-advisory) • health insurance (/category/health-insurance)

# Recent

## Landmark Reinsurance Program to Save Coloradans $477 Million on Premiums in 2025 (/news-releases-consumer-advisories/landmark-reinsurance-program-to-save-coloradans-477-million-on)

July 17, 2024 - Bipartisan Reinsurance program effort continues to save consumers millions in 2025. Colorado Option plans will again have lower premiums than non-option plans.



**Department of Commerce, Community, and Economic Development**

DIVISION OF INSURANCE

P.O. Box 110805
Juneau, AK 99811-0805
Main: 907.465.2515
Fax: 907.465.3422

### BULLETIN 19-13

**TO:   ALL INSURANCE LICENSEES AND THIRD-PARTY ADMINISTRATORS**

**RE:   LIABILITY FOR ASSISTING IN THE TRANSACTION OF UNAUTHORIZED INSURANCE**

The Alaska Division of Insurance (division) reminds all insurance licensees and third-party administrators (TPAs) assisting a company engaged in the unauthorized transaction of insurance may put their licenses or registrations at risk and that they may be held responsible pursuant to Alaska Statutes AS 21.27.410(a)(13) and AS 21.33.037 (a), (c), and (d).

The division has noted new types of health insurance or insurance products are being marketed to Alaska consumers. While some of these products, including self-funded single employer health plans under ERISA and recognized health care sharing ministries are exempt from state regulation and do not need a license, certificate, or authorization from the division, other products are subject to the provisions of Title 21. Specifically, companies may claim to be a health care sharing ministry or other innovative organization without complying with the requirements of the claimed exemption. The division advises licensees and TPAs to carefully evaluate all new products and organizations. You may check the National Association of Insurance Commissioners or Alaska Division of Insurance websites to verify a company's license or certificate of authority. If you have questions about a company or product, call the division at 907-269-7900.

Insurers and consumers may review the division's bulletin B02-14 available at https://www.commerce.alaska.gov/web/portals/11/pub/Bulletins/B02-14.pdf for additional information regarding ERISA plans, multiple employer welfare arrangements (MEWAs), and the characteristics of unauthorized and unlicensed health insurance plans.

Under AS 21.33.037(d), a person who in any manner assists directly or indirectly in the procurement of the unauthorized insurance contract shall be liable to the insured for the full amount of a claim or loss under the terms of the contract if the unauthorized insurer fails to pay the claim or the loss.

Further, if an organization is engaged in unauthorized insurance, the division may bring an action against a licensee or TPA who assisted the organization, whether or not the licensee or TPA knew the product was unauthorized. A person violating AS 21.27.410(a)(13) and AS 21.33.037 may be subject to civil penalties under AS 21.33.065(a) of not more than $50,000, in addition to applicable criminal penalties and other penalties. The division may also revoke or suspend a

**EXHIBIT**
**1.52**

Ex. 1.52, p. 1 of 3

licensee's license or TPA's registration for engaging in the unauthorized transaction of insurance under AS 21.27.410(a)(13).

Acts for which the division may bring an action against a licensee or TPA under AS 21.27.410(a)(13) and AS 21.33.037 include:

- Taking or receiving an application for the unauthorized insurance product;
- Receiving or collecting any consideration for the product, including premiums, commissions, membership fees, assessments, or dues.
- Issuing or delivering a contract for the product.
- Directly or indirectly acting as an agent for or otherwise representing or assisting in:
  - Soliciting, negotiating, procuring or effectuating the product or renewal of the product;
  - Disseminating information relating to the product's coverage or rates;
  - Forwarding an application for the product;
  - Delivering the product policy or contract;
  - Inspecting a risk;
  - Setting a rate;
  - Investigating or adjusting a claim or loss;
  - Transacting a matter after the effectuation of the product that arises out of the product; or
  - Representing or assisting the unauthorized organization in any other matter relating to the product; or
- Contracting to provide indemnification or expense reimbursement for medical expenses by direct payment, reimbursement or otherwise.

