No. 25-1035

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ALLIANCE OF HEALTH CARE SHARING MINISTRIES
*Plaintiff-Appellant*

v.

MICHAEL CONWAY,
in his official capacity as
Commissioner of the Colorado Division of Insurance
*Defendant-Appellee*

Appeal from the United States District Court for the District of Colorado,
No. 1:24-cv-01386-GPG-STV (Hon. Gordon Gallagher)

**APPENDIX VOL XIII - Pages A-574 - A-612**

Date: March 21, 2025

Michael F. Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@Paulhastings.Com
William E. Mahoney
Paul Hastings LLP
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@Paulhastings.Com

*Counsel For Plaintiff Alliance of
Health Care Sharing Ministries*

| ECF NO. | DESCRIPTION | Appx. Page No. |
|---|---|---|
| **Appendix Vol. I, Pages 1-140** | | |
| - | District Court Docket Sheet | A-1 |
| 8-1 | Ex. A - Declaration of Rob Waldo (May 17, 2024) | A-9 |
| 8-2 | Ex. A-1 – Samaritan Bylaws | A-19 |
| 8-3 | Ex. A-2 - Samaritan Guidelines | A-44 |
| 8-4 | Ex. A-3 - Samaritan Membership Application | A-94 |
| 8-5 | Ex. B - Declaration of Katy Talento | A-100 |
| 32 | Amended Complaint of Alliance of Health Care Sharing Ministries (July 1, 2024) | A-109 |
| **Appendix Vol. II, Pages 141-179** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1-1.6 (September 3, 2024) | A-141 |
| **Appendix Vol. III, Pages 180-223** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.7-1.22 (September 3, 2024) | A-180 |
| **Appendix Vol. IV, Pages 224-261** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.23-1.28 (September 3, 2024) | A-224 |
| **Appendix Vol. V, Pages 262-307** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.29-1.33 (September 3, 2024) | A-262 |

| | | |
|---|---|---|
| **Appendix Vol. VI, Pages 308-331** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.34-1.36 (September 3, 2024) | A-308 |
| **Appendix Vol. VII, Pages 332-350** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-332 |
| **Appendix Vol. VIII, Pages 351-373** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.37-1.39 (September 3, 2024) | A-351 |
| **Appendix Vol. IX, Pages 374-424** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.40 (September 3, 2024) | A-374 |
| **Appendix Vol. X, Pages 425-478** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.41 (September 3, 2024) | A-425 |
| **Appendix Vol. XI, Pages 479-541** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.41-1.42 (September 3, 2024) | A-479 |
| **Appendix Vol. XII, Pages 542-573** | | |

| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-542 |
|---|---|---|
| **Appendix Vol. XIII, Pages 574-612** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.54-1.59 (September 3, 2024) | A-574 |
| **Appendix Vol. XIV Pages 613-682** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.6-1.6 (September 3, 2024) | A-613 |
| **Appendix Vol. XV, Pages 683-767** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.61-1.64 (September 3, 2024) | A-683 |
| **Appendix Vol. XVI, Pages 768-816** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.0-2.3 (September 3, 2024) | A-768 |
| **Appendix Vol. XVII, Pages 817-867** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.3-2.4 (September 3, 2024) | A-817 |
| **Appendix Vol. XVIII, Pages 868-933** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.5-7 (September 3, 2024) | A-868 |

| | **Appendix Vol. XIX, Pages 934-1002** | |
|---|---|---|
| 52.1 | Appendix to Reply to Motion for Preliminary Injunction (September 17, 2024) | A-934 |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-949 |
| | **Appendix Vol. XX, Pages 1003-1041** | |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-1003 |
| 55 | Notice of Appeal as to Order on Motion for Preliminary Injunction (January 27, 2025) | A-1015 |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1017 |
| | **Appendix Vol. XXI, Pages 1042-1077** | |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1042 |
| 60 | Order Denying Motion for Injunction Pending Appeal (February 3, 2025) | A-1069 |

# EXHIBIT 1

California Insurance Code 12921.8

(a) The commissioner may do the following:

    (1) Issue a cease and desist order to a person who has acted in a capacity for which a license, registration, or certificate of authority from the commissioner was required but not possessed.

    (2) Issue a cease and desist order to a person who has aided or abetted a person described in paragraph (1).

    (3) Impose a monetary penalty, pursuant to an order to show cause, on a person described in paragraph (1) or (2). The monetary penalty shall be the greater of the following:

        (A) Five times the amount of money received by the person for acting in the capacity for which the license, registration, or certificate of authority was required but not possessed.

        (B) Five thousand dollars ($5,000) for each day the person acted in the capacity for which the license, registration, or certificate of authority was required but not possessed. In the absence of contrary evidence, it shall be presumed that a person continuously acted in a capacity for which a license, registration, or certificate of authority was required on each day from the date of the earliest such act until the date those acts were discontinued, as proven by the person at a hearing.

(b) Notwithstanding paragraph (3) of subdivision (a), the commissioner shall not impose a monetary penalty under this section on a person who has held a license or registration within the prior five years pursuant to Chapter 5 (commencing with Section 1621), Chapter 6 (commencing with Section 1760), Chapter 7 (commencing with Section 1800), or Chapter 8 (commencing with Section 1831) of Part 2 of Division 1.

(c) A person to whom a cease and desist order or order to show cause has been issued, may, within seven days after service of the order, if a hearing has not already been scheduled by the commissioner, request a hearing by filing a request for the hearing with the commissioner. The hearing shall be conducted in accordance with the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340), Chapter 4 (commencing with Section 11370), Chapter 4.5 (commencing with Section 11400), and Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code), and the commissioner shall have all the powers granted therein.

(d) A person who has a hearing pursuant to subdivision (c) shall be entitled to have the proceedings and the order of the commissioner reviewed by means of any remedy provided by the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340), Chapter 4 (commencing with Section 11370), Chapter 4.5 (commencing with Section 11400), and Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code).



**PRESS RELEASE**

# Founder of Medical Charity in St. Joseph Pleads Guilty to $8 Million Fraud Scheme

Tuesday, November 14, 2023

**For Immediate Release**

U.S. Attorney's Office, Western District of Missouri

## 'Christian Health Care Sharing Ministry' Defrauded Hundreds of Members

KANSAS CITY, Mo. – The founder of a so-called Christian health care sharing ministry in St. Joseph, Mo., pleaded guilty in federal court today to leading an $8 million wire fraud conspiracy that cheated hundreds of members, and to making false statements on a personal tax return.

Craig Anthony Reynolds, 61, of St. Joseph, waived his right to a grand jury and pleaded guilty before U.S. District Judge Greg Kays to a federal information that charges him with one count of conspiracy to commit wire fraud and one count of making false statements on a tax return.

Reynolds incorporated and ran Medical Cost Sharing, a tax-exempt organization, as its president and chief executive officer from 2014 through December 2022.

By pleading guilty today, Reynolds admitted that he and his co-conspirators used false and fraudulent promises to market Medical Cost Sharing as a "Health Care Sharing Ministry" to defraud hundreds of "ministry members." Reynolds and his co-conspirators collected more than $8 million in member "contributions," yet paid only 3.1 percent in health care claims so that they could personally profit and take most of the members' contributions for themselves.

**EXHIBIT 1.55**

Ex. 1.55, p. 1 of 5

1/5

The co-conspirators included an executive vice president and chairman of Medical Cost Sharing, who ran the organization with Reynolds. This co-conspirator, identified in court documents as "CC1," has not been charged.

Reynolds marketed Medical Cost Sharing as a "Christian Health Care Sharing Ministry" through insurance brokers, radio stations, social media, and its website. Medical Cost Sharing sales materials promoted its 501(c)(3) tax-exempt designation, advertising that it was different from for profit health insurance. The Medical Cost Sharing website claimed, "while we are not an insurance company, many think of us as a Christian Health Insurance, or Christian Medical Insurance because, like conventional insurance plans, we help you pay your healthcare costs. We help you protect your family. But unlike these corporate, profit based plans, we are a healthcare sharing ministry … your healthcare costs are shared with other Christians enrolled in our medical sharing plans."

Medical Cost Sharing promised its member that if they paid monthly "contributions," Medical Cost Sharing would pay claims after the members' "personal responsibility" (deductible) was met.

In reality, Reynolds admitted today, Medical Cost Sharing rarely paid members' health care claims. Sometimes Medical Cost Sharing would pay a part of a claim if the member filed a complaint with their state attorney general and/or hired an attorney to represent them against Medical Cost Sharing.

Non-profit organizations file IRS Forms 990, which are accessible to the public. Medical Cost Sharing filed false Forms 990 for tax years 2016 through 2019 that understated Reynolds's and CC1's compensation. Medical Cost Sharing filed no tax returns for tax years 2020–2022.

