No. 25-1035

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

ALLIANCE OF HEALTH CARE SHARING MINISTRIES
*Plaintiff-Appellant*

v.

MICHAEL CONWAY,
in his official capacity as
Commissioner of the Colorado Division of Insurance
*Defendant-Appellee*

_____

Appeal from the United States District Court for the District of Colorado,
No. 1:24-cv-01386-GPG-STV (Hon. Gordon Gallagher)

_____

## APPENDIX VOL XVI - Pages A-768 - A-816

Date: March 21, 2025

Michael F. Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@Paulhastings.Com
William E. Mahoney
Paul Hastings LLP
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@Paulhastings.Com

*Counsel For Plaintiff Alliance of
Health Care Sharing Ministries*

| ECF NO. | *DESCRIPTION* | Appx. Page No. |
|---|---|---|
| **Appendix Vol. I, Pages 1-140** | | |
| - | District Court Docket Sheet | A-1 |
| 8-1 | Ex. A - Declaration of Rob Waldo (May 17, 2024) | A-9 |
| 8-2 | Ex. A-1 – Samaritan Bylaws | A-19 |
| 8-3 | Ex. A-2 - Samaritan Guidelines | A-44 |
| 8-4 | Ex. A-3 - Samaritan Membership Application | A-94 |
| 8-5 | Ex. B - Declaration of Katy Talento | A-100 |
| 32 | Amended Complaint of Alliance of Health Care Sharing Ministries (July 1, 2024) | A-109 |
| **Appendix Vol. II, Pages 141-179** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1-1.6 (September 3, 2024) | A-141 |
| **Appendix Vol. III, Pages 180-223** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.7-1.22 (September 3, 2024) | A-180 |
| **Appendix Vol. IV, Pages 224-261** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.23-1.28 (September 3, 2024) | A-224 |
| **Appendix Vol. V, Pages 262-307** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.29-1.33 (September 3, 2024) | A-262 |

| | **Appendix Vol. VI, Pages 308-331** | |
|---|---|---|
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.34-1.36 (September 3, 2024) | A-308 |
| | **Appendix Vol. VII, Pages 332-350** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-332 |
| | **Appendix Vol. VIII, Pages 351-373** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.37-1.39 (September 3, 2024) | A-351 |
| | **Appendix Vol. IX, Pages 374-424** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.40 (September 3, 2024) | A-374 |
| | **Appendix Vol. X, Pages 425-478** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.41 (September 3, 2024) | A-425 |
| | **Appendix Vol. XI, Pages 479-541** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.41-1.42 (September 3, 2024) | A-479 |
| | **Appendix Vol. XII, Pages 542-573** | |

| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-542 |
|---|---|---|
| **Appendix Vol. XIII, Pages 574-612** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.54-1.59 (September 3, 2024) | A-574 |
| **Appendix Vol. XIV Pages 613-682** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.6-1.6 (September 3, 2024) | A-613 |
| **Appendix Vol. XV, Pages 683-767** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.61-1.64 (September 3, 2024) | A-683 |
| **Appendix Vol. XVI, Pages 768-816** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.0-2.3 (September 3, 2024) | A-768 |
| **Appendix Vol. XVII, Pages 817-867** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.3-2.4 (September 3, 2024) | A-817 |
| **Appendix Vol. XVIII, Pages 868-933** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.5-7 (September 3, 2024) | A-868 |

| | **Appendix Vol. XIX, Pages 934-1002** | |
|---|---|---|
| 52.1 | Appendix to Reply to Motion for Preliminary Injunction (September 17, 2024) | A-934 |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-949 |
| | **Appendix Vol. XX, Pages 1003-1041** | |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-1003 |
| 55 | Notice of Appeal as to Order on Motion for Preliminary Injunction (January 27, 2025) | A-1015 |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1017 |
| | **Appendix Vol. XXI, Pages 1042-1077** | |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1042 |
| 60 | Order Denying Motion for Injunction Pending Appeal (February 3, 2025) | A-1069 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01386-GPG-STV

ALLIANCE OF HEALTH CARE SHARING MINISTRIES,

        Plaintiff,

v.

MICHAEL CONWAY, in his official capacity as
Commissioner of the Colorado Division of
Insurance,

        Defendant.

---

## DECLARATION OF LEILANI RUSSELL

---

I, Leilani Russell, in accordance with 28 U.S.C. § 1746 state as follows:

    1.     I am the Director of Strategy, Operation and Performance at the Colorado Division of Insurance ("Division").

    2.     I have been employed by the Division since January 2020.

    3.     The Division is charged with supervising the business of insurance in Colorado. § 10-1-103(1), C.R.S. The Commissioner of Insurance is the head of the Division. § 10-1-104(1), C.R.S. I use the term "Division" throughout this declaration to refer generally to actions and activities pursued under the Commissioner's authority, by the Division.

    4.     I am the primary Division employee responsible for administering health care sharing plans and arrangements' (Sharing Plans) reporting obligations under section 10-16-107.4, C.R.S., and its implementing regulation, Regulation 4-10-01, 3 CCR 702-4 (collectively, the Reporting Law).

    5.     My declaration below references numerous documents. True and correct copies of these documents are attached as Exhibits 2.1 to 2.8 to this declaration, which is filed in support of the Commissioner's Response in Opposition to the Motion for Preliminary Injunction.

**EXHIBIT**
**2**

Ex. 2, p. 1 of 8

6.    Following the passage of HB22-1269, the Division held two stakeholder meetings before promulgating Emergency Regulation 22-E-20, 3 CCR 702-4, to begin implementation of the Sharing Plan reporting requirements in C.R.S. 10-16-107.4.

7.    The Division received public comments in support of and opposed to the proposed emergency regulation, including comments from the Alliance and their member entities.

8.    In response to comments, the Division made revisions to the proposed emergency regulation, before promulgating its final terms, to clarify terms and definitions specific to Sharing Plans, while adhering to the statutory requirements of HB 22-1269. These revisions included the following:

    a. Clarifying the applicability of emergency regulation 22-E-20 to any Sharing Plan with 1 or more Coloradans as members;

    b. Separating the definitions of administrative expenses from programmatic expenses (such as wellness programs and care navigation); and

    c. Establishing a process to notify a Sharing Plan if materials that it requested remain confidential in its submission were released in response to a Colorado Open Records Act (CORA) request.

9.    Effective April 30, 2024, the Division promulgated permanent regulations implementing 10-16-107.4, C.R.S. The Division's permanent regulation, Regulation 4-10-01, took into account feedback provided through the emergency regulation process, discussions with representatives from different Sharing Plans, two years of data collection, and comments received through multiple public comment periods via the permanent regulation process, including in the following manners:

    a. The data reporting template replaced references to "reimbursement" with "share request," at the request of commenters, including a few Sharing Plans that are members of the Alliance;

    b. Maintaining the definition of "third party" from the emergency regulation after receiving comments that proposed updates to the definition in the draft of the permanent regulation were too broad;

    c. Explicitly referencing the need to include application forms as part of the required "Copies of consumer facing and marketing materials" that Sharing Plans submit annually; and

    d. Cleaning up of the data template to fix grammatical errors, ensure terms

2

are used consistently in all data fields, and to add the option to report the amount Sharing Plans negotiate on their members behalf.

10.     The Division created a "Reporting Template" that Sharing Plans complete to comply with their disclosure obligations under the Reporting Law. The most recent version of the Reporting Template is attached as Exhibit 2.1.

11.     The Reporting Template is a multi-page Excel spreadsheet that tracks the obligations of the Reporting Law in a standardized manner. These obligations include requiring Sharing Plans to provide basic, general information regarding their operations in Colorado.

12.     The Reporting Law and Reporting Template are not targeted at religious beliefs, but rather are solely focused on Sharing Plans' general commercial operations and health care consumer protection.

13.     The Reporting Law and Reporting Template do not require Sharing Plans to disclose personal identifiable information for Sharing Plan members or employees, but rather are focused on summary data pertaining to general commercial operations and advertising.

14.     As part of Regulation 4-10-01, the Division also created a Health Care Sharing Plan or Arrangement Reporting Attestation (the "Attestation") to support Sharing Plans' requirements under the Reporting Law. The Attestation is attached as Exhibit 2.2.  The Attestation requires Sharing Plans to certify that they have submitted all information and documentation required by the Reporting Law to the Division.

15.     Specifically, in addition to the information requested by the Reporting Template, the Attestation requires Sharing Plans to certify that they submitted to the Division certain limited categories of documentation, including consumer-facing marketing materials, a corporate organizational chart, and any training materials provided to insurance brokers or third parties marketing their Sharing Plan. These materials are required to be submitted to the Division by the Reporting Law.

16.     The submission of consumer-facing advertising materials and training materials provided to insurance brokers and third parties marketing a Sharing Plan helps the Division ensure that Sharing Plans are not engaging in misleading or confusing advertising, and that Colorado consumers are aware that Sharing Plans are not traditional health insurance.

17.     Sharing Plans, including Alliance members, have utilized misleading advertising that invokes insurance-specific terms, including terms of art from the Affordable Care Act (ACA). This misleading advertising causes consumers to wrongly believe that Sharing Plans are ACA-compliant health insurance.  Examples of

misleading advertising by Sharing Plans includes:

    a. The use of ACA terms such as Gold, Silver and Bronze metal tiers of plans;

    b. Use of the terms "Open Enrollment" and "Medicare Open Enrollment", which are also ACA terms;

    c. Use of insurance specific terminology including the terms "coverage", "claims", "premium" , "deductible" and "catastrophic plans".

18.    In fact, Colorado law specifies that insurance carriers offering ACA-compliant individual or small group health benefit plans must provide at least one level of coverage corresponding to "Bronze," "Silver," "Gold," and "Platinum" levels. *See* C.R.S. 10-16-103.4.

19.    Under the Affordable Care Act and Colorado Insurance law, "Open Enrollment" occurs during a limited period of the calendar year, and allows people to switch between health insurance plans without a qualifying life event such as a change in employment. *See* C.R.S. 10-16-105.7. There is no "Open Enrollment" period for Sharing Plans, and the use of the term "Open Enrollment" by Sharing Plans is another possible source of consumer confusion leading Colorado consumers to believe that a Sharing Plan is offering traditional health insurance.

