No. 25-1035

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ALLIANCE OF HEALTH CARE SHARING MINISTRIES
*Plaintiff-Appellant*

v.

MICHAEL CONWAY,
in his official capacity as
Commissioner of the Colorado Division of Insurance
*Defendant-Appellee*

Appeal from the United States District Court for the District of Colorado,
No. 1:24-cv-01386-GPG-STV (Hon. Gordon Gallagher)

**APPENDIX VOL XXI - Pages A-1042 - A-1077**

Date: March 21, 2025

Michael F. Murray
Paul Hastings LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@Paulhastings.Com
William E. Mahoney
Paul Hastings LLP
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@Paulhastings.Com

*Counsel For Plaintiff Alliance of
Health Care Sharing Ministries*

| ECF NO. | *DESCRIPTION* | Appx. Page No. |
|---------|---------------|----------------|
| | **Appendix Vol. I, Pages 1-140** | |
| - | District Court Docket Sheet | A-1 |
| 8-1 | Ex. A - Declaration of Rob Waldo (May 17, 2024) | A-9 |
| 8-2 | Ex. A-1 – Samaritan Bylaws | A-19 |
| 8-3 | Ex. A-2 - Samaritan Guidelines | A-44 |
| 8-4 | Ex. A-3 - Samaritan Membership Application | A-94 |
| 8-5 | Ex. B - Declaration of Katy Talento | A-100 |
| 32 | Amended Complaint of Alliance of Health Care Sharing Ministries (July 1, 2024) | A-109 |
| | **Appendix Vol. II, Pages 141-179** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1-1.6 (September 3, 2024) | A-141 |
| | **Appendix Vol. III, Pages 180-223** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.7-1.22 (September 3, 2024) | A-180 |
| | **Appendix Vol. IV, Pages 224-261** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.23-1.28 (September 3, 2024) | A-224 |
| | **Appendix Vol. V, Pages 262-307** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.29-1.33 (September 3, 2024) | A-262 |

| | **Appendix Vol. VI, Pages 308-331** | |
|---|---|---|
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.34-1.36 (September 3, 2024) | A-308 |
| | **Appendix Vol. VII, Pages 332-350** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-332 |
| | **Appendix Vol. VIII, Pages 351-373** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.37-1.39 (September 3, 2024) | A-351 |
| | **Appendix Vol. IX, Pages 374-424** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.40 (September 3, 2024) | A-374 |
| | **Appendix Vol. X, Pages 425-478** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.40-1.41 (September 3, 2024) | A-425 |
| | **Appendix Vol. XI, Pages 479-541** | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.41-1.42 (September 3, 2024) | A-479 |
| | **Appendix Vol. XII, Pages 542-573** | |

| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.43-1.54 (September 3, 2024) | A-542 |
|---|---|---|
| **Appendix Vol. XIII, Pages 574-612** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.54-1.59 (September 3, 2024) | A-574 |
| **Appendix Vol. XIV Pages 613-682** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.6-1.6 (September 3, 2024) | A-613 |
| **Appendix Vol. XV, Pages 683-767** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 1.61-1.64 (September 3, 2024) | A-683 |
| **Appendix Vol. XVI, Pages 768-816** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.0-2.3 (September 3, 2024) | A-768 |
| **Appendix Vol. XVII, Pages 817-867** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.3-2.4 (September 3, 2024) | A-817 |
| **Appendix Vol. XVIII, Pages 868-933** | | |
| 46-1 | Appendix of Exhibits to Response to Motion for Preliminary Injunction, Exhibits 2.5-7 (September 3, 2024) | A-868 |

| | **Appendix Vol. XIX, Pages 934-1002** | |
|---|---|---|
| 52.1 | Appendix to Reply to Motion for Preliminary Injunction (September 17, 2024) | A-934 |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-949 |
| | **Appendix Vol. XX, Pages 1003-1041** | |
| 54 | Order Denying the Alliance's Motion for a Preliminary Injunction (January 13, 2025) | A-1003 |
| 55 | Notice of Appeal as to Order on Motion for Preliminary Injunction (January 27, 2025) | A-1015 |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1017 |
| | **Appendix Vol. XXI, Pages 1042-1077** | |
| 58-1 | Motion for Order to Grant Injunction Pending Appeal (January 28, 2025) | A-1042 |
| 60 | Order Denying Motion for Injunction Pending Appeal (February 3, 2025) | A-1069 |

# EXHIBIT B



**STATE OF COLORADO**

Russell - DORA, Leilani <leilani.russell@state.co.us>

---

## Fwd: 1269 Amendment round up!
1 message

---

**Judy - DORA, Debra** <debra.judy@state.co.us>                Mon, Aug 1, 2022 at 1:08 PM
To: "Russell - DORA, Leilani" <leilani.russell@state.co.us>

Leilani

See below on the question raised by the dental folks and resulted in the tweaks to other consumer paying arrangements

Debra Judy
Division of Insurance
*she / her / hers*



**COLORADO**
Department of
Regulatory Agencies
Division of Insurance

P 303.894.2066 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
debra.judy@state.co.us | www.dora.colorado.gov/insurance

♻ Please consider the environment before printing this email.

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.

---------- Forwarded message ---------
From: **Isabel Cruz** <icruz@cohealthinitiative.org>
Date: Thu, Apr 21, 2022 at 9:18 AM
Subject: Fwd: 1269 Amendment round up!
To: Debra Judy - DORA <debra.judy@state.co.us>, Diana Protopapa <diana@frontlinepublicaffairs.com>, Bethany Pray <bpray@cclponline.org>, Adam Fox <afox@cohealthinitiative.org>

---------- Forwarded message ---------
From: **Christy Chase** <christy.chase@state.co.us>
Date: Thu, Apr 21, 2022 at 9:09 AM
Subject: Re: 1269 Amendment round up!
To: Isabel Cruz <icruz@cohealthinitiative.org>
Cc: Susan Lontine <susan.lontine.hd1@gmail.com>

Amendments are attached and I will be delivering copies to Rep. Lontine shortly. ***All of these amendments amend the committee report so will have to be moved to the report BEFORE the report is adopted***.

L.021 = changes language about payment or coverage to "reimbursement"
L.022 = My technical cleanups to the committee report, including moving "in this state" to a better location in the sentence in a few instances, fixing the error in the enforcement section, and correcting some grammar errors
L.025 = Adds exception for other consumer plans as determind by the commissioner by rule
L.026 = removes annual report to the GA

---

Christy Chase, Assistant Director & Team Leader
Office of Legislative Legal Services | Colorado General Assembly
Office: 303.866.2008 | Cell: 303.981.4008 | christy.chase@state.co.us

| | |
|---|---|
| From: | "Isabel Cruz" <icruz@cohealthinitiative.org> |
| To: | "Christy Chase" <christy.chase@state.co.us> |
| Date: | 04/20/2022 02:31 PM |
| Subject: | Re: 1269 Amendment round up! |

---

I think they're concerned about dental charitable care (which I'm not sure falls under it anyway?), so I would say the second option that includes rulemaking authority there. Does that make sense?