Licensees and TPAs should exercise due diligence before offering products from organizations who are not licensed by the division or who are claiming to be exempt from licensing or certification requirements. The products may have one or more of the following features:

- Commissions significantly higher than similar approved products;
- Declarations that the product is not insurance;
- Risk-Bearing, risk-shifting, or risk-pooling;
- Offers of unlimited, free, or low-cost medical services included with a flat monthly fee, such as telemedicine or preventive care;
- Offers a network of providers similar to preferred provider organizations or health maintenance organizations; or
- Products that function, look and sound like traditional health insurance.

If you believe an organization may be engaged in the unauthorized transaction of insurance, please notify the division at (907)-269-7900 or insurance@alaska.gov.

If you have questions relating to this bulletin, please contact Chris Murray at (907) 465-2545 or Chris.Murray@alaska.gov.

Dated September 17, 2019

_____
Lori Wing-Heier
Director

Ex. 1.52, p. 3 of 3



# Commissioner's Bulletin # B-0007-19

August 12, 2019

**To:   Insurance agents and third-party administrators**

**Re:   Strict liability for assisting in the practice of unauthorized insurance**

The Texas Department of Insurance reminds all insurance agents and third-party administrators (TPAs) that their licenses may be at risk and that they may be held responsible for assisting a company engaging in the unauthorized business of insurance under Insurance Code Chapter 101.

New types of health insurance or insurance-like products are being marketed to Texas consumers by unlicensed and unauthorized companies. While some health plans, including self-funded health plans under ERISA and legitimate health care sharing ministries, are exempt from state regulation and do not need a license or authorization from TDI, others are not. Specifically, companies may claim to be a health care sharing ministry or other innovative business without complying with the requirements of the claimed exemption. TDI advises agents and TPAs to carefully evaluate all new products and companies. You may check the National Association of Insurance Commissioners website to verify a company's license. If you have questions about a company or product, call TDI at 512-676-6500.

A person who in any manner assists directly or indirectly in the procurement of the unauthorized insurance contract could be held strictly liable to the insured for the full amount of a claim or loss under the terms of the contract if the unauthorized insurer fails to pay the claim or loss.

Further, if a company is engaged in unauthorized insurance, TDI may bring an action against an agent or TPA who assists the company whether the agent or TPA knew the product was unauthorized or not. A person violating Chapter 101 may be subject to civil penalties of up to $10,000 for each act of violation and for each day of violation. TDI may also revoke or suspend the agent or TPA's license for engaging in the unauthorized business of insurance.

Acts for which TDI may bring an action against an agent or TPA under Chapter 101 include:

- Taking or receiving an application for the unauthorized insurance product;
- Receiving or collecting any consideration for the product, including premiums, commissions, membership fees, assessments, or dues;
- Issuing or delivering a contract for the product;
- Directly or indirectly acting as an agent for or otherwise representing or assisting in:
  - Soliciting, negotiating, procuring, or effectuating the product or renewal of the product;
  - Disseminating information relating to the product's coverage or rates;
  - Forwarding an application for the product;
  - Delivering the product policy or contract;

**EXHIBIT**
**1.53**

Ex. 1.53, p. 1 of 2

- Inspecting a risk;

- Setting a rate;

- Investigating or adjusting a claim or loss;

- Transacting a matter after the effectuation of the product that arises out of the product; or

- Representing or assisting the company in any other matter relating to the product; or

- Contracting to provide indemnification or expense reimbursement for medical expenses by direct payment, reimbursement, or otherwise.

Agents and TPAs should exercise due diligence before offering products from companies who are not licensed by TDI or who are claiming to be exempt from licensing requirements. The products may have one or more of the following features:

- Commissions significantly higher than similar licensed products;

- Declarations that the product is not insurance;

- Risk-bearing, risk-shifting, or risk-pooling;

- Offers of unlimited, free, or low-cost medical services included with a flat monthly fee, such as telemedicine or preventative care;

- Offers a network of providers similar to preferred provider organizations or health maintenance organizations; or

- Products that function, look, and sound like traditional health insurance.

If you believe a company may be engaged in the unauthorized business of insurance, please notify TDI at 800-252-3439 or EnforcementInfo@tdi.texas.gov.