According to today's plea agreement, Medical Cost Sharing collected more than $8,035,544 in member contributions from 2015 through 2022. During that time, Medical Cost Sharing paid no more than $245,982 in claims, which constitutes only 3.1 percent of the member contributions collected. The $245,982 includes payments to members who filed complaints with their state attorney general and/or hired legal counsel to represent them against Medical Cost Sharing.

Medical Cost Sharing paid no claims at all from Feb. 22, 2021, through December 2022, although it collected a total of nearly $1.2 million in dues in 2021 and 2022.

Reynolds admitted that he and CC1 pocketed at least $5,168,268 from the member contributions from December 2015 through December 2022. Reynolds and CC1 took at least 64 percent of total member contributions for their personal profit.

On Dec. 13, 2022, federal agents served search warrants on the Medical Cost Sharing business location and Reynolds's residence and seized property generated from Medical Cost Sharing proceeds. Medical Cost Sharing continued to try to collect membership dues after the search

and seizure warrants. On Dec. 27, 2022, the court entered a temporary restraining order that prohibited Medical Cost Sharing, Reynolds, and CC1 from continuing to perpetrate a fraudulent scheme and from processing Medical Cost Sharing member payments, among other actions.

In addition to the wire fraud conspiracy, Reynolds also pleaded guilty to making false statements on a personal tax return. Reynolds admitted that he filed a return that claimed he had no taxable income in 2019. Reynolds actually received at least $354,292 in taxable income in 2019.

Under the terms of today's plea agreement, Reynolds must forfeit his gain from Medical Cost Sharing as well as any property obtained from his criminal activity, including two residences in St. Joseph, the contents of his bank account, and a 2022 Harley Davidson motorcycle. He must also pay $167,799 in restitution to the government.

Under federal statutes, Reynolds is subject to a sentence of up to 23 years in federal prison without parole. The maximum statutory sentence is prescribed by Congress and is provided here for informational purposes, as the sentencing of the defendant will be determined by the court based on the advisory sentencing guidelines and other statutory factors. A sentencing hearing will be scheduled after the completion of a presentence investigation by the United States Probation Office.

This case is being prosecuted by Assistant U.S. Attorneys Kathleen D. Mahoney, Patrick Daly, and John Constance. It was investigated by the FBI and IRS-Criminal Investigation.

### FBI Website for Victims of Medical Cost Sharing Fraud

Those who believe they are victims of this fraud and wish to receive restitution for any losses suffered as a result may provide their information through the MCS Victim Information Page that has been established by the FBI.

https://www.fbi.gov/how-we-can-help-you/victim-services/seeking-victim-information/mcs-victim-information-page

*Updated November 14, 2023*

**Topics**

| **FINANCIAL FRAUD** | **TAX** |

**Component**

[USAO - Missouri, Western](#)

# Related Content

─────

**PRESS RELEASE**

## Former Bank Employee Pleads Guilty to $2.4 Million Embezzlement Scheme

A Higbee, Mo., woman pleaded guilty in federal court today to stealing nearly $2.4 million from customers' accounts at Exchange Bank of Missouri in Fayette, Mo., during a 15-year-long fraud...

July 25, 2024

**PRESS RELEASE**

## Joplin Man, Woman Plead Guilty to Bank Fraud Conspiracy

A Joplin, Mo., man and woman have pleaded guilty to stealing mail from Joplin residents as part of a conspiracy to commit bank and wire fraud.

July 24, 2024

**PRESS RELEASE**

## Co-founder of Medical Charity in St. Joseph Sentenced to 17 Years in Prison for $8 Million Fraud Scheme

Case No. 1:24-cv-01386-GPG-STV    Document 46-1    filed 09/03/24    USDC Colorado    pg 440 of 793

7/26/24, 1:59 PM                 Western District of Missouri | Founder of Medical Charity in St. Joseph Pleads Guilty to $8 Million Fraud Scheme | United States De…

The co-founder of a so-called Christian health care sharing ministry in St. Joseph, Mo., was sentenced in federal court today for his role in an $8 million wire fraud conspiracy…

June 26, 2024

✉ **Western District of Missouri**

**U.S. Attorney's Office**

**Room 5510**

**400 East 9th Street**

**Kansas City, MO 64106**

**Email USAO-WDMO**

📞  **Telephone: (816) 426-3122**

**Fax Line: (816) 426-4210**

https://www.justice.gov/usao-wdmo/pr/founder-medical-charity-st-joseph-pleads-guilty-8-million-fraud-scheme                5/5

Resp. Appx, p. 436                                          Ex. 1.55, p. 5 of 5

Appx. Vol XIII
A-580

STATE OF NORTH DAKOTA

IN DISTRICT COURT

COUNTY OF BURLEIGH

SOUTH CENTRAL JUDICIAL DISTRICT

STATE OF NORTH DAKOTA EX REL.
DREW H. WRIGLEY,
ATTORNEY GENERAL,

Civil No. **08-2023-CV-00560**

                           Petitioner,

       -vs-

ASSURANCE OF
VOLUNTARY COMPLIANCE

HOUSE OF PRAYER AND LIFE,
INCORPORATED D/B/A
JERICHO SHARE,
JERICHO HEALTH SHARE, and
JHS COMMUNITY.

                         Respondent.

CPAT 220044.004

To:   House of Prayer and Life, Incorporated, 1900 Matlock Rd. Suite #502, Mansfield, Texas 76063.

[¶1]   WHEREAS Drew H. Wrigley Attorney General of the State of North Dakota (Attorney General), acts in the public interest pursuant to North Dakota Century Code (N.D.C.C.) ch. 51-15, commonly referred to as the Consumer Fraud Law, and ch. 51-18, commonly referred to as the Home Solicitation Sales Statute.

[¶2]   WHEREAS House of Prayer and Life, Incorporated ("Respondent") is a Texas Business Corporation with its principal address at 1900 Matlock Rd. Suite #502, Mansfield, Texas 76063. Respondent is not registered in the State of North Dakota. Respondent does business under the names Jericho Share, Jericho Health Share, and JHS Community.

[¶3]   WHEREAS Respondent is a nonprofit 501(c)(3) health care sharing ministry that offers memberships that enables people who share a common set of religious and ethical beliefs to share in medical needs of one another, which memberships are not Insurance, but a community sharing in each other's medical needs with no promise to pay.

**EXHIBIT**
**1.56**

Ex. 1.56, p. 1 of 8

[¶4]    WHEREAS Respondent is engaged in the business of soliciting and selling merchandise, as those terms are defined in N.D.C.C. § 51-15-01, in the State of North Dakota, namely health share membership programs;

[¶5]    WHEREAS N.D.C.C. § 51-15-02 prohibits the act, use, or employment of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise;

[¶6]    WHEREAS N.D.C.C. § 51-15-02 makes it unlawful for a person from provide assistance or support to any person engaged in any act or practice in violation of N.D.C.C. § 51-15-02 when the person providing assistance or support knows or consciously avoids knowing that the other person is engaged in an act or practice in violation of N.D.C.C. § 51-15-02.

[¶7]    WHEREAS N.D.C.C. ch. 51-18 regulates home solicitation sales and requires, among other things, that sellers provide North Dakota consumers with both verbal and written notice of cancellation rights;

[¶8]    WHEREAS N.D.C.C. § 51-18-04 requires an agreement in a personal solicitation sales to be in writing, dated and signed, and contain certain required disclosures and acknowledgements regarding the consumer's right to cancel.

[¶9]    WHEREAS the Attorney General has received information indicating Respondent is or has engaged in violations of N.D.C.C. chapter 51-15 and 51-18 while selling health share membership programs to North Dakota consumers.

[¶10] WHEREAS the Attorney General has determined that in the public interest an investigation should be conducted into the activity of Respondent to ascertain whether violations of N.D.C.C. chs. 51-15 or 51-18 occurred;

2

[¶11]   WHEREAS as a result of this investigation the Attorney General alleges Respondent has violated N.D.C.C. chs. 51-15 or 51-18; and

[¶12]   WHEREAS the parties desire to settle this matter without further investigation or litigation, and without any admission of liability; NOW, THEREFORE, it is hereby agreed as follows:

[¶13]   This Assurance of Voluntary Compliance shall constitute the statutory assurance of discontinuance as provided in N.D.C.C. § 51-15-06.1. Respondent acknowledges *in personam* jurisdiction in North Dakota. Nothing in this Assurance of Voluntary Compliance is intended to waive any rights or private remedies available to consumers. *See also* N.D.C.C. § 51-15-09.