20.    In addition to utilizing confusing insurance-specific terms, the Division has also observed Sharing Plans use other misleading phrasing, including variations of the claim that "100% of your medical costs are paid" or "100% of your eligible Medical Bills" will be shared when, in fact, Sharing Plans only "eligible" costs will be shared and Sharing Plans narrowly define which bills are "eligible" for sharing).

21.    Prior to the enactment of the Reporting Law, the Division received numerous complaints from Colorado consumers who were not aware that Sharing Plans were not traditional health insurance with benefits guaranteed by an enforceable contract.

22.    By requiring Sharing Plans to submit consumer-facing advertising materials, the Division can verify that Sharing Plans are not utilizing misleading marketing materials targeting Colorado consumers.

23.    The Reporting Law is not targeted toward religious groups. Rather, it applies generally to Sharing Plans, regardless of whether they have religious or secular membership guidelines.

24.    For example, Knew Health is a Sharing Plan that has made disclosures

4

under the Reporting Law since 2022.

25.     Knew Health is not religious. Rather, it is a community of "like-minded individuals who are proactive about their wellness and looking for a better way to manage healthcare costs." KNEW HEALTH, *FAQ*, https://knewhealth.com/faq/ (last visited 8/30/2024).  Knew Health "accept[s] everyone, regardless of . . . religious affiliations." KNEW HEALTH, *Home Page*, https://knewhealth.com/ (last visited 8/30/2024).

26.     Knew Health's current Member Guidelines, and its Member Guidelines that become effective October 1, 2024, both reflect that Knew Health is not religious. These guidelines are each available at https://knewhealth.com/guidelines/ (last visited 8/30/2024), and are attached as Exhibits 2.3 and 2.4.

27.     The existing Member Guidelines specify that Membership Eligibility is based upon (1) adherence to Knew Health's Principles of Membership and (2) submission of monthly contributions. Ex. 2.3, p. 11.  Knew Health's Principles of Membership, in turn, contain no commitment to any religion or religious belief. Rather, they simply state: "I believe that a community of ethical, health-conscious people can most effectively care for one another by directly sharing the costs associated with each other's health care needs. I recognize that Knew Health welcomes members of all faiths." Ex. 2.3, p. 10.

28.     Knew Health's Member Guidelines that become effective October 1, 2024 are similarly not religious. Membership Eligibility remains based upon the same two factors outlined in the existing Member Guidelines. Ex. 2.4, p. 2. And the Principles of Membership in the new Member Guidelines, in turn, again contain no commitment to any religion or religious belief. *Id.*, pp. 1-2. Rather, they simply require members to "have a shared faith in myself and members of Knew Health, as well as the strength of our Community." *Id.* at 1. Knew Health's Principles of Membership further state: "I believe that a community of ethical, health-conscious people can most effectively care for one another by directly sharing the costs associated with each other's health care Needs. I recognize that Knew Health welcomes members of all faiths." *Id.*

29.     One of my responsibilities regarding the Reporting Law includes attempting to identify and track Sharing Plans that may be required to report under the law but have not submitted annual reports to the Division.

30.     There are several non-religious Sharing Plan entities of which the Division is aware that would be subject to the Reporting Law if and when they are confirmed to have operations in Colorado.

31.     For example, HSA Secure offers Coloradans the opportunity to join a Sharing Plan that "has no religious requirements."  *See* COLOHEALTH, *HSA Secure in Colorado*, https://colohealth.com/hsa-secure-in-colorado/ (last visited 8/30/2024)

5

(attached as Exhibit 2.5). *See also* EIN PRESSWIRE, *HSA for America Announces HSA Secure: A New Way to Save on Healthcare Costs*, https://www.fox21news.com/business/press-releases/ein-presswire/723493777/hsa-for-america-announces-hsa-secure-a-new-way-to-save-on-healthcare-costs/ (last visited 8/30/2024) (attached as Exhibit 2.6).

32.     Big Stuff Healthshare, a Utah-based Sharing Plan, is also not religious. Rather, it is designed for "[m]iddle-aged adults and families with kids," "26-year olds or newlyweds not covered by parents' insurance," "[f]reelancers, contractors, and self-employed workers," "[u]nemployed individuals," and "[e]mployees who want to save by waiving their employer's health insurance benefit." BIG STUFF HEALTHSHARE, *Home Page*, https://www.bigstuffhealthshare.com/ (last visited 8/30/2024).

33.     Big Stuff Healthshare's Foundations for Membership include only the following statement: "I agree that a community of moral, ethical and health-conscious people can most efficiently and effectively encourage and care for one another by directly sharing the costs and expenses associated with each other's health care needs." BIG STUFF HEALTHSHARE, *Foundations for Membership*, https://www.bigstuffhealthshare.com/foundations-for-membership (last visited 8/30/2024) (attached as Exhibit 2.7). The Foundations for Membership do not require members to hold any religious beliefs. *Id.*

34.     There have been three reporting cycles under the Reporting Law to date. Sharing Plans, including member organizations in the Alliance of Health Care Sharing Ministries, provided disclosures under the Reporting Law in December 2022, March 2023, and May 2024.

35.     The Reporting Law only requires Sharing Plans to submit the completed Reporting Template and associated materials once per year. There is no continuing state surveillance of Sharing Plans outside of those annual reporting obligations.

36.     The Division does not conduct any onsite investigations, surveillance, or monitoring of Sharing Plans pursuant to the Reporting Law.

37.     On behalf of the Division, I receive the various Sharing Plans' annual submissions of the Reporting Template and associated materials. I then review those submissions for completeness.

38.     To the extent submissions are incomplete, I follow up with Sharing Plans via email requesting that they correct or supplement their submissions to bring them into compliance with the requirements of the Reporting Law.

39.     The Division has not utilized its authority under the Reporting Law to fine

6

or issue cease and desist orders to any Sharing Plans for failing to report or for submissions out of compliance with the Reporting Law.

40.     Pursuant to Section 5(B)(3) of the Regulation 4-10-01, and its prior emergency regulation iterations, Sharing Plans are permitted to mark information confidential that the Sharing Plan desires to be treated with confidentiality and not disclosed publicly.

41.     To date, no claim of confidentiality asserted by any Sharing Plan pursuant to Section 5(B)(3) of the Regulation 4-10-01, has been challenged by the Commissioner.

42.     I am also the primary author of the annual Summary Report that the Commissioner publishes and posts on the Division's website pursuant to subsection 10-16-107.4(3), C.R.S.

43.     This report aggregates and summarizes information reported to the Division under the Reporting Law including membership, financial information, and use of third-parties to market and facilitate enrollment in the Sharing Plans. These reports include quotations from submissions (without identification of the submitting Sharing Plan) that illustrate key trends in the reported information.

44.     The Summary Reports published for reporting years 2021 and 2022 are attached as Exhibits 2.8 and 2.9.

45.     The Summary Report for reporting year 2023 has not yet been published.

46.     The Reporting Law has benefited Colorado by providing data and information that is included in Colorado's Annual Reports, which makes this information available to Colorado consumers. Although these Annual Reports noted that Sharing Plans' incomplete data submissions hampered some data analyses, they conveyed key facts regarding Sharing Plans' operations in Colorado, including: confirming for the first time which entities are operating in Colorado; that around 60,000 Coloradans are current members of Sharing Plans; that Coloradans contributed between $78 and $97 million annually in 2021 and 2022 to Sharing Plans; and Sharing Plans' use of insurance brokers to recruit and enroll new members.

47.     The Reporting Law clearly defines its terms governing the scope of disclosure obligations, contrary to claims from Samaritan that any such terms are "imprecise" or "nonsensical." Declaration of Rob Waldo (ECF No. 8-1) ("Waldo Decl."), at ¶ 18.

48.     Mr. Waldo claims that "there is no standard definition" of "administrative expenses." *Id.* But the regulation promulgated by the Division provides a specific

7

definition for that term:

> "'Administrative expenses' shall mean costs incurred to operate and support the functioning of the health care sharing plan or arrangement. This includes but is not limited to bank fees, staff salaries, data processing, sales, management of health care expense submissions, marketing, outreach, and enrollment efforts. This includes fees, commissions, and remuneration paid to contractors or third parties that acted on behalf of the [Sharing Plan] to facilitate administrative operations."

*See* Regulation 4-10-01, 3 CCR 702-4, § 4(A).

49.    Mr. Waldo asserts that it is unclear whether "requests for reimbursement of health care costs or services" requires disclosure of the "'sticker price' providers put on an invoice or the reduced amount they eventually accept." Waldo Decl., ¶ 18. But the instructions contained in the Reporting Template make clear:

> "This includes <u>all</u> requests for sharing of Colorado participants' health-care costs or services including any requests that were denied or approved or have not yet been denied or approved. If this amount includes duplicate charges by medical providers, discounts, participants' initial unshareable amounts, or other expenses that do not meet the HCSPAs sharing criteria additional context can be reported in the green box on the far right hand of the tab."

*See* Reporting Template, Ex. 2.1, "Definitions and Instructions" for element "K." (Emphasis in original.). In other words, this requires disclosure of the sticker price.

50.    Mr. Waldo notes that the Reporting Law requires disclosure of "reimbursement request denials," but claims there is no direction as to "whether requests that are outside of established policies or guidelines constitute a 'denial.'" But the regulation promulgated by the Division confirms that Sharing Plans should disclose the "Total number of share requests, for Colorado participants, that were denied (not shared) because they were not eligible for sharing according to the organization's guidelines." *See* Ex. __, *Disclosure topic "P."*

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Executed on August _30_, 2024.

*Leilani Russell*
Leilani Russell

8

Resp. Appx. p. 631          Ex. 2, p. 8 of 8

**Appx. Vol XVI
A-775**

**Appx. Vol XVI A-776**

## Instructions

### Instructions applicable to entire template (all tabs):

~ This template should be downloaded as an Excel file, filled out, and submitted back to the Division as an Excel file.