I just reached out to Rep. Lontine and she is fine to split them--can we do it in two? Thanks so much!

On Wed, Apr 20, 2022 at 2:15 PM Christy Chase <christy.chase@state.co.us> wrote:
so is the exception to specify "consumer payment plans offered by a provider to a patient or the patient's responsible party" or do you want it to include "(b) Other consumer payment arrangements identified by the Commissioner by rule, including but not limited to consumer payment plans offered directly between a provider and patient (or patient's responsible party)."?

Also - the amendments exceed a page, which means they will need to be delivered to the House desk by 4 pm today. Is that OK with Rep. Lontine? Otherwise, I will need to split the amendments up so. Please let me know ASAP.

Thanks,
Christy

---

Christy Chase, Assistant Director & Team Leader
Office of Legislative Legal Services | Colorado General Assembly
Office: 303.866.2008 | Cell: 303.981.4008 | christy.chase@state.co.us
*Note: I am occasionally working remotely and can be reached at the cell number and email listed above. Thanks, and stay safe and well!*

| | |
|---|---|
| From: | "Isabel Cruz" <icruz@cohealthinitiative.org> |
| To: | "Christy Chase" <christy.chase@state.co.us> |
| Date: | 04/20/2022 01:49 PM |
| Subject: | Re: 1269 Amendment round up! |

---

Thanks Christy! For Item 2, that tweak sounds good to me. For item three, that is a new one, I'm copying the email exchange outlining the concern below--let me know if that helps, happy to talk through it as well. Essentially we have had a few obscure payment arrangements that are not HCSAs coming out of the woodwork with concerns that they'll be caught in the net and are trying to exclude them without defining hcsas in statute.

Doing the potential general assembly reporting amendment separately sounds perfect, Rep.

DOI_014674

Lontine just confirmed that she wants to run it!

Let me know if you need anything else on my end, thanks again :)

Best,
Isabel


Email exchange:
Jumping in here - Isabel, what if we simply left it at Other consumer payment arrangements identified by the Commissioner by rule?
Debra Judy
Division of Insurance
she/her/hers



COLORADO
Department of
Regulatory Agencies
Division of Insurance

P 303.894.2066 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
debra.judy@state.co.us | www.dora.colorado.gov/insurance
🌿 Please consider the environment before printing this email.

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.




On Fri, Apr 15, 2022 at 9:53 AM Harris - DORA, Kate <kate.harris@state.co.us> wrote:
Hi Isabel,

We have some concerns with ii: (ii) Consumer payments made by non-profit, charitable foundations directly to individual healthcare providers to partially or fully offset individual patient costs for a specific episode of care.

As we think it could be read to include HCSAs. However, we're okay with the language above that.

Kate

On Thu, Apr 14, 2022 at 11:24 AM Isabel Cruz <icruz@cohealthinitiative.org> wrote:
Let me know what you think about this concern when you get the chance!

---------- Forwarded message ---------
From: Diana Protopapa <diana@frontlinepublicaffairs.com>
Date: Thu, Apr 14, 2022 at 6:17 AM
Subject: FW: 1269 Clarifications - Dental Charitable Care
To: Isabel Cruz <icruz@cohealthinitiative.org>, Adam Fox <afox@cohealthinitiative.org>

Hi,
See below. Jennifer brought this up to me last week; I don't believe that's the intent of our bill but take a look and let me know what you think.

Diana

Diana Protopapa
Partner
Frontline Public Affairs
1410 Grant Street, B104
Denver, CO 80203
303-810-3708
Diana@frontlinepublicaffairs.com

**From:** Jennifer Goodrum <jbgoodrum@michaelbeststrategies.com>
**Date:** Wednesday, April 13, 2022 at 5:34 PM
**To:** Diana Protopapa <diana@frontlinepublicaffairs.com>
**Subject:** 1269 Clarifications - Dental Charitable Care

Hi Diana,

Following up on our conversation earlier with some ideas on HB 1269.

As I had shared, the dentists recently asked a question on HB 1269 about whether charitable entities would be considered to offer "a plan or arrangement" to facilitate payment for healthcare services (and fall under the provisions of the bill pursuant to page 2, lines 2-9 of the preamended bill draft). There are a number of charitable organizations (501c3s) that directly pay a provider either in part or in full to provide dental care services in their offices for patient populations that don't often have access to care (including seniors, patients with disabilities, lower income patients, etc.). These type of payments are provided through entities like the Dental Lifeline Network, KIND, Delta Dental Foundation, Project SMILES, etc. I'm not sure if these kinds of payment arrangements exist in medical care or other healthcare segments, but they are certainly common in dental (perhaps due to some of the coverage gaps inherent to the dental insurance plan structures). There's also in-office financing plans (some offered by third parties that might be regulated and some directly by providers) that they wanted to make sure aren't accidentally looped in to the broad reporting provisions under this bill – as long as those payment arrangements are between a regulated provider and an individual patient/responsible party (parent) directly.

The idea the dentists had to address this would be language along the lines of the following:

(5) THIS SECTION DOES NOT APPLY TO:
(a) DIRECT PRIMARY CARE AGREEMENTS AS DEFINED IN ARTICLE 23 OF TITLE 6. or
(b) Other consumer payment arrangements identified by the Commissioner by rule, including but not limited to
(i) Consumer payment plans offered directly between a provider and patient (or patient's responsible party).
(ii) Consumer payments made by non-profit, charitable foundations directly to individual healthcare providers to partially or fully offset individual patient costs for a specific episode of care.

DOI_014676

Trying to be mindful of not creating any loopholes for the health sharing plans you guys are trying to address through this bill, so we are open to other language options that helps better thread that needle – particularly around defining the type of charitable entities that are not included. We contemplated the DOI rules route given that DOI seems to be a trusted partner in this effort and we thought that rules might provide a little flexibility to further define who falls under this section (to either avoid unintentional burden on the 'good guys' and avoid any loopholes for the offenders). But happy to skip the rules approach if you guys prefer to tackle the details in statute. A drafter might be helpful in figuring out how to thread the needle on the specific terminology.

Dentists only goal here is to try to make sure we don't inadvertently limit or discourage charitable entities and flexible payment schedules that help expand access to care by imposing a lot of additional reporting on these entities.

I'd welcome your thoughts on approaches here.

Thanks for being willing to continue this conversation,
Jennifer

## Jennifer B. Goodrum
Principal
Pronouns: She/Her/Hers/Herself
**M** 303.999.6553
jbgoodrum@michaelbeststrategies.com  |  bio



Michael Best Strategies LLC

On Wed, Apr 20, 2022 at 1:25 PM Christy Chase <christy.chase@state.co.us> wrote:
Hi Isabel,
Thanks for the email and list of the outstanding amendments for 2nd reading.