For more information, contact ChiefClerk@tdi.texas.gov

Last updated: 1/20/2021



1  TYLER P. McKINNEY (SBN 263717)
   EUGENE KALINSKY (SBN 256751)
2  CALIFORNIA DEPARTMENT OF INSURANCE
    300 Capitol Mall, Suite 1700
3  Sacramento, CA 95814
    (916) 492-3497
4  kalinskye@insurance.ca.gov
   *Attorneys for the California Department of Insurance*
5

6

7                    BEFORE THE INSURANCE COMMISSIONER

8                         OF THE STATE OF CALIFORNIA

9

10  In the Matter of                    File No. SC202200130

11

12                                      **ORDER TO CEASE AND DESIST and
                                        NOTICE OF RIGHT TO HEARING**
13  HOUSE OF PRAYER AND LIFE,
    INCORPORATED                        (Insurance Code § 12921.8)
14  dba
    JERICHO SHARE,
15

16
                          Respondent.
17

18

19       The California Department of Insurance alleges that:

20

21                            <u>JURISDICTION</u>

22       1.     California Insurance Code § 12921.8(a) authorizes the Insurance

23  Commissioner to issue a Cease and Desist Order to a person who has acted in a

24  capacity for which a license, registration, or Certificate of Authority from the Insurance

25  Commissioner was required but not possessed.[1]

26

27

28
    ───────────────────
    [1] See Exhibit 1.

#1437509.1                              1

**EXHIBIT
1.54**

Ex. 1.54, p. 1 of 8

2.     Insurance Code § 22 provides that insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.

3.     Insurance Code § 700 provides as follows:

a) A person shall not transact any class of insurance business in this state without first being admitted for that class. Except for the State Compensation Insurance Fund as authorized by Sections 11770 and 11778 to 11780.5, inclusive, admission is secured by procuring a certificate of authority from the commissioner. The certificate shall not be granted until the applicant conforms to the requirements of this code and of the laws of this state prerequisite to its issue.

b) The unlawful transaction of insurance business in this state in willful violation of the requirement for a certificate of authority is a public offense punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code, or in a county jail not exceeding one year, or by fine not exceeding one hundred thousand dollars ($100,000), or by both that fine and imprisonment, and shall be enjoined by a court of competent jurisdiction on petition of the commissioner.

4.     Insurance Code § 740(a) provides:

Notwithstanding any other provision of law, and except as provided herein, any person or other entity that provides coverage in this state for medical, surgical, chiropractic, physical therapy, speech pathology, audiology, professional mental health, dental, hospital, or optometric expenses, whether the coverage is by direct payment, reimbursement, or otherwise, shall be presumed to be subject to the jurisdiction of the department unless the person or other entity shows that while providing the services it is subject to the jurisdiction of another agency of this or another state or the federal government.

#1437509.1

2

1    **PARTIES AND FINDINGS**

2        5.        Respondent House of Prayer and Life, Incorporated began operating in

3    1968 in Texas. It currently functions as a nonprofit entity. In approximately October 2021,

4    House of Prayer and Life began using the Jericho Share alias to act as a health care

5    sharing ministry ("HCSM").[2]

6

7        6.        Federal law defines an HCSM as follows:

8    • A nonprofit that is exempt from taxation;

9
10   • Members share a common set of ethical or religious beliefs and share
     medical expenses among members in accordance with those beliefs and
11   without regard to the State in which a member resides or is employed;

12   • Members retain membership even after they develop a medical condition;

13   • Which (or a predecessor of which) has been in existence at all times
     since December 31, 1999, and medical expenses of its members have
14   been shared continuously and without interruption since at least
     December 31, 1999; and
15
16   • Which conducts an annual audit which is performed by an independent
     certified public accounting firm in accordance with generally accepted
17   accounting principles and which is made available to the public upon
     request.[3]
18

19   California Government Code § 100705(c)(2) incorporates the federal definition of an
20
     HCSM. Notably, these definitions only apply in the context that membership in an HCSM
21
     provides an exemption from applicable health insurance mandates.
22

23

24

25

26

27   _____
     [2] House of Prayer and Life's website makes reference to its pastor reopening the entity in October 2021,
     indicating that it may have been dormant for some time before then.
28
     [3] 26 U.S.C. § 5000A(d)(2)(B)(ii)

#1437509.1                                             3

7.      Jericho Share markets its products as alternatives to traditional health insurance to California consumers. Those products have many of the attributes of traditional health insurance products subject to Department jurisdiction, regulation, and authority.