[¶14]   Respondent, its directors, officers, principals, employees, agents, and servants, and all other persons in active concert or participation with it, voluntarily agrees to be, and hereby is, permanently enjoined from engaging in any violations of N.D.C.C. ch. 51-15, including any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation in connection with the sale or advertisement of any merchandise, or facilitating or assisting any such violations.

[¶15]   Respondent, its directors, officers, principals, employees, agents, and servants, and all other persons in active concert or participation with it agree to company with all requirements of N.D.C.C. chapter 51-18 while selling merchandise to a North Dakota consumer in a personal solicitation sale.

[¶16]   Respondent, its directors, officers, principals, employees, agents, and servants, and all other persons in active concert or participation with it, agrees to provide a verbal and written disclosure, at the time of a sale, that the product offered is not, and does not work like, health insurance, and obtain an acknowledgement from the customer that a verbal disclosure has been made and received by the customer.

3

[¶17]  Respondent agrees to establish a mechanism that ensures reasonable oversight over third-party producers marketing and selling its health share membership programs, to make sure that proper disclosures are made to customers regarding the products sold, and that creates accountability for third-party producers and rewards compliance with applicable laws.

[¶18]  Within 30 days of executing this agreement, Respondent agrees to provide full refunds to North Dakota customers Angela Schneider, Jeanette Smith-Murphy, and Paul Kerzman, of all amounts paid to Respondent, except Respondent may deduct from any refund the amount the customer has received, if any, for medical needs from the membership.  The refunds shall in form of a check issued to the customer and mailed to the Attorney General.

[¶19]  Respondent agrees to provide refunds to any customer who cancelled within 60 days of purchasing a health share membership program if the customer has not received any sharing for medical needs from the membership. Such refunds shall be made within 30 days of executing this agreement, and proof of the refunds shall be provided to the Attorney General.

[¶20]  Upon execution of this agreement, Respondent shall make a payment to the Attorney General in the sum of $15,000 in lieu of civil penalties, investigation costs and attorney fees. Payment shall be the form of a certified check or money order payable to Office of Attorney General – North Dakota, and delivered to:

> Elin S. Alm
> Assistant Attorney General
> Consumer Protection and Antitrust Division
> Office of Attorney General
> 1720 Burlington Drive, Suite C
> Bismarck, ND 58504-7736

[¶21]  Respondent agrees it will comply with this Assurance of Voluntary Compliance and further acknowledge and agree any violations of this Assurance of Voluntary Compliance, as determined by a State of North Dakota District Court, shall be punishable as contempt of court

4

pursuant to N.D.C.C. ch. 27-10 and Respondent further may be subject to all other civil penalties and sanctions provided by law, including attorney fees and costs.

[¶22]   If Respondent is adjudged in contempt of court for violations of this Assurance of Voluntary Compliance, adjudged in violation of this Assurance of Voluntary Compliance or adjudged in violation of N.D.C.C. ch. 51-15, said Respondent shall also be responsible for payment to the Attorney General for reasonable investigation costs, expenses, and attorney fees.

[¶23]   In the event of a breach of this Assurance of Voluntary Compliance, the Attorney General may make application to a State of North Dakota District Court to have the entire amount still owing under the Assurance of Voluntary Compliance entered as a formal judgment so it may be filed on the judgment roll and docketed pursuant to North Dakota law. *See* N.D.C.C. §§ 28-20-11, 28-20-12 and 28-20-13.

[¶24]   Respondent represents the signers below are competent and fully authorized to act on behalf of Respondent. Respondent acknowledges it has been provided the opportunity to review this Assurance of Voluntary Compliance with an attorney, understands the implications and obligations imposed by it and has freely and willingly entered into this Assurance of Voluntary Compliance. Respondent further acknowledges and agrees this Assurance of Voluntary Compliance may be approved by and filed with the State of North Dakota District Court without any further notice or hearing. Respondent agrees to and acknowledges the sufficiency of service by facsimile, and/or first-class mail at its last known address, with respect to any and all actions taken with regard to this Assurance of Voluntary Compliance. Signatures transmitted electronically or via facsimile by Respondent shall be deemed the equivalent of original signatures; this document may be executed in counterparts, with each counterpart deemed an original.

5

Dated this 24 day of February, 2023.

HOUSE OF PRAYER AND LIFE,
INCORPORATED
(including all "doing business as" names, formal
corporate names, fictitious names of any kind or
any variations of the same)

By: _____

VICTOR MENSAVAGE
(print name)

Its: _____CEO_____
(title)

STATE OF __Texas__ )
) ss
COUNTY OF __Tarrant__ )

Subscribed and sworn to before me this
24 day of February, 2023.

_____
Notary Public

AMANDA HARRELL
Notary Public, State of Texas
My Commission Expires
December 04, 2026
NOTARY ID 13182033-2

6

STATE OF NORTH DAKOTA

COUNTY OF BURLEIGH

STATE OF NORTH DAKOTA EX REL.
DREW H. WRIGLEY,
ATTORNEY GENERAL,

                           Petitioner,

    -vs-

HOUSE OF PRAYER AND LIFE,
INCORPORATED D/B/A
JERICHO SHARE,
JERICHO HEALTH SHARE, and
JHS COMMUNITY.

                       Respondent.

IN DISTRICT COURT

SOUTH CENTRAL JUDICIAL DISTRICT

Civil No. 08-2023-CV-00560

ORDER OF APPROVAL

CPAT 220044.004

[¶1]    Pursuant to the authority of this Court provided in N.D.C.C. § 51-15-06.1, IT IS HEREBY ORDERED that the Assurance of Voluntary Compliance filed in this matter is approved as an assurance of voluntary compliance as specified in N.D.C.C. § 51-15-06.1.

[¶2]    The Clerk of Court shall receive and file the Assurance of Voluntary Compliance.

Signed: 3/15/2023 8:19:29 AM

_____
Judge of the District Court

Resp. Appx, p. 443           Ex. 1.56, p. 7 of 8

Appx. Vol XIII
A-587

This Assurance of Voluntary Compliance is hereby received and accepted this 28th day

of February , 2023.

STATE OF NORTH DAKOTA
Drew H. Wrigley
Attorney General

BY: _____

Elin S. Alm, ND ID 05924
Assistant Attorney General
Office of Attorney General
Consumer Protection & Antitrust Division
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Telephone (701) 328-5570
Facsimile (701) 328-5568
ealm@nd.gov

Attorneys for the Petitioner

7

Resp. Appx, p. 444                    Appx. Vol XIII
A-588

Ex. 1.56, p. 8 of 8

# STATE OF WASHINGTON
## OFFICE OF THE INSURANCE COMMISSIONER

|  |  |
|---|---|
| *In the Matter of* | Order No.      20-0335 |
| **ALLIANCE FOR SHARED HEALTH,** | ORDER TO CEASE AND DESIST |
| Unauthorized Entity/Respondent. | |

Pursuant to RCW 48.02.080, RCW 48.15.023 and RCW 48.44.016, the Insurance Commissioner of the state of Washington ("Insurance Commissioner") orders the above-named Respondent, and its officers, directors, trustees, employees, agents, and affiliates to immediately cease and desist from:

A. Acting as an insurer in the state of Washington;

B. Acting as a health care service contractor in the state of Washington;

C. Engaging in or transacting the unauthorized business of insurance in the state of Washington;

D. Seeking, pursuing, and obtaining any insurance business in the state of Washington;

E. Soliciting Washington residents to purchase any insurance to be issued by an unauthorized insurer; and

F. Soliciting Washington residents to induce them to purchase any insurance contract.

**BASIS:**

1.     Alliance for Shared Health Inc. ("ASH") is a non-profit 501(c)(3) corporation headquartered in Missouri. In September 2019, ASH filed an Application for a Certificate of Authority of a Foreign Non-Profit Corporation with the Missouri Secretary of State.

2.     ASH does not hold a certificate of authority to transact insurance in Washington. ASH is also not registered with the Washington Secretary of State or the Washington State Department of Revenue.

| | | |
|---|---|---|
| ORDER TO CEASE AND DESIST<br>ORDER NO. 20-0335<br>LA - 1602799 - 1 | 1 | State of Washington<br>Office of Insurance Commissioner<br>PO Box 40255<br>Olympia, WA 98504-0255 |

**EXHIBIT 1.57**

3.     ASH was originally incorporated in the U.S. Virgin Islands in June 2017. ASH provided the Insurance Commissioner's Regulatory Investigations Unit ("Investigations") with ASH's Internal Revenue Service ("IRS") non-profit organization filings. ASH submitted an application for non-profit status to the IRS in November 2018. The filings list the following ASH executive officers: Corey Durbin ("Durbin"), *President*; John Lewis ("Lewis"), *Treasurer*; and Leslie Hunsel ("Hunsel"), *Secretary*.