~ All tabs must be completed and emailed to the Division. In addition, Colorado Revised Statute 10-16-107.4 specifies other material also required to be submitted to the Division as part of data reporting.

~ Unless explicitly noted otherwise all data fields in this template are related to participants in plans or arrangements who are Colorado residents. E.g., requests for national information use the word "nationally" to denote the data should be provided at a national and not Colorado level.

~ All data filings submitted shall be considered public and shall be open to public inspection, unless the information may be considered confidential pursuant to § 24-72-204, C.R.S. **The entire filing cannot be held as confidential.** A "Confidentiality Index" should be completed if the health care sharing plan or arrangement desires confidential treatment of any information submitted. Information identified as confidential shall be marked as such and shall be submitted separately from non-confidential material. If a CORA request is received requesting the information identified as confidential, the Division will notify the health care sharing plan or arrangement prior to sharing any information that the plan or arrangement may have identified as confidential in the confidentiality index.

~ Completed templates should be emailed to Leilani Russell (Leilani.Russell@state.co.us)

### Instructions applicable to tab "Pg.2 Plan specific information"

~ If your organization has a TIN (Tax ID number) please provide that in the designated field, otherwise leave this field blank.

~ If data elements are not applicable to your organization's plan or arrangement please note "*does not apply see note*" and explain why this data element does not apply to your organization in the "Additional context" green box

~ Products will be the organization's specific titles. E.g. Classic membership

~ Please note element "**D. The total number of employer groups in Colorado that facilitate all or some of their employee participants' monthly share contributions**" this includes monthly share contributions for the employee's family member(s) facilitated by the employer

~ Please note element "**K. Total dollar amount of health-care costs or services that were incurred by the participant and submitted by or on behalf of the participant for sharing**" This includes all requests for sharing of Colorado participants' health-care costs or services including any requests that were denied or approved or have not yet been denied or approved. If this amount includes duplicate charges by medical providers, discounts, participants' initial unshareable amounts, or other expenses that do not meet the HCSPAs sharing criteria additional context can be reported in the green box on the far right hand of the tab.

~ Please note element "**L. Total dollar amount of requests for sharing of Colorado participants' health-care costs or services that qualified for sharing excluding any amounts that the participants incurring the health-care costs or services must pay before receiving sharing amounts under the member guidelines**" this is the amount from element K minus any duplicate charges by medical providers, discounts, participants' initial unshareable amounts, or other expenses that do not meet the HCSPAs sharing criteria.

~ Please note element "**M. For this product, the total amount of payments made to providers for Colorado participants' health care costs or services**" is the subset of dollars from element "**L. Total dollar amount of requests for sharing of Colorado participants' health-care costs or services that qualified for sharing excluding any amounts that the participants incurring the health-care costs or services must pay before receiving sharing amounts under the member guidelines**" that were paid to providers for that product, in that reporting year. If this data element is not applicable to your organization's plan or arrangement please note "does not apply see note" and explain why this data element does not apply to your organization in the "Additional context" green box.

~ Please note element "**N. Total dollar amount of sharing requests facilitated or provided to Colorado participants for health care costs or services**" is the subset of dollars from element "**L. Total dollar amount of requests for sharing of Colorado participants' health-care costs or services that qualified for sharing excluding any amounts that the participants incurring the health-care costs or services must pay before receiving sharing amounts under the member guidelines**" that were shared with participants for the product, in the reporting year. If this data element is not applicable to your organization's plan or arrangement please note "does not apply see note" and explain why this data element does not apply to your organization in the "Additional context" green box.

### Definitions

**EXHIBIT 2.1**

Ex. 2.1, p. 1 of 6

**Definitions**

~ "Administrative expenses" shall mean costs incurred to operate and support the functioning of the health care sharing plan or arrangement. This includes but is not limited to bank fees, staff salaries, data processing, sales, management of health care expense submissions, marketing, outreach, and enrollment efforts. This includes fees, commissions, and remuneration paid to contractors or third parties that acted on behalf of the HCSPA to facilitate administrative operations.

~ "CORA" shall mean the Colorado Open Records Act (§ 24-72-201, et seq, C.R.S.).

~ "Coloradans" shall mean residents of Colorado during the reporting period.

~ "Filing date" shall mean for the purposes of this regulation, the day after the HCSPR filing is received at the Division.

~ "Health care costs" or "health care expenses" shall mean any amount billed by a health care provider for health care services or related products or by a pharmacy.

~ "Health care services" means any services included in or incidental to the furnishing of medical, behavioral, mental health, or substance use disorder; dental, or optometric care; hospitalization; or nursing home care to an individual, as well as the furnishing to any person of any other services for the purpose of preventing, alleviating, curing, or healing human physical illness or injury, or behavioral, mental health, or substance use disorder. "Health-care services" includes the rendering of the services through the use of telehealth, as defined in § 10-16-123 (4)(e), C.R.S.

~ "Health care sharing plan" or "health care sharing arrangement" or "plan" or "arrangement" or "HCSPA" shall mean any organization that offers or markets products to facilitate payment or reimbursement of health-care costs or services for one (1) or more residents of Colorado. This does not include direct primary care agreements as defined in § 6-23-101, C.R.S.; consumer payment plans offered directly between a provider and patient (or patient's responsible party); businesses used to facilitate the plan's operations such as reimbursement handling, cost containment vendors, data processing; and crowdfunded sources that do not require ongoing membership fees, share requirements, or dues for the purposes of payment for and/or reimbursement of health care services.

~ "Insurance producer" or "producer", shall have the same meaning as found at § 10-2-103(6), C.R.S., with the exception that for the purposes of this regulation it does not include § 10-2-103 (6)(b), C.R.S.

~ "Program expenses" shall mean any service by the HCSPA or its contractors that, while not direct medical care, contributes to the care and overall experiences of HCSPA's participants. This includes but is not limited to coaching and wellness programs, care navigation, care coordination, medical review, quality improvement efforts, cost containment, reimbursement handling, and bill negotiations. This includes fees, commissions, and remuneration paid to contractors that acted on behalf of the HCPA to facilitate program expenses.

~ "Product(s)" means, for the purposes of this regulation, the services covered as a package under a membership plan, tier, or level.

~ "Third party" shall mean contractors that are associated with or assist the plan or arrangement in offering or enrolling Colorado residents as participants in the plan or arrangement.

| Select reporting year | | TIN | |
|---|---|---|---|

| **Organizational Information** | | |
|---|---|---|

| Provide the name of your Organization: | | Provide a list of: | | Web based materials | |
|---|---|---|---|---|---|
| Contact person for your organization: | | Parent companies, subsidiaries, and other names that your organization has operated under at any time with the immediately preceding 5 calendar years: | | Provide your Organization's website | |
| Name: | | Parent Companies | | | |
| Email: | | Subsidiaries | | Provide any additional website(s) your organization uses to communicate marketing materials including social media sites | |
| Mailing address: | | Other names that your organization has operated under | | | |
| Telephone number: | | | | | |

**Please review around the d** *(partially cut off, highlighted)*

Appx. Vol XVI

A-778

| REQUIRED INFORMATION | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Product name (list out all products your organization offers in Colorado) | B. Number of Colorado residents that participated in this product in the reporting year (Individuals) | C. Number of Coloradan HOUSEHOLDS that participated in the product in this reporting year | D. The total number of employer groups that participated in this product in Colorado that facilitate all or some of their employee participants' monthly share contributions | E. For each employer group included in element D, list out how many individual Colorado participants were included (separate answers by commas) | F. Total number of participants in the product NATIONALLY? | G. Number of contracts entered into with health care service providers providing services for Colorado participants for this product. This includes contractors that provide telehealth services for participants | H. Total amount of fees, dues, shares, contributions, or other payments **collected** from individuals, Colorado employer groups, or others who participated in the product ($) | I. The percentage of fees, dues, shares, contributions, or other payments from Colorado participants in this product retained by the plan or arrangement for administrative expenses (%) | J. The percentage of fees, dues, contributions, or other payments from Colorado participants in this product retained by the participant for program expenses (%) | K. Total dollar amount of health-care costs or services that were incurred by the participant and submitted by or on behalf of the participant for sharing ($) | L. Total dollar amount of requests for sharing of Colorado participants' health-care costs or services that qualified for sharing excluding any amounts that the participants incurring the health-care costs or services must pay before receiving sharing amounts under the member guidelines | M. Total dollar amount of payments made to providers for Colorado participants' health care costs or services ($) |

**Appx. Vol XVI A-779**

w the updated instructions tab for clarifications
ata elements on this tab and "Pg. 3 Aggregate
Information"

| N. Total dollar amount of sharing requests facilitated or provided to Colorado participants for health care costs or services ($) | O. Total number of requests by or on behalf of the Colorado participants' for sharing of healthcare costs or services incurred by the participant (Number) | P. Total number of share requests, for Colorado participants, that were denied (not shared) because they were not eligible for sharing according to the organization's guidelines (Number) | Q. Total number of appeals of denied sharing requests for Colorado participants' incurred health-care costs or services (Number) | R. Total number of appeals requests that were later approved for sharing for Colorado participants' incurred health-care costs or services (Number) | S. Percentage of total number of requests denied compared to the total number of Colorado participants share requests submitted | T. Percentage of total number of requests denied compared to the total number of appeals for sharing that were 'denied' (not shared) for Colorado participants | U. Total amount of Colorado participants' health-care costs or services submitted in the reporting period that qualify for sharing pursuant to the plan/arrangement's criteria but that were not shared or paid by the last day of the reporting year, excluding any amounts that the participants incurring the health-care costs or services must pay before receiving sharing amounts under the member guidelines ($) | V. Estimated number of individual plan/arrangement participants anticipated in Colorado in the current calendar year | W. Estimated number of households plan/arrangement participants anticipated in the current calendar year | X. Estimated number of employer groups in Colorado that facilitate all or some of their employee participants' monthly share contributions in the current calendar year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |



Y. Estimated total number of individual Colorado participants associated with the employers in element X in the current calendar year

Z. The total number of producers that are associated with or assist in offering or enrolling participants in Colorado in the product (number of **producers**)

AA. Of the number of Colorado participants in the product how many were enrolled through a producer (number of **participants**)

Additional context you'd like to provide the Division about this product or any of the data submitted on this tab? Possibly data to include could be the total dollar amount of discounts negotiated for Colorado participants.