Item #1 - OK
Item #2 - should we also tweak the language in the introduced bill on page 3, lines 4-5, which require a person that offers a plan or arrangement to facilitate "payment of or to cover" health-care costs or services? I am thinking it should be facilitate "payment or reimbursement of health-care costs". OK?
Item #3 - I don't recall this one - did we discuss it? Please provide more info as I am not sure what this is getting at
Item #4 - I can prepare that as a separate amendment.

So, unless you tell me otherwise, I will combine #1-3, plus the technical amendments I mentioned previously, into a single amendment, which will have to be an amendment to the committee report. Then I will prepare #4 as a separate amendment in case Rep. Lontine wishes to offer it - and this amendment can be offered to the bill, so after the committee report and the amendment to the report are offered and passed.

Please let me know more about #3 so I can include that in the amendment.

Thanks,
Christy
_____
Christy Chase, Assistant Director & Team Leader
Office of Legislative Legal Services | Colorado General Assembly
Office: 303.866.2008 | Cell: 303.981.4008 | christy.chase@state.co.us

DOI_014677

From:    "Isabel Cruz" <icruz@cohealthinitiative.org>
To:      "Christy Chase" <christy.chase@state.co.us>
Date:    04/19/2022 06:30 PM
Subject:    1269 Amendment round up!


Hi Christy:

Great to check in last week! We just got calendared for approps on Thursday so I wanted to check in about the floor amendment and make sure to aggregate all of the changes we're hoping to make. Here's what I've gathered so far based on our conversations with interested parties the last few days (some of which I mentioned and some of which is new):
1. Lowering the maximum fine from $10k to $5k.
2. Changing "claims" to "requests for reimbursement" throughout the amendment we added in committee as outlined in the attached document.
3. Including the ability for the commissioner to exclude "other consumer payment arrangements" by rule from this section (like we did for direct primary care groups).
4. Rep. Lontine expressed maybe wanting to strike the language that would require the DOI to send the report to the general assembly (essentially, strike lines 11-15 on page 18 of the pre-amended version). I'll verify that she still wants to do that but figured I'd give you a heads up in case!

And then last but not least are some of the technical clean up changes you mentioned regarding some of the committee amendments. Does that sound like a comprehensive list to you?

Thanks so much for your work on this, please let me know if you have any questions or concerns!

Best,
Isabel


--
**Isabel Cruz** (she, her, hers)
*Policy Manager*
Colorado Consumer Health Initiative
303 E. 17th Avenue Ste 400
Denver, CO 80203
office: (303) 839-1261
cell: (718) 483-2305
icruz@cohealthinitiative.org

***Need Help with your health insurance or medical bills?***  Call our Consumer Assistance Program at 303-839-1261, or email: help@cohealthinitiative.org

4 attachments

📄 **HB1269_L_025.pdf**
24K

DOI_014678

**HB1269_L_021.pdf**
25K

**HB1269_L_022.pdf**
26K

**HB1269_L_026.pdf**
32K

# EXHIBIT C



**STATE OF COLORADO**

Mortier - DORA, Matt <matt.mortier@state.co.us>

---

## Re: Health care sharing ministries/"Last Week Tonight"

1 message

---

**Plymell - DORA, Vincent** <vincent.plymell@state.co.us>                    Thu, Jan 7, 2021 at 1:40 PM
To: "Mortier - DORA, Matt" <matt.mortier@state.co.us>

Thanks for this Matt. Anything come up in SIRCON?

On Wed, Jan 6, 2021 at 10:54 AM Mortier - DORA, Matt <matt.mortier@state.co.us> wrote:
Alright...talked to staff more...the analyst was mistaken. They got some calls, but no complaints involving COVID and health sharing. The complaint they were thinking of was Aleira and involved a cardiac arrest claim.
I'll still run a query through SIRCON to confirm.

Respectfully,

Matt Mortier, MSL

**Director**
**Consumer Services, Life and Health Section**
*he/him/his*

P 303.894.7581 | F 303.894.7455 | C 720.471.1236
1560 Broadway, Suite 850, Denver, CO 80202
matt.mortier@state.co.us | www.dora.colorado.gov/insurance



**COLORADO**
Department of
Regulatory Agencies
Division of Insurance

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.

On Wed, Jan 6, 2021 at 9:51 AM Harris - DORA, Kate <kate.harris@state.co.us> wrote:
ASAP please. Thanks.

On Wed, Jan 6, 2021 at 9:50 AM Mortier - DORA, Matt <matt.mortier@state.co.us> wrote:
I have asked the team, and so far five analysts haven't received any health sharing complaints related to COVID. One analyst has gotten two complaints about it and a phone call asking about COVID coverage by her health share.
I was planning to run a report in SIRCON to see if anything else comes up?
What's the timeline on this?

Respectfully,

Matt Mortier, MSL

**Director**
**Consumer Services, Life and Health Section**
*he/him/his*

P 303.894.7581 | F 303.894.7455 | C 720.471.1236

1560 Broadway, Suite 850, Denver, CO 80202
matt.mortier@state.co.us | www.dora.colorado.gov/insurance



**COLORADO**
Department of
Regulatory Agencies
Division of Insurance

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.

On Wed, Jan 6, 2021 at 9:34 AM Harris - DORA, Kate <kate.harris@state.co.us> wrote:
Progress on this?

On Tue, Jan 5, 2021 at 1:16 PM Harris - DORA, Kate <kate.harris@state.co.us> wrote:
See below - thanks

---------- Forwarded message ----------
From: **Harris - DORA, Kate** <kate.harris@state.co.us>
Date: Tue, Jan 5, 2021 at 1:15 PM
Subject: Re: Health care sharing ministries/"Last Week Tonight"
To: Plymell - DORA, Vincent <vincent.plymell@state.co.us>
Cc: Michael Conway - DORA <michael.conway@state.co.us>

I'll ask Matt to pull recent complaints and see if we have anything that meets the criteria. I'd also reach out to CCHI.

On Tue, Jan 5, 2021 at 1:10 PM Plymell - DORA, Vincent <vincent.plymell@state.co.us> wrote:
Kate and Mike - See below. The producer from "Last Week Tonight" says the story on health care sharing ministries is back on for the coming season, but he's looking for any info on consumer experiences with HCSMs and their COVID expenses. Do we have any info on that (I'm thinking that if we do, it may not be much)?

If we don't, do either of you know of any sources for this info - who might be tracking it, such as SHVS/Robert W. Johnson, or maybe even NAIC?

---------- Forwarded message ----------
From: **Charles Wilson** <charles.wilson@lastweektonight.com>
Date: Tue, Jan 5, 2021 at 12:05 PM
Subject: Health care sharing ministries/"Last Week Tonight"
To: Plymell - DORA, Vincent <vincent.plymell@state.co.us>

Vince,

I hope you're well. You had been kind enough to set up a helpful call with you and Mike Conway early last year on healthcare sharing ministries, for "Last Week Tonight." We ended up punting the piece when the pandemic struck, but we would like to finally do it this year.