8.      Jericho Share collects fixed monthly payments from its members, payments which vary according to the level of coverage, and conducts underwriting to screen for pre-existing conditions. Additionally, Jericho Share has a schedule of covered and excluded services such as those referenced in Insurance Code § 740, a schedule of copayments and deductibles, a claims adjudication process, and annual and lifetime limits.

9.      In exchange for the fixed monthly payments, Jericho Share undertakes to indemnify its members for loss, damage, or liability arising from costs incurred in connection with health events, as encompassed in the definition of insurance in Insurance Code § 22.

10.     The Department interviewed several California residents who became Jericho Share members in 2021 and 2022. They experienced problems with coverage for medical issues and canceling their membership.

11.     Jericho Share is not currently licensed or authorized by the Insurance Commissioner to act in any capacity regarding the transaction of insurance in California, and during relevant periods herein, did not hold any license, Certificate of Authority, or permit, issued by the Insurance Commissioner, to act in any capacity regarding the transaction of insurance in California.

#1437509.1

4

12.      Jericho Share does not qualify as an HCSM under state or federal law as it has not been in existence at all times since December 31, 1999, and medical expenses of its members have not been shared continuously and without interruption since at least December 31, 1999. Members of Jericho Share may be subject to penalties under the state health insurance mandate.

**ORDER TO CEASE AND DESIST**

13.      Respondent is hereby ORDERED to immediately CEASE AND DESIST the solicitation, marketing, sale, and issuance of any contracts, policies, certificates of insurance, or health care sharing membership plans in California.

14.      RESPONDENT IS FURTHER ORDERED TO immediately cease and desist from the following:

a.      Transacting insurance or health care sharing membership plans in the State of California in any capacity, including but not limited to insurer, insurance agent, broker, solicitor, or HCSM.

b.      Advertising or acting as an insurer, insurance agent, broker, solicitor, or HCSM in the State of California.

c.      Advertising or acting as an insurer, insurance agent, broker, solicitor, or HCSM exempt from regulation in the State of California.

d.      Advertising, or participating in advertising, by newspaper, telephone book or listing, mail, handout, business card, or by any other written or printed presentation, or by telephone, radio, television, internet, public outcry or proclamation, or in any other manner or means whatsoever, whether personally or through others, that implies that they are licensed or are engaged in the business of soliciting, negotiating, executing, delivering, or

#1437509.1

5

1  furnishing insurance or health care sharing in the State of California in any

2  manner.

3     e.     Receiving any money, commission, fee, rebate, payment, remuneration, or

4  any other valuable consideration whatsoever, in connection with any

5  insurance or health care sharing transactions.

6

7  **NOTICE OF RIGHT TO HEARING**

8     15.    Insurance Code § 12921.8(c), a copy of which is attached to this Order,

9  provides in part, as follows:

10

11  "A person to whom a cease and desist order…has been issued,
   may, within <u>seven days</u> after service of the order…request a

12  hearing by filing a request for the hearing with the commissioner."

13     If you desire a hearing in this matter, your written request for a hearing must be

14  received within seven days after you are served with this Order. The seven-day period

15  begins on the day after you are served with this Order, and if the seventh day falls on a

16  weekend or holiday, the deadline is extended to the next business day. Your written

17  request for a hearing must be directed to Eugene Kalinsky, attorney for the California

18  Department of Insurance, at the physical or email address at the top of the first page of

19  this Order.

20

21     IN WITNESS THEREOF, I have set my hand and affixed my official seal on

22  March 18, 2024.

23

24                              RICARDO LARA
                               Insurance Commissioner



25                              Digitally signed by
                               Tyler McKinney

26                              Date: 2024.03.18
                               08:55:25 -07'00'
               By _____

27                              TYLER P. McKINNEY
                               Assistant Chief Counsel

28

#1437509.1

6