4.     Christian Discount Alliance, LLC, dba Shared Health Alliance ("SHA"), is a business entity insurance producer licensed in Missouri since 2016. The Designated Licensed Responsible Producers for SHA's Missouri insurance producer license are also Durbin, *President, Owner*; Lewis, *Chief Operating Officer, Owner*; and Hunsel, *Secretary*. None of these individuals hold an insurance producer license in Washington. Durbin was previously licensed as a producer in Washington (WAOIC No. 255411). In October 2015, SHA registered with the Missouri Secretary of State as a limited liability company.

5.     SHA is not licensed as an insurance producer in Washington or any other state. SHA is not registered with the Washington Secretary of State. SHA registered with the Washington Department of Revenue in February 2018 with the business designation of "insurance agencies and brokerages."

6.     ASH refers to SHA as its "vendor consultant." ASH and SHA entered a vendor consulting agreement, effective January 1, 2019. ASH explained to Investigations that SHA "offers non-insurance solutions to help strengthen the ASH sharing programs" including "Rx Advocacy for high cost maintenance medications… 24/7/365 Telemedicine… Virtual Primary Care… National Lab Program… Discount Rx Card… Provider Discounts… Member Support Services…"

7.     The Office of the Insurance Commissioner opened an investigation to determine if 1) ASH meets the statutory definition of a Health Care Sharing Ministry ("HCSM") under Washington law and Federal law and 2) if ASH is not a bona fide HCSM, whether ASH is acting as an unauthorized insurer in Washington.

8.     ASH represents itself as a HCSM. HCSMs are exempt from the Affordable Care Act ("ACA") individual mandate.

ORDER TO CEASE AND DESIST
ORDER NO. 20-0335

LA - 1602799 - 1

2

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA 98504-0255

Resp. Appx, p. 446

Ex. 1.57, p. 2 of 9

Appx. Vol XIII
A-590

*ASH does not meet the legal definition of a HCSM.*

9.     To qualify as a health care sharing ministry under the IRS and Washington law, a HCSM must be a 501(c)(3) organization whose members share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs. A HCSM must also have been in operation and continuously sharing member health care costs since at least December 31, 1999.

10.    ASH has not been in operation and continuously sharing health care costs since 1999.

11.    ASH acknowledges that it does not meet the statutory requirements for an HCSM because it was not incorporated until June 2017.

12.    ASH stated to Investigations: "[ASH] was not originally formed, nor does it warrant that it meets the original ACA grandfathering clause to qualify its members for the exemption to the individual mandate under federal law." ASH provided the following explanation:

> While ASH was originally formed in 2017, Hurricane Irma delayed the initial roll-out. As mentioned above, ASH as a health share solution was designed to help meet needs that the other health share programs were not/are not meeting - and do so without pre-existing condition limitations. However, participation in ASH was not available until 2019. There was no intention to introduce ASH until such time as the Federal Mandate was not being enforced - which began in January 2019. ASH did not want any participant to think that ASH alone met the ACA individual mandate. When the mandate was removed (or at least it was announced that the mandate would not be enforced at the Federal level beginning in 2019), ASH felt comfortable offering participation per the approval of the IRS as a bona fide 501(c)(3).

13.    During the course of the investigation of ASH, Investigations conducted a review of ASH's website.

14.    As of May 29, 2019, ASH's "About Us" webpage stated the following:

> Alliance for Shared Health was formed to provide "health sharing" access to Americans of any faith persuasion. When Americans come together to meet challenges, there is little we can't accomplish together… Alliance for Shared Health is a non-profit health sharing community that seeks to provide a way for its members to access specific medical needs outside of expensive, traditional health insurance. All members must agree with and attest to the statement of standards developed by the Board of ASH…

15.    Additionally, ASH listed the following statement of standards:

> I believe that traditional health care does not work for me anymore, and want to be a part of a moral, ethical and health-conscious community of people that shares in medical needs under the ASH Guidelines

ORDER TO CEASE AND DESIST
ORDER NO. 20-0335
LA - 1602799 - 1

3

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

Resp. Appx. p. 447

Ex. 1.57, p. 3 of 9

Appx. Vol XIII
A-591

I affirm that I understand ASH is not an insurance company but rather a non-profit benevolence organization. ASH members have committed to paying a monthly contribution in order to help share in medical expenses under the guidelines.

I do understand that ASH is not a guarantee of payment, but that ASH intends to share in the medical needs per the ASH guidelines and the sharing level selected by me.

I desire to live a healthy lifestyle and make good health decisions to be positive member of the ASH community.

I agree to refrain from the usage of any form of illegal substances and that if I do engage in use of these, any medical needs caused by or related to such shall not be eligible for sharing.

I agree to submit to mediation followed by arbitration, if needed, should a dispute arise with ASH or its affiliates. <u>As such, I understand that ASH is not an insurance company and will not file any complaints with my state insurance department if I have a dispute on a medical need.</u>

I agree that whether or not I sign and submit this form, submitting my application for membership in ASH is equivalent to attesting to this statement of beliefs.

(Emphasis added.) Since the Insurance Commissioner's investigation, ASH has made changes to its website and statement of standards.

*ASH is acting as an unauthorized insurer in the state of Washington.*

16.    Because ASH is not qualified as a HCSM, it is acting as an unauthorized insurer. ASH has denied acting as an unauthorized insurer. ASH asserts it has never intended to operate as an insurer and stated it includes "all appropriate disclaimers and notifications on its materials including its website, enrollment portal, sharing guidelines, and member identification cards." ASH further asserts it is operating similarly to other health sharing entities, which are not considered insurers under state or federal law.

17.    In ASH's response to Investigation, it states:

[ASH] helps its members access preventive care (the same preventive care codes that the Affordable Care Act ("ACA") mandate included), as well as virtual primary care - including the diagnosis and treatment of over 1,500 conditions - all at one member responsibility amount per episode of care – again with no pre-existing condition limitations and shareable at 100%.

18.    ASH's member guidelines discuss benefit levels as "plans" and require a set monthly contribution to maintain membership. One of ASH's member guidelines discusses four "Sharing Level" plans: Allied Basic, Allied Visit, Allied Core, and Allied Max. ASH's guidelines

ORDER TO CEASE AND DESIST
ORDER NO. 20-0335

LA - 1602799 - 1

4

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

state: "Make your choice wisely, because different programs offer different levels of health cost sharing support."

19.    In describing the four plans, discussed above, ASH explains:

ASH shares 100 percent of bills for any medical incident exceeding the MRA (Member Responsibility Amount) as long as all other Guidelines are met and funds are available for sharing up to the agreed upon Referenced Based-Pricing Allowances for that service as agreed upon by the ASH Community. Any medical expense less than the MRA per incident is the member's responsibility.

20.    One of ASH's guidelines includes a table which shows what medical care and services are covered by each of the four plans, such as "Preventive Care", "Doctor Access", "Virtual Primary Care", "PCP Visits", "Outpatient Lab", "Daily Hospital Allowance", and "Prescription Drugs…Tier 1… Tier 2…Tier 3… Specialty Drugs".

21.    Another one of ASH's guidelines discusses three other plans: "SHA Premier", "SHA Preventative", and "SHA Scripts". The guidelines include a table which shows what medical care and services are covered by each of the three plans, such as "Preventive Care", "Doctor Access", "Telemedicine", "Virtual Primary Care", "PCP Visits", "Specialist", "Urgent Care", "Diagnostic X-Ray and Lab", "Cat-Scan/MRI", "Outpatient Testing", and "Prescription Drugs…Tier 1…Tier 2…Tier 3…Specialty Drugs". The guidelines of these plans also include tables regarding coverage for "Preventive Care Services" and "Preventive Immunizations".

22.    Other plans provided by ASH include similar member guidelines and tables as to the ones discussed.

23.    ASH also sells plans to Washington members that provide members with access to a network of providers, called "First Health." ASH provides members with "access to providers in the First Health network – A national PPO network, with more than 5,000 hospitals, over 90,000 ancillary facilities and over 1 million health care professional service locations." According to ASH, "access is wide-ranging – more than 96 percent of people in the United States are within 20 miles of a network provider." ASH's member guidelines discuss First Health, as well as include information about First Health's provider locator assistance toll-free number and First Health's provider locator website.

24.    ASH provided a spreadsheet to Investigations showing ASH sold a variety of plans to Washington consumers. ASH sold twelve (12) different plans to a total of 1,411 Washington consumers and collected $237,188.27.