If any Colorado data were provided on a pro rata basis please note that here and which data elements (e.g. B, G-J, M) are based off of national numbers

Organizational Information

| Organizational Name | |
|---|---|

| REQUIRED INFORMATION - THIRD PARTIES<br>Provide a list of third parties, excluding producers, that are associated with or assist the HCSPA **in the following bolded areas**<br>(Add more rows to this table as needed) | | |
|---|---|---|
| Name of third party - provide the "doing business as" name of each applicable third-party<br>(list out separately) | Total commission, fees, or remuneration paid in the previous calendar year for: **marketing, promoting, or enrolling participants in a HCSPA product to Colorado participants** | Total commission, fees, or remuneration paid in the previous calendar year for: **operating, managing, or administering a product offered by the HCSPA** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |

| REQUIRED INFORMATION - Producers | |
|---|---|
| **Total number of producers** that are associated with or assist in offering or enrolling participants in Colorado<br>(Aggregate value) | **Total commission, fees, or remuneration paid** in the previous calendar year **to producers** for: marketing, promoting, or enrolling Colorado participants in a plan or arrangement<br>(Aggregate value) |
| | |

| REQUIRED INFORMATION - Organizational<br>Colorado Counties | |
|---|---|
| List out the Colorado counties where a plan/arrangement was offered in **2023** | List out the Colorado counties where a plan/arrangement is **intended** to be offered in **2024** |
| | |

| REQUIRED INFORMATION<br>National Information |
|---|
| List out the other states (i.e., states other than Colorado) in which your organization offered a plan or arrangement was in **2023**<br>One row per state |
| |

| ADDITIONAL INFORMATION |
|---|
| Please describe any appeals processes that your organization's uses when a participant contests a reimbursement, requested share, or payment denial |
| |

| Additional context you'd like to provide the Division about the data provided on this tab? |
|---|
| |

Appx. Vol XVI
A-781

Ex. 2.1, p. 6 of 6





COLORADO
Department of
Regulatory Agencies
Division of Insurance

# Health Care Sharing Plan or Arrangement Reporting Attestation

**Timeline to respond to incomplete submissions**

If the Organization subject to the requirements of § 10-16-107.4, C.R.S fails to submit the information or certification required by § 10-16-107.4, C.R.S, the submission is incomplete. The Commissioner of Insurance shall make a determination of completeness no later than forty-five (45) days after the filing date of the submission. If the commissioner has not informed the Organization of any deficiencies in the submission within forty-five (45) days after receiving the submission, the submission is considered complete.

If the Commissioner determines that a person fails to comply with the requirements of § 10-16-107.4, C.R.S, the Commissioner shall: (a) notify the Organization that the submission is incomplete and enumerate in the notification each deficiency found in the person's submission; and (b) allow the Organization thirty (30) days after notice of the incomplete submission to remedy the deficiency found in the submission. If the Organization does not remedy the deficiency within the thirty-day period, the Commissioner may levy a fine not to exceed five thousand dollars ($5,000) per day. If the Organization does not remedy the deficiency or deficiencies within thirty (30) days after the initial fine is levied, the Commissioner may issue a cease-and-desist order in accordance with section § 10-3-904.5, C.R.S.

☐   By clicking here, you attest that you read the above statement and are aware of the timeline to respond to the Commissioner and the Division if this submission is deemed incomplete.

☐   By clicking here, you attest that all data required to be submitted, per § 10-16-107.4, C.R.S, have been submitted to the Division. Including submitting of: (1) supplemental, training, and marketing materials; (2) organizational chart of the HCSA with a list of officers, directors, and their roles; (3) copies of any training materials provided to a producer; (4) training materials provided to a third party; and (5) the Reporting Template.

☐   By clicking here, you, an officer of the Organization, attest that the information provided in this reporting template, to the best of your good-faith knowledge and belief, is accurate and satisfies the requirements of § 10-16-107.4, C.R.S.

_____
Digital Signature

_____
Date

_____
Print name and role within organization

_____
Email address

STATE OF COLORADO 1876

**EXHIBIT**
**2.2**
Ex. 2.2, p. 1 of 1

# MEMBER GUIDELINES

Resp. Appx. p. 639

EXHIBIT
2.3

Ex. 2.3, p. 1 of 47

At Knew Health, we have reimagined the HealthShare model to simplify the experience of our members and make medical cost sharing more accessible. Our Member Guidelines outline who we are as an organization and how we share in the medical costs of our members.

# Contents

Our Mission ------------------------------------------------------------------ 9

Membership Eligibility -------------------------------------------------- 11

1. Commitment --------------------------------------------------------- 11

2. Participation through Contributions ------------------------------11

3. Qualification --------------------------------------------------------- 12

Enrollment Requirements ---------------------------------------------- 12

1. Determination of Household Membership ----------------------------12

2. Dependents ---------------------------------------------------------12

3. Newborns -----------------------------------------------------------13

4. Adoption ------------------------------------------------------------13

5. Grandchildren ------------------------------------------------------ 13

6. Tobacco -------------------------------------------------------------- 14

2

## Member Responsibilities ------------------------------------------------ 14

    1. Member Contributions ---------------------------------------------- 14

    2. Proper Submission of Medical Needs to Knew Health -------------------------- 14

    3. Trust & Accountability ---------------------------------------------- 14

## How Needs are Shared-----------------------------------------------------15

    1. Determination of a Need -------------------------------------------- 15

    2. Initial Unshareable Amount (IUA) ------------------------------------------15

    3. Changing your IUA ------------------------------------------------ 15

    4. Maximum Shareable Amount --------------------------------------------16

    5. Multiple Needs in a 12-Month Period ---------------------------------------16

    6. Insurance Companies & Government Entities --------------------------------16

    7. Active Membership -----------------------------------------------16

    8. Late Fees and Interest ---------------------------------------------16

    9. Appeals

## Medical Conditions Existing Prior to Membership ----------------------------------17

    1. Definition: 24 Months Symptoms and Treatment Free -------------------------- 17

    2. Exceptions for High Blood Pressure, High Cholesterol, and Diabetes --------------17

    3. Exceptions for Other Medical Conditions ------------------------------------17

    4. Pre-Existing Condition Phase-In Period ------------------------------------18

## Limitations on Sharing ---------------------------------------------------- 18

    1. Abortion ------------------------------------------------------ 18

    2. ADHD, ADHS, and SPD Treatment ------------------------------------------18

    3. Allergy Treatments ----------------------------------------------- 19

    4. Alternative Medical Practices ---------------------------------------------19

    5. Alcohol and Drug Abuse Treatments -----------------------------------------19

    6. Ambulance Transports --------------------------------------------- 19

    7. Audiological --------------------------------------------------- 19

    8. Automobile Accidents ---------------------------------------------20

    9. Cataract Surgery ------------------------------------------------20

    10. Chiropractic -------------------------------------------------20

    11. Chronic Pain Therapy ---------------------------------------------20

3

Resp. Appx. p. 441

12. Cosmetic Surgery --------------------------------------------------------- 20

13. Dental ------------------------------------------------------------------- 20

14. Diabetic Medication & Supplies --------------------------------------------- 20

15. Emergency Visits ----------------------------------------------------------- 21

16. Fertility ------------------------------------------------------------------ 21

17. Genetic Mutation ----------------------------------------------------------- 21

18. Home Healthcare ------------------------------------------------------------ 21

19. Hospice Care --------------------------------------------------------------- 21

20. Hospitalization ------------------------------------------------------------ 22

21. Hyperbaric Therapy --------------------------------------------------------- 22

22. Injections ----------------------------------------------------------------- 22

23. Injuries Obtained from Certain Acts ----------------------------------------- 22

24. Laboratory Tests and Checkups ---------------------------------------------- 22

25. Long-Term Care and Skilled Nursing ----------------------------------------- 22

26. Medical Equipment ---------------------------------------------------------- 22

27. Medical Supplies ----------------------------------------------------------- 23

28. Mental Health -------------------------------------------------------------- 23

29. Naturopathic --------------------------------------------------------------- 23

30. Newborn Care --------------------------------------------------------------- 23

31. Nutritionists and Dieticians ----------------------------------------------- 23

32. Occupational Therapy ------------------------------------------------------- 23

33. Organ Transplants ---------------------------------------------------------- 24

34. Sleep Apnea ---------------------------------------------------------------- 24

35. Physical Therapy ----------------------------------------------------------- 24

36. Prescriptions -------------------------------------------------------------- 24

37. Preventive Services -------------------------------------------------------- 24

38. Speech Therapy ------------------------------------------------------------- 24

39. Sports -------------------------------------------------------------------- 25

40. Sterilization ------------------------------------------------------------- 25

41. Suicide and Attempted Suicide ---------------------------------------------- 25

42. Surrogacy ----------------------------------------------------------------- 25

43. Therapeutic Massage Therapy ------------------------------------------------ 25

4

44. Tobacco Use over 50 --------------------------------------------------------------25

45. Vision ------------------------------------------------------------------- 26

46. Weight Reduction ------------------------------------------------------- 26

Maternity Needs ---------------------------------------------------------------26

1. General -------------------------------------------------------------------26

2. Separate Needs -----------------------------------------------------------26

3. Early Sharing Requests ---------------------------------------------------26

4. Home Births --------------------------------------------------------------- 27

5. Pregnancy Prior to Membership ---------------------------------------- 27

6. Waiting Period ------------------------------------------------------------27

7. Premature Birth -----------------------------------------------------------27

Submission of Medical Needs ---------------------------------------------------27