As I begin to refresh this story, I had a quick question on background, and I didn't know if your office would have any perspective. We wanted to try to get a sense of how the customers of HCSMs have fared during the pandemic. We were particularly interested in patients' experience trying to access care or get bills paid by an HCSM for severe COVID-related expenses. I hadn't seen press coverage reflecting this, and I didn't

know if your office had received any communication from HCSM members that might cast some light, or if you had recommendations for others I might reach out to. I'd also welcome any other updates from your office about HCSMs that you feel might be relevant to us.

I'm reachable at (917) 727-0670 or by this email if you had a brief window in the next couple of days. I appreciate your time, and I hope you're well.

All my best,

Charles Wilson

--

Charles Wilson

Senior News Producer

Last Week Tonight with John Oliver

charles.wilson@lastweektonight.com

(917) 727-0670

**From:** Charles Wilson <charles.wilson@lastweektonight.com>
**Date:** Thursday, January 16, 2020 at 12:39 PM
**To:** Plymell - DORA, Vincent <vincent.plymell@state.co.us>
**Subject:** Re: Health care sharing ministries/"Last Week Tonight"

Vince,

I'm very grateful to you and Mike, and the call was very helpful. Thank you for this, below. I'll aim to be back in touch soon again; with gratitude,

Charles

DOI_001173

--

Charles Wilson

Senior News Producer

Last Week Tonight with John Oliver

charles.wilson@lastweektonight.com

(212) 975-8186

---

**From:** "Plymell - DORA, Vincent" <vincent.plymell@state.co.us>
**Date:** Thursday, January 16, 2020 at 12:33 PM
**To:** Charles Wilson <charles.wilson@lastweektonight.com>
**Subject:** Re: Health care sharing ministries/"Last Week Tonight"

Charles - Thanks again for contacting us and talking to Mike about HCSMs. Here is the info I promised.

HB20-1008 - Health Care Cost-sharing Consumer Protections - This is the bill Mike referred to. It was introduced in the Colorado House last week so will be working its way through the legislature this session. Scroll to the bottom to see its status and the latest text of the bill as the session progresses.

Aliera Healthcare Cease & Desist - from Aug. 2019

Trinity Healthshare Cease & Desist - from Aug. 2019

We also put out a consumer advisory at the time we issued the C&Ds.

As we said, feel free to contact us with any follow-ups.

Vince

Vincent Plymell
Assistant Commissioner

[Image removed by sender.]
P 303.894.2261 | C 303.910.9614 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
vincent.plymell@state.co.us | dora.colorado.gov/insurance

[Image removed by sender.]  [Image removed by sender.]  [Image removed by sender.]

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.

On Tue, Jan 14, 2020 at 10:39 AM Charles Wilson <charles.wilson@lastweektonight.com> wrote:

You can put it, verbatim, in the calendar that way …. I'll look forward.


All my best,


Charles

---

**From:** "Plymell - DORA, Vincent" <vincent.plymell@state.co.us>
**Date:** Tuesday, January 14, 2020 at 12:38 PM
**To:** Charles Wilson <charles.wilson@lastweektonight.com>
**Subject:** Re: Health care sharing ministries/"Last Week Tonight"


Let's make it 8:15 MST / 10:15 EST. We'll call you on that number.


Looking forward to talking to Johnny O's Sad-Tastical Circus of Misery and Math on Thursday, 1/16.


Vince

**Vincent Plymell**
**Assistant Commissioner**
Error! Filename not specified.
P 303.894.2261 | C 303.910.9614 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
vincent.plymell@state.co.us | dora.colorado.gov/insurance

Error! Filename not specified.  Error! Filename not specified.  Error! Filename not specified.


CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you
are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-
mail by mistake and delete this e-mail and any attachments from your system.


On Mon, Jan 13, 2020 at 4:33 PM Charles Wilson <charles.wilson@lastweektonight.com> wrote:

I could do Thursday at 8 a.m. MST; thank you so much. I'll be reachable at (212) 975-8186 or glad to
call you,


My best,


Charles

**From:** "Plymell - DORA, Vincent" <vincent.plymell@state.co.us>
**Date:** Monday, January 13, 2020 at 6:25 PM
**To:** Charles Wilson <charles.wilson@lastweektonight.com>
**Subject:** Re: Health care sharing ministries/"Last Week Tonight"

Charles - Here a couple of times in the coming weeks that could work for Mike to talk to you about
health care sharing ministries. Let me know which can fit your schedule.

Thursday, 1/16 at 8 a.m. MST

Wednesday, 1/22 - morning

Wednesday, 1/29 - morning or afternoon

Thursday, 1/30 - morning

Vince

**Vincent Plymell**
**Assistant Commissioner**

Error! Filename not specified.
P 303.894.2261 | C 303.910.9614 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
vincent.plymell@state.co.us | dora.colorado.gov/insurance

Error! Filename not specified. Error! Filename not specified. Error! Filename not specified.

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient
you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received
this e-mail by mistake and delete this e-mail and any attachments from your system.

On Thu, Jan 9, 2020 at 2:48 PM Charles Wilson <charles.wilson@lastweektonight.com> wrote:

Jason,

Thank you very much for connecting us.

Mike and Vince, I'd be very happy to talk to you off-the-record/on background. I'll be here for the
next hour this evening or glad to set up a time tomorrow if you have a brief window.

My best,

Charles

--

Charles Wilson

Senior News Producer

Last Week Tonight with John Oliver

charles.wilson@lastweektonight.com

(212) 975-8186

**From:** Jason Levitis <jason.levitis@gmail.com>
**Date:** Thursday, January 9, 2020 at 4:41 PM
**To:** "Conway - DORA, Michael" <michael.conway@state.co.us>, Charles Wilson
<charles.wilson@lastweektonight.com>
**Cc:** "Plymell - DORA, Vincent" <vincent.plymell@state.co.us>
**Subject:** Re: Health care sharing ministries/"Last Week Tonight"

Excellent.  Looping Charles here.

Best,

Jason

On Thu, Jan 9, 2020 at 4:37 PM Conway - DORA, Michael <michael.conway@state.co.us> wrote:

> Sure. I copied Vince my PIO in.
>
> On Thu, Jan 9, 2020 at 2:27 PM Jason Levitis <jason.levitis@gmail.com> wrote:
>
>> Hi Mike.  I hope all is well.  The John Oliver show ("Last Week Tonight") is considering doing a
>> story on health care sharing ministries, focusing on the risks to consumers.  I just spoke to the
>> producer, Charles Wilson, on background.  He's interested in speaking with smart folks who've
>> worked on them.  Are you interested in speaking with him on background?  If so I can connect
>> you.
>>
>> Thank you.
>>
>> Best,
>>
>> Jason

-------- Forwarded message --------
From: **Charles Wilson** <charles.wilson@lastweektonight.com>
Date: Thu, Jan 9, 2020 at 10:55 AM
Subject: Health care sharing ministries/"Last Week Tonight"
To: jason.levitis@gmail.com <jason.levitis@gmail.com>

Mr. Levitis,

I am a senior news producer at "Last Week Tonight with John Oliver," a comedy news show on HBO.