ORDER TO CEASE AND DESIST
ORDER NO. 20-0335

LA - 1602799 - 1

5

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA 98504-0255

Resp. Appx. p. 449

Ex. 1.57, p. 5 of 9

Appx. Vol XIII
A-593

25.     RCW 48.01.040 states that "insurance" is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.

26.     RCW 48.01.050 states in relevant part that "insurer" as used in this code includes every person engaged in the business of making contracts of insurance.

27.     RCW 48.01.060 defines insurance transaction as including any solicitation, negotiations preliminary to execution, execution of an insurance contract, transaction of matter subsequent to execution of the contract and arising out of it, and insuring.

28.     RCW 48.43.009 provides that health care sharing ministries are not health carriers as defined in RCW 48.43.005 or insurers as defined in RCW 48.01.050. For purposes of this section, "health care sharing ministry" has the same meaning as in 26 U.S.C. Sec. 5000A.

29.     26 U.S.C. Sec. 5000A states the term "health care sharing ministry" means an organization—

(I) which is described in section 501(c)(3) and is exempt from taxation under section 501(a),

(II) members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides or is employed,

(III) members of which retain membership even after they develop a medical condition,

(IV) which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999, and

(V) which conducts an annual audit which is performed by an independent certified public accounting firm in accordance with generally accepted accounting principles and which is made available to the public upon request.

30.     RCW 48.05.030(1) states no person shall act as an insurer and no insurer shall transact insurance in this state other than as authorized by a certificate of authority issued to it by the Insurance Commissioner and then in force; except as to such transactions as are expressly otherwise provided for in this code.

31.     RCW 48.44.015(1) provides that a person may not in this state, by mail or otherwise, act as or hold himself or herself out to be a health care service contractor, as defined in RCW 48.44.010 without first being registered with the Insurance Commissioner.

32.     RCW 48.44.180 states for the purposes of this chapter, the Insurance Commissioner shall have the same powers and duties of enforcement as are provided in RCW 48.02.080.

ORDER TO CEASE AND DESIST
ORDER NO. 20-0335

LA - 1602799 - 1

6

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

33.     RCW 48.15.020(1) states that an insurer that is not authorized by the Insurance Commissioner may not solicit or transact insurance business in this state.

34.     RCW 48.15.023(5)(a)(i) states that if the Insurance Commissioner has cause to believe that any person has violated the provisions of RCW 48.15.020(1), the Insurance Commissioner may issue and enforce a cease and desist order in accordance with the provisions of RCW 48.02.080.

35.     RCW 48.44.016(5)(a)(i) states if the Insurance Commissioner has cause to believe that any person has violated the provisions of RCW 48.44.015(1), the Insurance Commissioner may Issue and enforce a cease and desist order in accordance with the provisions of RCW 48.02.080.

36.     RCW 48.02.080(3)(a) states if the Insurance Commissioner has cause to believe that any person is violating or is about to violate any provision of this code or any regulation or order of the Insurance Commissioner, he or she may issue a cease and desist order.

37.     The Respondent's actions described herein violate Insurance Code provisions that include RCW 48.05.030(1) [Certificate of Authority required], RCW 48.15.020(1) [solicitation by insurer not authorized prohibited] and RCW 48.44.015(1) [registration by health care service contractor required].

**IT IS FURTHER ORDERED** that nothing herein shall prevent the Respondent from fulfilling the terms of contracts formed prior to the effective date of this Order pursuant to RCW 48.15.020(2)(b).

Any violation of the terms of this Order by the Respondent and its officers, directors, trustees, employees, agents, and affiliates or the Respondent's failure to fulfill or perform its contracts subject to this Order will render the violator(s) subject to the full penalties authorized by RCW 48.02.080, RCW 48.15.023, RCW 48.44.016 and other applicable sections of the Insurance Code of the state of Washington.

The Respondent has the right to demand a hearing in accordance with RCW 48.04.010, WAC 284-02-070, and WAC 10-08-110.

ORDER TO CEASE AND DESIST
ORDER NO. 20-0335
LA - 1602799 - 1

7

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

Resp. Appx. p. 451

Ex. 1.57, p. 7 of 9

Appx. Vol XIII
A-595

This Order shall remain in effect subject to the further order of the Insurance Commissioner.

**THIS ORDER IS EFFECTIVE IMMEDIATELY AND IS ENTERED** at Tumwater, Washington, this ___22___ day of ___April_____, 2020.


MIKE KREIDLER
Insurance Commissioner

By and through his designee


SOFIA PASAROW
Insurance Enforcement Specialist
Legal Affairs Division


ORDER TO CEASE AND DESIST
ORDER NO. 20-0335

LA - 1602799 - 1

8

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

## CERTIFICATE OF MAILING

The undersigned certifies under the penalty of perjury under the laws of the state of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the state of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served the foregoing Order to Cease and Desist on the following individual(s) in the manner listed below:

*By email and by depositing in the U.S. mail via state Consolidated Mail Service with proper postage affixed to*:

Alliance for Shared Health, Inc.
7600 Bolongo Bay
St. Thomas, VI  00802

John Lewis
*Registered agent for Alliance for Shared Health, Inc.*
3155 Sutton Blvd, Ste 201
Saint Louis, MO  63143

*Courtesy copy to:*
Kyle Gilster
Attorney at Law
750 17th St NW, Ste 900
Washington, DC  20006
kyle.gilster@huschblackwell.com

Dated this 23rd day of April , 2020, in Tumwater, Washington.

KIMBERLY SHOBLOM
Paralegal
Legal Affairs Division

ORDER TO CEASE AND DESIST
ORDER NO. 20-0335

LA - 1602799 - 1

9

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

## STATE OF WASHINGTON
## OFFICE OF THE INSURANCE COMMISSIONER

*In the Matter of*

**ONESHARE HEALTH, LLC,**

Unauthorized Entity/
Respondent.

Order No.    20-0250

ORDER TO CEASE AND DESIST

Pursuant to RCW 48.02.080 and RCW 48.15.023, the Insurance Commissioner of the state of Washington ("Insurance Commissioner") orders the above-named Respondent, and its officers, directors, trustees, employees, agents, and affiliates to immediately cease and desist from:

A.  Acting as an insurer in the state of Washington;

B.  Engaging in or transacting the unauthorized business of insurance in the state of Washington;

C.  Seeking, pursuing, and obtaining any insurance business in the state of Washington;

D.  Soliciting Washington residents to purchase any insurance to be issued by an unauthorized insurer; and

E.  Soliciting Washington residents to induce them to purchase any insurance contract.

**BASIS:**

1.      The parent of OneShare Health, LLC, Anabaptist Healthshare, Inc., incorporated on May 26, 2015 in Virginia; on August 31, 2018, it amended its name to Kingdom Healthshare International; and on March 12, 2019, it amended its name to OneShare International (hereinafter referred to as "the Organization"). On April 9, 2019, the Organization registered Anabaptist

ORDER TO CEASE AND DESIST
ORDER NO. 20-0250

LA - 1602460 - 1

1

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

EXHIBIT
**1.58**

Ex. 1.58, p. 1 of 6

Resp. Appx. p. 454

**Appx. Vol XIII
A-598**

Healthshare as a d.b.a. The Organization represents itself as a health care sharing ministry ("HCSM"), exempt from insurance regulation. It does not have members in Washington State.

2.      On November 10, 2016, the Organization formed a wholly owned subsidiary, Unity Healthshare, LLC; on August 27, 2018, it amended its name to Kingdom Healthshare Ministries, LLC; and on March 11, 2019, it amended its name to OneShare Health, LLC ("OneShare"). OneShare is incorporated in Virginia and headquartered in Texas. OneShare represents itself as a HCSM, exempt from insurance regulation. It has members in Washington State and it does not hold a Certificate of Authority in this state.

3.      There is pending litigation in Fulton County Superior Court (Georgia) between OneShare and Aliera Healthcare, Inc. ("Aliera"), regarding Aliera's marketing of OneShare's insurance products. Aliera is also the subject of an enforcement action by the Insurance Commissioner.

4.      Following a referral from its producer licensing division, the Insurance Commissioner opened an inquiry to determine 1) if OneShare is a legitimate HCSM in compliance with state and federal law, and 2) if it is not a bona fide HCSM, whether it is acting as an unauthorized insurer in Washington State.

_OneShare does not meet the legal definition of a health care sharing ministry._

5.      To qualify as a health care sharing ministry under Internal Revenue Service (IRS) and Washington law, a HCSM must be a 501(c)(3) organization whose members share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs. In addition, the organization (or its predecessor) must also have been in operation and continuously sharing member health care costs since at least December 31, 1999.