1. Submitting a Needs Request --------------------------------------------- 27

2. Required Documentation ------------------------------------------------- 28

3. Time Limit for Providing Documentation -----------------------------28

4. Meeting the IUA --------------------------------------------------------- 28

5. Negotiating Medical Bills ---------------------------------------------------28

End of Life Assistance -------------------------------------------------------- 28

Appendix A: Defined Terms --------------------------------------------------- 29

1. Annual limit ---------------------------------------------------------------29

2. Application date ----------------------------------------------------------29

3. Contribution List ------------------------------------------------------- 29

4. Date of service ------------------------------------------------------------ 29

5. Dependent --------------------------------------------------------------- 29

6. Effective Date -------------------------------------------------------------- 30

7. Eligible Need ---------------------------------------------------------------30

8. Head of household --------------------------------------------------------30

9. Household membership ---------------------------------------------------30

10. Healthcare sharing -------------------------------------------------------30

11. Inactive Member---------------------------------------------------------- 30

12. Ineligible Need -----------------------------------------------------------30

5

13. Initial Unshareable Amount ----------------------------------------------------- 31

14. Licensed medical professional -------------------------------------------------31

15. Lifetime limit ------------------------------------------------------------------ 31

16. Maternity need ----------------------------------------------------------------- 31

17. Maximum shareable amount --------------------------------------------------- 31

18. Medically necessary ------------------------------------------------------------ 31

19. Member(s) --------------------------------------------------------------------31

20. Membership -------------------------------------------------------------------- 32

21. Membership cancellation request -------------------------------------------32

22. Membership commitment ------------------------------------------------------- 32

23. Member responsibility amounts ------------------------------------------------ 32

24. Membership update ------------------------------------------------------------- 32

25. Membership limitation ---------------------------------------------------------32

26. Membership options -----------------------------------------------------------33

27. Membership withdrawal -------------------------------------------------------- 33

28. Monthly contributions ---------------------------------------------------------- 33

29. Needs request ----------------------------------------------------------------- 33

30. Office visit ---------------------------------------------------------------------33

31. Membership administration -----------------------------------------------------33

32. Pre-existing condition ---------------------------------------------------------- 34

33. Proration ----------------------------------------------------------------------- 34

34. Shareable amount -------------------------------------------------------------- 34

35. Explanation of benefits (EOB) ------------------------------------------------- 34

36. Usual reasonable and customary costs (URC) --------------------------------- 34

37. Unshareable amount(s) --------------------------------------------------------- 34

Appendix B: Frequently Asked Questions ------------------------------------------------35

What does Knew Health believe? --------------------------------------------------- 35

What kind of company is Knew Health? --------------------------------------------- 35

Isn't Knew Health really just another health insurance company? ----------------------- 35

6

What's the advantage of Knew Health not being a health insurance company? -----------36

Is Knew Health legal? ----------------------------------------------------------------36

How are members of Knew Health affected by the federal healthcare law (including the

Affordable Care Act)? ---------------------------------------------------------- 36

How does Knew Health handle medical claims? ------------------------------------- 36

What procedure should I follow to request reimbursement for my medical bills when I

have a need? -------------------------------------------------------------------37

How long does it take Knew Health to process a medical need? -------------------------37

Can I choose my own doctors and hospitals without being penalized? -------------------37

Does Knew Health charge monthly premiums? ------------------------------------- 37

Does Knew Health use deductibles and co-insurance? ------------------------------- 38

Will Knew Health share medical costs that were incurred outside of the United States? ------38

What are Knew health's membership requirements? --------------------------------- 38

Can my membership be dropped if I have very high medical needs? -------------------- 38

Can my family members participate in the sharing program? ------------------------- 38

What if my dependents do not agree to abide by the Knew Health Member Guidelines? ----- 39

Is there a lifetime or yearly maximum amount that is eligible for sharing for any one

 person or family? -------------------------------------------------------------- 39

What kinds of needs do Knew Health members share? -------------------------------39

What kinds of needs do Knew Health members not share? ----------------------------39

How does Knew Health handle very large medical expenses? -------------------------39

What amounts do members share for maternity needs? ----------------------------- 40

Am I excluded from membership/reimbursement eligibility if I'm a cancer survivor? --------40

How does Knew Health handle expenses for medical treatments that occurred overseas? ----40

What if I lose my job or change employers? Can I take my Knew Health plan with me? ------ 40

This program sounds kind of unusual; does it really work? ----------------------------- 41

What happens if Knew Health's members' needs are greater than the monthly

contributions received? ----------------------------------------------------------41

How much does it cost to belong to Knew Health? ----------------------------------41

Can my employer pay some, or all, of my monthly contribution amount? ------------------42

7

How is my portion of the monthly contribution collected? ------------------------------42

Are my monthly contributions higher if I, or a participating member in my family, uses tobacco products? ------------------------------------------------42

Are my monthly contributions a pre-tax deduction like health insurance premiums? --------42

How often can the monthly contribution amounts be changed? --------------------------42

Are my pre-existing conditions always unshareable? ---------------------------------43

Appendix C: Company FAQs -----------------------------------------------------43

Is Knew Health a group benefit? -----------------------------------------------43

Why should my company participate in Knew Health's medical cost sharing program? ------43

Does Knew Health's medical cost sharing program comply with the Affordable Care Act requirements? --------------------------------------------------------43

What are the risks and liabilities my company may be exposed to through participation in Knew Health? --------------------------------------------------44

Can my employee's monthly contributions be collected via payroll deductions? ----------- 44

Can my company pay some or all of its employee's monthly contributions? ---------------44

How do I set up my employees' witholding amounts? -------------------------------- 44

Is there any additional administration or work for my company as a result of participation? - 44

The cost savings sound great, but how will my employees be affected by Knew Health's program? ---------------------------------------------------- 45

Disclaimer ------------------------------------------------------------- 46

Resp. Appx. p. 846

# Knew Health's Mission

Welcome. Thank you for your interest in Knew Health. Our founder, Joshua Rosenthal, believes that everyone should have access to preventative health and wellness resources. And everyone should have a safety net for when unexpected medical costs occur.

Knew Health makes healthcare simple and affordable by pairing preventative health with medical cost sharing.

We put your health first by providing access to personalized health coaching, preventive coverage, allowances for preventive medical care above and beyond conventional care, access to the highest quality supplements, complimentary lab work, and monthly seminars on health and wellness education.

And when you have a health need, we provide you with the freedom to choose the right providers for you. We give you a team dedicated to help you easily navigate the healthcare system. We make it possible to invest back into your health and wellness, and we'll have your back when unexpected medical costs happen.

The concept of medical cost sharing has evolved over decades of communities coming together in times of need and sharing burdens with one another. Knew Health has created a one-of-a-kind Community of passionate individuals that pull together to efficiently manage one another's medical costs.

Knew Health will make your life better. We will change the way you think about healthcare by making it easier to live healthier, to feel your best, to save money on healthcare costs, to receive the best quality care, and we'll help one another every step of the way. Through our intentionally different, wellness-focused healthcare solution, you can achieve your optimal wellness and have the stability of our Community at your back.

# Principles of Membership

Each member of Knew Health must comply with the following requirements to maintain membership with Knew Health Alliance, hereby known as Knew Health, and remain eligible to participate in the medical cost sharing program and participate in all other Knew Health services. Adherence to the Knew Health Principles of Membership minimizes medical risks, encourages good health practices, and ensures member integrity and accountability.

**All Knew Health members must attest to the following statements:**

• I believe that a community of ethical, health-conscious people can most effectively care for one another by directly sharing the costs associated with each other's health care needs. I recognize that Knew Health welcomes members of all faiths.

• I understand that Knew Health is a membership, not an insurance entity, and that Knew Health cannot guarantee payment of medical expenses.

• I agree to practice good health measures and strive for a balanced lifestyle. I agree to abstain from the use of any illicit or illegal drugs and refrain from excessive alcohol consumption, and acts which are harmful to the body. I understand that members who use tobacco will have an increased monthly contribution (per household) of $112.50.

• I am obligated to care for my family. I believe that mental, physical, emotional, or other abuse of a family member, or any other person, is morally wrong. I commit to treating my family and others with care and respect at all times.

• I agree to submit to mediation followed by subsequent binding arbitration, if needed, for any instance of a dispute with Knew Health or its affiliates.

10

# Membership Eligibility

**Membership eligibility in Knew Health is primarily based upon two factors.**

1. Adherence to the Knew Health Principles of Membership.
2. Participation in the community by submitting monthly contributions.

After committing to these primary obligations, prospective members are eligible to enroll in the Knew Health community. Membership may begin on a date elected by the prospective member or specified by Knew Health. The first monthly contribution must be received before the membership is considered active.

## 1. Commitment

Members of Knew Health commit to abide by a set of personal standards as outlined in the Knew Health Principles of Membership. If a violation of the Principles of Membership is discovered through review of a member's submitted medical records, all cost sharing for the needs of that member will be put on hold. This hold will begin on the date in which the violation was discovered or recorded in the member's medical records. A notification of the hold and an explanation of the discovery will be issued to the member.

The member will be granted 30 days to submit documentation supporting compliance with the Principles of Membership. If the submitted documentation does not satisfactorily demonstrate compliance with the Principles of Membership, the member will automatically be withdrawn from the sharing program and membership will be revoked. In the event that membership is revoked due to a violation of the Principles of Membership, Knew Health will not return the offending member's contributions received prior to the date of withdrawal.

## 2. Participation through Contributions

To participate in the member-to-member medical cost sharing community and access Knew Health services, members must submit the monthly contribution amount associated with their level of membership.

Members have multiple options for submitting their monthly contributions. Individual members can make contributions directly to Knew Health. For members who enroll in Knew Health through their workplace , payments can be made through their employer.

All member contributions are voluntary, but the monthly contribution is required to be active and eligible for sharing. Monthly contributions must be received no later than 30 days after the billing date. If a monthly contribution is not received by the last day of the billing month, the membership will become inactive and the member will be withdrawn from the medical cost sharing community.