Karen Pollitz at KFF said kind things of you and I wondered if I might speak to you by phone briefly **just on background**. We are working on a potential piece about healthcare sharing ministries; I wanted in particular to better understand the carveout these were granted in the Affordable Care Act. It's my understanding that the carve-out for them applies only to ministries founded before January 2000, but I have seen many of these HCSMs that seem to be more recent … I wanted to understand how they were exempt from requirements of ACA even if they were founded more recently. (More broadly, we're trying to get a sense of how low the barrier to entry to start one of these HCSMs is.)

If you had a brief window today, I'd be most grateful. I'm reachable at (212) 975-8186, or I'd be glad to call you at a convenient time; I'm also glad to try to answer any questions you may have of me. I have a call from about 11:30 to noon but should otherwise be here. I appreciate your time and hope you're well.

My best,

Charles Wilson

Charles Wilson

Senior News Producer

Last Week Tonight with John Oliver

charles.wilson@lastweektonight.com

(212) 975-8186

--

Jason Levitis
203-671-2609
jason.levitis@gmail.com

--

**Michael Conway**

**Commissioner of Insurance**

Error! Filename not specified.
P 303.894.7480 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
michael.conway@state.co.us | www.dora.colorado.gov/insurance

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom
it is addressed and may contain information that is privileged, confidential and exempt from
disclosure under applicable law. If you are not an intended recipient you are not authorized to
disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have
received this e-mail by mistake and delete this e-mail and any attachments from your system.

--

**Jason Levitis**
**203-671-2609**
jason.levitis@gmail.com

--

**Kate Harris**
**Chief Deputy Commissioner**
**Life & Health Policy**
*she/her/hers*



**COLORADO**
**Department of**
**Regulatory Agencies**
Division of Insurance

P 303.894.2949 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
kate.harris@state.co.us | www.dora.colorado.gov/insurance

Please consider the environment before printing this email.

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is
addressed and may contain information that is privileged, confidential and exempt from disclosure under
applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or
copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and
delete this e-mail and any attachments from your system.

--

**Kate Harris**
**Chief Deputy Commissioner**
**Life & Health Policy**
*she/her/hers*



P 303.894.2949 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
kate.harris@state.co.us | www.dora.colorado.gov/insurance

🖨 Please consider the environment before printing this email.

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is
addressed and may contain information that is privileged, confidential and exempt from disclosure under
applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or
copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and
delete this e-mail and any attachments from your system.

--
Kate Harris
Chief Deputy Commissioner
Life & Health Policy
she/her/hers



P 303.894.2949 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
kate.harris@state.co.us | www.dora.colorado.gov/insurance

🖨 Please consider the environment before printing this email.

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed
and may contain information that is privileged, confidential and exempt from disclosure under applicable law.
If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail.
Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and
any attachments from your system.

--
Kate Harris
Chief Deputy Commissioner
Life & Health Policy
she/her/hers



P 303.894.2949 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
kate.harris@state.co.us | www.dora.colorado.gov/insurance

♻ Please consider the environment before printing this email.

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.

# EXHIBIT D



**STATE OF COLORADO**

Mortier - DORA, Matt <matt.mortier@state.co.us>

---

## Fwd: Redrafted bill on pooling arrangements

1 message

---

**Conway - DORA, Michael** <michael.conway@state.co.us>                    Tue, Mar 26, 2019 at 8:40 AM
To: Peg Brown - DORA <peg.brown@state.co.us>, Matt Mortier - DORA <matt.mortier@state.co.us>, "Plymell - DORA, Vincent" <vincent.plymell@state.co.us>, Dayle Axman - DORA <dayle.axman@state.co.us>, Adam Boggess - DORA <adam.boggess@state.co.us>
Cc: Jefferey Riester - GovOffice <jefferey.riester@state.co.us>, Ashley Young - DORA <ashley.young@state.co.us>

I've signed off on this going to bill paper. I'm going to need help building the case for the disclosure requirements either through our consumer complaints and/or through stories in the press. Dayle, please talk to Vince regarding consumers being mislead or confused about the terms of a sharing ministry. If anyone has any other thoughts about ways to support the disclosure requirement please talk with me. Thank you.

Michael Conway
Commissioner of Insurance



**COLORADO**
Department of
Regulatory Agencies
Division of Insurance

P 303.894.7480 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
michael.conway@state.co.us | www.dora.colorado.gov/insurance

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.

--------- Forwarded message ---------
From: **Christy Chase** <christy.chase@state.co.us>
Date: Tue, Mar 26, 2019 at 8:26 AM
Subject: Re: Redrafted bill on pooling arrangements
To: Conway - DORA, Michael <michael.conway@state.co.us>
Cc: Debra Judy <djudy@cohealthinitiative.org>, Susan Lontine <susan.lontine.hd1@gmail.com>

Thanks for getting back to us.
Attached is an edited and revised version of the draft I sent yesterday, which now includes the 1/1/20 date for the disclosure requirement. Please review and let me know if we are ready for bill paper.

Also, Rep. Lontine - are you planning to get a Senate sponsor before introduction? If so, please have your Senate sponsor contact me today to verify sponsorship.

Thanks,

_____
Christy Chase, Assistant Director & Team Leader
Office of Legislative Legal Services | Colorado General Assembly
Direct: 303.866.2008 | christy.chase@state.co.us

From:    "Conway - DORA, Michael" <michael.conway@state.co.us>

To:    Debra Judy <djudy@cohealthinitiative.org>
Cc:    Christy Chase <christy.chase@state.co.us>, Susan Lontine <susan.lontine.hd1@gmail.com>
Date:    03/26/2019 07:56 AM
Subject:    Re: Redrafted bill on pooling arrangements

Sorry all - it was a crazy day yesterday and then I was in a meeting with the medical society until late last night.

We can make the 1/1/20 date work for the disclosures. We will likely have to use emergency authority initially for the rules and then take them through the normal rule-making process. We will have stakeholder engagement in the emergency process as well.

Michael Conway
Commissioner of Insurance

P 303.894.7480 | F 303.894.7455
1560 Broadway, Suite 850, Denver, CO 80202
michael.conway@state.co.us | www.dora.colorado.gov/insurance

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.

On Mon, Mar 25, 2019 at 5:28 PM <djudy@cohealthinitiative.org> wrote:
I like the 1/1/20 deadline if that works for Mike

Sent from my iPhone

On Mar 25, 2019, at 3:08 PM, Christy Chase <christy.chase@state.co.us> wrote:

Mike will have to respond re: whether the DOI would have sufficient time to adopt rules if the bill takes effect in early August.