6.      OneShare has not been in operation and continuously sharing amongst members since 1999. To meet this requirement, OneShare relies entirely on a letter, dated July 14, 2015, from the Department of Health & Human Services ("DHHS"), approving the Organization as a HCSM. However, there are several problems with OneShare's reliance on this letter: (1) the Organization serves a different religious community than OneShare serves, (2) the letter from DHHS contains a disclaimer that it is not binding on state authorities, (3) the Organization has not been in operation since 1999, and (4) the Organization is not OneShare's "predecessor."

ORDER TO CEASE AND DESIST                        2                 State of Washington
ORDER NO. 20-0250                                                  Office of Insurance Commissioner
                                                                   PO Box 40255
LA - 1602460 - 1                                                   Olympia, WA  98504-0255

7.      OneShare explained that the Organization and OneShare serve different communities. The Organization's membership focuses on members of the traditional Anabaptist church or those who work for Anabaptist ministries or employers. The Organization does not have and has never had any Washington members. On the other hand, OneShare members are not required to be practicing Anabaptists or among those who work for Anabaptist ministries. Instead, each member must attest to OneShare's Statement of Beliefs which is founded on Biblical principles. OneShare explained that creating OneShare allowed a larger community to take advantage of healthcare sharing services in accordance with their faith. This distinction in beliefs between the two sets of members runs contrary to the continuous sharing requirement for HCSMs.

8.      OneShare denies that it is a separate legal entity from the Organization and points out that, for tax purposes, it is not treated as a separate legal entity. In support, it provided an IRS Announcement which states that an LLC, if wholly-owned by an organization exempt under section 501(c)(3) of the Internal Revenue Code, may be disregarded as a separate entity for federal tax purposes. However, members were signed up with OneShare as their insurer, not the Organization. Further, and most importantly, the Insurance Commissioner is not bound by the IRS's tax treatment of OneShare.

9.      Additionally, in order to qualify as an HCSM, an entity must conduct an annual audit performed by an independent certified public accounting firm. OneShare failed to meet this requirement. OneShare provided the Insurance Commissioner with an audit of the Organization for year ending December 31, 2016. The audit report is dated September 20, 2019. On this basis alone, OneShare fails to qualify as an HCSM.

*OneShare is acting as an unauthorized insurer in the state of Washington.*

10.      Because OneShare is not qualified as a HCSM, it is acting as an unauthorized insurer. OneShare asserts throughout its website and written materials that it is not insurance, does not guarantee payment of medical expenses, and does not enter into contracts with members. However, based on those same materials, the members pay a monthly fee and, in return, OneShare pays providers for covered services upon the members getting sick or injured. This qualifies as insurance.

11.      At the time OneShare terminated its contract with Aliera on August 10, 2018, OneShare had approximately 2,900 Washington members. Since then, 1,470 Washington residents

ORDER TO CEASE AND DESIST
ORDER NO. 20-0250

LA - 1602460 - 1

3

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

Ex. 1.58, p. 3 of 6

Resp. Appx. p. 456

Appx. Vol XIII
A-600

have been OneShare members, with a current total of 1,091 Washington members. Members from Washington have paid OneShare a total of $1,239,328.15 to date.

12. Based on their website, OneShare continues to offer Washington consumers insurance.

13. RCW 48.01.040 states that "insurance" is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.

14. RCW 48.01.050 states in relevant part that "insurer" as used in this code includes every person engaged in the business of making contracts of insurance.

15. RCW 48.43.009 provides that health care sharing ministries are not health carriers as defined in RCW 48.43.005 or insurers as defined in RCW 48.01.050. For purposes of this section, "health care sharing ministry" has the same meaning as in 26 U.S.C. Sec. 5000A.

16. 26 U.S.C. Sec. 5000A states the term "health care sharing ministry" means an organization—

(I) which is described in section 501(c)(3) and is exempt from taxation under section 501(a),

(II) members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides or is employed,

(III) members of which retain membership even after they develop a medical condition,

(IV) which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999, and

(V) which conducts an annual audit which is performed by an independent certified public accounting firm in accordance with generally accepted accounting principles and which is made available to the public upon request.

17. RCW 48.05.030(1) states no person shall act as an insurer and no insurer shall transact insurance in this state other than as authorized by a certificate of authority issued to it by the Insurance Commissioner and then in force; except, as to such transactions as are expressly otherwise provided for in this code.

18. RCW 48.15.020(1) states that an insurer that is not authorized by the Insurance Commissioner may not solicit or transact insurance business in this state.

19. RCW 48.15.023(5)(a)(i) states that if the Insurance Commissioner has cause to believe that any person has violated the provisions of RCW 48.15.020(1), the Insurance

ORDER TO CEASE AND DESIST
ORDER NO. 20-0250

4

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA 98504-0255

LA - 1602460 - 1

Commissioner may issue and enforce a cease and desist order in accordance with the provisions of RCW 48.02.080.

20.     RCW 48.02.080(3)(a) states if the Insurance Commissioner has cause to believe that any person is violating or is about to violate any provision of this code or any regulation or order of the Insurance Commissioner, he or she may issue a cease and desist order.

21.     The Respondent's actions described herein violate Insurance Code provisions that include RCW 48.05.030(1) [Certificate of Authority required] and RCW 48.15.020(1) [solicitation by insurer not authorized prohibited].

**IT IS FURTHER ORDERED** that nothing herein shall prevent the Respondent from fulfilling the terms of contracts formed prior to the effective date of this Order pursuant to RCW 48.15.020(2)(b).

Any violation of the terms of this Order by the Respondent and its officers, directors, trustees, employees, agents, and affiliates or the Respondent's failure to fulfill or perform its contracts subject to this Order will render the violator(s) subject to the full penalties authorized by RCW 48.02.080, RCW 48.15.023, and other applicable sections of the Insurance Code of the state of Washington.

The Respondent has the right to demand a hearing in accordance with RCW 48.04.010, WAC 284-02-070, and WAC 10-08-110.

This Order shall remain in effect subject to the further order of the Insurance Commissioner.

**THIS ORDER IS EFFECTIVE IMMEDIATELY AND IS ENTERED** at Tumwater, Washington, this _31_ day of _March_, 2020.

MIKE KREIDLER
Insurance Commissioner

By and through his designee

ELLEN RANGE
Insurance Enforcement Specialist
Legal Affairs Division

ORDER TO CEASE AND DESIST                    5          State of Washington
ORDER NO. 20-0250                                      Office of Insurance Commissioner
                                                        PO Box 40255
LA - 1602460 - 1                                        Olympia, WA  98504-0255

## CERTIFICATE OF MAILING

The undersigned certifies under the penalty of perjury under the laws of the state of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the state of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served the foregoing Order to Cease and Desist on the following individual(s) in the manner listed below:

*By email and by depositing in the U.S. mail via state Consolidated Mail Service with proper postage affixed to*:

Tyler Hochstetler
2452 S. Seminole Trail
Madison, VA 22727
*Registered Agent for OneShare Health, LLC*

*Courtesy copy to:*
Kyle G.A. Wallace
Attorney at Law
Alston & Bird
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Kyle.wallace@alston.com
*Attorney for OneShare Health, LLC*

Dated this  31st  day of  March , 2020, in Tumwater, Washington.

DAWN KRECH
Paralegal
Legal Affairs Division

ORDER TO CEASE AND DESIST
ORDER NO. 20-0250

LA - 1602460 - 1

6

State of Washington
Office of Insurance Commissioner
PO Box 40255
Olympia, WA 98504-0255

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

**STATE OF WASHINGTON**
**OFFICE OF THE INSURANCE COMMISSIONER**

| | |
|---|---|
| *In the Matter of* | Order No.        24-0093 |
| **UNITE HEALTH SHARE MINISTRIES, INC.,** | ORDER TO CEASE AND DESIST AND ORDER IMPOSING FINE, ASSESSING PREMIUM TAX & PENALTIES |
| Unauthorized Insurer/Respondent. | |

This Order to Cease and Desist and Imposing Fine, Assessing Unpaid Premium Tax, and Penalties ("Order") is entered into by the Insurance Commissioner of the state of Washington ("Insurance Commissioner") acting pursuant to the authority set forth in RCW 48.02.080, RCW 48.14.020, RCW 48.14.060, RCW 48.14.095, and RCW 48.15.023.

**BASIS:**

1.      Unite Health Share Ministries, Inc. ("UHSM") is a Virginia-domiciled nonprofit corporation, incorporated on August 27, 2019. UHSM is not registered with the Washington Secretary of State. Under Virginia's Corporation Commission Clerk's Information Search for business entities, UHSM has two names: UHSM and Unite Health Share Ministries.