11

Any member that has been withdrawn may reapply, provided they meet all enrollment and eligibility requirements. Once the member reapplies and membership is reinstated by Knew Health, the member will become eligible to participate in cost sharing. All member needs and medical costs occurring after the membership is inactivated and before reinstatement will be ineligible for cost sharing, and any medical conditions existing before the date of reinstatement will be considered pre-existing. Any member whose membership has been inactivated three times will not be eligible to reapply.

## 3. Qualification

To be qualified for membership, an applicant must meet all criteria set forth in the membership guidelines and the membership enrollment form. If at any time it is discovered that a member did not submit a complete membership enrollment form, the incomplete form could result in either a retroactive membership limitation or a retroactive denial of membership.

While member health status has no effect on eligibility for membership, there are limitations on medical cost sharing for some conditions that existed prior to a member's effective date.

# Enrollment Requirements

Knew Health offers different enrollment types for individuals and families. Monthly contributions are based on the enrollment type, initial unshareable amount, and member age. This section outlines the different household memberships and who is eligible for enrollment therein.

## 1. Determination of Household Membership

There are four tiers of membership, and member contributions are calculated depending on the participating members of a household.

- Member Only: an individual member of Knew Health
- Member & Spouse: Two married members or two domestic partners
- Member & Child(ren): A member and any eligible dependent children, without membership of a spouse
- Member & Family: A member, spouse/domestic partner, and any dependent children

## 2. Dependents

An unmarried dependent may participate under a combined membership with the head of household through the age of 25. Children born into a membership due to an eligible maternity need may participate under a combined membership. Under a combined membership, the head of household is responsible for ensuring that each individual participating under the combined membership complies with membership guidelines and the Knew Health Principles of Membership.

12

Resp. Appx. p. 650

Once a dependent reaches the age of 26 or marries, that dependent is no longer eligible to participate under the combined membership. A dependent who wishes to continue participating as a member with Knew Health may complete an enrollment form. Any medical needs that occur between the time when a child leaves their parent's membership and enrolls in their own membership are not shareable. If a dependent ages-out of their Knew Health membership but chooses to re-enroll at a later date, they will be subject to the limitations associated with preexisting conditions.

## 3. Newborns

Newborns whose birth is part of a shareable maternity need will automatically be enrolled in a Knew Health membership at birth. In the case of a change in household enrollment type, the monthly contribution amount will be adjusted automatically. If a member does not wish for their newborn to be added to their membership, they must notify Knew Health 30 days prior to birth.

Newborns who are not born as part of a shareable maternity need must be enrolled manually in a Knew Health membership. The newborn's membership will begin on the date of enrollment. Any genetic conditions or complications for newborns not born as part of a shareable maternity need are considered pre-existing and subject to the same limitations as defined in the section "Medical Conditions Existing Prior to Membership."

## 4. Adoption

Knew Health regards adopted children the same as biological children regarding membership. Any physical conditions of which the adoptive parents are aware prior to the legal adoption of the child are considered pre-existing conditions and are subject to the sharing limitations and phase-in period outlined in the Member Guidelines. Adopted children cannot be added to a Knew Health membership prior to birth.

## 5. Grandchildren

A grandchild (or grandchildren) may be included as part of their grandparent's membership if they meet the following criteria.

1. The grandparent has legal custody of the grandchild.
2. The grandchild lives with their grandparents at least nine months out of the year.
3. There is no other agency, person, or group responsible for the grandchild's medical needs.

13

## 6. Tobacco

Knew Health households with one or more tobacco users are required to contribute a higher monthly contribution to maintain membership. The monthly tobacco surcharge is $112.50 per household.

A household member who has used any tobacco product one or more times a month within the past year is considered a tobacco user. Tobacco products include, but are not limited to, cigarettes, cigars, chewing tobacco, snuff, vape products, and pipe tobacco. Smoked cannabis products are considered tobacco for the purposes of the tobacco surcharge.

# Member Responsibilities

All members of Knew Health share certain responsibilities to remain a part of the sharing program. Because the actions of one member can affect the entire community, each member will be held accountable for following these standards.

## 1. Member Contributions

Monthly membership contributions should be made in a timely manner. If contributions are not made within 30 days of the due date, the membership will be inactivated, and any needs will not be shareable. See "Participation through Contributions" for more information.

## 2. Proper Submission of Medical Needs to Knew Health

For Knew Health to share in a member's medical expenses, the member is responsible for submitting a complete and correct Needs Request within six months of the treatment date to Knew Health. This process is outlined in the section titled "Submission of Medical Needs."

## 3. Trust & Accountability

Knew Health community members are expected to act with honor and integrity. Members should not falsify medical needs or medical records or use deceptive practices. If a member abuses the trust of Knew Health and its members, their membership may be revoked.

14

**Appx XVI**
**A-796**

# How Needs are Shared

This section explains how the shareable amount of a member's medical expenses will be determined.

Medical needs are submitted on a per member, per incident basis. Medical needs may be injuries or illnesses that result in medical expenses. These medical expenses may be incurred by receiving medically necessary treatment from licensed medical professionals and facilities, such as physicians, emergency rooms, and hospital facilities.

When a member has a medical expense to be shared, the member must submit original, itemized bills for the medical expense within six months of treatment. Bills submitted more than six months after the service date of treatment will not be shareable. There is no lifetime limit on the number of conditions or the total dollar amount that may be shared.

## 1. Determination of a Need

Expenses related to the same medical condition, whether expenses for a single incident or separate incidents, will be shared as one need. The related expenses will accumulate toward the total need amount.

## 2. Initial Unshareable Amount (IUA)

The initial unshareable amount, or IUA, is the amount that a member will pay before the Knew Health community shares in eligible medical expenses. The IUA is also known as your personal responsibility. Knew Health has five primary levels of personal responsibility: $500, $1,000, $1500, $2,500, and $5,000. The lower your personal responsibility (or IUA), the higher your monthly contribution will be.

All qualifying medical expenses submitted after the IUA is met are shareable with the Knew Health community at one hundred percent. There is no annual or lifetime limit. You will not need to pay the IUA for a single need again until you are symptom free for 12 months. Additionally, you will not be responsible for more than three IUAs in a rolling 12-month period.

## 3. Changing your IUA

Members may choose to change their IUA once per membership year. If an IUA is lowered, a 60-day waiting period will apply to all needs other than those resulting from an accident.

15

Resp. Appx p. 655

## 4. Maximum Shareable Amount

There is no annual or lifetime maximum shareable amount for any member or membership household. Knew Health has a systematic way to handle large needs and has budgeted to address large needs.

## 5. Multiple Needs in a 12-Month Period

Member households that experience multiple needs will be responsible for up to three IUAs within a rolling 12-month period. After a member has paid three IUAs in a twelve-month period, any additional shareable needs of $500 or more will be shared with the Knew Health community at one hundred percent.

## 6. Insurance Companies & Government Entities

Insurance companies and government entities are primarily responsible for the payment of a member's medical expenses. Members who are eligible for benefits through either insurance or government assistance must contact the Knew Health Needs team before submitting their medical need.

## 7. Active Membership

To participate in medical cost sharing with the Knew Health community, a membership must be active. Membership is considered active when the member has paid their monthly contributions on time and is in good standing with Knew Health.

For a medical need to be shared, the membership must be active during the date(s) of service, when medical bills are received, and at the time the IUA is paid. If a membership deactivates before the determination of sharing is made, the bills will not be shared with the community. Any pre-existing condition limitations are applied based on the first date of active membership.

## 8. Late Fees and Interest

Any late payment fees or interest charges that may accrue to medical bills before the member meets their IUA are the member's responsibility—they are not shareable.

Additionally, any late payment fees or interest charges caused by a member's delay in providing necessary documentation to Knew Health are not shareable.

16

Resp. Appx. p. 654

## 9. Appeals

If a member believes that a limitation was incorrectly placed on member sharing, an appeal may be submitted. Members may submit an appeal and provide supporting medical evidence to have the membership limitation removed. All appeals are reviewed by a committee that includes at least one Knew Health board member.

To file an appeal, send the medical evidence, an explanation of why you feel that the limitation was placed unfairly, and any supporting documentation to needs@knewhealth.com.

# Medical Conditions Existing Prior to Membership

To keep membership contributions low for all members, Knew Health implements a waiting period for sharing of medical conditions that exist prior to enrollment in a Knew Health membership. This section defines medical conditions prior to membership and outlines the sharing limitations.

## 1. Definition: 24 Months Symptom and Treatment Free

Needs that arise from conditions that existed prior to membership are only shareable if the condition was regarded as cured and did not require treatment or present symptoms for 24 months prior to the effective date of membership.

Any diagnosed illness or injury for which a person has been examined, taken medication, had symptoms, or received medical treatment within 24 months prior to the effective date of membership is considered a pre-existing condition. For more information, please see the definition of pre-existing condition listed under "defined terms."

## 2. Exceptions for High Blood Pressure, High Cholesterol, and Diabetes

High blood pressure, high cholesterol, and diabetes (types 1 and 2) will not be considered preexisting conditions as long as the member has not been hospitalized for the condition in the 12 months prior to enrollment and is able to control it through medication and/or diet.

## 3. Exceptions for Other Medical Conditions

Knew Health recognizes that each member's situation is different. Knew Health reserves the right to make exceptions for certain medical conditions on a case-by-case basis. Knew Health makes decisions in service to the community as a whole.

17

Resp. Appx p. 655

## 4. Pre-Existing Condition Phase-In Period

Pre-existing conditions have a phase-in period wherein sharing is limited. Starting from the initial enrollment date, members have a one-year waiting period before pre-existing conditions are shareable. After the first year, pre-existing needs are eligible for sharing on a limited basis, with the amount increasing each membership year. Members are never required to pay a second IUA for the same need, including pre-existing conditions.

Knew Health attempts to negotiate all medical bills received. Even if a pre-existing condition is not shareable, members may still receive discounts for their services through negotiation.

**Shareable amounts for pre-existing conditions:**

• Year One: $0 (waiting period)
• Year Two: $25,000 maximum per need
• Year Three: $50,000 maximum per need
• Year Four: $125,000 maximum per need

After year four of membership, expenses related to pre-existing conditions will remain shareable at a maximum of $125,000 in a 12-month rolling period and resetting each membership year.