_____
Christy Chase, Assistant Director & Team Leader
Office of Legislative Legal Services | Colorado General Assembly
Direct: 303.866.2008 | christy.chase@state.co.us

From:    Susan Lontine <susan.lontine.hd1@gmail.com>
To:    Christy Chase <christy.chase@state.co.us>
Cc:    Michael Conway - DORA <michael.conway@state.co.us>, Debra Judy <djudy@cohealthinitiative.org>
Date:    03/25/2019 03:05 PM
Subject:    Re: Redrafted bill on pooling arrangements

Would it be appropriate to require disclosures to be required Jan. 1, 2020. Gives a little breathing

room for any rules that need to promulgated and if we do end up putting in a petition clause, it shouldn't affect it either way.

Susan Lontine
Representative
Colorado House District 1
303-866-2966 Office
State Capitol Building, Rm 332

On Mar 25, 2019, at 2:08 PM, Christy Chase <christy.chase@state.co.us> wrote:

Only other question is whether to include a safety clause. Rep. Lontine has to approve that but she'd probably like to hear your thoughts on whether a safety clause is necessary so that the bill can take effect upon passage. And that actually triggers another question - should the disclosure section take effect at a later time to enable rulemaking and allow time for these entities to develop the required disclosures? The reporting requirement starts on March 1. Should the disclosures start on that same date? Or some other date?

Thanks,
Christy

Christy Chase, Assistant Director & Team Leader
Office of Legislative Legal Services | Colorado General Assembly
Direct: 303.866.2008 | christy.chase@state.co.us

| From: | Michael Conway - DORA <michael.conway@state.co.us> |
| To: | Christy Chase <christy.chase@state.co.us> |
| Cc: | Debra Judy <djudy@cohealthinitiative.org>, Susan Lontine <susan.lontine.hd1@gmail.com> |
| Date: | 03/25/2019 02:03 PM |
| Subject: | Re: Redrafted bill on pooling arrangements |

I'm reviewing on my phone between meetings. I like the language on the defray, share, cover piece. And I like the language on the penalties. Did I miss any other questions?

Sent from my iPhone

On Mar 25, 2019, at 1:48 PM, Christy Chase <christy.chase@state.co.us> wrote:

Attached is a redraft that incorporates your suggested revisions, I also have a few more drafting questions. ?If possible, please get final feedback and revisions to me by the end of the day.

Thanks,
Christy

Christy Chase, Assistant Director & Team Leader
Office of Legislative Legal Services | Colorado General Assembly
Direct: 303.866.2008 | christy.chase@state.co.us

From:      Debra Judy <djudy@cohealthinitiative.org>
To:        "Conway - DORA, Michael" <michael.conway@state.co.us>
Cc:        Susan Lontine <susan.lontine.hd1@gmail.com>, Christy Chase <christy.chase@state.co.us>
Date:      03/25/2019 09:29 AM
Subject:   Re: Redrafted bill on pooling arrangements

Good morning,

I am sending along some final thoughts on the draft.

First, instead of "health care cost pooling arrangements," we have decided to use the term "health care cost sharing arrangements" instead. However, I would like to see if there is a way to make sure that the definition in (b) (p. 2, lines 10-15) encompass those arrangements that also pool funds. Christy, would one way to do it be to add "or pool" after "contribute" on line 12? Or alternatively, have a new (c) that specifically refers to "pooling" or (i) and (ii) under (b) that would include non-pooling and pooling? I just want to be sure we capture both the arrangements that pool and those that do not but maybe the latter options are overkill.

Also, the Commissioner suggested using the term "cover" instead of or in addition to "defray" (on line 14, p.2) and "may be" instead of "are". That makes sense to me. Finally, in the definition, we refer to the "community or other arrangement" - I wonder if we should add the word "entity"?

Second, it was not intentional on my part to not have enforcement authority related to the reporting requirement. We could either reference 10-3-109(3) here or borrow and modify that language as an enforcement provision in this new section 10-3-903.7. I lean toward the latter, but will defer to others. If we do that, here is my proposal:

If ~~any entity regulated by the division of insurance~~ a health care cost sharing arrangement subject to 10-3-903.7 fails to file ~~any other document required by law or rules and regulations to be filed with the division of insurance or fails to maintain complaint records as required by law~~ the information required by subsection (2), the commissioner may assess a penalty not to exceed five hundred dollars for an initial violation and a penalty not to exceed five thousand dollars for any subsequent failure to comply with any such filing requirement ~~or requirement to maintain records. The commissioner, by rule and regulation, may establish a schedule for the assessment of penalties as authorized in this subsection (3) based upon the frequency and severity of noncompliance.~~ (thinking the last sentence not needed and the concept can be incorporated into the rule-making section (5).

Other suggested changes:

p. 3, line 9: change "entities" to "third parties" - I want to be sure we encompass brokers, and entities may not do that?
p. 3, line 27: add after "by": "or on behalf of"
p. 4, line 24: should the word by "prominently" instead of "conspicuously"?

on p. 5, after (IV) can we add a new (V) along the following lines? The point is to allow, during the rule making process, the Commissioner to determine if there is anything else that should be included in a notice/disclosure.
"Any other disclosures that is required by the Commissioner pursuant to rule-making in subsection (5)."

on p.4, line 10, add a new (IV)
"the number of retroactive membership denials and the number of appeals or grievances"
Commissioner, your thoughts on that?

Deb

DOI_000824

On Sun, Mar 24, 2019 at 2:18 PM Conway - DORA, Michael <michael.conway@state.co.us>
wrote:
Hi all,

As usual, very nice work Christy. Just a couple small things for you all to ponder.

Regarding the definition - I'm struggling with the "...defray the medical costs..." language. In
particular the use of defray. What do you all think about "cover" instead of "defray" or maybe both?

Also, staying in the definition, instead of saying that member funds <u>are</u> (page 2, line 13) used to
defray or cover the medical costs of other members, I think we should say that they "may be" used
to defray or cover the medical costs of members. That will hopefully get us around an argument
that since there's no guarantee of payment the member funds are not necessarily used to cover
other members medical costs and the entities fall outside of the definition.

There's no enforcement authority for one of these entities failing to file the required information
from sub-section 2 with us - that may have been intentional but I worry that without some type of
enforcement authority these entities will ignore the reporting requirement.

Michael Conway
Commissioner of Insurance


P 303.894.7480 | F <u>303.894.7455</u>
1560 Broadway, Suite 850, Denver, CO 80202
<u>michael.conway@state.co.us</u> | <u>www.dora.colorado.gov/insurance</u>


CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it
is addressed and may contain information that is privileged, confidential and exempt from
disclosure under applicable law. If you are not an intended recipient you are not authorized to
disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have
received this e-mail by mistake and delete this e-mail and any attachments from your system.


On Thu, Mar 21, 2019 at 3:23 PM Conway - DORA, Michael <michael.conway@state.co.us>
wrote:
This is on my to do list for this weekend. And thank you very much Christy.

Michael Conway
Commissioner of Insurance


P 303.894.7480 | F <u>303.894.7455</u>
1560 Broadway, Suite 850, Denver, CO 80202
<u>michael.conway@state.co.us</u> | <u>www.dora.colorado.gov/insurance</u>

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail and any attachments from your system.