2.      UHSM does not hold a Certificate of Authority to act as an insurer in Washington. UHSM represents itself as a health care sharing ministry ("HCSM") exempt from insurance regulation. UHSM offers for sale and administers a health care sharing program called WeShare. UHSM defines WeShare as "an affordable alternative to health insurance that is operated through monthly contributions, which are distributed to people who need help paying their medical bills."

3.      On June 22, 2020, UHSM merged with the Eastern Kumran Korean Methodist Church ("EKKMC"). EKKMC had been in operation since 1998. UHSM is the surviving entity.

| | | |
|---|---|---|
| ORDER TO CEASE AND DESIST AND ORDER IMPOSING FINE, ASSESSING PREMIUM TAX & PENALTIES ORDER NO. 24-0093 | 1 | State of Washington Office of the Insurance Commissioner PO Box 40255 Olympia, WA  98504-0255 |
| LA –1683896– 1 | | |

**EXHIBIT**
**1.59**
Ex. 1.59, p. 1 of 9

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

The Articles of Merger of EKKMC and UHSM include language that states the "memberships of EKKMS members shall be cancelled and shall not be converted into any other property."

4.      The documents provided by EKKMC to the OIC from before 2020 included ledgers that outlined donations from members. The amounts varied week-to-week and were often noted as donations for various holidays. There is no indication in the documentation provided by EKKMC or UHSM that the donors were sharing funds for medical expenses. The documents also included expense itemizations and receipts, which showed payments for a wide variety of items, including tires, food, insurance, rent, printer toner, etc. There is no documentation indicating the donations were meant for or used for shared medical expenses but were rather regular church donations that the church used at its discretion.

5.      The Office of the Insurance Commissioner ("OIC") opened an investigation after receiving a complaint from a consumer ("Complainant"), stating UHSM denied payment of their medical bills. The Complainant reported UHSM paid only $5,000, leaving them with almost $200,000 in unpaid bills, after a serious illness.

6.      When a member needs medical care under a UHSM plan, medical expenses are submitted by the member's provider to UHSM. That medical expense is then assigned to be paid from the "shared dollars" accumulated through the member's monthly contributions. The OIC found that when a "sharing request" is approved, UHSM pays members' medical bills per the membership contract. If the member has one of the eligible conditions, UHSM will pay the specified amounts. For example, in one of their plan options, annual wellness and preventive Care is 100% "shared," meaning that UHSM will reimburse or pay for a patient's annual check-up, and doctor visits are $20 for PCP and $40 for specialists.

7.      In its membership guide, UHSM states that it "may decline Applicants from becoming Sharing Members if they present Pre-Existing Conditions, since such immediate expenses could create a strain on the ability to provide sharing for current Sharing Members." Further, any medical condition for which the consumer has been diagnosed, shown symptoms, been examined and/or received treatment prior to becoming an active Sharing Member of UHSM – whether known to you or not – is considered a pre-existing condition and not eligible for sharing during the first 24 months of continuous membership. UHSM requires three years of continuous membership (36 months) before members have "no limit on pre-existing conditions."

ORDER TO CEASE AND DESIST AND
ORDER IMPOSING FINE, ASSESSING
PREMIUM TAX & PENALTIES
ORDER NO. 24-0093

2

State of Washington
Office of the Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

LA –1683896– 1

Resp. Appx, p. 461

Ex. 1.59, p. 2 of 9

Appx. Vol XIII
A-605

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

8.      UHSM has levels of Care Sharing with share limits from $5,000 to $50,000 for a primary member with qualifying illnesses such as stroke, heart attack, aggressive cancer, kidney failure, major organ transplants.

9.      UHSM also states that during the first twenty-four (24) months of continuous membership, Maternity sharing is limited to $5,000 and pre-existing conditions are ineligible.

10.     UHSM provides coverage for maternity care but fails to provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy. UHSM's membership guide states that any medical need(s), those of which are caused by lifestyles, choices, or activities which are in conflict with the Statement of Shared Beliefs; these medical need(s) are ineligible for sharing. They list Abortion or abortion counseling, illness arising from tobacco use, drug screening and nicotine testing, STD/STI, illness or injury due to alcohol as examples of such a medical need that is ineligible for sharing because of its status as an activity which is "in conflict with the Statement of Shared Beliefs."

11.     As of July 2023, at least 323 Washington consumers accepted UHSM's offers by enrolling in the membership and paying membership fees. From 2019 – 2022, Washington consumers have paid UHSM $2,919,125.19 in monthly contributions.

12.     On September 22, 2023, UHSM provided the OIC with audits for the years 2019 and 2021. OIC has requested, but UHSM has not provided OIC with audits from 2020 or 2022.

13.     RCW 48.43.009 states that health care sharing ministries are not health carriers as defined in RCW 48.43.005 or insurers as defined in RCW 48.01.050, and that for purposes of that section, "health care sharing ministry" has the same meaning as in 26 U.S.C. Sec. 5000A.

14.     26 U.S.C. Sec. 5000A states the term "health care sharing ministry" means an organization (I) which is described in section 501(c)(3) and is exempt from taxation under section 501(a), (II) members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides or is employed, (III) members of which retain membership even after they develop a medical condition, (IV) which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999, and (V) which conducts an annual audit which is performed by an independent certified public accounting firm in

ORDER TO CEASE AND DESIST AND
ORDER IMPOSING FINE, ASSESSING
PREMIUM TAX & PENALTIES
ORDER NO. 24-0093

3

State of Washington
Office of the Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

LA –1683896– 1

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

accordance with generally accepted accounting principles and which is made available to the public upon request.

15.     RCW 48.01.030 states the business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.

16.     RCW 48.01.040 states that "insurance" is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.

17.     RCW 48.01.050 states in relevant part that "insurer" as used in this code includes every person engaged in the business of making contracts of insurance.

18.     RCW 48.02.080(3)(a) provides if the Insurance Commissioner has cause to believe that any person is violating or is about to violate any provision of this code or any regulation or order of the Insurance Commissioner, he or she may issue a cease and desist order.

19.     RCW 48.05.030(1) provides no person shall act as an insurer and no insurer shall transact insurance in this state other than as authorized by a certificate of authority issued to it by the Insurance Commissioner and then in force; except, as to such transactions as are expressly otherwise provided for in this code.

20.     RCW 48.15.020(1) states an insurer that is not authorized by the Insurance Commissioner may not solicit or transact insurance business in this state.

21.     RCW 48.15.023(2) states for the purpose of this section, an act is committed in this state if it is committed, in whole or in part, in the state of Washington, or affects persons or property within the state and relates to or involves an insurance contract.

22.     RCW 48.15.023(5)(a) states if the Insurance Commissioner has cause to believe that any person has violated the provisions of RCW 48.15.020(1), the Insurance Commissioner may:

  (i) Issue and enforce a cease and desist order in accordance with the provisions of RCW 48.02.080; and/or

  (ii) Assess a civil penalty of not more than twenty-five thousand dollars for each violation, after providing notice and an opportunity for a hearing in accordance with chapters 34.05 and 48.04 RCW.

ORDER TO CEASE AND DESIST AND                    4          State of Washington
ORDER IMPOSING FINE, ASSESSING                              Office of the Insurance Commissioner
PREMIUM TAX & PENALTIES                                     PO Box 40255
ORDER NO. 24-0093                                          Olympia, WA  98504-0255

LA –1683896– 1

Resp. Appx. p. 463                                         Ex. 1.59, p. 4 of 9

Appx. Vol XIII
A-607

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

23.     RCW 48.14.020(1) states [s]ubject to other provisions of this chapter, each authorized insurer except title insurers and registered eligible captive insurers as defined in  RCW 48.201.020 shall on or before the first day of March of each year pay to the state treasurer through the commissioner's office a tax on premiums. Except as provided in subsection (3) of this section, such tax shall be in the amount of two percent of all premiums, excluding amounts returned to or the amount of reductions in premiums allowed to holders of industrial life policies for payment of premiums directly to an office of the insurer, collected or received by the insurer under RCW 48.14.090 during the preceding calendar year other than ocean marine and foreign trade insurances, after deducting premiums paid to policyholders as returned premiums, upon risks or property resident, situated, or to be performed in this state. For tax purposes, the reporting of premiums shall be on a written basis or on a paid-for basis consistent with the basis required by the annual statement. For the purposes of this section the consideration received by an insurer for the granting of an annuity shall not be deemed to be a premium.