# Limitations on Sharing

Member needs not associated with a prior medical condition are generally shareable. The following list reflects limitations on sharing. All shareable expenses are subject to the member's IUA.

## 1. Abortion

Expenses for the abortion of a living, unborn baby are not shareable.

## 2. ADHD, ADHS, and SPD Treatment

Expenses for prescriptions related to ADHD, ADHS, and SPD are not shareable.

18

**Appx. XVI**
**A-800**

## 3. Allergy Treatments

Allergy testing and medication is excluded from sharing. Needs that arise out of non-seasonal allergies, such as an emergency room visit for an allergic reaction, are considered shareable.

## 4. Alternative Medical Practices

Alternative medical treatments may be shared with the Knew Health community with prior written approval from Knew Health. Alternative medical treatments without written approval may not be shareable. To be considered a viable alternative to a traditional treatment plan, these treatments must be considered safe and effective. A member is also required to demonstrate the proposed value of the alternative treatment.

**What is needed for Knew Health to consider an alternative medical need?**

• Explanation of why the alternative medical need was selected
• Explanation of why the alternative medical need should be shared
• Doctor notes on current condition (Knew Health can help obtain doctor notes)
• Estimated costs (Knew Health can help obtain the estimated costs, if appropriate)

Knew Health considers alternative medical treatment plans on an individual basis and may put a cap on visits or shareable costs depending on the service.

## 5. Alcohol and Drug Abuse Treatment

Treatment for alcohol abuse, substance abuse, or chemical dependency is shareable up to $3,000 per member.

## 6. Ambulance Transports

Ambulance transports are shareable as part of a need when they are required in relation to a specific shareable illness or injury.

## 7. Audiological

Audiological needs to correct hearing loss are shareable. Expenses related to hearing aids are not shareable.

**Appx. XVI**
**A-801**

# 8. Automobile Accidents

Needs arising from an automobile accident are only shareable when a third party or insurance entity is not liable. If the member's medical need is being considered, or should be considered, by a third party or insurance entity, the need is not shareable until Knew Health receives documentation to reflect a lack of liability or partial payment.

# 9. Cataract Surgery

Cataract surgery is treated as a pre-existing condition and subject to a one-year waiting period before it is shareable. Each eye is considered a separate need and subject to an individual IUA.

# 10. Chiropractic

Services related to the treatment of a specific musculoskeletal injury or disease are shareable for up to 25 office visits per need for up to 120 days. All other chiropractic services will be treated as alternative medical practices and are subject to the limitations as outlined.

# 11. Chronic Pain Therapy

Services related to chronic pain therapy have the same limitations as an alternative medical practice. They are shareable as part of a related eligible need, and members must get prior approval from Knew Health for the number and type of sessions. See the limitations on injections for more information.

# 12. Cosmetic Surgery

Expenses related to cosmetic surgery are shareable only for disfiguration due to a shareable injury or illness.

# 13. Dental

Knew Health may share in dental-related expenses that are deemed medical.

# 14. Diabetic Medication & Supplies

Any medical expenses related to supplies, testing, medication, or other implements used to treat insulin-dependent diabetes (type 1) are not shareable.

20

**Appx XVI**
**A-802**

## 15. Emergency Visits

Emergency room visits are generally shareable separately or in conjunction with an eligible medical need related to an illness, injury, or accident. The first ER visit for a medical condition is treated as a normal need. Each additional visit related to the same condition requires the member to take on a personal responsibility of $500 in addition to the member's IUA.

Members with nonemergency needs should seek out other treatment options such as doctor visits, telemedicine, urgent care clinics, or other appropriate care. Seeking proper nonemergency care reduces emergency room visits and the financial strain on the entire community.

## 16. Fertility

Expenses related to fertility evaluations and treatments are not shareable.

## 17. Genetic Mutation

Needs resulting from a genetic mutation that existed prior to membership are subject to the same limitations as other pre-existing conditions.

If the member did not receive a diagnosis, require treatment, present symptoms, or take medication for the genetic mutation in the 24 months prior to membership, needs related to the condition are considered shareable without pre-existing condition limitations.

## 18. Home Healthcare

Home healthcare expenses are shareable when related to an accident or injury and when the care has been prescribed by a licensed physician. Sharing of home healthcare expenses is limited to 30 days and $5,000.

## 19. Hospice Care

Hospice care is shareable for 90-day periods when ordered by and under the care of a licensed care professional and upon physician approval or certification of terminal illness.

21

## 20. Hospitalization

Hospitalization is shareable at a semi-private room rate. If a medical provider prescribes ICU or quarantine, those expenses are also shareable.

## 21. Hyperbaric Therapy

Inpatient or outpatient hyperbaric therapy may be shareable for the treatment of a specific illness or injury. Outpatient hyperbaric therapy is shareable for up to 35 therapy sessions.

## 22. Injections

Injections related to pain management for a shareable need are shareable up to $5,000. Hormone therapy injections related to a shareable need are shareable up to $3,000. Injections related to gender transitioning or sex reassignment therapy are not shareable.

## 23. Injuries Obtained from Certain Acts

Injuries or illnesses resulting from participation in a riot, criminal act, euthanasia, assisted suicide, or other such acts are not shareable.

## 24. Laboratory Tests and Checkups

Laboratory tests and checkups are shareable as part of an eligible need and prescribed by a licensed medical provider.

## 25. Long-Term Care and Skilled Nursing

Long-term care and skilled nursing are shareable when prescribed by a licensed medical provider for recovery from a shareable injury or illness. Sharing for these services is limited to 90 days per medical need.

## 26. Medical Equipment

Medical equipment, including durable medical equipment (DME), is shareable if it is prescribed by a licensed medical provider and if it is related to a shareable need.

22

## 27. Medical Supplies

Medical supplies that directly aid in the treatment of, or recovery from, a shareable need are generally shareable for up to 120 days from the treatment start date as prescribed by a licensed medical provider. Medical supply costs must be over $100 per item to be shared. Knew Health will share the retail costs (or fair costs when applicable) and, thus, encourages members to use alternative vendors such as local pharmacies or medical supply stores.

## 28. Mental Health

Expenses related to medications or other treatment for any mental health illness or condition are not shareable. Mental health conditions may include anxiety, depression, mental illnesses, and other psychological conditions.

## 29. Naturopathic

Naturopathic care may be shareable pending written approval from Knew Health. Any expenses incurred prior to receiving written approval are not shareable.

## 30. Newborn Care

Routine care for a newborn without complications is included with an eligible maternity need.

NICU care and other complications are treated as a separate need of the baby. Expenses related to circumcision are excluded from sharing.

## 31. Nutritionists and Dieticians

Expenses related to nutritionist and dietician services are not shareable unless prescribed by a licensed medical provider. Knew Health must provide approval for nutritionist and dietician services prior to sharing.

## 32. Occupational Therapy

Occupational therapy is shareable for inpatient treatment and up to 35 outpatient sessions per need, up to $7,500.

23

## 33. Organ Transplants

Organ transplants are shareable; however, they are subject to limitations for conditions existing prior to membership.

## 34. Physical Therapy

Physical therapy is shareable for inpatient treatment and up to 35 outpatient sessions per need, up to $7,500.

## 35. Prescriptions

Prescriptions for medications related to an eligible need and that are billed by a provider are considered shareable.

Prescriptions filled at a pharmacy will be considered for sharing under the following conditions: prior approval is given by Knew Health, the prescription is related to the treatment of a shareable need, and prescription costs accumulate to $500 monthly. Sharing for these prescriptions is limited to 12 months.

Other prescription costs are generally not shareable.

## 36. Preventive Services

Preventive services are not subject to the IUA.

## 37. Sleep Apnea

Sleep apnea equipment and testing is not shareable with the Knew Health community.

## 38. Speech Therapy

Speech therapy in relation to a shareable illness, injury, or accident is shareable for 35 outpatient visits per condition, up to $3,000. Speech therapy for conditions such as speech delays or learning impairments not caused by injury or accident is not shareable.

24

## 39. Sports

Knew Health may share medical expenses related to sporting activities.

Injuries or illnesses resulting from participation in professional sports are not shareable.

Injuries or illnesses resulting from recreational karate, jujitsu, taekwondo, or other combat sports are shareable when the member has not been paid to compete.

## 40. Sterilization

Elective sterilization, such as tubal ligation and vasectomy, is not shareable.

## 41. Suicide and Attempted Suicide

In the event of a dependent suicide, financial assistance can slightly ease the burden on our members. For this reason, Knew Health will share in expenses related to the suicide or attempted suicide of an adolescent up to age 18, up to $25,000 and after a one-year waiting period of continuous membership.

## 42. Surrogacy

Expenses related to a surrogate pregnancy, whether or not the surrogate is a member, are not shareable.

## 43. Therapeutic Massage Therapy

Expenses related to therapeutic massage are shareable if the therapy is related to an eligible need and prescribed by a licensed medical provider. Massage therapy is shareable for 25 sessions per need, up to $3,000.

## 44. Tobacco Use over 50

Medical cost sharing for the needs of tobacco users 50 years of age and older is limited to $50,000 for each of the following four disease categories:

• Stroke
• Cancer
• Heart conditions
• Chronic obstructive pulmonary disease (COPD)

25

## 45. Vision

Knew Health may share in vision-related expenses that are deemed medical.

## 46. Weight Reduction

Expenses related to weight reduction are shareable if prescribed by a licensed medical provider and approved by Knew Health—up to $3,000 per need.

# Maternity Needs

As a general rule, maternity needs are shareable and are treated like any other medical need.

## 1. General

As with any other medical need, expectant mothers pay a single IUA for all expenses related to their maternity need. Shareable expenses may be related to miscarriage, prenatal care, postnatal care, and delivery. STD screenings prescribed by a licensed practitioner as part of routine prenatal care are shareable as part of the maternity need. Maternity needs requests must be submitted within 30 days from the date the member's pregnancy is verified.