On Thu, Mar 21, 2019 at 2:09 PM Susan Lontine <susan.lontine.hd1@gmail.com> wrote:
Thanks Christy

Susan Lontine
Representative
Colorado House District 1
303-866-2966 Office
State Capitol Building, Rm 332

On Mar 21, 2019, at 2:07 PM, Christy Chase <christy.chase@state.co.us> wrote:

Rep. Lontine,
I met with Deb yesterday to discuss some revisions to your bill, which revisions are incorporated in the attached redraft. She is contemplating changing the terminology a bit, which is why the word "pooling" is highlighted in several places. The introduction deadline for this bill is **Wednesday, March 27**, so I need all **final changes by COB Monday, March 25.**


Thanks,
_____
Christy Chase, Assistant Director & Team Leader
Office of Legislative Legal Services ¡ Colorado General Assembly
Direct: 303.866.2008 ¡ christy.chase@state.co.us
<19-1016_01.pdf>


--

Debra Judy
she/her/hers
Policy Director
Colorado Consumer Health Initiative
phone: 303-839-1261
djudy@cohealthinitiative.org

Follow us on Twitter and Facebook

***Need Help with your health insurance or medical bills?***  Call our new Consumer Assistance Program at 303-839-1261, or email: help@cohealthinitiative.org

<19-1016_01.pdf>

📄 **19-1016_01.pdf**
119K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 24-cv-01386-GPG-STV

ALLIANCE OF HEALTH CARE
SHARING MINISTRIES,

     Plaintiff,

v.

MICHAEL CONWAY, in his official capacity
as Commissioner of the Colorado Division of Insurance,

     Defendant.

---

# ORDER

---

Before the Court is Plaintiff Alliance of Health Care Sharing Ministries' (the Alliance) Motion for Injunction Pending Appeal (D. 58). For the following reasons, this motion is DENIED.

## I.  BACKGROUND

On May 17, 2024, the Alliance filed a motion for a preliminary injunction, asking the Court to enjoin the enforcement of Colorado Revised Statutes § 10-16-107.4 and its implementing regulation, 3 Colo. Code Regs. § 702-4:4-10-01 (*see* D. 8). This statute and regulation (collectively, the Reporting Law) generally obligate entities that offer or intend to offer health care sharing plans or arrangements to Colorado residents to report various information to Defendant

1

Michael Conway, Commissioner of the Colorado Division of Insurance (Defendant, or the Commissioner).[1]

On January 13, 2025, the Court denied the Alliance's motion, concluding that the Alliance had not shown that it was likely to succeed on the merits of any of its claims (*see* D. 54). On January 27, 2025, the Alliance filed a notice of appeal (D. 55). In its instant motion, filed on January 28, 2025, the Alliance asks that the Court "enjoin Defendant's enforcement of [the Reporting Law] pending appeal," or, alternatively, that the Court "enter an administrative stay for at least ten days to give Plaintiffs an opportunity to seek emergency relief from the Tenth Circuit" (D. 58).[2]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(d), "[w]hile an appeal is pending from an interlocutory order . . . that . . . refuses . . . an injunction, the court may . . . grant an injunction on terms for bond or other terms that secure the opposing party's rights." In deciding a motion for an injunction pending appeal, the Court considers four factors: (1) whether the movant has made a strong showing that it is likely to prevail on the merits of its appeal; (2) whether the movant will be irreparably injured if the injunction is not granted; (3) whether granting the injunction will substantially harm the opposing parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Bradford v. U.S. Dep't of Lab.*, No. 21-CV-03283-PAB-STV, 2022 WL 266805, at *1 (D. Colo. Jan. 28, 2022). These factors substantially overlap with the factors that

---

[1] Further background on the Reporting Law and the facts of this case may be found in the Court's Order denying the Alliance's preliminary injunction motion (*see* D. 54 at 1–17).

[2] The Commissioner has not responded to this motion. But the Court exercises its prerogative to proceed without the benefit of a response, *see* D.C.COLO.LCivR 7.1(d), in part so that the Alliance may more promptly seek emergency relief from the Tenth Circuit—should it choose to seek such relief.

2

govern preliminary injunction requests. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294, 2012 WL 6930302, at *1 (10th Cir. Dec. 20, 2012) (observing that ruling on a motion for injunction pending appeal involves the "same inquiry" as a preliminary injunction analysis).

## III.  ANALYSIS

Relying on *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996), the Alliance argues that "if a party 'can meet the other requirements for a stay pending appeal, they will be deemed to have satisfied the likelihood of success on appeal element if they show questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation'" (D. 58 at 5–6).  In the Alliance's view, this is one such "case [that] presents substantial legal questions that warrant an injunction pending appeal" (*id.* at 7).

The Court does not disagree that this case presents important legal questions requiring an involved analysis.  But—as at least one judicial officer in this District has observed—the Tenth Circuit has backed away from the "substantial question" test the Alliance advances.  *See Bradford*, 2022 WL 266805, at *2–3 (observing that "*McClendon* . . . [is] no longer followed" and rejecting the movants' attempt to "rely[] on the outdated substantial question test").  Accordingly, the Alliance must still make a strong showing that it is likely to succeed on the merits of its appeal, regardless of how the other factors relevant to a request for an injunction pending appeal resolve.

The Alliance has not done this.  Instead, the Alliance argues that the Court's January 13, 2025 Order "resolves several novel legal issues" and that "discovery in this case continues to undermine Colorado's arguments" (D. 58 at 7–8). But the Court does not find that the Alliance's

3

positions "equate to a 'strong showing' that [it is] likely to succeed on the merits of [its] appeal."
*Bradford*, 2022 WL 266805, at *3.

### A. Novel Legal Questions

According to the Alliance, the "Court's opinion resolves the legal question of how to apply *Fulton's* application of strict scrutiny to regulations that authorize exemptions at officials' discretion to situations where that discretion is implemented by way of rulemaking" and addresses "the novel legal question of how to apply the Establishment Clause to regulations that intrude on the affairs of a religious organization" (D. 58 at 7).

To the Alliance's first point, it is the Alliance that is asking to apply *Fulton* in a novel way. As the Court's January 13, 2025 Order observed, *Fulton's* concern is not exemptive authority generally, but the exercise of *individualized* exemptive authority—it applies by its terms to laws that provide "a mechanism for individualized exemptions" (D. 54 at 28 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)). It is possible that the Tenth Circuit could construe *Fulton* to apply to laws that confer broader rulemaking authority on state agencies (as opposed to laws that authorize state officials to make individualized determinations). But "[t]he sheer possibility of a reversal—a possibility that exists in every appeal—is insufficient for the Court to find an injunction . . . is necessary here." *Delux Pub. Charter, LLC v. Cnty. of Westchester*, No. 22-CV-01930 (PMH), 2024 WL 3744167, at *3 (S.D.N.Y. July 25, 2024).