24.     RCW 48.14.060(1) states any insurer or taxpayer, as defined in RCW 48.14.0201, failing to file its tax statement and to pay the specified tax or prepayment of tax on premiums and prepayments for health care services by the last day of the month in which the tax becomes due shall be assessed a penalty of five percent of the amount of the tax; and if the tax is not paid within forty-five days after the due date, the insurer will be assessed a total penalty of ten percent of the amount of the tax; and if the tax is not paid within sixty days of the due date, the insurer will be assessed a total penalty of twenty percent of the amount of the tax. The tax may be collected by distraint, and the penalty recovered by any action instituted by the Insurance Commissioner in any court of competent jurisdiction. The amount of any penalty collected must be paid to the state treasurer and credited to the general fund.

25.     RCW 48.14.060(2) states [i]n addition to the penalties set forth in subsection (1) of this section, interest will accrue on the amount of the unpaid tax or prepayment at the maximum legal rate of interest permitted under RCW 19.52.020 commencing sixty-one days after the tax is due until paid. This interest will not accrue on taxes imposed under RCW 48.15.120.

26.     RCW 48.14.095(1) states this section applies to any insurer or taxpayer, as defined in RCW 48.14.0201, violating, or failing to comply with RCW 48.05.030(1), 48.17.060, 48.36A.290(1), 48.44.015(1), or 48.46.027(1).

| | | |
|---|---|---|
| ORDER TO CEASE AND DESIST AND | 5 | State of Washington |
| ORDER IMPOSING FINE, ASSESSING | | Office of the Insurance Commissioner |
| PREMIUM TAX & PENALTIES | | PO Box 40255 |
| ORDER NO. 24-0093 | | Olympia, WA  98504-0255 |

LA –1683896– 1

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

27.    RCW 48.43.009 provides health care sharing ministries are not health carriers as defined in RCW 48.43.005 or insurers as defined in RCW 48.01.050. For purposes of this section, "health care sharing ministry" has the same meaning as in 26 U.S.C. Sec. 5000A.

28.    RCW 48.43.012(2) states no carrier may deny, exclude, or otherwise limit coverage for an individual's preexisting health conditions including, but not limited to, preexisting condition exclusions or waiting periods.

29.    RCW 48.43.073(1)(a) provides that, except as provided in subsection (5) of this section, if a health plan issued or renewed on or after January 1, 2019, provides coverage for maternity care or services, the health plan must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy.

30.    By transacting insurance in this state without a Certificate of Authority, the Respondent violated RCW 48.05.030(1) and RCW 48.15.020(1), justifying the issuance of a cease and desist order under RCW 48.02.080(3)(a) and RCW 48.15.023(5)(a). The Respondent also violated RCW 48.43.012(2) and RCW 48.43.073(1)(a) by selling and administering a sharing program that limits coverage for pre-existing conditions and excludes state-mandated abortion services, respectively. Further, the violations which are the subject of this Order justify the imposition of a fine under RCW 48.15.023(5)(a)(ii), and the assessment of premium tax, tax interest, and tax penalties under RCW 48.14.020, RCW 48.14.060, and RCW 48.14.095. Upon failure to pay a civil penalty when due, the Attorney General may bring a civil action on behalf of the Insurance Commissioner to recover the unpaid penalty.

## ORDER TO CEASE AND DESIST

Pursuant to RCW 48.02.080(3)(a) and RCW 48.15.023(5)(a), the Insurance Commissioner of the state of Washington ("Insurance Commissioner") orders the above-named Respondent, and its officers, directors, trustees, employees, agents, and affiliates to immediately cease and desist from:

A. Engaging in or transacting the unauthorized business of insurance in the state of Washington without a certificate of authority issued to Respondent by the Insurance Commissioner.
B. Seeking, pursuing, and obtaining any insurance business in the state of Washington without authorization by the Insurance Commissioner.

ORDER TO CEASE AND DESIST AND                    6              State of Washington
ORDER IMPOSING FINE, ASSESSING                               Office of the Insurance Commissioner
PREMIUM TAX & PENALTIES                                      PO Box 40255
ORDER NO. 24-0093                                            Olympia, WA  98504-0255

LA –1683896– 1

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

C.  Soliciting Washington residents to purchase any insurance to be issued by an unauthorized insurer; and

D.  Soliciting Washington residents to induce them to purchase any insurance contract.

This Order to Cease and Desist is effective immediately and will remain in effect subject to further order of the Insurance Commissioner and Respondent's right to demand a hearing, as set forth below.

**IT IS FURTHER ORDERED** that nothing herein shall prevent the Respondent from fulfilling the terms of contracts formed prior to the effective date of this Order pursuant to RCW 48.15.020(2)(b).

Any violation of the terms of this Order to Cease and Desist by Respondent or its officers, directors, trustees, employees, agents, and affiliates or the Respondent's failure to fulfill or perform its contracts subject to this Order will render the violator(s) subject to the full penalties authorized by RCW 48.02.080, RCW 48.14.060, RCW 48.15.023, and other applicable sections of the Insurance Code of the state of Washington.

## ORDER IMPOSING A FINE

In accordance with RCW 48.15.023(5)(a) and based upon the above Order Basis, the Insurance Commissioner orders that Respondents must pay a fine in the amount of Three Hundred Thousand Dollars ($300,000.00), for violating the Washington insurance laws as described above.

In accordance with RCW 48.14.020, RCW 48.14.060, and RCW 48.14.095, and based upon the above Basis, the Insurance Commissioner hereby orders that the Respondent must pay the two percent (2%) premium tax owed to the Office of the Insurance Commissioner on the amount it collected in premium from Washington consumers during the tax year 2019 to 2021, plus the twenty percent (20%) penalty on the total amount of past due taxes, plus twelve percent (12%) simple interest on the total amount of past due taxes. The total balance due is $74,999.00.

The fine, premium tax, tax interest, and tax penalty must be paid within 30 days of the date this order becomes final. This order becomes final if no hearing is demanded within 90 days of receipt of this Order, as set forth below. In the alternative, this Order becomes final if a final order upholding the fine is issued after hearing.

| | | |
|---|---|---|
| ORDER TO CEASE AND DESIST AND | 7 | State of Washington |
| ORDER IMPOSING FINE, ASSESSING | | Office of the Insurance Commissioner |
| PREMIUM TAX & PENALTIES | | PO Box 40255 |
| ORDER NO. 24-0093 | | Olympia, WA  98504-0255 |

LA –1683896– 1

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

## NOTICE OF OPPORTUNITY FOR HEARING

Respondent has the right to demand a hearing in accordance with RCW 48.04.010, WAC 284-02-070, and WAC 10-08-110. Respondent has 90 days from the receipt of this Order to demand a hearing. **If the Insurance Commissioner does not receive a hearing demand from Respondent within 90 days from the date Respondent received this Order, Respondent's right to a hearing is conclusively deemed to have been waived.**

This Order shall remain in effect subject to the further order of the Insurance Commissioner.

**THIS ORDER IS EFFECTIVE IMMEDIATELY AND IS ENTERED** at Tumwater, Washington, this <u>28th</u> day of <u>June</u> 2024.

MIKE KREIDLER
Insurance Commissioner

By and through his designee

PRINA PATEL
Insurance Attorney
Legal Affairs Division

ORDER TO CEASE AND DESIST AND
ORDER IMPOSING FINE, ASSESSING
PREMIUM TAX & PENALTIES
ORDER NO. 24-0093

8

State of Washington
Office of the Insurance Commissioner
PO Box 40255
Olympia, WA  98504-0255

LA –1683896– 1

DocuSign Envelope ID: 095645D7-ED05-43AC-A6BE-4319C1745614

## CERTIFICATE OF SERVICE

The undersigned certifies under the penalty of perjury under the laws of the State of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I mailed and emailed the foregoing ORDER TO CEASE AND DESIST AND IMPOSING FINE NO. 24-0093 to the following individuals:

Husch Blackwell LLP
Attn: Office Managing Partner, Kyle Gilster
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, D.C. 20006-3606
kyle.gilster@huschblackwell.com
Julia.Banegas@huschblackwell.com
Cormac.Connor@huschblackwell.com

On the date given below I caused to be served the foregoing ORDER TO CEASE AND DESIST AND IMPOSING FINE NO. 24-0093 via process server upon on the following individuals:

Unite Health Share Ministries, Inc.
c/o Registered Agent: Stephen Lentz
5101 Cleveland Street
Suite 100
Virginia Beach, VA 23462-6575

SIGNED this 28th day of June 2024, at Tumwater, Washington.

DocuSigned by:
*Katrina Shepard*
513F0594089443D

Katrina Shepard
Paralegal
Legal Affairs Division

ORDER TO CEASE AND DESIST AND          9          State of Washington
ORDER IMPOSING FINE, ASSESSING                     Office of the Insurance Commissioner
PREMIUM TAX & PENALTIES                            PO Box 40255
ORDER NO. 24-0093                                  Olympia, WA 98504-0255

LA –1683896– 1