## 2. Separate Needs

Any need of the baby, whether occurring before or after birth, is separate from the mother's maternity need. Expenses for any pregnancy or birth-related complications of the mother will be shared as part of the maternity need.

## 3. Early Sharing Requests

A maternity care provider may reduce normal charges if a member prepays some or all of the bill. If this is the case, Knew Health will consider sharing the maternity need prior to delivery. To be considered for early sharing, the member must submit an estimate from the provider with the needs request form.

26

Resp. Appx. p. 664

## 4. Home Births

Home births typically incur fewer expenses. If the costs are significantly lower for a home birth than for a hospital birth and the member is under the care of a licensed care provider, Knew Health may partially waive the IUA for the maternity need.

## 5. Pregnancy Prior to Membership

Pregnancy that begins prior to membership, is not shareable. A newborn conceived prior to membership must be enrolled in Knew Health by the parents within 30 days of the child's birth.

For any pregnancy that is not shared as an eligible maternity need with Knew Health, any complications or conditions present at the time of birth are considered pre-existing and are subject to the applicable waiting periods for sharing.

## 6. Waiting Period

Pregnancy is considered a pre-existing condition if the pregnancy begins within the first 60 days of the membership.

## 7. Premature Birth

The baby's needs are fully shareable, even if the baby is born prematurely. Any services not included in a standard maternity need would be considered a separate need of the baby.

# Submission of Medical Needs

Knew Health strives to share in its members' medical needs in a timely, accurate manner. To do this, it is crucial for members to submit medical needs correctly and include all required documentation.

## 1. Submitting a Needs Request

Needs requests should be submitted through the Knew Health Member Portal. Needs requests should be submitted as soon as possible. Most non-emergency needs requests, such as surgical procedures, should be submitted prior to the date of service. For any help with this process, members may contact Knew Health directly during business hours.

27

## 2. Required Documentation

Needs requests must contain all required documentation, including but not limited to the following:

• Itemized bills
• Proof of IUA payment
• Medical records and other additional documents

## 3. Time Limit for Providing Documentation

Original, itemized bills should be submitted promptly to Knew Health along with the needs request form in order for Knew Health to process your need as soon as possible. In order to be shared, bills and needs requests must be submitted within six months of the date of service.

## 4. Meeting the IUA

Needs are only shareable with Knew Health after the member has met their IUA. Members should provide documentation to Knew Health of all payments that may contribute toward the member's IUA. The IUA must be paid within six months of the needs request submission or bills may become ineligible for sharing.

## 5. Negotiating Medical Bills

Knew Health prefers to pay providers quickly and negotiate the best rates for healthcare services. This helps Knew Health keep rates low for members.

Members should inform Knew Health about any potential cash-pay discounts and consult with the Needs team prior to signing any payment arrangements. Knew Health is happy to participate in cost negotiations for its members.

# End of Life Assistance

If a member, or a member's dependent, dies after one year of uninterrupted membership, financial assistance will be provided to the surviving family. The member community will provide assistance upon receipt of a copy of the death certificate.

28

Financial assistance will be provided to the surviving family as follows:

• $10,000 upon the death of a primary member
• $10,000 upon the death of a dependent spouse
• $2,500 upon the death of a dependent child

# Appendix A: Defined Terms

## 1. Annual limit

The maximum amount shared for eligible needs per participating member per year. Knew Health does not have annual or lifetime sharing limits for our members unless specifically stated in the Membership Guidelines.

## 2. Application date

The date Knew Health receives a complete membership application.

## 3. Contribution list

A list of members who are being billed by payroll deduction through a company opposed in lieu of direct billing from Knew Health.

## 4. Date of Service

The day medical services were rendered on behalf of a participating member.

## 5. Dependent

The head of household's spouse or unmarried child(ren) under the age of 26, who are the head of household's dependent by birth, legal adoption, or marriage, and who are participating under the same combined membership. Unmarried children under 26 years of age may participate in the membership as a dependent.

29

# 6. Effective date

The date a person's membership begins.

# 7. Eligible need

A medical need that qualifies for sharing via the contributions of Knew Health members.

# 8. Head of household

The oldest participating member in the household.

# 9. Household membership

One or more family members participating under the same membership.

# 10. Healthcare sharing

A membership-based, non-insurance arrangement established for the purpose of sharing legitimate healthcare expenses between members.

# 11. Inactive member

A contributor, and contributor's dependents if applicable, who has/have not submitted monthly contributions in the manner established by the Member Guidelines. An inactive member is not eligible for sharing.

# 12. Ineligible need

A need disqualified from voluntary sharing of contributions from member contributions due to a policy set forth in the Member Guidelines.

30

## 13. Initial Unshareable Amount

The specified financial amount that members are required to bear on their own prior to any amount that may be eligible for sharing.

## 14. Licensed medical professional

An individual who has successfully completed a prescribed program of study in a variety of health fields and who has obtained a license or certificate indicating his or her competence to practice in that field (MD, DO, ND, NP, PT, PA, Chiropractor etc.)

## 15. Lifetime limit

The maximum amount shared for eligible needs over the course of an individual member's lifetime of membership.

## 16. Maternity Need

A need request that must be submitted once a member becomes pregnant within 30 days of confirmation of pregnancy from a licensed medical professional.

## 17. Maximum shareable amount

The maximum dollar amount (limit) that can be shared for any one need. Certain medical needs have a maximum shareable amount as described in the Guidelines.

## 18. Medically necessary

A service, procedure, or medication necessary to restore or maintain physical function and that is provided in the most cost-effective setting consistent with the member's condition. The fact that a provider may prescribe, administer, or recommend services or care does not make it medically necessary. This applies even if it is not listed as a membership limitation, or in the Member Guidelines. To help determine medical necessity, Knew Health may request medical records and information from licensed medical professionals.

## 19. Member(s)

A person or people (or dependent thereof) who has agreed in writing to abide by the requirements of Knew Health and is thereby eligible to participate in the sharing of medical needs with other members in accordance with the Member Guidelines and membership type.

31

Resp. Appx. p. 669

## 20. Membership

This term applies to the collective body of all active, participating members of Knew Health.

## 21. Membership cancellation request

A request by a member to Knew Health requesting that their membership be cancelled. The request must include the reason for cancellation and the requested month in which the cancellation of the membership is to be effective. Knew Health requires 15 day notice prior to your payment draft date. Knew Health does not prorate cancellations or gift refunds. Cancellations become effective on the last day of your monthly billing anniversary following the timely receipt by Knew Health of your membership cancellation request.

## 22. Membership commitment

The required principles and ongoing behavioral code attested to by members as required for membership.

## 23. Member responsibility amounts

Amounts needed to be paid by the member for medical costs that are not sharable with the Knew Health community.

## 24. Membership update

A communication from the member to Knew Health providing any changes to the details of their membership information (i.e. change of address, phone number, etc.) or requesting that their membership be changed. The change request or update may take up to three business days to complete. Once a representative of Knew Health approves the requested changes, the approved changes may go into effect on the monthly membership anniversary.

## 25. Membership limitation

A specified medical condition for which medical needs arising from or associated with the condition are ineligible for reimbursement from the Shared Fund. An associated condition is one that is caused directly and primarily by the medical condition that is specifically ineligible. The membership limitation will be issued during the application process and may be subject to medical record review. Membership limitations (excluding cancer) do not apply to office visits/urgent care.

32

Resp. Appx. p. 675

## 26. Membership options

A variety of sharing options are available with different initial unshareable amounts and sharing limits, as selected in writing on the membership application or enrollment portal and approved by Knew Health.

## 27. Membership withdrawal

When a membership has been or will be cancelled due to the submission of a Membership Cancellation Request, a violation of the Knew Health's Principles of Membership, or non-receipt of a voluntary monthly contribution or annual membership fee for more than 10 days past the date such payment was due. Such cancellation of membership is referred to as membership withdrawal.

## 28. Monthly contributions

Monetary contributions given voluntarily and placed in the care of Knew Health by a member to maintain active membership and to be disbursed for to the eligible needs of its members in accordance with the Member Guidelines

## 29. Needs request

A request that is required to process medical needs for accidents, injuries, or medical conditions that result in medical costs. Need requests can be submitted to needs@knewhealth.com or in the Knew Health Member Portal. The needs request must be submitted to Knew Health within six (6) months of the need to be eligible for sharing.

## 30. Office visit

Sick visits, wellness visits, specialists, and urgent care are generally considered to be office visits. The medical bill must include an office visit CPT code for the need to qualify as an office visit. Qualifications for sharing eligibility include exclusion of prior medical conditions and meeting your initial unshareable amount (IUA).

## 31. Membership administration

A collaborative process of planning, evaluating, facilitating, coordinating, and advocating for options and services to meet a participating Member's Eligible Needs through available resources to promote quality, cost-effective results.

33

## 32. Pre-existing condition

Any illness or accident for which a person has been diagnosed, received medical treatment, been examined, taken medication, or had symptoms for 24 months prior to the effective date. For information on sharing for pre-existing conditions, see the section of the Member Guidelines titled "Conditions Existing Prior to Membership."

## 33. Proration

If shareable needs are ever significantly greater than shares available in any given month, Knew Health may prorate the needs amount requested for medical expenses. This involves an across the board percentage reduction of needs payments but does not necessarily mean that all member needs will not be met in that month.

## 34. Shareable amount

The amount of the need request that remains after the member's initial unshareable amount has been satisfied and falls within the guidelines for sharing within the membership.

## 35. Explanation of benefits (EOB)

Correspondence that is delivered to the participating members and their providers once medical needs have been processed, are pending, or have been rejected. The Sharing Summary will state their member responsibility amount as well as any amounts shared by the Shared Fund on the member's behalf.

## 36. Usual reasonable and customary costs (URC)

The general cost of medical services in a geographic area, as determined by Knew Health, based on what providers in the area usually charge for the same or a similar medical service.

## 37. Unshareable amount(s)

A medical expense incurred by a member that is not shareable for one or more of the following reasons: a member's violation of the Knew Health's Principles of Membership, non-current membership status, or any other condition or requirement that is excluded by the Member Guidelines.

34