The Alliance's second point regarding this case's novelty fares no better. How the Establishment Clause applies to regulations that intrude on the affairs of a religious organization is not a "novel legal question." There is a longstanding and well-established body of caselaw that confirms that generally applicable administrative and recordkeeping regulations may be imposed

4

on religious entities without violating the Establishment Clause (*see* D. 54 at 35 (explaining that "*Kennedy* [*v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022)] does not draw into doubt the various Supreme Court precedents validating the constitutionality of generally applicable administrative and recordkeeping regulations" and citing cases)).  In the Court's view, the Reporting Law falls under the umbrella of this authority.  Again, the Tenth Circuit may disagree, but that possibility does not mean that the Alliance has made a strong showing that it is likely to succeed on the merits of its appeal.

### B.  New Evidence

The Alliance's arguments concerning evidence obtained through discovery—even assuming that they inform the Alliance's prospects of success on appeal—are unpersuasive.[3]  The Alliance first points to email correspondence including Colorado insurance officials and state legislative staff addressing questions about whether the Reporting Law would apply to a charitable entity (*see* D. 58 at 8; D. 58-1 at 26–33).  The Alliance reads this email chain as discussing how the Reporting Law's delegation of rulemaking authority to the Commissioner would be used to exempt a particular favored entity.  But the Court reads this correspondence as reflecting a more general intent not to subject charitable organizations to the Reporting Law, because they do not

---

[3] The Alliance's motion at various points appears to attack the Court's January 13, 2025 Order on the basis that the Court denied the Alliance's preliminary injunction request without a hearing (*see, e.g.*, D. 58 at 9 (stating that the evidence the Alliance has obtained in discovery, "which would have been presented at an evidentiary hearing, further confirms this case presents substantial questions on the merits")).  The Court notes that the record it ruled on included around one thousand pages of evidence, including various declarations, deposition testimony, and reports; that the Alliance had multiple years pre-suit to marshal evidence in support of its constitutional claims; and that the Court agreed to an extended briefing schedule (under which the Alliance filed its reply brief in September 2024).  And—as the Alliance concedes—this case largely turns on issues of law.  Moreover, the Alliance never moved for leave to supplement the preliminary injunction record, nor did it move for reconsideration of the Court's order denying its preliminary injunction request on the basis of any evidence it obtained in discovery.  Nor does the Alliance indicate when it received the evidence in discovery.  In any event,  for the reasons explained below, the Court does not find the Alliance's new evidence persuasive.

pose the same consumer risks as the health sharing plans Colorado intended to regulate. The email chain actually nicely illustrates how the Reporting Law's drafters intended its rules-based exemptive approach to function in practice. That is, it shows that the Reporting Law's drafters wanted to give the Commissioner the flexibility to exempt entire *categories* of payment arrangements that do not pose the same consumer risks as the health sharing plans the Reporting Law is intended to regulate, not that the Reporting Law's drafters wanted to give the Commissioner the ability to provide waivers to individual entities whose values he happens to approve of.

The Alliance also points to emails documenting the Colorado Division of Insurance's (the Division) efforts to provide source materials to a producer of John Oliver's television show for a story on health care sharing ministries (*see* D. 58 at 8–9; D. 58-1 at 34–45). According to the Alliance, this collaboration reflects the Division's animus towards the religious practices of health care sharing ministries because "[n]o reasonable government official could understand this high-level engagement [with the producer] as anything other than supporting Mr. Oliver's historical attacks on religion" (D. 58 at 9). But there is an obvious innocent explanation for why the Division might engage with someone like Mr. Oliver. With all due respect to the Division, Mr. Oliver likely has a significantly greater popular following. It strikes the Court that the likely reason the Division worked with Mr. Oliver was so that it could use his platform to advise consumers of health sharing plans' documented risks, not so that they could express their disapproval of the religious beliefs and religious practices of sharing ministries.

Finally, the Alliance points to an email from the Commissioner explaining that he was "signed off on [the Reporting Law] going to bill paper," but was "going to need help building the case for the disclosure requirements" (*see* D. 58 at 9; D. 58-1 at 47–52). According to the Alliance,

6

this language confirms that the Commissioner's justification for the Reporting Law is a post-hoc invention. But the Alliance takes the Commissioner's statement out of context. The email reads, in full:

> I've signed off on this going to bill paper. I'm going to need help building the case for the disclosure requirements either through our consumer complaints and/or through stories in the press. Dayle, please talk to Vince regarding consumers being mislead or confused about the terms of a sharing ministry. If anyone has any other thoughts about ways to support the disclosure requirement please talk with me. Thank you.

(D. 58-1 at 47).

This is hardly an admission that the Commissioner supported the Reporting Law for no reason—rather, it indicates the Commissioner's awareness that the Division had received consumer complaints speaking to consumer confusion concerns. The thrust of this email seems to be about building public support for a bill the Commissioner believed necessary, not a request for help inventing some justification that did not exist in the first instance.

In sum, the Alliance's new evidence does not move the needle. It does not change the Court's view that a preliminary injunction is not appropriate. And—even assuming that it could be relevant to the Alliance's likelihood of success on the merits of its appeal—the Court does not find that the Alliance's new evidence means the Alliance has made a "strong showing" of its likelihood of success on appeal.

## IV.  CONCLUSION

Because the Alliance has not made a strong showing that it is likely to prevail on the merits of its appeal, the Court declines to consider the other factors in the injunction-pending-appeal analysis. *See Bradford*, 2022 WL 266805, at *4 ("Because plaintiffs have failed to show a strong likelihood that they will succeed on the merits of their appeal, the Court need not consider the

other factors for a stay or injunction pending appeal."). The Alliance's request for a stay pending appeal is DENIED.

The Alliance's alternative request that the Court "enter an administrative stay for at least ten days to give Plaintiffs an opportunity to seek emergency relief from the Tenth Circuit" is likewise DENIED. As an initial matter, there is nothing to stay. The Order the Alliance is challenging on appeal denies a request to preliminarily enjoin the Reporting Law—a "stay" of that Order would have no effect. In substance, then, the Alliance seems to be asking that the Court preliminarily enjoin the Reporting Law for at least ten days. But it is not clear to the Court that it has any authority to issue a preliminary injunction pending appeal without reference to the factors discussed above, including the Alliance's likelihood of success on the merits of its appeal. The Court thus views the Alliance's request for an administrative stay as duplicative of its request for an injunction pending appeal. And it denies this request for the same reasons.

The Court also observes that an injunction of significantly longer than ten days would be necessary to have any real-world effect. The Reporting Law imposes a reporting deadline of March 1 (and grants reporting parties 30 days to cure any deficiencies the Commissioner identifies in their reporting). Under these circumstances, it is not clear to the Court how a ten-day injunction would help the Alliance—even if the Alliance's concern is that the Commissioner will ask its members to provide information they declined to provide in the previous reporting cycle. (The Alliance may of course seek emergency relief from the Tenth Circuit under Federal Rule of Appellate Procedure 8(a)(2), advising the Tenth Circuit of its members' actual or potential reporting deadlines.)

DATED February 3, 2025.

BY THE COURT:

_____

Gordon P. Gallagher

United States District Judge